1    MATTHEW D. POWERS (Bar No. 104795)
     matthew.powers@weil.com
2    EDWARD R. REINES (Bar No. 135960)
     edward.reines@weil.com
3    JEFFREY G. HOMRIG (Bar No. 215890)
     jeffrey.homrig@weil.com
4    JILL J. HO (Bar No. 236349)
     jill.ho@weil.com
5    WEIL, GOTSHAL & MANGES LLP
     Silicon Valley Office
6    201 Redwood Shores Parkway
     Redwood Shores, CA 94065
7    Telephone: (650) 802-3000
     Facsimile: (650) 802-3100
8
     ELIZABETH WEISWASSER (admitted pro hac vice)
9    elizabeth.weiswasser@weil.com
     WEIL, GOTSHAL & MANGES LLP
10   767 Fifth Avenue
     New York, NY 10153
11   Telephone: (212) 310-8000
     Facsimile: (212) 310-8007
12
     Attorneys for Plaintiff-Counterclaim Defendant
13   NETWORK APPLIANCE, INC.,

14

15                  UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                  SAN FRANCISCO DIVISION

18

19   NETWORK APPLIANCE, INC.          Case No. 3:07-CV-06053-EDL

20        Plaintiff-Counterclaim Defendant,    **JOINT CASE MANAGEMENT
                                                STATEMENT AND [PROPOSED] ORDER**
21        v.

22   SUN MICROSYSTEMS, INC.

23        Defendant-Counterclaim Plaintiff.

24

25

26

27

28

Network Appliance, Inc. ("NetApp") and Sun Microsystems, Inc. ("Sun") jointly submit this Case Management Statement and Proposed Order and request the Court to adopt it as its Case Management Order in this case.

## DESCRIPTION OF THE CASE

**1.      A brief description of the events underlying the action:**

On September 5, 2007, NetApp filed its Complaint in the Eastern District of Texas, alleging that Sun has infringed and is infringing, directly and indirectly under 35 U.S.C. § 271, United States Patent Nos. 5,819,292 ("the '292 patent"), 6,892,211 ("the '211 patent"), 6,857,001 ("the '001 patent"), 7,174,352 ("the '352 patent"), 7,200,715 ("the '715 patent"), 7,162,486 ("the '486 patent"), and 7,133,964 "(the '964 patent") (collectively "the NetApp Patents") by making, using, selling, or offering for sale data processing systems and related software, primarily Zettabyte File System ("ZFS").  NetApp further seeks a declaratory judgment that certain patents owned by Sun, namely United States Patent Nos. 5,403,639 ("the '639 patent"), 5,410,667 ("the '667 patent"), and 6,581,185 ("the '185 patent") are each not infringed, invalid and/or unenforceable.  NetApp seeks a permanent injunction to prevent future infringements as well as damages adequate to compensate it for Sun's past infringement and trebling of damages pursuant to 35 U.S.C. § 284 because Sun's infringement of the NetApp Patents is and has been willful.

On October 25, 2007, Sun filed its Answer and Counterclaim, denying the material allegations of the Complaint and asserting a number of affirmative defenses and counterclaims. Sun denies infringing any of the NetApp Patents and alleges that NetApp infringes United States Patent Nos. 5,403,639 ("the '639 patent"), 5,410,667 ("the '667 patent"), 5,459,857 ("the '857 patent"), 5,749,095 ("the '095 patent"), 5,761,662 ("the '662 patent"), 5,925,106 ("the '106 patent"), 5,941,954 ("the '954 patent"), 6,356,984 ("the '984 patent"), 6,591,303 ("the '303 patent"), 6,681,261 ("the '261 patent"), 6,873,630 ("the '630 patent"), and 6,983,343 ("the '343 patent") (collectively "the Sun Patents").  Sun further seeks a declaratory judgment that the NetApp Patents are each not infringed, invalid and/or unenforceable.  Sun seeks a permanent injunction to prevent future infringements as well as damages adequate to compensate it for

NetApp's past infringement and trebling of damages pursuant to 35 U.S.C. § 284 because NetApp's infringement of the Sun Patents is and has been willful.

On December 7, 2007, NetApp filed its Reply to Sun's Answer and Counterclaims, denying the material allegations of Sun's Answer and Counterclaim and asserting a number of affirmative defenses and counterclaims. NetApp denies infringing any of the Sun Patents. In addition to the three Sun patents listed in the Complaint, NetApp further seeks declaratory judgments of invalidity and/or unenforceability with respect to the '857 patent, the '095 patent, the '662 patent, the '106 patent, the '954 patent, the '984 patent, the '303 patent, the '261 patent, the '630 patent, and the '343 patent.

      **2.**      **The principal factual issues which the parties dispute:**

(a)      Whether any of the NetApp Patents are infringed by any of Sun's products.

(b)      Whether any of the Sun Patents are infringed by any of NetApp's products.

(c)      Whether any claims of the NetApp Patents, the Sun Patents, or the '185 patent are invalid.

(d)      If one or more of the NetApp Patents are infringed (and not invalid or unenforceable), what damages and/or other relief would be appropriate.

(e)      If one or more of the Sun Patents are infringed (and not invalid or unenforceable), what damages and/or other relief would be appropriate.

(f)      If one or more of the NetApp Patents are infringed (and not invalid or unenforceable), whether that infringement was willful.

(g)      If one or more of the Sun Patents are infringed (and not invalid or unenforceable), whether that infringement was willful.

      **3.**      **The principal legal issues which the parties dispute:**

(a)      How disputed terms in each asserted claim of the NetApp Patents, the Sun Patents, and the '185 patent should be construed.

(b)    Whether any claims of the NetApp Patents, the Sun Patents, or the '185 patent are invalid.

(c)    Whether one or more of the '001 patent, '292 patent, '211 patent, '352 patent, '639 patent, '667 patent, '857 patent, '095 patent, '662 patent, '106 patent, '954 patent, '984 patent, '303 patent, '630 patent, or '343 patent are unenforceable due to inequitable conduct before the United States Patent and Trademark Office.

(d)    Whether the '630 patent and/or the '303 patent is unenforceable due to equitable estoppel because at least one of the named inventors of each patent participated in IEEE standard-setting activities but failed to advise IEEE members of the existence and content of the then pending applications that resulted in the issuance of that patent.

(e)    Whether either party's recovery, if any, is limited to any alleged infringement committed no more than six years prior to the filing of that party's claims pursuant to 35 U.S.C. § 286.

(f)    Whether NetApp is barred from obtaining the relief it seeks due to failure to comply with the marking requirements of 35 U.S.C. § 287 and/or prosecution history estoppel.

(g)    Whether Sun is barred from obtaining the relief it seeks due to laches and/or patent misuse.

(h)    If any infringement of the NetApp Patents or Sun Patents was willful, whether increased damages should be awarded.

(i)    Whether either party is entitled to attorney's fees under 35 U.S.C. § 285 or costs.

**4.    The other factual issues** *[e.g. service of process, personal jurisdiction, subject matter jurisdiction or venue]* **which remain unresolved for the reasons stated below and how the parties propose to resolve those issues:**

No such issues remain unresolved.

**5.     The parties which have not been served and the reasons:**

No parties remain to be served.

**6.     The additional parties that the below-specified parties intend to join and the intended time frame for such joinder:**

The parties do not intend to join any additional parties.

### CONSENT TO MAGISTRATE JUDGE FOR TRIAL

7.     Both parties consent to assignment of this case to Magistrate Judge Laporte for jury trial.

### ALTERNATIVE DISPUTE RESOLUTION

8.     The case has been assigned to the ADR Multi-Option Program pursuant to ADR L.R. 3, but has not yet been assigned to a specific ADR process.

9.     The ADR process to which the parties separately request referral:

The parties are both amenable to discussing settlement, but have not agreed on an ADR process.  NetApp proposes that the case be referred to a magistrate judge for an early settlement conference pursuant to ADR L.R. 3-4(c).  Sun proposes that the parties pursue mediation.

### DISCLOSURES

10.     The parties certify that they have made the following disclosures:

Both parties have timely served their Fed. R. Civ. P. 26(a)(1) initial disclosures.

### DISCOVERY & MOTIONS

11.     The parties agree to the following discovery plan:

Stipulated Discovery Limits.

Doc. Req.:          Pltf.  no limit          Def.  no limit

Req. Adm.:        Pltf.  <u>no limit</u>        Def.  <u>no limit</u>

**Depositions.**  The parties agree that there should be no limit on the total number of depositions taken by each party.  The parties further agree that the seven-hour limit set forth in Fed. R. Civ. P. 30(d)(2) should apply, with two exceptions.  First, the parties disagree as to the appropriate length of Rule 30(b)(6) depositions.  Second, while the parties agree that the seven-hour limit should not apply to inventors of multiple patents, the parties disagree about what limit should apply.

<u>NetApp's argument:</u>  NetApp proposes that Rule 30(b)(6) depositions be presumptively limited to fourteen hours, but that the parties should meet and confer in good faith to adjust this limit in light of the scope of each deposition.

NetApp proposes that inventor depositions be limited to one day per patent, up to a total of three days.  This three-day limit reflects the fact that the subject matter to be covered in a deposition does not increase proportionally with the increase in the number of patents.  For example, topics such as the inventor's training, experience, role at the company, and other generalized issues that are standard inventor deposition subjects need only be covered once.  Moreover, where multiple patents are in the same patent family, the inventor's research and development work that led to these patents need only be covered once.  A three-day limit strikes the best balance between providing additional time to depose inventors of multiple patents on the one hand, and imposing disproportionate and unreasonable burdens on the other hand..

<u>Sun's argument:</u>  With respect to Rule 30(b)(6) depositions, Sun proposes that such depositions not be subject to a preset time limit.  The duration of such depositions shall be reasonable when viewed in light of the scope and number of topics and the number of witnesses designated to testify as to such topics.  For example, if NetApp identifies one witness as the person most knowledge regarding infringement, prior art, prosecution, damages, sales, marketing and marking, it is unreasonable to require Sun to complete that deposition in a preset time limit of 14 hours.  Rather, the parties should meet-and-confer in good faith to determine a reasonable time limit for such depositions based on the scope and number of topics and number of witnesses.

With respect to the inventor depositions, NetApp argues that such depositions shall be limited to three days, regardless of the number of patents. Such a proposal is unreasonable, particularly in light of the fact that one NetApp inventor, David Hitz, is identified by NetApp as the person most knowledgeable regarding the conception and reduction to practice on five of the NetApp Patents (the '292, '001, '211, '964 and '352 patents). David Hitz is also identified by NetApp in its Rule 26 initial disclosures as the NetApp employee most knowledgeable regarding the "NetApp products embodying the inventions claimed by the NetApp patents-in-suit; the Accused NetApp Products; other NetApp products; Sun products; prior art related to Sun's patents-in-suit; licensing discussions between NetApp and Storage Technology Corporation and/or Sun." Under NetApp's proposal, Sun would be forced to depose Mr. Hitz in three days on five patents as well as on all of the other topics as to which NetApp identifies Mr. Hitz as knowledgeable – topics which span most of this case. Such a proposal is unreasonable.

Contrary to NetApp's suggestion, very little of the inventor depositions will be devoted to the "generalized issues" identified by NetApp; those topics will involve a small percentage of the depositions. Rather, the vast majority of the time spent during the inventor depositions will be focused on important, patent-specific questions pertaining to such issues as conception, reduction to practice, prosecution of the patents (particularly in light of inequitable conduct allegations), products that practice the patents-in-suit, knowledge of prior art, and the meaning and scope of the patent. Such testimony will be different for each of the patents-in-suit and an equal amount of time needs to be allotted as to each patent. Therefore, Sun proposes that the inventor depositions be limited to one day per patent. Moreover, to the extent that an inventor also is designated as a Rule 30(b)(6) deponent, the parties shall meet-and-confer in good faith to determine the appropriate amount of additional time for each such witness.

**Interrogatories.** The parties disagree about the number of interrogatories that should be permitted for each side. In light of the number of patents at issue, NetApp proposes that each side be limited to 60 interrogatories. Sun does not believe that this case warrants a departure from the statutorily prescribed 25-interrogatory limit. The number of patents at issue does not necessitate

more than doubling the number of permitted interrogatories and, NetApp has failed to articulate why "the number of patents at issue" require additional interrogatories. In this regard, the parties agree that no interrogatory shall be objectionable as containing "subparts" on the ground that a single interrogatory requires a response as to some or all of the patents-in-suit. Thus, to the extent 25 interrogatories are appropriate for a one-patent case, 25 interrogatories also should suffice in this case.

**Service by email.** The parties have agreed that, when practical, documents concerning this action should be served by email to each of the attorneys of record in this action. Documents served by email will be treated as though served by hand on the date email service occurs. The deadline for serving documents to comply with a discovery, rule-based, or court-ordered deadline is Midnight, Pacific time.

**Service of Re-examination Documents.** To date, Sun has submitted petitions for reexamination of three of the NetApp Patents (the '292 patent, the '001 patent, and the '211 patent) to the United States Patent and Trademark Office ("USPTO"). The USPTO has not yet administratively accepted these petitions. According to Sun, additional reexamination petitions are likely to be submitted. In addition to the discovery limits set forth above, the parties agree that they will serve litigation counsel with copies of documents submitted to or received from the USPTO in connection with a request for re-examination of a patent-in-suit. In the case of documents submitted to the USPTO, service will occur via email on the same day as the submission is made. In the case of documents received from the USPTO, service will be made via email within three business days of receipt.

**Protective Order.** The parties further agree that discovery in this action shall be subject to a protective order. The parties continue to confer regarding the terms of a proposed form of order. The parties either will submit a joint proposal to the Court prior to the case management conference, or will identify for the Court at the case management conference any issues upon which agreement cannot be reached.

**Case schedule.** The parties disagree about the appropriate schedule for this case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NetApp's Argument:  The most intelligent way to manage this case is to divide it into two parallel, but staggered, phases.  The first track would be comprised of NetApp's patent claims, which are, for the following reasons, about one month more mature than Sun's patent claims.[1] Today, January 22, NetApp filed its preliminary infringement contentions for the seven patents it asserted in this case.  NetApp is able to do this because it performed a careful infringement analysis of Sun's public domain "open source" code before filing its complaint. Sun, on the other hand, plans to wait until February 11 to file preliminary infringement contentions for the 12 patents it asserted.  Sun had apparently performed only a very limited infringement analysis prior to the filing of its counterclaims and has never expressed any urgency in pursuing those claims – instead arguing for delay when it attempted to repudiate the parties' agreement to a prompt CMC in this case.  Indeed, Sun originally sought to delay its preliminary infringement contentions until at least March 3 due to the need for more time to prepare them.  Docket No. 5 (Sun's Opposition to NetApp's Motion for Administrative Relief), at 4; December 18, 2007 email from C. Williamson to J. Homrig (identifying March 3, 2008 as Sun's proposed date for serving PLR 3-1 infringement contentions).

Recognizing the natural division of the case into two tracks, NetApp proposes a staggered, but parallel schedule for each party's respective patents.  The proposed schedule for the NetApp patents is anchored to the January 22 date on which NetApp filed its preliminary infringement contentions and generally tracks the time frames set forth in the patent local rules.  The proposed schedule for the Sun patents is anchored to the February 11 date on which Sun will file its infringement contentions and also roughly tracks the time frames set forth in the patent local rules.  To the extent the proposed dates do not precisely correspond to those prescribed in the patent local rules, adjustments were made to prevent overlap of key events and provide a sensible

---

[1]     The relatively advanced stage of NetApp's claims compared to Sun's claims is a reflection of the greater urgency surrounding NetApp's claims.  Because Sun is aggressively disseminating its accused code through the "open source" network, prompt resolution of NetApp's infringement claims is needed to provide potential open-source adopters, as well as the general public, with guidance about whether Sun's code infringes NetApp's patents.

workload distribution over the time frame of this case. Furthermore, as noted below, five of the seven patents that would be addressed in the proposed first phase of this case pertain to the core technology at issue in this dispute. *See infra* 17-18. Thus, under NetApp's proposed schedule, the Court would essentially handle a cluster of key patents dealing with similar subject matter as a single unit. Sun's proposed schedule, by contrast, asks the court to handle all 21 patents – pertaining to a wide variety of technologies – on a single consolidated schedule. This proposal creates a series of crushing deadlines – for both the parties and the court – that are generally unhelpful for efficient case management. NetApp thus respectfully requests that the Court adopt its proposed two-phase schedule, set forth on pages 13-15 below.

Sun's Argument: NetApp's proposed case schedule is a transparent, and wholly unjustified, attempt to give unfair priority to NetApp's claims over the claims of Sun. The factual premises of NetApp's arguments are false, and its purported concerns about the management of this case are better addressed by other, more equitable means. Indeed, while NetApp cloaks its schedule in the neutral camouflage of procedural efficiency, NetApp's ultimate goal – a separate trial of Sun's claims months after NetApp's claims are tried – is reflected by NetApp's unwillingness to adopt its own two-stage schedule if it is Sun, rather than NetApp, whose claims take precedence.

Under normal operation of the Court's Patent Local Rules, service of the parties' preliminary infringement contentions and related document productions are due by February 11, 2008. Sun will serve its contentions and document production by that date. Compliance with the local rules should not result in penalizing Sun in terms of when its claims proceed to claim construction, summary judgment and trial. Nor does NetApp's unilateral choice to serve its contentions less than three weeks early justify the bifurcated pretrial and trial schedule proposed by NetApp.

Sun's infringement contentions will plainly show NetApp infringes each of the Sun Patents. NetApp's assertion that its claims should proceed first because its infringement contentions allegedly will be more robust, or are more "mature" or "advanced," than Sun's

contentions is simply empty rhetoric.  Indeed, while NetApp suggests its infringement contentions were fully developed before it filed its complaint, it is only now, almost five months after filing its complaint, that its contentions finally are being revealed.  In short, the parties' respective preliminary infringement contentions do not justify the bifurcation sought by NetApp.

Nor is there any basis, as NetApp suggests, for bifurcating the schedule on the ground that the NetApp Patents concern the "core" technology in this case, or that NetApp's claims somehow are more "urgent" than Sun's claims.  The critically important technologies patented by Sun – which NetApp infringes across the board – certainly are not less pivotal than the technology claimed by NetApp's invalid patents, and the harm suffered by Sun due to NetApp's infringement is substantial.  Moreover, in terms of urgency, NetApp ignores the parties discussion of NetApp's infringement of the Sun Patents long before NetApp first cited any of its patents, and that NetApp waited almost two years after Sun released its ZFS software before it filed suit against Sun, and did so only after Sun demonstrated NetApp infringed the Sun Patents.

Moreover, NetApp's proposed schedule ignores the practical reality of patent infringement cases; namely, some of the parties' patent claims may be dropped, stayed or dismissed as this case progresses.  For example, as discussed above, Sun has submitted petitions for reexamination to the USPTO concerning three NetApp Patents, and other petitions likely will follow.  If those petitions are granted, Sun will request an order from the Court staying the action as it relates to the NetApp Patents in reexamination.  Other patents may be dismissed by the Court by summary judgment, while others may be voluntarily dismissed by the parties in light of prior art cited in the parties' invalidity contentions or in light of the Court's Markman rulings.  The parties also may choose, prior to trial, to focus their trial presentations on selected claims of selected patents.  The cumulative result is a trial far more narrow in scope than that described by NetApp.

Additionally, NetApp's proposed schedule will preclude the jury from deciding the merits of the dispute in light of all relevant facts.  Over the span of several years, the parties engaged in lengthy and significant negotiations regarding the licensing of some of the Sun Patents. Rather

than continue the negotiations, NetApp filed a patent infringement and declaratory judgment action in Texas. This history, and NetApp's across-the-board infringement of Sun Patents, is important for a jury to understand. For example, while NetApp argues Sun's release of ZFS is harming the sale of NetApp products, NetApp should be precluded from recovering any alleged damages from Sun for such lost sales if, as Sun will prove, the NetApp products infringe multiple Sun patents and should not be on sale. NetApp's proposed bifurcation would preclude the jury from considering such facts and arguments, which would be both unjust and prejudicial.

Furthermore, NetApp's proposed schedule would be more costly, more complicated and less efficient than allowing the case to proceed on a normal single track. Under NetApp's proposal, the parties and the Court would be forced to engage in two separate Markman hearings, two separate summary judgment phases, two separate expert report and discovery phases, and two trials – all involving some commonality in terms of the technology at issue and the relevant facts, witnesses and documentary evidence. Engaging in multiple, repetitive processes is, in the long term, less efficient and more costly than engaging in each step once. Indeed, because a second case between the parties is also presently before this Court (<u>Sun Microsystems, Inc. v. Network Appliance, Inc.</u>, C-07-5488 EDL), if NetApp's proposed process is followed in both cases, there will be *four* separate tracks of overlapping Markman hearings, summary judgment hearings, and trials (and four of everything else), thereby complicating and unduly delaying both cases.

Sun also notes that most of the deadlines to be met in this case are not ones requiring the Court's involvement. The parties' preparation and service of infringement and invalidity contentions and expert reports, their preparation of claim construction and summary judgment briefs, and the discovery process can proceed at the same time on all patents and Sun and its counsel are prepared to do so. As evidenced by the inclusion of declaratory relief claims on some of the Sun Patents in NetApp's complaint, NetApp well knew when it chose to file litigation that both Sun and NetApp patents would be litigated. NetApp is represented by able counsel at a large law firm, which also is capable of proceeding concurrently on all claims. Undoubtedly, the parties will have significant work, but the burden on counsel – particularly counsel who instigated

this lawsuit – should not factor into unfairly bifurcating this case.

Sun proposes a less complicated, more equitable and common sense approach to the schedule. Specifically, Sun proposes that both the NetApp Patents and the Sun Patents follow the same track through at least the Markman ruling. Given that all of the events leading up to Markman do not directly involve the Court, the Court will not be burdened by this single track. Also, prior to the Markman hearing, motions for stays based upon the reexamination proceedings should have been filed, heard and decided, and the parties may have elected to dismiss some of their patents in light of the invalidity contentions. The Markman hearing itself could be held on consecutive days or, if the Court would prefer, on separate days over a period of time. The scope of the Markman hearing could be limited by imposing restrictions on the number of terms to be construed (either overall or per patent), and by imposing page limitations on the parties' written submissions and time limits on the parties' presentations at the hearing.

Once the Markman ruling is issued, the parties will be in a much better position than now to know how the case is likely to proceed in terms of summary judgment and trial. Sun therefore proposes that the Court schedule a further Case Management Conference after the issuance of the Markman ruling, at which time the parties and the Court can address the schedule for the balance of the case. However, if the Court is inclined to set all dates for this case at the initial Case Management Conference, Sun respectfully requests the dates as set forth below, which track the Patent Local Rules.

The parties' proposed schedules are as follows:

| Event | Deadlines proposed by NetApp | | Deadlines proposed by Sun |
|---|---|---|---|
| | NetApp Patents | Sun Patents | |
| Patent L.R. 3-1 asserted claims and preliminary infringement contentions | Jan. 22, 2008 | Feb. 11, 2008[2] | Feb. 11, 2008 |

[2] NetApp is prepared to disclose its preliminary invalidity contentions relating to the '185 patent pursuant to Patent L.R. 3-5(a) by the same date.

| | | | |
|---|---|---|---|
| and Rule 3-2 document production | | | |
| Patent L.R. 3-3 preliminary invalidity contentions and 3-4 document production | Mar. 6, 2008 | Mar. 27, 2008 | Mar. 27, 2008 |
| Patent L.R. 4-1 exchange of proposed terms and claims elements for construction | Mar. 20, 2008 | Apr. 11, 2008 | Apr. 10, 2008 |
| Patent L.R. 4-2 exchange of preliminary claim constructions and extrinsic evidence | Apr. 9, 2009 | Apr. 30, 2008 | Apr. 30, 2008 |
| Parties to file Patent L.R. 4-3 joint claim construction statement | May 5, 2008 | May 28, 2008 | May 26, 2008 |
| Completion of claim construction discovery pursuant to Patent L.R. 4-4 | June 4, 2008 | June 25, 2008 | June 25, 2008 |
| File and serve claim construction briefs pursuant to Patent L.R. 4-5(a) | June 19, 2008 | August 11, 2008 | July 10, 2008 |
| File and serve opposition briefs pursuant to Patent L.R. 4-5(b) | July 3, 2008 | August 25, 2008 | July 24, 2008 |
| File and serve reply claim construction brief pursuant to Patent L.R. 4-5(c) | July 14, 2008 | Sept. 5, 2008 | Aug. 4, 2008 |
| Tutorial | July 28, 2008 | Sept. 17, 2008 | Aug. 16, 2008 |
| Patent L.R. 4-6 claim construction hearing | July 31, 2008 | Oct. 1, 2008 | Aug. 18, 2008 |

| | | | |
|---|---|---|---|
| End of fact discovery[3] | Sept. 22, 2008 | Jan. 9, 2009 | Oct. 13, 2008 |
| Opening expert reports | Oct. 8, 2008 | Jan. 16, 2009 | Oct. 27, 2008 |
| Rebuttal expert reports | Oct. 20, 2008 | Jan. 30, 2009 | Nov. 10, 2008 |
| End of expert discovery | Nov. 10, 2008 | Feb. 20, 2009 | Dec. 1, 2008 |
| Last day to file and serve dispositive motions | Nov. 24, 2008 | Apr. 27, 2009 | Dec. 15, 2008 |
| Last day to file and serve oppositions to dispositive motions | Dec. 8, 2008 | May 11, 2009 | Dec. 30, 2008 |
| Last day to file and serve replies in support of dispositive motions | Dec. 15, 2008 | May 18, 2009 | Jan. 6, 2009 |
| Hearing re: dispositive motions | Dec. 22, 2008 | June 1, 2009 | Jan. 13, 2009 |
| *In limine* motions filed and served | Mar. 6, 2009 | July 8, 2009 | Mar. 16, 2009 |
| Oppositions to *in limine* motions filed and served | Mar. 9, 2009 | July 13, 2009 | Mar. 20, 2009 |
| Final pre-trial conference | Mar. 16, 2009 | July 20, 2009 | Mar. 30, 2009 |
| Trial | Mar. 23, 2009 | July 27, 2009 | Apr. 6, 2009 |

## TRIAL SCHEDULE

**12.    The parties request a trial date as follows:**

Both parties have demanded trial by jury on all issues for which trial by jury is allowed. As indicated in the proposed schedule above, NetApp proposes phasing this case such that issues concerning the NetApp Patents shall be tried March 23, 2009, while issues concerning the Sun Patents and the '185 patent shall be tried July 27, 2009.  For the reasons set forth above, Sun proposes that the trial date be set at a Further Case Management Conference following the

---

[3]  Based on the timing of the Court's *Markman* decisions in prior cases, the parties anticipate that this date will approximately coincide with the Court's *Markman* ruling.  Upon issuance of the *Markman* ruling, the parties shall meet and confer to discuss the extent to which additional fact discovery is required, if at all.

Court's Markman ruling. However, if the Court prefers to set a trial date at the present time, Sun proposes that the NetApp Patents and the Sun Patents be tried April 6, 2009.

**13.    The parties expect that the trial will last for the following number of days:**

NetApp proposes a 10-day trial with respect to its patents and a 15-day trial with respect to Sun's patents.

Sun believes a determination of the number of days required for the trial would best be made at a Further Case Management Conference following the Court's Markman ruling. However, if the Court prefers to set the expected number of days for the trial at this time, Sun anticipates the trial will last twenty (20) days. A trial of this length will force the parties to focus on the most important claims and defenses and to be efficient in their presentations

## ADDITIONAL ISSUES

**1.    Amendment to  add the '720 patent.**

<u>NetApp's Argument</u>:  NetApp proposes to amend its Complaint to assert that Sun infringes U.S. Patent No. 7,313,720, which was unavailable to be included in the original September 2007 complaint because the Patent Office, *sua sponte*, withdrew the patent from issuance to perform a routine quality assurance check. *See* 37 C.F.R. 1.313(a) ("Applications may be withdrawn from issue for further action at the initiative of the Office . . . ."); M.P.E.P. § 1303.08 ("The Office of Patent Quality Assurance administers a program for reviewing the quality of the examination of patent applications."). Although the Patent Office allowed the application in June 2007 after the second review, it delayed issuing the patent until December 25, 2007, just a few months after NetApp filed its complaint.

The '720 patent should now be included in the original *NetApp v. Sun* action. It pertains to subject matter that fits most closely with the other patents in that action. Indeed, of the seven patents NetApp originally asserted, five pertain to key data structures used to organize data in a

file system and/or how those data structures are manipulated to perform the basic functions of a file system.[4]  Typically, a file system organizes data in a hierarchical structure of data containers, such as directories and files.  Importantly, the file system can also include "snapshots."  Here, the term "snapshot" refers to a read-only copy or image of all the data in a file system at a given instant when the "snapshot" is created.  Disclosing a storage arrangement that increases the number of "snapshots" in the file system, the '720 patent – like five of the seven patents NetApp asserted in its original complaint – pertains to core file system data structures.  Moreover, of the 19 patents that Sun asserts in this dispute, only two are arguably directed to file system data structures (*i.e.*, the '667 and '639 patents), and Sun chose to include them in the original *NetApp v. Sun* action alongside NetApp's file system data structure patents.  Sun's choice demonstrates that it too recognizes that the initial *NetApp v. Sun* matter is the most natural place to litigate patents pertaining to file system data structures.

By contrast, the secondary *Sun v. NetApp* action (No. 07-CV-5488 EDL) involves subject matter unrelated to file system data structures.  In that action, NetApp asserted patents pertaining to (1) methods for transferring data between dissimilar file systems (*i.e.*, the '591 and '873 patents) and (2) systems that use the same underlying data storage technology to support multi-protocol data access (*i.e.*, the '417 and '385 patents).  As noted above, Sun also declined to assert patents pertaining to file system data structures in the secondary *Sun v. NetApp* action.  Thus, in the secondary action, there are currently no patents directed to the core underlying data structures in file systems.  It makes little sense to now inject that suit with a new patent pertaining to such subject matter when it can more efficiently be handled alongside patents of the same ilk in the primary *NetApp v. Sun* action.

---

[4]    In general, the term "file system" refers to a method and/or tool for logically organizing information that is stored in a data storage system, typically a hard disk drive or a collection of hard disk drives.

1    Furthermore, Sun will not be prejudiced in any way should the '720 patent be added to

2  this case now.  To help Sun quickly familiarize itself with the issues to be litigated, NetApp

3  provided Sun with a copy of the '720 patent and its infringement contentions, in a form

4  equivalent to a patent local rule disclosure, the day after the patent issued.  NetApp hand-

5  delivered a copy of the file history to Sun's counsel the next day.  Moreover, by the time the '720

6  patent issued, Sun had a head start on gathering prior art – as discussed above, five of the seven

7  patents NetApp asserted in its Complaint, like the '720 patent, concern the data structures used in

8  file systems.  Unambiguously demonstrating its familiarity with prior art related to this subject,

9  Sun has already filed requests for re-examination of three of these patents.  It is thus clear that

10 Sun is ready and able to litigate the '720 patent in this action.

12

13    <u>Sun's Argument:</u>  Sun opposes the requested amendment and this issue should be

14 addressed through a formal motion to amend pursuant to Federal Rule of Civil Procedure 15.

15 However, if the Court prefers to decide this issue at this time, NetApp's request to add the '720

16 patent to this case should be denied.  Sun does not oppose NetApp amending its counterclaims to

17 add this patent in the second case between the parties, *Sun v. NetApp*, Civil Action No. 07-5488

18 (the "5488" case).

19    NetApp's request, if granted, would unfairly prejudice Sun, which has known about this

20 patent for less than a month.  Under this Court's Patent Local Rules (and under the Patent Local

21 Rules in the E.D. of Texas, from which this case was transferred), a defendant is aware of the

22 asserted patents alleged in the pleadings many months before its invalidity contentions are due.  If

23 the '720 patent is added to this case, Sun would be unfairly deprived of several months of time to

24 analyze the validity of the '720 patent before its invalidity contentions are due.  On the other

25 hand, adding the '720 patent to the 5488 case, in which NetApp only recently filed its

26 counterclaims, would provide Sun an appropriate amount of time and would result in no prejudice

27 to NetApp.

28

NetApp also is incorrect in contending that the '720 patent is a better "fit" with this case than the 5488 case. NetApp is asserting patents relating to file system architecture in both cases, and is accusing Sun's ZFS product in both cases. For example, NetApp is asserting the '352 patent against ZFS in this case, and is asserting two related patents against ZFS in the 5488 case (the '591 and '873 patents), and all three cover the same ground - incremental data backups. Also NetApp is incorrect that Sun is not asserting any file system data structure patents in the 5488 case. For example, Sun is asserting the '987 patent in the 5488 case. Thus, it is incorrect that the '720 patent is a better fit in this first case than in the 5488 case.

Finally, NetApp's request to add another patent in this case is remarkable in light of its concurrent contention that there already are so many patents in this case that bifurcation is required. In this regard, the 5488 case involves fewer patents than this case, and therefore has more "room" for the '720 patent.

**2.**    **Motions to Stay**: As discussed above, although this does not require the Court's immediate attention, Sun anticipates filing a motion to stay the case as it relates to some of the NetApp Patents if Sun's requests for reexamination are granted. NetApp would strongly oppose any stay based on the present reexamination requests, which the USPTO has refused even to consider thus far.

**3.**    **Coordination With C-07-5488 (EDL):**    Pursuant to the Court's December 11, 2007 Order Granting Plaintiff's Motion for Administrative Relief Requesting a Prompt Case Management Conference and Setting Case Management Conference, the Court requested that the parties be "prepared to discuss how the other case involving these parties, Sun Microsystems v. Network Appliance, C-07-5488 EDL, should be coordinated with this case to the extent that they may overlap." During the parties meet-and-confer conference, the parties agreed that (a) the cases should not be consolidated and (b) document productions and deposition transcripts in the two cases would be subject to a cross-use agreement.

When the 5488 case was filed, the case was scheduled for a Case Management Conference on March 24, 2008. Sun respectfully requests the Court set the 5488 case for a Case

Management Conference on or near that date. Doing so will keep that case on track.

**4.** **Lead Trial Counsel:** Sun notes that NetApp's pleadings indicate that Matthew D. Powers of Weil, Gotshal & Manges is lead trial counsel. Pursuant to Local Rule 16-3, "the conferring and planning that is mandated by FRCivP 26(f) and by ADR Local Rule 3-5 must be done by lead trial counsel for each party." However, Mr. Powers did not participate in the Rule 26(f) conference. NetApp responds that Mr. Powers and Edward Reines are both lead counsel and that it would be happy to discuss this with the Court at the CMC if there are any concerns.

5. **Patent Local Rule 2-1(a):** With respect to the topics listed in Patent L.R. 2-1(a), the parties do not at this time believe that there is a need for any specific limits on discovery related to claim construction. The parties believe that it is premature to address whether live testimony should be heard at the claim construction hearing, the order of presentation, or the scheduling of a claim construction pre-hearing conference at this time. The parties will discuss these issues with each other as discovery proceeds and will make a joint proposal to the Court concerning the logistics for the *Markman* hearing.

**SIGNATURE AND CERTIFICATION BY PARTIES AND LEAD TRIAL COUNSEL**

Pursuant to Civil L.R. 16-12, each of the undersigned certifies that he or she has read the brochure entitled "Dispute Resolution Procedures in the Northern District of California," discussed the available dispute resolution options provided by the court and private entities and has considered whether this case might benefit from any of the available dispute resolution options.

1

2   Dated: January 22, 2008

3                                          Network Appliance, Inc.

4

5

6   Dated:  January 22, 2008

7                                          Matthew D. Powers
                                           Edward R. Reines
8                                          Jeffrey G. Homrig
                                           Jill J. Ho
9                                          WEIL, GOTSHAL & MANGES LLP
                                           201 Redwood Shores Parkway
10                                         Redwood Shores, CA 94065
                                           Telephone: (650) 802-3000
11                                         Facsimile: (650) 802-3100

12                                         Elizabeth Weiswasser (admitted pro hac vice)
                                           WEIL, GOTSHAL & MANGES LLP
13                                         767 Fifth Avenue
                                           New York, NY 10153
14                                         Telephone: (212) 310-8000
                                           Facsimile: (212) 310-8007
15
                                           Attorneys for Plaintiff-Counterclaim Defendant
16                                         Network Appliance, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

1    Dated: January 22, 2008

2                                              Sun Microsystems, Inc.

3

4

5    Dated:  January 22, 2008

6                                              Mark D. Fowler
                                               David Alberti
7                                              Christine K. Corbett
                                               Yakov M. Zolotorev
8                                              Carrie L. Williamson
                                               DLA PIPER US LLP
9                                              2000 University Avenue
                                               East Palo Alto, CA 94303-2215
10                                             Telephone: (650) 833-2000
                                               Facsimile: (650) 833-2001
11                                             Attorneys for Defendant and Counterclaimant
                                               SUN MICROSYSTEMS, INC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CASE MANAGEMENT ORDER**

2    The Case Management Statement and Proposed Order is hereby adopted by the Court as

3 the Case Management Order for the case and the parties are ordered to comply with this Order.

4    In addition the Court orders:

5 _____

6 _____

7 _____

8 _____

9

10    Plaintiff is ordered to serve a copy of this order on any party subsequently joined in this

11 action.

12

13    Dated: _____    _____

ELIZABETH D. LAPORTE
United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28