*(650) 802-3022*
edward.reines@weil.com

February 1, 2008

The Honorable Elizabeth D. Laporte
450 Golden Gate Avenue
Courtroom E, 15th Floor
San Francisco, CA  94102

                Re:     *Network Appliance, Inc. v. Sun Microsystems, Inc.*
                        Case No. C-07-06053 EDL

Dear Judge Laporte:

        Pursuant to the Court's request, counsel for the parties in the above-captioned matter write jointly to follow up on several matters that were discussed during the January 28 Case Management Conference.

        Alternative Dispute Resolution:  The parties respectfully request that the case be referred to Judge Spero for matters related to settlement.

        Amendment to add the '720 patent:  NetApp requests that the Court give leave for NetApp to amend its pleadings to include the '720 patent in this case and move the '001 patent from this case to *Sun Microsystems, Inc. v. Network Appliance, Inc.*, C-07-5488 (the "5488 Case") and that it also extend the deadline for Sun to serve its invalidity contentions concerning the '720 patent to April 3, 2008.  Sun opposes this request.  The parties' statements are set forth below.

        *NetApp's statement*:

        NetApp's proposal would include the '720 patent without increasing the number of patents in the case and without prejudicing Sun in any cognizable way.  It sets the deadline for Sun to serve its '720 patent invalidity contentions on April 3, <u>four weeks</u>

Hon. Elizabeth D. Laporte
February 1, 2008
Page 2

after Sun's other invalidity contentions are due and a full <u>three</u> <u>months</u> after it received NetApp's infringement contentions.  Sun's argument that it should have additional time to study the '720 patent simply does not track the schedule set by the local rules.  By timing invalidity contentions 45 days after service of infringement contentions, the rules allow a plaintiff to advance the schedule for invalidity contentions by serving its infringement contentions early.  Indeed, were a plaintiff to serve its contentions along with the complaint, a defendant would have to serve its contentions a mere 45 days from the time it first became aware of the case.  Here, Sun will have more than three months to study the '720 patent with the benefit of NetApp's infringement contentions.  In fact, because its invalidity contentions for the other patents are due four weeks earlier, Sun will have a four-week period during which it can devote its entire invalidity effort solely to the '720 patent.  Thus, Sun's invocation of "prejudice" rings hollow.

Sun's true motivation for opposing this request is not prejudice.  Indeed, during the meet and confer process following the CMC, Sun's counsel stated that Sun would not agree to include the '720 patent in this case under <u>any</u> schedule.  Instead, Sun wants "any reexam petition we file as to that ['720] patent to be filed before the CMC in the second case."  Thus, although it is unclear why Sun's reexamination requests should be connected to, of all things, a particular CMC date, Sun appears to oppose this request to gain some tactical benefit.  That is no reason to keep the '720 patent out of this case.

As discussed in the Joint Case Management Statement, the '720 patent is directed at fundamental file system structure and is therefore more like the patents asserted in this action.  Moreover, had the Patent Office not performed a routine quality check before issuance, the '720 patent would have been available to be asserted in this case.  Sun cannot demonstrate meaningful prejudice, and NetApp's early infringement contentions and proposal to shift the '001 patent to Sun's co-pending case alleviates any concern that including the '720 patent will create administrative burdens.  For these reasons, NetApp respectfully requests that the Court grant leave for NetApp to amend its complaint to assert the '720 patent in this case.

<u>Sun's statement</u>:

Sun opposes NetApp's informal request to replace the currently asserted '001 patent with the '720 patent in the 6053 case and move the '001 patent to the 5488 case.  As Sun states in the Joint Case Management Conference Statement (the "Statement"), Sun is not opposed to adding the '720 patent to the later filed 5488 case, which involves far fewer patents than the 6053 case and which is at an earlier stage than the 6053 case.

Hon. Elizabeth D. Laporte
February 1, 2008
Page 3

Although NetApp's proposed patent "swap" will not increase the number of patents in the 6053 case, it would, nonetheless, be highly prejudicial to Sun in terms of preparing its defenses to the '720 patent. As set forth in the Statement, and as discussed at the CMC, if the '720 patent is added to the 6053 case, Sun would be unfairly deprived of several months of additional time to analyze the validity of the '720 patent before its invalidity contentions are due. Additionally, adding the '720 patent to the 6053 case would inject a new set of inventors to an already complicated case (there is only one common inventor between the '720 and '001 patents ). Moreover, the addition of the '720 patent in the 6053 case would create a third track for the exchange of infringement and invalidity contentions since NetApp has not yet served its "official" preliminary infringement contentions regarding the '720 patent. Indeed, while NetApp makes much ado about its alleged service of its infringement contentions relating to the '720 patent, it is important to note NetApp expressly stated the claim chart it previously provided to Sun did *not* constitute the infringement contentions required under the Patent Local Rules; NetApp still has not served the required infringement contentions for the '720 patent under the Patent Local Rules. Likewise, while NetApp speaks about the theoretical possibility a party could serve its infringement contentions months early, NetApp did not do that here, nor is Sun's counsel aware of that ever occurring in any case in this Court.

The extent of the potential prejudice to Sun is exemplified by Sun's response to NetApp's assertion of the '001 patent, which NetApp proposes to move to the 5488 case in favor of the '720 patent. Since NetApp's assertion of the '001 patent in September 2007, Sun promptly committed significant time and resources to analyze the patent, its prosecution history, and identify relevant prior art. As a result of that effort, Sun determined the '001 patent clearly is invalid and then spent significant time preparing and filing a petition for re-examination with the United States Patent and Trademark Office for the '001 patent. If the '001 patent were not in the 6053 case, Sun would have focused the efforts it devoted on the '001 patent to other issues in the 6053 case. Further, Sun should be permitted to devote the same level of effort to the '720 patent, early in a case before infringement and invalidity contentions are due, to evaluate the invalidity of the '720 patent and file a petition for reexam as to that patent as well, if appropriate. The only way this can be done is if the '720 patent is added to the later 5488 case rather than to the 6053 case.

Finally, as the Court recognized during the Case Management Conference, the '720 patent relates to technology at issue in both the 6053 case and the 5488 case. Indeed, NetApp is asserting patents relating to file system architecture and is accusing Sun's ZFS product in both cases. As such, the '720 patent does not "fit" better with the 6053 patents than it would with the 5488 patents.

Hon. Elizabeth D. Laporte
February 1, 2008
Page 4

Therefore, Sun does not object to the addition of the '720 patent to the 5488 case. Doing so will provide Sun with the appropriate amount of time to analyze the patent, prepare its defenses and invalidity contentions and to submit any appropriate petition for reexamination to the United States Patent and Trademark Office. While adding the '720 patent to the 6053 case would prejudice Sun, adding it to the 5488 case would not prejudice either party.

Protective Order – Source Code: The parties have reached agreement on the procedures for producing source code.

Protective Order – Prosecution Bar: The parties conferred but were unable to reach agreement concerning the prosecution bar. The parties' respective proposals are:

NetApp: Any natural person who reviews information designated as "ATTORNEYS' EYES ONLY" or "ATTORNEYS' EYES ONLY—SOURCE CODE" shall not participate in any way, direct or indirect, in the prosecution or support of the prosecution of any patent application or reissue proceeding, or reexamination of a patent (except where challenging, or representing a party challenging, a patent through reexamination) for a patent that is directed to technology described in subparagraphs a) and b), below, for a period beginning upon the person's first review of designated information and ending two years after (1) that person's last review of the designated information, or (2) the final termination of the litigation, whichever is later, unless the Producing Party agrees otherwise.

a) systems and software primarily directed to the storage and retrieval of data on mass storage arrays in response to requests received using NAS or SAN protocols; and

b) file system software for organizing data in a hierarchical structure and facilitating access to the data.

Sun: No person shall use any Protected Material, or information derived therefrom, for purposes other than the prosecution or defense of this action, including, without limitation, for purposes of preparing, filing or prosecuting any patent application, continuation or divisional patent application, reissue patent application or request for re-examination.

Hon. Elizabeth D. Laporte
February 1, 2008
Page 5

The parties' statements are set forth below:

*NetApp's statement*:

During the Case Management Conference, the Court expressed concern that a broadly-defined prosecution bar would preclude those who review Attorneys' Eyes Only information from working with virtually any company in Silicon Valley. To address this concern, and to facilitate compromise, NetApp proposes a prosecution bar that will curtail prosecution only in two specific, narrow fields that reflect the core technology implemented in source code and described in highly confidential documents that are likely to be produced in this case:

- computers and software primarily directed to the storage and retrieval of data on mass storage arrays in response to requests received using NAS or SAN protocols

- file system software for organizing data in a hierarchical structure (commonly known as "file systems") and facilitating access to the data

NetApp's compromise proposal specifies that individuals receiving confidential information would be prohibited from prosecuting patents only if the patents pertain to particular devices for carrying out particular functions in particular environments.

Rather than seek compromise, Sun now moves in the opposite direction, insisting on a prosecution bar even weaker than the one it proposed at the CMC.[1] By allowing those who analyze ultra-confidential technical documents and source code to prosecute patents in the same technical field, Sun's proposed "bar" disregards the very problem that a prosecution bar is designed to address: the possibility that individuals – despite their best intentions – will inadvertently use confidential information and/or trade secrets for an improper competitive purpose. Indeed, as courts have long recognized, Sun's proposed "bar" asks prosecutors to perform an impossible task:

Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the

---

[1] In addition to its proposed language above, Sun also expressed a willingness to agree to the language NetApp proposes above, but only if it were limited to prosecution of Sun's or NetApp's patents. This would also result in a prosecution bar narrower than the one Sun proposed in the Joint Case Management Statement and similarly fails to achieve the objective of preventing inadvertent misuse of any client's confidential information.

Hon. Elizabeth D. Laporte
February 1, 2008
Page 6

> patents would have to constantly challenge the origin of
> every idea, every spark of genius. This would be a
> sisyphean task, for as soon as one idea would be stamped
> "untainted", another would come to mind. The level of
> introspection that would be required is simply too much to
> expect, no matter how intelligent, dedicated, or ethical the
> DS&M attorneys may be.

*Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93-488-LON, 1994 U.S. Dist. LEXIS
20714, at *14-*15 (D. Del. Dec. 19, 1994); *see also U.S. Steel Corp. v. United States*, 730
F.2d 1465, 1468 (Fed. Cir. 1984) ("Inadvertence, like the thief-in-the-night, is no
respecter of its victims. Inadvertent or accidental disclosure may or may not be
predictable."); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, No. CV-S-97-1383-HDM
(LRL), 1998 U.S. Dist. LEXIS 22251, at *12 (D. Nev. Apr. 15 1998) ("No matter how
much good faith Mr. McCollom might exercise, it is unrealistic to expect that his
knowledge of Mikohn's secret technology would not or could not influence the nature of
his advice to Acres. This is so whether the advice relates to a pending application or a
future application.").

Sun attempts to distinguish this authority as involving prosecution bars that only
apply to the parties-in-suit.  But Sun never explains why an individual possessing
NetApp's confidential information is not equally likely to improperly use it on behalf of a
<u>third party</u> – or why inadvertent misuse on behalf of a third party would be less damaging
to NetApp.  Ignoring this issue, Sun points out that patent prosecutor David Alberti, who
<u>Sun</u> chose to involve in this case, has acquired deep knowledge in the relevant field by
regularly prosecuting patents in this area on behalf of third parties.   But far from
justifying its position, Sun's explanation reveals a concrete danger to NetApp's
confidential information: Mr. Alberti has prosecuted patents in the same technical field
on behalf of NetApp competitors, such as Agami Systems.

Under similar circumstances, the court in *Commissariat A L'Energie Atomique v.
Dell Computer Corp.*, No. 03-484-KAJ, 2004 U.S. Dist. LEXIS 12782, at (D. Del. May
25, 2004), also recognized the threat and deemed appropriate a prosecution bar that
applies to both third-parties and the parties-in-suit.  There, the Court noted that three of
plaintiff's lawyers, like Mr. Alberti, prosecuted patents on behalf of one of defendant's
competitors.  *Dell Computer*, 2004 U.S. Dist. LEXIS 12782 at *4.  Concluding that this
presented an unacceptable risk of improper, inadvertent use of plaintiff's information, the
Court held that "[i]f [Plaintiff] wants [three of its attorneys] to continue in their current
roles as litigation counsel, and to have access to the Defendants' highly confidential
information, then either these three individuals, who also prosecute patents in the field of

Hon. Elizabeth D. Laporte
February 1, 2008
Page 7

LCD technology, must be barred from having access to the Defendants' highly confidential information, or they must be prohibited from prosecuting patents in the field of LCD technology for one year following the conclusion of this litigation, including all appeals." *Id.* at *11 (emphasis added).

Unlike the broad prosecution bar deemed appropriate in *Dell Computer*, NetApp asks only for a prosecution bar that applies to two highly-specific technologies. NetApp's proposed language guards against inadvertent misuse of highly confidential information, but, by defining the barred technical fields narrowly, addresses Sun's concerns by avoiding restrictions on the future work of individuals connected to Sun's litigation team. It therefore strikes the right balance between the competing interests that the Court raised during the CMC. Accordingly, NetApp respectfully asks the Court to adopt its proposed language for the prosecution bar.

*Sun's statement*:

NetApp's proposed language for the prosecution bar provision would essentially preclude DLA Piper attorneys and experts specifically hired by Sun to assist in this case from doing any prosecution work in the very broad fields of file systems and storage technology. In other words, NetApp's proposed language would force attorneys and experts to abandon prosecution of pending patent applications and to forego the innovation of new technology in these broad fields for a significant amount of time. Alternatively, under NetApp's proposal, if an attorney or expert wanted to continue prosecution work in the broad field identified by NetApp, such attorney or expert would no longer be able to assist Sun in this case. Given that both the DLA Piper attorneys and experts hired by Sun are heavily invested in this case, such a proposal is highly prejudicial.

Specifically, one of the key attorneys on this case at DLA Piper – David Alberti – performs both litigation and patent prosecution work in the broad technology fields identified by NetApp. NetApp's proposed language would force Mr. Alberti to either stop working on this case or stop representing his clients in any prosecution matters related to these very broad technology fields - including matters that existed before the outset of this litigation. Either option is unfeasible. Mr. Alberti, who was present at the Case Management Conference, was specifically chosen by Sun to work on this matter because of his deep understanding of the technology at issue. No other attorney at DLA Piper has this deep understanding of the technology at issue and, therefore Mr. Alberti's services are not replaceable. Mr. Alberti is now *heavily* invested in this case and has performed significant work in the analysis of the patents-at-issue as well as the defenses and counterclaims at issue. As such, Sun would be highly prejudiced should Mr. Alberti

Hon. Elizabeth D. Laporte
February 1, 2008
Page 8

be forced to remove himself from the case. The other alternative, requiring Mr. Alberti to cease representing clients who are innovating technology in the broad fields identified by NetApp, is also highly prejudicial, unfair, and contrary to public policy against restricting the right of an attorney to practice law. In this regard, agreements restricting the right of an attorney to practice law are expressly prohibited by the California Rules of Professional Conduct. See Rule 1-500.

Furthermore, far from being the norm, NetApp's current position frequently is rejected by the courts. *See, e.g.*, *AFP Advanced Food Prods LLC v. Snyder's of Hanover Mfg., Inc.*, 2006 WL 47374 (E.D. Pa. 2006) (barring attorneys "from prosecuting similar patents for two years following this suit, without some tangible reason or good cause other than the general threat of inadvertent misuse of discovered materials, is the exact type of overly broad and generalized fear rejected" in other cases); *Avocent Redmond Corp. v. Rose Elec., Inc.*, 242 F.R.D. 574, 579 (W.D. Wash. 2007) (holding that a competitor's vague and generalized threat of future inadvertent misuse of discovered materials was not sufficient to show good cause for entry of provision in protective order precluding counsel that received AEO information from any involvement in patent prosecution involving patented technology at issue).

Indeed, NetApp's reliance on *Mikohn Gaming Corp.* and *Motorola*, *supra*, supports Sun's position that NetApp's proposed language is overly broad and restrictive. In *Motorola, Inc. v. Interdigital, Inc.*, *supra*, the Court specifically precluded the attorneys who received confidential information from prosecuting patents on behalf of the ***defendant***, not on behalf of every company in the world as NetApp's proposal would require. Similarly, in *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, *supra*, the law firm at issue served both as patent prosecution counsel and litigation counsel in a patent infringement dispute on behalf of the defendant. Relying on the fact that the legal and factual components of the firm's advice to the defendant were so intertwined as to be inseparable, the court denied the law firm access to the plaintiff's confidential information. Here, Sun's outside attorneys do not prosecute any patents on behalf of Sun and, therefore, the threat of inappropriate use is nonexistent.

NetApp's proposed language would also negatively affect the experts retained by Sun to assist in this matter. Specifically, Sun has retained impressive experts in the field of file storage systems who continue to innovate in this field and even have pending patent applications related to the broad technology identified by NetApp (which is why these individuals are considered "experts"). Under NetApp's proposal, Sun's experts would be forced to either abandon pending patent applications or abandon their work for Sun in this case. The former would prejudice the experts, while the latter would both

Hon. Elizabeth D. Laporte
February 1, 2008
Page 9

prejudice the experts and greatly prejudice Sun's ability to proceed with this case (particularly on the existing schedule).

Therefore, Sun proposes the following language for the prosecution bar provision in the Protective Order:

**No person shall use any Protected Material, or information derived therefrom, for purposes other than the prosecution or defense of this action, including, without limitation, for purposes of preparing, filing or prosecuting any patent application, continuation or divisional patent application, reissue patent application or request for re-examination.**

Both attorneys and experts have an ethical, moral and legal obligation to abide by the terms of the protective order. There is no reason to believe that Mr. Alberti or any expert will use any information derived from this lawsuit inappropriately. Sun's proposal would protect NetApp's and Sun's highly confidential information from being used for any purpose other than this litigation. Mr. Alberti is prepared to appear before Your Honor to address any issues or questions Your Honor may have.

Alternatively, in an effort to compromise, Sun has always been willing to accept NetApp's proposed language so long as it was limited to the parties-in-suit. This approach is consistent with the approach taken by the courts in the two cases cited by NetApp. Therefore, if the Court is inclined to utilize language similar to that proposed by NetApp, Sun respectfully requests that the bar be limited to patents being prosecuted by or on behalf of Sun or NetApp as follows:

> Any natural person who reviews information designated as "ATTORNEYS' EYES ONLY" or "ATTORNEYS' EYES ONLY—SOURCE CODE" shall not participate in any way, direct or indirect, in the prosecution or support of the prosecution of any patent application or reissue proceeding, or reexamination of a patent (except where challenging, or representing a party challenging, a patent through reexamination) on behalf of Sun Microsystems, Inc. or Network Appliance, Inc. for a patent that is directed to technology described in subparagraphs a) and b), below, for a period beginning upon the person's first review of designated information and ending two years after (1) that person's last review of the designated information, or (2) the final termination of the litigation, whichever is later, unless the Producing Party agrees otherwise.

Hon. Elizabeth D. Laporte
February 1, 2008
Page 10

   a)  systems and software primarily directed to the storage and retrieval of data on mass storage arrays in response to requests received using NAS or SAN protocols; and

   b) file system software for organizing data in a hierarchical structure and facilitating access to the data.

Such a proposal would not cause any prejudice to Sun, its attorneys or experts in this case.

   New Patent Local Rules:  The parties have considered the possibility of applying the new patent rules to this case.  After discussion, the parties agree that the wholesale adoption of those rules to this case is impractical at this point.  The parties will continue to discuss whether aspects of the new patent rules should apply.  As we get deeper into the claim construction process, we will gain more visibility so we can make better judgments on this question.  We are targeting April 10 and plan to provide a further report to the Court at that time.

   Respectfully,

   _____
   Edward R. Reines
   Weil, Gotshal & Manges LLP
   Attorney for Plaintiff



   _____
   Mark Fowler
   DLA Piper US LLP
   Attorney for Defendant