1  MARK D. FOWLER (Bar No. 124235)
   mark.fowler@dlapiper.com
2  DAVID ALBERTI (Bar. No. 220625)
   david.alberti@dlapiper.com
3  CHRISTINE K. CORBETT (Bar No. 209128)
   christine.corbett@dlapiper.com
4  YAKOV M. ZOLOTOREV (Bar No. 224260)
   yakov.zolotorev@dlapiper.com
5  CARRIE L. WILLIAMSON (Bar No. 230873)
   carrie.williamson@dlapiper.com
6
7  DLA PIPER US LLP
   2000 University Avenue
   East Palo Alto, CA 94303-2215
8  Tel: 650.833.2000
   Fax: 650.833.2001
9
10 Attorneys for Defendant and Counterclaimant
   Sun Microsystems, Inc.

11
12                    UNITED STATES DISTRICT COURT
13                   NORTHERN DISTRICT OF CALIFORNIA
14                        SAN FRANCISCO DIVISION

15 | NETWORK APPLIANCE, INC.,             | CASE NO. 3:07-CV-06053 EDL
16 |       Plaintiff – Counterclaim       | SUN MICROSYSTEMS, INC.'S NOTICE OF
   |       Defendant,                     | MOTION AND MOTION FOR PARTIAL
17 |                                      | STAY OF THE CASE PENDING
   | v.                                   | REEXAMINATION OF UNITED STATES
18 |                                      | PATENT NOS. 5,819,292, 6,857,001 AND
   | SUN MICROSYSTEMS, INC.,              | 6,892,211
19 |                                      |
   |       Defendant -                    | Date: TBD
20 |       Counterclaimant.               | Time: TBD
   |                                      | Courtroom: E, 15th Floor
21 |                                      | Hon. Elizabeth D. Laporte

22    Defendant Sun Microsystems, Inc. ("Sun") respectfully moves to stay this case, but only

23 with respect to the claims and defenses regarding Plaintiff's United States Patent Nos. 5,819,292

24 ("the '292 patent"), 6,857,001 ("the '001 patent") and 6,892,211 ("the '211 patent") (collectively,

25 the "Reexam Patents"), pending completion of the United States Patent and Trademark Office's

26 ("PTO") reexamination of these three patents.

27
28

DLA PIPER US LLP    EM\7229066.1    SUN'S MOTION FOR PARTIAL STAY RE '292, '001 AND '211 PATENTS / CASE NO. 3:07-CV-06053 EDL

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1
II. PROCEDURAL HISTORY ............................................................................................... 3
    A. This Case Is Still In Its Early Stages ..................................................................... 3
    B. The Reexamination Proceedings ........................................................................... 4
        1. The '001 Patent .......................................................................................... 4
        2. The '211 Patent .......................................................................................... 5
        3. The '292 Patent .......................................................................................... 6
III. ARGUMENT ..................................................................................................................... 6
    A. There Is A Liberal Policy Favoring Granting Stays Pending Reexamination ........ 6
    B. The Court Should Exercise Its Discretion To Stay This Litigation As To The Reexam Patents ............................................................................................. 7
        1. Discovery Is Still At An Early Stage And No Trial Date Is Set ................ 7
        2. Granting A Stay Will Simplify The Issues In Question And The Trial Of The Case .................................................................................... 8
        3. A Stay Will Not Unduly Prejudice NetApp Or Present A Clear Tactical Disadvantage To NetApp ........................................................... 10
IV. CONCLUSION ................................................................................................................ 11

## TABLE OF AUTHORITIES

Page

*ASCII Corp. v. STD Entm't USA,*
   844 F.Supp. 1378 (N.D. Cal. 1994) .................................................................... 7, 8

*Bloom Eng'g Co. v. N. Am. Mfg. Co.,*
   129 F.3d 1247 (Fed. Cir. 1997) ............................................................................ 10

*C.R. Bard, Inc. v. U.S. Surgical Corp.,*
   388 F.3d 858 (Fed. Cir. 2004) ................................................................................ 9

*Direct Imaging Sys., Inc. v. U.S. Graphic Arts, Inc.,*
   2007 WL 778633 (M.D. Fla. 2007) ........................................................................ 9

*Ethicon, Inc. v. Quigg,*
   849 F.2d 1422 (Fed. Cir. 1988) .............................................................................. 7

*Gould v. Control Laser Corp.,*
   705 F.2d 1340 (Fed. Cir. 1983) .......................................................................... 7, 9

*Ho Keung Tse v. Apple Inc.,*
   2007 WL 2904279 (N.D. Cal. 2007) ..................................................... 7, 8, 10, 11

*In re Cygnus Telecomms. Tech., LLC, Patent Litig.,*
   385 F. Supp. 2d 1022 (N.D. Cal. 2005) ................................................................. 7

*KLA-Tencor Corp. v. Nanometrics, Inc.,*
   2006 WL 708661 (N.D. Cal. 2006) ....................................................................... 7

*Landis v. N. Am. Co.,*
   299 U.S. 248 (1936) .............................................................................................. 6

*Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.,*
   2007 WL 627920 (N.D. Cal. 2007) ............................................................. 7, 8, 10

*Photoflex Prods., Inc. v. Circa 3 LLC,*
   2006 WL 1440363 (N.D. Cal. 2006) ................................................................... 10

*Procter & Gamble Co. v. Kraft Foods Global, Inc.,*
   Case No. C-07-4413 (N.D. Cal. 2007) .................................................................. 7

*Sorensen v. Digital Networks N. Am., Inc.,*
   2008 WL 152179 (N.D. Cal. 2008) ....................................................................... 7

*Target Therapeutics, Inc. v. SciMed Life Sys, Inc.*
   33 U.S.P.Q.2d 2022 (N.D. Cal. 1995) ................................................................. 10

*In re Translogic Tech., Inc.,*
   504 F.3d 1249 (Fed. Cir. 2007) ............................................................................ 11

*Zilog, Inc. v. Quicklogic Corp.,*
   2004 WL 2452850 (N.D. Cal. 2004) ..................................................................... 8

# TABLE OF AUTHORITIES
## (Continued)

**STATUTES**

35 U.S.C. § 102 .................................................................................................................... 2, 5

## NOTICE OF MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**NOTICE IS HEREBY GIVEN** that on May 6, 2008 at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-titled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Sun Microsystems, Inc. will and hereby does move the Court for an order staying the case with respect to United States Patent Nos. 5,819,292, 6,857,001 and 6,892,211, pending completion of the PTO's reexamination of these three patents.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Christine Corbett filed herewith, the pleadings and papers on file herein and any evidence and argument presented to the Court at the time of the hearing.

## STATEMENT OF RELIEF

Sun seeks an order from the Court staying this case with respect to United States Patent Nos. 5,819,292, 6,857,001 and 6,892,211 pending completion of the PTO's reexamination of these three patents.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The PTO recently placed three of Network Appliance, Inc.'s ("NetApp") seven patents-in-suit into reexamination. None of the three Reexam Patents likely will survive reexamination. Indeed, the PTO already issued an Office Action rejecting all 63 claims of one Reexam Patent – finding that ten separate pieces of prior art *each* invalidate the patent.

Staying the litigation as to the three Reexam Patents will avoid the need for the Court to make rulings concerning invalid patents that are unlikely to survive reexamination, either in their current or in a modified form. Even if some of the individual claims were to survive reexamination, which is unlikely, it is highly probable the surviving claims would be substantially narrowed by the PTO during reexamination. Thus, any interim rulings by the Court on the current claims likely would be rendered moot.

The Court and the parties already have noted the practical need to streamline this patent-crowded case where appropriate. Staying this case as to the Reexam Patents is a logical place to

-1-

start. Doing so will assist in streamlining the case and will considerably reduce the amount of time, resources and money that otherwise would need to be spent by the Court and the parties. The following circumstances make a stay particularly appropriate for this particular case at this particular time.

First, Sun's stay request comes at an early stage of the case (and within days of the PTO's placing the Reexam Patents into reexamination). Specifically:

- No trial date has been set;
- No documents have been produced (other than those required to be produced pursuant to the patent local rules);
- No depositions have been scheduled or taken;
- No expert witnesses have been disclosed by NetApp;
- The parties exchanged their proposed lists of claim terms to be construed last week, but the parties have not yet met and conferred regarding those lists, and no claim construction discovery or briefing has occurred; and
- The *Markman* hearing is not scheduled for another four months.

Second, a stay will simplify the issues regarding three patents at issue. Specifically:

- The PTO granted *inter partes* reexamination as to all 63 claims of the '001 patent and issued a first office action rejecting all 63 claims of the '001 patent as anticipated under 35 U.S.C. § 102 based upon *each* of ten separate prior art references;
- The PTO granted *inter partes* reexamination as to all claims of the '211 patent based on thirteen prior art references;
- The PTO granted *ex parte* reexamination as to independent claims 1 and 4 of the '292 patent based on six prior art references; and
- Sun recently filed a second *ex parte* request for reexamination as to claims 4, 8, 11-15 and 20 of the '292 patent based upon additional references identified during this litigation – Sun expects reexamination will be

ordered on these claims as well and that these claims also will be rejected by the PTO.

Based on these facts – and the compelling statistics that nearly **ninety-one percent (91%)** of claims that undergo *inter partes* reexamination, and nearly **seventy-one percent (71%)** of claims that undergo *ex parte* reexamination, ultimately are rejected or modified – a stay as to the Reexam Patents undeniably would simplify the issues and avoid unnecessary rulings in this case. For example, it would be highly inefficient to brief and hear the *Markman* issues on the Reexam Patents, or to conduct a trial on those patents, as those claims likely will be either rejected or modified. Moreover, statements made by NetApp and the Examiner during the reexaminations would aid the Court in correctly interpreting the scope of any claims that do survive reexamination.

Further, a stay will not prejudice NetApp. Rather, litigating this action in parallel with the PTO's reexamination of the Reexam Patents will prejudice all the parties and the Court. The parties and the Court will be forced to spend significant time and resources litigating the claims of three patents that may be rejected or significantly narrowed during reexamination. Not only would such an exercise waste the time and money of the Court and the parties, but the Court would be required to spend significant time construing claim terms and ultimately resolving infringement and invalidity issues concerning claims that may no longer exist. Therefore, Sun respectfully requests that the Court grant Sun's request to stay this litigation, as to each of the Reexam Patents, until the PTO either issues a final office action in the reexamination (rejecting the claims), or issues a reexamination certificate (issuing modified claims or confirming the existing claims).

## II.    PROCEDURAL HISTORY

### A.    This Case Is Still In Its Early Stages.

NetApp filed this suit on September 5, 2007, in the Eastern District of Texas, accusing Sun of infringing seven patents, including the three Reexam Patents. On November 30, 2007, the case was transferred to the Northern District of California. The Court held the initial Case Management Conference on January 28, 2008. At the initial Case Management Conference, the

-3-

DLA PIPER US LLP    EM\7229066.1    SUN'S MOTION FOR PARTIAL STAY RE '292, '001 AND '211 PATENTS / CASE NO. 3:07-CV-06053 EDL

1  Court set the *Markman* hearing date for August 27, 2008, and October 13, 2008, as the close of
2  fact discovery. No further dates, including a trial date, were set by the Court.
3        The parties each have served their preliminary infringement and invalidity contentions
4  pursuant to the Patent Local Rules. The parties also each have served requests for production of
5  documents and interrogatories. The parties have not, however, produced any documents
6  responsive to these document requests (other than the subset of documents required to be
7  produced pursuant to the Patent Local Rules). No depositions have been scheduled or taken.
8  NetApp has not disclosed any expert witnesses. Last week, the parties exchanged lists of the
9  claim terms they proposed to be construed. The parties' lists collectively identify 129 terms to be
10 construed, although the parties have not yet begun meeting and conferring to reduce the number
11 of terms to be offered to the Court for construction.[1] No claim construction discovery or briefing
12 has taken place.
13        As such, this case is still very much in its early stages.
14   **B.    The Reexamination Proceedings.**
15        **1.    The '001 Patent.**
16        The '001 patent issued on February 15, 2005, and claims technology that was neither
17 novel nor inventive. The technology claimed in the '001 patent is present in many prior art
18 references that were not presented by NetApp to the PTO during the prosecution of the '001
19 patent. As such, on November 30, 2007 – less than three months after the filing of the complaint
20 – Sun requested the PTO conduct an *inter partes* reexamination of all claims of the '001 patent.
21 (Declaration of Christine K. Corbett In Supp. of Mot. to Stay ("Corbett Decl."), ¶ 2.)
22        Last week, on April 7, 2008, the PTO issued an order granting reexamination of all 63
23 claims of the '001 patent, finding that "[a] substantial new question of patentability (SNQ)
24 affecting claims 1-63" of the '001 patent exists. (Corbett Decl., ¶ 3, Ex. A.) The PTO based its
25 decision on its review of *ten* prior art references that were not before the Examiner during the
26 initial prosecution of the '001 patent and which are not cumulative of other art in the file. (*Id.*) In

---

[1] Of the 129 claim terms on the parties' initial lists, NetApp identified 77 terms that are on only its list, Sun identified 25 terms that are on only its list, and 29 terms are on both parties' lists.

1  reaching his SNQ finding, the Examiner explained all the claims of the '001 patent share a
2  common theme: "the file systems share data, but changes to one of the active file systems are not
3  reflected in the other active file system." (*Id.* at p.6) The Examiner then noted that each of the
4  ten prior art references describes a "system including multiple active file systems that initially
5  share data and where changes made to one of the file systems are not reflected in the other file
6  system." (*Id.*) As such, the Examiner correctly concluded that "[a] reasonable examiner would
7  have found [the references] important in considering the patentability of these claims...[t]he
8  teachings of [the references] are not cumulative to any written discussion on the record of the
9  teachings of the prior art, were not previously considered nor addressed during a prior
10 examination...." (*Id.*)

11     As a result of the clear teachings of the prior art, it was not surprising that not only did the
12 PTO grant the reexamination, it also issued a first office action *rejecting all 63 claims of the '001*
13 *patent* as anticipated under 35 U.S.C. § 102. In other words, the PTO found *each* of the ten prior
14 art references expressly or inherently discloses each and every limitation of claims of the '001
15 patent. Given the strength of the cited prior art and the statistics (discussed below) demonstrating
16 that claims undergoing reexamination usually are either rejected or undergo substantial
17 narrowing, it is highly likely that all claims of the '001 patent will be invalidated or substantially
18 narrowed during the reexamination proceeding.

19         **2.      The '211 Patent.**

20     The '211 patent issued on May 10, 2005, and also covers technology that was neither
21 novel nor inventive. The technology claimed in the '211 patent is present in several important
22 prior art references that were not considered or reviewed during the prosecution of the '211
23 patent. As such, on December 14, 2007 – a little over three months after the filing of the
24 complaint – Sun requested the PTO grant reexamination as to all claims of the '211 patent.
25 (Corbett Decl., ¶ 4.)

26     Two weeks ago, on April 2, 2008, the PTO issued an order granting reexamination as to
27 all twenty-four claims of the '211 patent based on thirteen prior art references, finding a
28 "substantial new question of patentability." (Corbett Decl., ¶ 5, Ex. B.) Specifically, the PTO

found that given the teachings of each of the prior art references, a "substantial likelihood that a reasonable examiner would consider" these references important in deciding the patentability of the claims of the '211 patent existed. (*Id.*) It is highly probable that all claims of the '211 patent will be invalidated or substantially narrowed during the reexamination proceeding.

### 3. The '292 Patent.

The '292 patent issued on October 6, 1998, and, like the '001 and '211 patents, did not claim an invention that was useful, novel or nonobvious. On October 25, 2007 – less than two months after the filing of the complaint – Sun requested that the PTO conduct a reexamination of the '292 patent. (Corbett Decl., ¶ 6.)

On March 18, 2008, the PTO issued an order granting reexamination of the '292 patent, finding that "[a] substantial new question of patentability (SNQ) affecting [independent] claims 1 and 4" of the '292 patent exists. (Corbett Decl., ¶ 7, Ex. C.) The PTO based its decision on a review of six prior art references that are not present in the '292 patent file history and which are not cumulative of other art in the file. (*Id.*) The PTO found that each of the six prior art references raises a "substantial new question of patentability" as to certain claims that have not been decided in any previous examination of the '292 patent. (*Id.*) The PTO also determined that "a reasonable examiner would consider the teachings important in deciding whether or not" claims 1 and 4 are patentable. (*Id.*)

During the litigation, Sun's counsel became aware of additional important prior art that was not disclosed to the PTO during prosecution of the '292 patent. Accordingly, on April 4, 2008, Sun submitted a second request for reexamination as to claims 4, 8, 11-15 and 20 of the '292 patent based on eleven prior art references. (Corbett Decl., ¶ 8.) Based upon the strength of the prior art references, Sun anticipates the PTO will grant its second request for reexamination, which would mean all of the asserted claims of the '292 patent would be in reexamination.

## III. ARGUMENT

### A. There Is A Liberal Policy Favoring Granting Stays Pending Reexamination.

A district court has the inherent power to stay litigation pending resolution of reexamination proceedings before the PTO. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936);

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

Indeed, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination ... proceedings," and such motions frequently are granted in this district. *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D. Cal. 1994) (stay granted); *see also Sorensen v. Digital Networks N. Am., Inc.*, 2008 WL 152179 (N.D. Cal. 2008) (stay granted); *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, Case No. C-07-4413 (PJH) (N.D. Cal. 2007) (stay granted); *Ho Keung Tse v. Apple Inc.*, 2007 WL 2904279 (N.D. Cal. 2007) (stay granted); *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, 2007 WL 627920 (N.D. Cal. 2007) (stay granted); *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661 (N.D. Cal. 2006) (stay granted).

### B. The Court Should Exercise Its Discretion To Stay This Litigation As To The Reexam Patents.

In determining whether to grant a stay pending reexamination, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See, e.g., Ho Keung Tse*, 2007 WL 2904279 at *2; *KLA-Tencor Corp.*, 2006 WL 708661, at *2-5. "A stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were cancelled in the reexamination, would eliminate the need to try the infringement issue." *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005). Here, the factors support granting a stay.

#### 1. Discovery Is Still At An Early Stage And No Trial Date Is Set.

The early stage of this litigation weighs in favor of granting a stay as to the Reexam Patents. Indeed, this case is less than eight months old and no trial date has been set. The *Markman* hearing is not scheduled to take place for another four months. Fact discovery does not close until October, 2008.

Additionally, discovery, thus far, has been limited. No depositions have yet been

-7-

scheduled or taken. No documents (other than those required to be produced in conjunction with local patent rule disclosures) have been produced. Claim construction briefing has not commenced. No dispositive motions have been filed. No expert witnesses have been disclosed by NetApp. *See ASCII Corp.*, 844 F.Supp. at 1381 (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial); *Nanometrics, Inc.*, 2007 WL 627920, at *2 (granting motion to stay where the defendant filed a request for stay nine months after the patent infringement claim was brought against it; case was in the early stages – parties exchanged initial disclosures, case management conference was held; discovery commenced; no briefing on claim construction; no dispositive motions); *Zilog, Inc. v. Quicklogic Corp.*, 2004 WL 2452850, at *3-4 (N.D. Cal. 2004) (granting motion to stay where request to stay was filed only six months after filing of complaint).

While the parties have exchanged their respective preliminary infringement and invalidity contentions pursuant to the Patent Local Rules, such an exchange does not warrant continuing the expense of litigating the Reexam Patents during the reexamination proceeding. *See Ho Keung Tse*, 2007 WL 2904279, at *2 (stay granted even though preliminary infringement contentions were served).

As such, this is clearly not a case where a stay is sought on the eve of trial as a delaying tactic. Rather, this is a case where Sun promptly sought reexamination and where Sun promptly sought a stay after the PTO granted reexamination.

## 2. Granting A Stay Will Simplify The Issues In Question And The Trial Of The Case.

A stay concerning the Reexam Patents certainly will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of, both the Court and the parties. It is highly probable that all of the asserted claims of the Reexam Patents will be rejected or, at a minimum, be significantly narrowed, during reexamination. This conclusion is not just based upon the PTO's actions and statements to date and the number and strength of the cited prior art references. Rather, this conclusion also is supported by statistics showing that when the PTO decides a patent should undergo reexamination, it is highly probable the patent either will be

-8-

invalidated or undergo substantial narrowing of the claims. Specifically, statistics demonstrate that the PTO cancels *all* claims in approximately 82% of *inter partes* reexaminations and in approximately 12% of *ex parte* reexaminations. (Corbett Decl., ¶¶ 9-10, Exs. D-E.) Statistics also demonstrate that claims are significantly modified in approximately 9% of *inter partes* reexaminations and in approximately 59% of *ex parte* reexaminations. (*Id.*) In other words, claims are affected by a reexamination **ninety-one percent (91%)** of the time for *inter partes* reexaminations and **seventy-one percent (71%)** of the time for *ex parte* reexaminations. Accordingly, there is a substantial probability reexamination will have a major impact on the issues to be resolved in this litigation.

Specifically, issues relating to claim construction, validity, infringement, unenforceability and damages may be significantly narrowed or eliminated by the PTO's reexamination because some or all of the claims may be cancelled or amended. A stay with respect to the Reexam Patents in this patent-crowded case will promote judicial economy because the Court can avoid a *Markman* hearing and trial, and attendant discovery issues, relating to patent claims that likely will be canceled during the PTO's reexamination. *See Gould,* 705 F.2d at 1342 (claims that are eliminated during reexamination are treated as if they never issued and cannot be asserted in litigation).

Even if some of the claims somehow survive reexamination, statements made by NetApp and the Examiner during the reexamination proceeding will be highly relevant to the proper construction of any surviving claims. *See C.R. Bard, Inc. v. U.S. Surgical Corp.,* 388 F.3d 858, 867-69 (Fed. Cir. 2004) (citing statements made by patentee during reexamination to support the district court's claim construction and judgment of non-infringement). Additionally, the PTO's decisions and analysis of the prior art during reexamination will help narrow the validity issues in this case and provide the Court with the PTO's understanding of the prior art. *See Direct Imaging Sys., Inc. v. U.S. Graphic Arts, Inc.,* 2007 WL 778633, at *3 (M.D. Fla. 2007) ("A stay will allow both the parties and the Court to take advantage of the PTO's expert analysis of the [patent-at-

issue] and may limit or narrow the remaining issues to be litigated.").[2]

A stay also will simplify the damages issues in this case because NetApp cannot seek past damages for claims cancelled or amended during reexamination. *See Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997). In fact, claims that are substantively amended during reexamination are treated as if they issued at the end of the reexamination, such that damages for infringement of those claims begin to accrue only after issuance of the reexamination certificate. *See id.*

Accordingly, absent a stay, this Court likely will spend time and resources construing and trying patent claims that may be eliminated or amended during reexamination. *See Target Therapeutics, Inc. v. SciMed Life Sys, Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995) (without a stay, a court may waste time examining validity of claims modified or eliminated in reexamination); *Ho Keung Tse*, 2007 WL 2904279 at *4. The broad range of issues that will be affected and simplified as a result of the reexamination strongly support a stay.

### 3. A Stay Will Not Unduly Prejudice NetApp Or Present A Clear Tactical Disadvantage To NetApp.

NetApp will not be prejudiced by a partial stay pending the PTO's reexamination of the Reexam Patents. In fact, "[t]he delay inherent to the reexamination process does not constitute, by itself, undue prejudice." *Photoflex Prods., Inc. v. Circa 3 LLC*, 2006 WL 1440363, at *2 (N.D. Cal. 2006).

Indeed, NetApp will be compensated monetarily for any delay resulting from the reexamination proceedings. For example, to the extent any claims of the Reexam Patents survive reexamination unchanged, and are found to be infringed, any royalty damages would continue to accrue during a stay. *Nanometrics, Inc.*, 2007 WL 627920 at *3. As a result, money damages are sufficient to compensate NetApp for any alleged infringement during the stay, and NetApp will

---

[2] Importantly, because Sun requested an *inter partes* reexamination of the '001 and '211 patents, Sun will be precluded in the district court from relying on any references considered by the PTO during reexamination. Thus, if any claims of the '001 or '211 patents survive reexamination, Sun's inability to rely on the cited prior art references will greatly simplify the validity issues to be addressed during the district court action. (Because the '292 reexamination is an *ex parte* proceeding, this rule does not apply to the '292 patent.)

-10-

not be prejudiced if the Court stays this action pending reexamination.

A stay in this case also presents no "clear tactical disadvantage" to NetApp because the dispositive issue of invalidity will not be finally decided until the PTO completes its reexamination proceedings – *whether or not a stay is granted here.* See In re Translogic Tech. Inc., 504 F.3d 1249, 1262 (Fed. Cir. 2007) (affirming a PTO reexamination judgment of invalidity in a manner that superseded a prior district court judgment affirming validity). Thus, without a stay, the parties in this case may be forced to spend thousands of hours and hundreds of thousands (if not millions) of dollars in court proceedings that cannot and will not finally resolve the dispositive question of the invalidity of the Reexam Patents.

Finally, this is not a case where reexamination is sought on the eve of trial or after protracted discovery. As discussed above, no trial date has been set and little substantive discovery has taken place. Additionally, Sun promptly sought reexamination of the Reexam Patents shortly after NetApp filed its complaint. Sun also promptly filed its motion to stay after receiving the three orders granting reexamination of the Reexam Patents. *See Ho Keung Tse*, 2007 WL 2904279, at *4 (finding that filing a request for reexamination three months after service of preliminary invalidity contentions was not evidence of any delay).

Accordingly, because there is no prejudice to NetApp and there is no clear tactical disadvantage to NetApp, Sun submits that the final factor also supports a stay as to the Reexam Patents.

## IV. CONCLUSION

Staying this case pending reexamination of the Reexam Patents will promote judicial economy, simplify the issues in this case and will not unduly prejudice NetApp. Indeed, a stay of the litigation at this early stage of the litigation will permit the Court and the parties to benefit from the PTO's initial guidance on the invalidity issue. Because the PTO will have the final word on invalidity, a stay will not unjustly delay final resolution of NetApp's claims. To the contrary, a stay will avoid costly and unnecessary legal proceedings that would otherwise burden the Court and the parties, contrary to the very reason Congress chose to provide reexaminations in the first place. Accordingly, Sun respectfully requests the Court grant a stay regarding the Reexam

1  Patents, as to each patent, until the PTO either issues its final office action or issues a
2  reexamination certificate.  At that time, the Court and the parties can determine whether a further
3  stay is warranted.

5  Dated:  April 15, 2008

DLA PIPER US LLP

By *Christine K. Corbett*
MARK D. FOWLER
CHRISTINE K. CORBETT
Attorney for Defendant and Counterclaimant
SUN MICROSYSTEMS, INC.