1   MATTHEW D. POWERS (Bar No. 104795)
    matthew.powers@weil.com
2   EDWARD R. REINES (Bar No. 135960)
    edward.reines@weil.com
3   JEFFREY G. HOMRIG (Bar No. 215890)
    jeffrey.homrig@weil.com
4   JILL J. HO (Bar No. 236349)
    jill.ho@weil.com
5   WEIL, GOTSHAL & MANGES LLP
    Silicon Valley Office
6   201 Redwood Shores Parkway
    Redwood Shores, CA 94065
7   Telephone: (650) 802-3000
    Facsimile: (650) 802-3100
8
    Attorneys for Plaintiff-Counterclaim Defendant
9   NETWORK APPLIANCE, INC.,

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15  NETWORK APPLIANCE, INC.              Case No. C-07-06053 EDL

16      Plaintiff-Counterclaim Defendant,   **PLAINTIFF NETAPP, INC.'S
                                            OPPOSITION TO DEFENDANT SUN
17          v.                              MICROSYSTEMS, INC.'S** *EX PARTE*
                                            **APPLICATION TO SHORTEN TIME
18  SUN MICROSYSTEMS, INC.                  FOR HEARING ON SUN'S STAY
                                            MOTION**
19      Defendant-Counterclaim Plaintiff.

20

21

22

23

24

25

26

27

28

1    Pursuant to Civil Local Rule 6-3(c), NetApp, Inc. ("NetApp") opposes Sun

2   Microsystems, Inc.'s ("Sun's") *ex parte* application to shorten time for its stay motion [Docket

3   35].

4                                                    **I.**

5   **SUN'S *EX PARTE* APPLICATION SHOULD BE DENIED BECAUSE NETAPP
    DESERVES THE NORMAL TIME FOR OPPOSING MOTIONS AND THERE IS NO
6                 GOOD REASON TO DEPRIVE IT OF SUCH TIME**

7            Sun's application to shorten time should be denied.  Sun's stay motion is

8   recognized by all as a consequential motion that seeks to reshape this litigation and, in NetApp's

9   view, threatens to delay vital relief of real significance to NetApp and valuable clarity to the open

10  source community.  Given the stakes, it is particularly important that NetApp receive the normal

11  amount of time to prepare its opposition to Sun's stay motion.  That opposition will require, not

12  only the preparation of argument, but the substantial development of evidence, such as witness

13  testimony, that warrants the normally allowed time.  In addition, Sun's proposal would

14  substantially shrink the Court's time to consider the parties' briefing and evidence.

15           To justify this marked deviation from the normal rules, Sun argues only that

16  shifting the hearing date by two weeks will somehow spare the litigation teams substantial work.

17  However, during the two weeks that Sun proposes to "save" by this *ex parte* application, the

18  parties owe no submissions to the Court.  In fact, during that period, the parties are simply in the

19  midst of a 43-day period for meeting and conferring on the disputed claim terms that they

20  identified to each other on April 10.  Surely the parties can meet and confer efficiently to

21  minimize Sun's concerns.  In the end, the reality is that the litigation teams are very busy in their

22  three cases and the supposed burden purportedly justifying this motion is in no way material.

23           In addition, any alleged burden caused by the normal May 20 hearing date stems

24  directly from Sun's own failures and should not now be used to provide Sun a with tactical

25  advantage on the stay motion by shortening NetApp's time.  Specifically, Sun failed to comply

26  with elementary Patent Office filing requirements in all three of its reexam requests, causing them

27  to have to be re-filed.  If it had not made these errors, this motion could have been resolved

28  already.  The *ex parte* application should be denied.

1

**A.    The Stay Motion Is An Important Motion Involving A Substantial Evidentiary Record And Warranting At Least The Normal Time Allocation**

2

3          As established in this section, Sun's stay motion is a consequential motion

4   involving a substantial evidentiary record.  NetApp brought this case due to Sun's brazen

5   infringement of its patents through the use of key patented features of the NetApp products in its

6   ZFS software.  This infringement is particularly pernicious in that Sun is giving the infringing

7   ZFS software away for free so that it can sell its other products and damage the market success of

8   its competitors such as NetApp.  Basically, Sun is attempting to damage seriously the market that

9   NetApp pioneered with its industry leading data storage products.  Declaration of Aaron M.

10  Nathan in Support of NetApp, Inc.'s  Opposition to Defendant Sun Microsystems Inc.'s *Ex Parte*

    Application to Shorten Time for Hearing on Sun's Stay Motion ("Nathan Decl.") at ¶ 13.

11

12         That Sun is exploiting NetApp's technology in ZFS is clear from Sun's own

13  statements in which it essentially concedes it uses NetApp's patented WAFL technology.  For

14  instance in a paper entitled "The Zettabyte File System," Jeff Bonwick et al., write, "The best

15  way to avoid file system corruption due to system panic or power loss is to keep the data on the

16  disk self-consistent at all times, as WAFL does."  Exh. A. (Bonwick et al.) at 4.  Bonwick

17  continues, "The file system that has come closest to our design principles, other than ZFS itself, is

18  WAFL…[which] was the first commercial file system to use the copy-on-write tree of blocks

19  approach to file system consistency."  Id. at 11-12.  Val Henson, co-author on the same paper, in

20  a blog entry entitled "Cool systems paper: WAFL," writes, "In my opinion, [NetApp's WAFL

21  paper] describes the most significant improvement in file system design since the original FFS in

22  1978… The ZFS team thinks that a copy-on-write, transactionally updated general purpose UNIX

23  file system is not only feasible but an excellent idea – which is why we wrote ZFS." Exh. B. at 3.

24         The parties arrived at this Court with this important case because they knew that

25  this Court would diligently and effectively resolve their claims promptly:

26         Plaintiff believes in particular that having Judge Laporte preside
           over both of the parties' patent cases will lead to a just and speedy
27         resolution of all of their disputes. Counsel for the parties have
           conferred with Judge Laporte, who has agreed to hear this matter
28         and to conduct a prompt Case Management Conference with the
           goal of a prompt resolution of the disputes. The parties have

1    consented to have Judge Laporte hear this matter for all purposes[.]

2    Agreed Motion to Transfer at 1-2. *NetApp v. Sun* (9:07-cv-206 RHC, E.D. Tex.) [Docket 37].

3    Instead of keeping these claims with this Court for resolution, Defendant's stay

4    motion is an attempt to reshape this litigation by slowing NetApp's pursuit of key patent claims

5    by channeling them to a slower and less certain venue – even though the parties specifically

6    requested this Court to resolve their claims.  It is well-known that, for a variety of reasons, almost

7    all requests to begin reexams are granted.  *See*, *e.g.*, Corbett Decl. In Support of Sun's Stay

8    Motion, Exh. D [Docket 39-5] at 1. Therefore, if motions for stay pending reexam were really as

9    simple as Sun claims, virtually every defendant could grind its case to a halt using this tactic.  Of

10   course, the analysis is more complex than Sun lets on.  In circumstances such as this, where

11   timely resolution is so significant, such motions should be assessed even more critically.

12   NetApp deserves a full and fair opportunity to address these and other significant

13   issues raised by Sun's stay motion.  NetApp will respond in its opposition to the many arguments

14   made in Sun's stay motion, including its many assertions about what happened in the reexams, its

15   statistical analyses of the Patent Office in both *inter partes* and *ex parte* reexams, and its specific

16   assertions that the delay caused by the extended stay it proposes will not cause NetApp

17   irreparable harm.  The opposition will thus require gathering evidence, lining up witnesses, and

18   determining what witnesses and testimony should or should not be submitted on this motion.

19   This process can be time consuming and it deserves—at a minimum—the normal time allotted to

20   respond to a motion.  NetApp would normally have until April 29 to respond to the motion.

21   Slicing five days off that time, as Sun seeks to accomplish, is not warranted. Nathan Decl. at ¶ 15.

22   **B.    The Court Should Not Accept Sun's Claim That The Two Week Shortening Is Necessary To Avoid Prejudice To Sun**

23   Sun seeks to move the stay motion hearing date by two weeks from the normal

24   May 20 date to May 6.  The theory of the motion is that speeding the hearing up by two weeks

25   will avoid "prejudice" to Sun.  *Ex Parte* Application at 3 [Docket 35].  Nathan Decl. at ¶ 16.

26   To prove prejudice, Sun portrays as substantial the alleged burdens that will be

27   avoided by its *ex parte* application:

28

> Between now and May 20 [the normal hearing date], the parties will meet-and-confer, exchange preliminary proposed claim construction and extrinsic evidence and prepare a Joint Claim Construction and Prehearing Statement…If the Court grants Sun's Motion to Stay on an expedited schedule, the parties and ultimately the Court will not have to address these claim terms at this time (or at all)."

Sun's *Ex Parte* Application at 3 [Docket 35].

This is not a fair characterization of the record. The exchange of preliminary proposed constructions and extrinsic evidence is scheduled to take place by April 30, *before* Sun's proposed hearing date, and the parties are required by Local Rule to meet and confer even before that. Case Management Scheduling Order [Docket 20] at 2; Patent L.R. 4-1(b). The Joint Claim Construction and Prehearing Statement is due on May 23, *after* the hearing would take place on the normal briefing schedule. Minutes to CMC in C-07-05488 [Docket 34]. Nathan Decl. at ¶ 17. In short, two of the events that supposedly prejudice Sun if NetApp's response time is not truncated *cannot* be avoided, because they will have occurred regardless, and the other could be avoided by a finding in Sun's favor at a hearing scheduled on the normal date.

What, then, is scheduled to occur during the allegedly prejudicial two-week period? Very little: The parties must continue to meet and confer based upon their April 8 exchange of terms and their April 30 exchange of definitions. Nathan Decl. at ¶18. With three related cases of this magnitude, surely this meet and confer obligation will not materially affect the overall workload of the respective parties.

### C.    The Timing Of Sun's Stay Motion Is A Product Of Its Own Failures

Sun's original attempt to file reexams to pursue its stay strategy failed. Sun did not comply with basic filing requirements, which caused *months* of delay, creating the very circumstance about which it now complains.

On November 30, 2007, Sun filed its request for reexam of the '001 patent. Exh. C. On January 11, 2008, the PTO responded with a notice of failure to comply with *inter partes* reexamination request filing requirements. Exh. D. On February 8, 2008, Sun corrected its request. Exh. E. Sun filed its request for reexam of the '211 patent on December 14, 2007. On December 31, 2007, the PTO responded with a notice of failure to comply. Exh. F. On January

1   14, 2008, Sun corrected its request  Exh. G.  Sun filed its request for reexam of the '292 patent on

2   October 25, 2007. Exh. H. On December 10, 2007, the PTO responded with a notice of failure to

3   comply.  Exh. I.  On December 26, 2007, Sun corrected its request. Exh. J.

4         The requests actually accepted by the PTO as to the '001, '211, and '292 patents were

5   filed approximately 70 days, 31 days, and 62 days, respectively, after Sun's initial non-compliant

6   attempts.  Nathan Decl. at ¶ 19. Because the reexams were granted for those same patents on

7   April 7, April 2, and March 18, respectively, subtracting the delay caused by Sun's own failures,

8   the reexams might have been granted on January 28, March 2, and January 16, respectively.

9   Assuming that Sun would wait, as it did here, until eight days after all three requests were granted

10  before filing its motion, it could have filed its motion by about March 10.[1]  This would have

11  resulted in a hearing date of April 14, 2008, one day before Sun finally managed to file its actual

12  motion.  Nathan Decl. at ¶ 20.  Had Sun complied with basic PTO procedure, Sun could have had

13  a hearing roughly 22 days before the expedited hearing it now requests, and without needing to

14  shave off a single day of NetApp's rightful time to respond or of the Court's time to consider the

15  briefing.  Therefore Sun's purported hardship is caused by its own failures.

16        NetApp respectfully requests this court to deny Sun's *ex parte* application.

17  Dated: April 18, 2008                */s/ Edward R. Reines*

18                                  Matthew D. Powers
                                Edward R. Reines

19                                  Jeffrey G. Homrig
                                Jill J. Ho

20                                  WEIL, GOTSHAL & MANGES LLP
                                201 Redwood Shores Parkway

21                                  Redwood Shores, CA 94065
                                Telephone: (650) 802-3000

22                                  Facsimile: (650) 802-3100

23                                  Attorneys for Plaintiff-Counterclaim Defendant
                                Network Appliance, Inc.

24

25

26

27

28

---

[1] If time were really of the essence for Sun, presumably Sun would not have waited until all three requests had been granted before seeking a partial stay.