MATTHEW D. POWERS (Bar No. 104795)
matthew.powers@weil.com
EDWARD R. REINES  (Bar No. 135960)
edward.reines@weil.com
JEFFREY G. HOMRIG (Bar No. 215890)
jeffrey.homrig@weil.com
JILL J. HO (Bar No. 236349)
jill.ho@weil.com
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Plaintiff-Counterclaim Defendant
NETAPP, INC.,

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK APPLIANCE, INC.,<br><br>Plaintiff-Counterclaim Defendant,<br><br>v.<br><br>SUN MICROSYSTEMS, INC.<br><br>Defendant-Counterclaim Plaintiff. | Case No. C 07-06053-EDL<br><br>**DECLARATION OF STEPHEN G. KUNIN IN SUPPORT OF NETAPP, INC.'S OPPOSITION TO DEFENDANT SUN MICROSYSTEMS, INC.'S MOTION FOR PARTIAL STAY** |

# TABLE OF CONTENTS

PAGE NO.

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND AND QUALIFICATIONS | 2 |
| III. | FACTUAL BACKGROUND | 5 |
| IV. | OVERVIEW OF EVENTS OCCURRING DURING THE REEXAMINATION OF THE '001, '211 AND '292 PATENTS | 5 |
| | A. THE '011 PATENT REEXAMINATION | 5 |
| | B. THE '211 PATENT REEXAMINATION | 6 |
| | C. THE '292 PATENT REEXAMINATION | 7 |
| | D. ADDITIONAL STEPS FOR *INTER PARTES* REEXAMINATION | 8 |
| V. | PENDENCY RANGES IN *INTER PARTES* REEXAMINATIONS | 9 |
| VI. | THE FIFTEEN COMPLETED *INTER PARTES* REEXAMINATIONS | 11 |
| VII. | *EX PARTE* REEXAMINATIONS | 12 |

I, Stephen G. Kunin, declare and state as follows:

## I. INTRODUCTION

1. My name is Stephen G. Kunin. I have been retained by counsel for Plaintiff-Counterclaim Defendant NetApp, Inc. ("NetApp") (formerly known as Network Appliance, Inc.) as a consultant with respect to the proceedings currently before the Court in the above-captioned matter. I have been asked by NetApp to consider certain materials relating to the reexamination of U.S. Patent No. 5,819,292 ("the '292 patent"), U.S. Patent No. 6,857,001 ("the '001 patent") and U.S. Patent No. 6,892,211 ("the '211 patent") (collectively "the NetApp patents").

2. The lengthy duration of the reexamination process – and the efficiency of the United States Patent and Trademark Office – has received a great deal of recent public commentary. Indeed, during the preparation of this declaration, Judge Linn of the Federal Circuit, in a matter involving a patent application that had lingered in prosecution for roughly seven years, wrote a concurring opinion specifically to "express . . . disappointment over the delays experienced in [the] case and . . . concern that the circumstances that led up to [the] appeal may be more symptomatic of certain failures of the patent system than merely reflective of the peculiar facts of [the] case." *In re Reuning*, __ F.3d __ (Fed. Cir. 2008) (attached as Exhibit A).

3. Other commentators have echoed Judge Linn's sentiments. For instance, commenting on *In re Reuning*, Professor Hal Wegner states that *In re Reuning* is not an "outlier," but rather "symptomatic of how a case perceived to be important is dealt with at the PTO." Exhibit B. Wegner further notes that this "sloth" is "manifested perhaps best of all in the high profile area of *inter partes* reexamination, where few case even *reach* the Board for a decision.

For *all* reexaminations including a visit to the Federal Circuit, *the average pendency is more than seven years.*" *Id.* (emphasis in original).

4. Without agreeing that the reexam process is as troubled as some of the contemporary commentary might suggest, this Declaration describes from an empirical perspective the *inter partes* and *ex partes* reexamination processes, illuminating the circumstances leading to the long duration of patent reexams. This Declaration further summarizes the available statistics regarding the outcomes of patent reexaminations. In the case of *inter partes* reexaminations, only 15 of which have ever completed, the available data is too sparse to draw any meaningful or reliable conclusions. On the other hand, in the case of *ex partes* reexaminations, the available data supports the conclusion that several or all claims subject to reexamination will ultimately remain standing at the conclusion of reexamination. Accordingly, if history is a guide as to the duration of reexamination proceedings, the undue delay associated with such proceedings will – contrary to the interests of justice – impede the prompt resolution of the issues currently before the court.

## II.  BACKGROUND AND QUALIFICATIONS

5. I am a former Deputy Commissioner for Patent Examination Policy of the United States Patent and Trademark Office. I served in this position from November 1994 to October 2004. I am a member of the Bar of the Commonwealth of Virginia as well as the Bars of the Court of Appeals for the Federal Circuit and Supreme Court of the United States and I am registered to practice before the United States Patent and Trademark Office ("USPTO"). I am currently a partner in the firm of Oblon, Spivak, McClelland, Maier & Neustadt, P.C. ("Oblon"), 1940 Duke Street, Alexandria, VA 22314. A copy of my *curriculum vitae* is attached hereto as Exhibit C.

6. Additionally, as of January 2005, I am the Director of the J.D. and L.L.M. Programs in Intellectual Property Law at the George Mason School of Law where I also serve as

an adjunct professor teaching patent law and intellectual property law courses in the fall and spring semesters, respectively, each year.

7. In my ten years as Deputy Commissioner for Patent Examination Policy, I participated in the establishment of patent policy for the various Patent Organizations within the purview of the Commissioner for Patents, including changes in patent practice and patent examiner guidelines as set forth in the Manual of Patent Examining Procedure ("the MPEP"), revision of rules of practice and procedures, and establishment of examining priorities and classification of technological arts. I also oversaw the operations of the Office of Patent Legal Administration, Patent Cooperation Treaty Legal Administration, and the Office of Petitions.

8. The MPEP is a compendium of USPTO published policies, practices, and procedures, and includes, among other things, guidance to patent practitioners and patent examiners on various aspects of Patent Office practice including *ex parte and inter partes* reexamination proceedings.

9. Before my appointment to the position of Deputy Commissioner for Patent Examination Policy, I served as the Deputy Assistant Commissioner for Patents from 1991 to 1994. From 1989 to 1991, I served in that position on an acting basis. In that role, from 1989 to 1994, I had responsibility for supervision of the Patent Examining Group Directors and for managing the Patent Examining Corps (Examining Division).

10. From 1983 to 1989, I managed patent examining groups at the USPTO. On an acting basis in 1982 until being named Group Director in 1983, I directed the Manufacturing Technologies Examining Group 320. In 1984, I formed the Telecommunications, Measuring and Testing Examining Group 260 and became its first Group Director.

11. I also served for nine years as an Examiner in the Patent and Trademark Office (1970-1979) and for an additional three years as a Supervisory Primary Examiner ("SPE") (1979-1982). In the latter capacity, I ran the Patent Academy and trained and instructed assistant examiners in the examination of patent applications and served as an Instructor at the Patent Academy of the Patent and Trademark Office.

12. I have considerable direct experience in reviewing the work of patent examiners to determine whether they followed existing patent policies, practices, and procedures and performed examinations of the required quality. This experience came as a result of my serving as Deputy Commissioner for Patent Examination Policy, a Patent Examining Group Director, and a Supervisory Primary Examiner. As a Group Director and a Supervisory Primary Examiner, I was often called upon to review the work of examiners to determine whether those examiners were sufficiently competent to be granted signatory authority. Such reviews included a review of the entire prosecution history of an allowed or abandoned application or reexamination proceeding to determine whether the invention was understood by the examiner, whether relevant references were properly applied, whether USPTO policies, practices, and procedures were properly followed and whether the allowed claims were patentable over the art of record. Also, while serving as Deputy Commissioner for Patent Examination Policy, I decided appeals on quality reviewed applications where there was a disagreement between the Office of Patent Quality Review and a Patent Examining Group as to whether prosecution on the merits of a reviewed application should be reopened. I also reviewed and approved requests for reconsideration by a Patent Examining Group Director of an adverse panel decision from the Board of Patent Appeals and Interferences, and determined whether a Director Ordered Reexamination of an issued patent should be instituted.

13. I have significant knowledge of the rules and procedures applicable to *ex parte* and *inter parties* reexamination proceedings. This experience comes from, among other things, my service as Deputy Commissioner for Patent Examination Policy from 1994 – 2004, during which time I directed (1) the revision of the Manual of Patent Examining Procedure that specifically includes Chapters 2200 and 2600 covering *ex parte* and *inter parties* reexamination procedures and (2) the establishment of the Rules of Practice found at 37 C.F.R. § 1.510 et seq. and § 1.903 et seq. applicable to *ex parte* and *inter partes* reexamination proceedings.

14. Oblon is being compensated at the usual billing rate of $825 per hour that it charges for my services in independent review and study as a consultant on patent office policies,

Declaration of Stephen G. Kunin - 4

practices, and procedures. Oblon expects to be compensated at the same rate for my time spent testifying, if necessary. My compensation is not dependent on the outcome of this motion or the litigation.

15.     For purposes of forming my opinions and conclusions, I have considered a variety of materials. In particular, I have considered the patents at issue in these proceedings, the '292 patent, the '001 patent, and the '211 patent. I have also considered the reexamination file histories of each of the NetApp patents, as well as other documents as indicated below.

## III.    FACTUAL BACKGROUND

16.     I understand and am informed that Defendant Sun Microsystems, Inc. ("Sun") moves to stay this case, but only with respect to the claims and defenses regarding the '292 patent, the '001 patent and the '211 patent, pending completion of the USPTO's reexamination of these three patents. I understand that a court hearing is scheduled for May 13, 2008.

## IV.    OVERVIEW OF EVENTS OCCURRING DURING THE REEXAMINATION OF THE '001, '211 AND '292 PATENTS

### A. THE '011 PATENT REEXAMINATION

17.     I have considered the publicly-available materials for the reexamination of claims 1-63 of the '001 patent, which has been assigned Reexamination Control No. 95/000,324 by the USPTO.

18.     On or about November 30, 2007, Sun requested that the USPTO conduct an *inter partes* reexamination of all claims of the '001 patent.

19.     On April 4, 2008, the USPTO issued an order granting reexamination of the '001 patent, finding that "[a] substantial new question of patentability (SNQ) affecting claims 1-63 of the '001 patent exists." Attached hereto as Exhibit D is a true and correct copy of the USPTO order granting reexamination.

20.     On April 4, 2008, a first Office Action was issued in the '001 reexamination. *See*

Exhibit E attached. In that Office Action claims 1-63, all the claims under reexamination, received initial rejections under 35 U.S.C. § 102 and/or § 103. Initial rejections are typically made shortly after the order granting reexamination in *inter partes* reexamination proceedings. It is a common and usual occurrence that initial rejections are issued by the Examiner in approximately 90% of all *inter partes* reexaminations.

21. A response to that initial Office Action is due June 4, 2008.

22. In the current *inter partes* reexamination proceeding involving the '001 patent, as is usual at this stage, the patent owner has yet to submit any arguments or evidence. Thus, in the '001 patent reexamination, the examiner issued the only Office Action without considering any arguments at all from the patent owner.

23. No final Office Action has been issued in the '001 reexamination. Rather, the reexamination is in its very beginning stages and, as discussed below, still likely has years to go before completion.

### B. THE '211 PATENT REEXAMINATION

24. I have considered some of the publicly-available materials for the reexamination of the claims of the '211 patent, which has been assigned Reexamination Control No. 95/000,328 by the USPTO.

25. On or about December 14, 2007, Sun requested that the USPTO grant reexamination as to all claims of the '211 patent.

26. On April 2, 2008, the USPTO issued an order granting *inter partes* reexamination as to all of the claims of the '211 patent. Attached hereto as Exhibit F is a true and correct copy of the USPTO order granting reexamination.

27. No Office Action has been mailed in the '211 reexamination. Thus, while *inter partes* reexamination was ordered based on a finding of a substantial new questions of patentability as to the 24 claims, these claims have not been rejected by the examiner. Most importantly, as with the '001 patent reexamination, the patent owner has yet to submit any

arguments or evidence with respect to the '211 patent reexamination.

28. The *inter partes* reexamination is in its very beginning stages and, as discussed below, still likely has years to go before completion.

29. Based on the USPTO's *Inter Partes* Reexamination Filing Data - December 31, 2007 Report, I note that only 12 reexamination certificates issued as of the Report date. *See* Exhibit G. In my opinion, 12 reexamination certificates is an insufficiently large sample size to project an accurate percentage of how many reexamination certificates will issue in the future with all claims confirmed. In other words, while the December 31, 2007 Report statistics show that all claims are confirmed in only 1 of 12 certificates, the sample size is too small to be an accurate measure and predictor of the ultimate fate of the claims in the '001 and '211 patent reexaminations.

### C. THE '292 PATENT REEXAMINATION

30. I have considered some of the publicly-available materials for the reexamination of certain claims of the '292 patent, which has been assigned Reexamination Control No. 90/008,903 by the USPTO.

31. On or about October 25, 2007, Sun requested that the USPTO conduct an *ex parte* reexamination of the '292 patent.

32. On March 18, 2008, the USPTO issued an order granting *ex parte* reexamination of the '292 patent, finding that "[a] substantial new question of patentability (SNQ) affecting [independent] claims 1 and 4" of the '292 patent exists. Attached hereto as Exhibit H, is a true and correct copy of the USPTO order granting reexamination.

33. On April 4, 2008, Sun submitted a second request for *ex parte* reexamination of claims 4, 8, 11-15 and 20 of the '292 patent.

34. No Office Action has been mailed in the '292 reexamination.

35. No decision has been rendered by the USPTO on Sun's second request for *ex parte* reexamination of the '292 patent.

36.     If the USPTO were to grant the second request by Sun to order reexamination of claims 4, 8, 11-15 and 20 of the '292 patent, it is highly likely that the USPTO will merge the reexamination proceedings and postpone issuing a first Office Action in the '292 reexamination until subsequent to merger.

37.     The '292 patent reexamination is still in its very beginning stages. The patent owner has yet to submit any arguments or evidence.

38.     Based on the USPTO's *Ex Parte* Reexamination File Data - December 31, 2007 Report, I note that for 3rd Party Requested *ex parte* reexamination, all claims are ultimately confirmed in 29% of reexamination certificates. *See* Exhibit I.

### D. ADDITIONAL STEPS FOR *INTER PARTES* REEXAMINATION

39.     Attached as Exhibit J is a procedural flowchart taken directly from the MPEP showing the various steps inherent in *inter partes* reexamination proceedings. Attached as Exhibit K is a chart correlating the steps in the flowchart of Exhibit J to the relevant statutes or regulations and the time periods associated with each step in the flowchart.

40.     Attached as Exhibit L is a table of statistics issued by the U.S. Court of Appeals for the Federal Circuit indicating the median time to disposition in cases terminated after hearing or submission.

41.     As is evident from the flowchart of Exhibit J and the chart of Exhibit K, even an Action Closing Prosecution (an "ACP") is by no means a final decision as to the validity of the claims of a reexamined patent. Indeed, the term "Action Closing Prosecution" in *inter partes* reexaminations is something of a misnomer. An ACP is not a final action; it is not appealable; and it does not even necessarily signal the end of prosecution, or even the final round. MPEP § 2673.01. The Patent Owner may present comments in response to such ACP or may file a Petition to reopen prosecution. The Third Party Requester also has the opportunity to respond. Thereafter, the Examiner may reopen prosecution or issue a Right of Appeal Notice. The parties may only appeal the Examiner's decisions to the USPTO's Board of Patent Appeals and

Interferences (the "BPAI") after receipt of a Right of Appeal Notice. A Right of Appeal Notice is "a final action" and may include a "final rejection." 37 CFR § 1.953(c). It is therefore appealable, unlike an ACP. MPEP § 2673.01 & .02. On appeal, the BPAI may affirm or reverse the Examiner's rejections or the BPAI may remand the proceeding to the Examiner for further consideration. Moreover, the BPAI may issue new grounds of rejection thus sending the proceeding back to the Examiner for further prosecution. The proceeding then winds its way back up to the BPAI. Assuming a final adverse decision of the BPAI, the Patent Owner may then appeal such decision of the BPAI to the Federal Circuit.

## V. PENDENCY RANGES IN *INTER PARTES* REEXAMINATIONS

42. The statistics discussed below were calculated based on a review conducted of all *inter partes* reexaminations filed since November 1999, when the USPTO established this type of reexamination. The USPTO maintains this public information on the Patent Application Information Retrieval ("PAIR") database of its www.uspto.gov website. To review individual records, the user enters the Reexamination Control Number into the PAIR search screen to retrieve the record. *See* chart attached as Exhibit M hereto.

43. The *inter partes* reexamination data points collected for these calculations were:

(1) Filing Date: The date that the USPTO assigned a Request for Reexamination its filing date if it meets the filing requirements of 37 C.F.R. § 1.915.

(2) Reexamination Request Determination Date: The date the USPTO issued an Order granting or denying the Request for Reexamination.

(3) Initial Office Action: The date the USPTO issued a first Office Action.

(4) Action Closing Prosecution: The date the USPTO issued an ACP.

(5) Right of Appeal Notice: The date the USPTO issued a Right of Appeal Notice.

(6) BPAI Decision: The date the USPTO's BPAI issued a decision on an appeal.

(7) Federal Circuit Decision: The date the U.S. Court of Appeals for the Federal Circuit issued a decision on appeal from the BPAI's Decision. The review found that no *inter partes* reexamination has progressed to the point of appeal to the Federal Circuit.

(8) Reexamination Certificate: The date the USPTO issued a Reexamination Certificate that concludes the reexam process.

44. The USPTO's individual *inter partes* patent reexamination records show the following pendency ranges:

| Pendency | Lowest Pendency | Highest Pendency |
|---|---|---|
| (1) Filing Date to (2) Reexamination Order Date | 13 Days | 3 Months |
| (2) Reexamination Order Date to (3) First Office Action | 0 Days | 2.1 Years |
| (3) First Office Action to (4) Action Closing Prosecution | 0.4 Years | 5.2 Years |
| (4) Action Closing Prosecution to (5) Right of Appeal Notice | 1.9 Months | 2.8 Years |
| (5) Right of Appeal Notice to (6) BPAI Decision | 2.3 Years | 3.6 Years |
| (6) BPAI Decision to (7) Federal Circuit Decision | N/A | N/A |
| (7) Federal Circuit Decision to (8) Reexamination Certificate | N/A | N/A |

45. Importantly, with respect to reexaminations that progress from an ACP to a BPAI Decision, since 1999, only three *inter partes* reexaminations have received a BPAI Decision to date. In each case, the reexaminations were remanded to the Examiner for further consideration. As of this date, all three are still pending. Despite the statutory requirement for "special dispatch", these reexaminations took 4 to 5 years to reach a BPAI Decision. *See* Exhibit N. In

the more than eight years since the *inter partes* statute was enacted, no *inter partes* reexamination have progressed through from a BPAI Decision to appeal to the Court of Appeals for the Federal Circuit. This, it follows that there have been no *inter partes* reexaminations that have progressed from the BPAI to the Federal Circuit.

      46.    Out of the 381 *inter partes* reexaminations listed in Exhibit M, over 90% received a Filing Date, 82% received a Reexamination Order, 70% received a First Office Action, 28.6% received an ACP, 15.5% received a Right of Appeal Notice, and only 0.78% (*i.e.*, 3) reached BPAI Decision. Only 3.90% (*i.e.*, 15) of all *inter partes* reexaminations received a Reexamination Certificate at some point during the reexamination, and none of them were issued after full consideration on the merits to final appeal decisions. Rather, in most cases, the patent owner simply decided to drop its opposition to the Examiner's rejections, something I am informed NetApp does not intend to do.

      47.    Using the pendency ranges in the above table, it is clear that *inter partes* reexaminations can, and usually do, extend over a period of several years. Indeed, as is clear from the USPTO's own records, there can be from two and a half to over five years from the ACP until the BPAI decision. And, if either party appeals the BPAI's Decision to the Federal Circuit, it will be perhaps at least another year before there is a final decision regarding the reexamination. *See* Exhibit L.

### VI. THE FIFTEEN COMPLETED *INTER PARTES* REEXAMINATIONS

      48.    Out of the 381 *inter partes* reexaminations listed in Exhibit M, it appears that there have been only fifteen cases that have been concluded, *i.e.*, where Reexamination Certificates were issued. A Reexamination Certificate may issue following an appeal, but it can issue sooner if the Patent Owner ceases to participate in the proceedings. *See* MPEP § 2687. There has never been a Reexamination Certificate issued after a Patent Owner or Third-Party appeal. Thus, no *inter partes* reexamination has ever proceeded through each step in the entire reexamination process in the over eight years since the inception of the *inter partes*

reexamination option.

49. Of the fifteen Reexamination Certificates issued, a review of the USPTO's publicly available documents shows that in nine of these fifteen cases, the Patent Owner failed to finally respond to an Office Action and thus the claims were cancelled for procedural reasons at the Examiner level. With respect to the remaining six cases, in two instances, the Patent Owner failed to file the required Appeal Brief to the BPAI, and, as a result, all claims were cancelled for procedural reasons. In another instance, the third party requester failed to file the required Appeal Brief to the BPAI and, as a result, all claims were confirmed for procedural reasons. In two instances, both parties failed to file a Notice of Appeal so the Examiner's decision was not reviewed by the BPAI. In the remaining case, a review of the record shows that the Patent Owner simply disclaimed all of the claims after an animal rights group challenged the patent in reexamination. These results indicate that all of the *inter partes* Reexamination Certificates issued to date were issued because of inaction and default by the Patent Owner or the third party requester and none were issued because of any final adjudication on the merits by the BPAI.

50. Given the fact that only fifteen *inter partes* Reexamination Certificates have issued and the circumstances surrounding their issuance, the rate that claims were subject to cancellation or amendment in those fifteen completed *inter partes* reexaminations would not appear to be predictable indicator of the rate of such cancellation or amendment for all *inter partes* reexaminations.

VII. *EX PARTE* **REEXAMINATIONS**

51. With respect to *ex parte* reexaminations, because such proceedings have been in effect since 1981 and the number of requests for *ex parte* reexaminations are far greater (9052 to date), it is difficult to track each proceeding through to ultimate conclusion in the same manner as set forth above for the *inter partes* proceedings. However, attached as Exhibit O is a procedural flowchart taken from the MPEP showing the various steps inherent in the *ex parte* reexamination proceedings. Attached as Exhibit P is a chart correlating the steps of the

flowchart of Exhibit O to the relevant statutes or regulations and the time periods associated with each step in the flowchart.

52. As is evident from the flowchart of Exhibit O and the chart of Exhibit P, an initial Office Action in an *ex parte* reexamination proceeding is far from being a final determination as to the validity of the reexamined patent. Following receipt of such an initial Office Action, the Patent Owner has 30-60 days thereafter in which to file a response. The Examiner will then consider such a response and may either withdraw the initial rejections or issue a final Office Action maintaining the rejections.

53. The Patent Owner than has the right to appeal an Examiner's rejection in a final Office Action to the BPAI within six months after the final Office Action. An Appeal Brief is to be filed by the Patent Owner within two months after the filing of a Notice of Appeal. The Examiner is to file an Answer to the Patent Owner's Appeal Brief within two months thereafter. In some cases, the Patent Owner may file a Reply Brief if the Examiner raises a new issue in the Answer.

54. Once the issues are fully briefed, the file is transferred from the Examining branch to the BPAI. The Patent Owner may file a request for an oral hearing, which is typically conducted within 6 to 12 months after the request for oral hearing is filed. The BPAI Decision on appeal typically issues within 1 to 3 months after the oral hearing, although it could take longer. The Patent Owner may file a request for a rehearing of any unfavorable BPAI Decision within 2 months after receipt of the BPAI Decision. The BPAI Decision on the request for rehearing typically issues within 1 to 2 months thereafter.

55. If the BPAI Decision remains unfavorable, the Patent Owner has the statutory right to appeal the decision within 60 days to the Federal Circuit. The Federal Circuit will set its own schedule for briefing and argument. As indicated in Exhibit L, the median time for disposition in the Federal Circuit for an appeal of a USPTO decision is 9.6 months.
It is not unusual for the Examiner to reject most, if not all, of the claims in an initial Office Action during an *ex parte* reexamination. This is a fairly common practice. The USPTO's

statistics, however, show that only 12% of the cases ultimately result in all claims being canceled. *See* Exhibit I. Accordingly, the statistics would tend to support a conclusion that several or all claims will survive the '292 reexamination.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 28th day of April, 2008 in Alexandria, VA.

_____
Stephen G. Kunin