1   MATTHEW D. POWERS (Bar No. 104795)
    matthew.powers@weil.com
2   EDWARD R. REINES (Bar No. 135960)
    edward.reines@weil.com
3   JEFFREY G. HOMRIG (Bar No. 215890)
    jeffrey.homrig@weil.com
4   JILL J. HO (Bar No. 236349)
    jill.ho@weil.com
5   WEIL, GOTSHAL & MANGES LLP
    Silicon Valley Office
6   201 Redwood Shores Parkway
    Redwood Shores, CA 94065
7   Telephone: (650) 802-3000
    Facsimile: (650) 802-3100
8
    Attorneys for Plaintiff-Counterclaim Defendant
9   NETAPP, INC.,

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

15   NETWORK APPLIANCE, INC.                  Case No. C-07-06053 EDL

16       Plaintiff-Counterclaim Defendant,   **PLAINTIFF NETAPP, INC.'S
                                              OPPOSITION TO DEFENDANT SUN
17            v.                              MICROSYSTEMS, INC.'S MOTION
                                              FOR PARTIAL STAY**
18   SUN MICROSYSTEMS, INC.

19       Defendant-Counterclaim Plaintiff.

20

21                        **PUBLIC VERSION**

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................................1

II.   ANALYSIS............................................................................................................................3

    A.   The Parties Stipulated to Appear Before this Court to Facilitate a Prompt
        Resolution of this Dispute and Discovery is Proceeding Expeditiously ................3

    B.   Staying the Proceedings with Respect to the '292, '001, and '211 Patents
        Will Unduly Prejudice NetApp........................................................................4

        1.   Because Sun has Open-Sourced ZFS, NetApp Risks Suffering a
            Unique Type of Irreparable Harm to Its Market Position...........................5

        2.   NetApp Also Risks Suffering Irreparable Harm to Its Reputation.............8

        3.   Delaying Resolution of this Dispute Would Also Cause Irreparable
            Harm to the Public, the Industry, and Open Source Community ...............8

        4.   The Length of Delay Caused by Waiting Years for Reexamination
            Proceedings to be Completed Would Unduly Prejudice NetApp...............8

    C.   Granting a Partial Stay is Unlikely to Simplify the Issues ....................................11

III.  CONCLUSION....................................................................................................................14

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Alltech, Inc. v. Cenzone Tech., Inc.,*
 No. 06-cv-0153, 2007 WL. 935516 (S.D. Cal. Mar. 21, 2007)....................................5, 10

5

*Biax Corp. v. Fujitsu Computer System Corp.,*
 No. 2:06-cv-364, 2007 WL 614187 (E.D. Tex. Feb. 26, 2007)........................................10

6

7

*Blonder-Tongue Laboratories, Inc. v. University Ill. Foundation,*
 402 U.S. 313 (1971)..............................................................................................12

8

*Comcast Cable Comm'ns Corp. v. Finisar Corp., No. C 06-4206,*
 2007 WL. 1052883 (N.D. Cal. Apr. 5, 2007)..........................................................3, 4, 12

9

10

*Commonwealth Sci. & Industrial Research Organisation v. Buffalo Tech. Inc.,*
 492 F. Supp. 2d 600 (E.D. Tex. 2007)........................................................................8

11

*Ethicon, Inc. v. Quigg,*
 849 F.2d 1422 (Fed. Cir. 1988) ...............................................................................12

12

13

*Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc., No. C 04-1431,*
 2007 WL. 1655625 (N.D. Cal. June 6, 2007)...........................................................3, 5, 10

14

*Fujitsu Ltd. v. Nanya Tech. Corp.,*
 2007 WL 3314623, at *3 (N.D. Cal. Nov. 6, 2007)................................................................2

15

16

*In re America Academy of Sci. Tech. Ctr.,*
 367 F.3d 1359 (Fed. Cir. 2004) ..................................................................................9

17

18

*In re Translogic Tech. Inc.,*
 504 F.3d 1249 (Fed. Cir. 2007) ...........................................................................12, 13

19

*Landis v. N. America Co.,*
 299 U.S. 248 (1936)..............................................................................................3, 4

20

21

*Lexington Lasercomb I.P.A.G. v. GMR Products, Inc.,*
 442 F. Supp. 2d 1277 (S.D. Fla. 2006) ........................................................................10

22

*Martek Biosciences Corp. v. Nutrinova, Inc.,*
 520 F. Supp. 2d 537 (D. Del. 2007)................................................................................6

23

24

*eBay v. MercExchange,*
 126 S. Ct. 1837 (2006)..............................................................................................6

25

*Muniauction, Inc. v. Thomson Corp.,*
 502 F. Supp. 2d 477 (W.D. Pa. 2007)..........................................................................6, 8

26

27

*Smith & Nephew, Inc. v. Synthes (U.S.A.),*
 466 F. Supp. 2d 978 (W.D. Tenn. 2006) .........................................................................6

28

*Soverain Software LLC v. Amazon.com, Inc.,*

**TABLE OF AUTHORITIES**
(continued)

Page(s)

356 F. Supp. 2d 660 (E.D. Tex. 2005)...........................................................................3

*Telemac Corp. v. Teledigital, Inc.*,
450 F. Supp. 2d 1107 (N.D. Cal. 2006) ....................................................................1, 3

*Translogic, Tech., Inc. v. Hitachi, Ltd.*,
250 Fed. Appx. 988, 2007 WL. 2973955 (Fed. Cir. Oct. 12, 2007)...............................13

*Viskase Corp. v. America National Can Co.*,
261 F.3d 1316 (Fed. Cir. 2001) ..................................................................................3

**STATUTES**

35 U.S.C. § 282...........................................................................................................12

35 U.S.C. §§ 305, 314(c) ..............................................................................................9

35 U.S.C. § 317(b).......................................................................................................12

37 C.F.R. § 1.510 et seq...............................................................................................9

1        NetApp, Inc. ("NetApp"), formerly Network Appliance, Inc., opposes Sun

2    Microsystems, Inc.'s ("Sun's") motion for partial stay pending reexamination of United States

3    Patent Nos. 5,819,292 ("the '292 patent"), 6,857,001 ("the '001 patent"), and 6,892,211 ("the

4    '211 patent") by the United States Patent and Trademark Office ("PTO").

5                                  **I. INTRODUCTION**

6        After stipulating specifically to have *this* Court resolve the parties' patent claims –

7    because of this Court's capability, availability and interest in doing so – Sun has now instead

8    sought a reexam for key NetApp patents. Yet, Sun's stipulation to have this Court hear the claims

9    at issue confirms its confidence in this Court's ability to resolve the parties' claims properly.

10   Likewise, its agreement to have such claims resolved "promptly" by this Court demonstrates that

11   its reexam request cannot be explained as some kind of desire for alacrity, particularly given the

12   notorious pace of Patent Office reexams, as explained below. Even if Patent Office reexam

13   practice is not in as bad a shape as commentators are currently suggesting, the average time to

14   resolve reexams such as those involved here is years from now. *See generally* Kunin Decl.

15       Truth be told, Sun's attempted "reexam and stay" litigation maneuver is, in fact, a

16   cynical attempt to gain tactical advantage through a stay motion. While it is understandable that a

17   party might attempt to gain litigation advantage with such a tactic, the law is absolutely clear that

18   stay requests should not be granted when they result in a substantial tactical disadvantage to one

19   of the parties. *See, e.g., Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D.

20   Cal. 2006) (denying a motion for a stay where "a possibly lengthy delay would put Telemac at a

21   clear tactical disadvantage."). In reality, the initial grant of a reexam is routine and occurs in

22   almost every case. It cannot be that one can place an infringement litigation on hold for years

23   simply by filing for a reexam and moving for a stay. Yet, that is the approach being attempted by

24   Sun.

25       In any event, the fact is that the protracted delay sought by Sun would unduly

26   prejudice NetApp and this strongly counsels against the grant of a litigation stay. A delay of even

27   a couple of years has the potential to cause irreparable harm to NetApp's market position and its

28   reputation. This is particularly true because Sun is not only infringing NetApp's patents through

NetApp, Inc. ("NetApp"), formerly Network Appliance, Inc., opposes Sun Microsystems, Inc.'s ("Sun's") motion for partial stay pending reexamination of United States Patent Nos. 5,819,292 ("the '292 patent"), 6,857,001 ("the '001 patent"), and 6,892,211 ("the '211 patent") by the United States Patent and Trademark Office ("PTO").

## I. INTRODUCTION

After stipulating specifically to have *this* Court resolve the parties' patent claims – because of this Court's capability, availability and interest in doing so – Sun has now instead sought a reexam for key NetApp patents. Yet, Sun's stipulation to have this Court hear the claims at issue confirms its confidence in this Court's ability to resolve the parties' claims properly. Likewise, its agreement to have such claims resolved "promptly" by this Court demonstrates that its reexam request cannot be explained as some kind of desire for alacrity, particularly given the notorious pace of Patent Office reexams, as explained below. Even if Patent Office reexam practice is not in as bad a shape as commentators are currently suggesting, the average time to resolve reexams such as those involved here is years from now. *See generally* Kunin Decl.

Truth be told, Sun's attempted "reexam and stay" litigation maneuver is, in fact, a cynical attempt to gain tactical advantage through a stay motion. While it is understandable that a party might attempt to gain litigation advantage with such a tactic, the law is absolutely clear that stay requests should not be granted when they result in a substantial tactical disadvantage to one of the parties. *See, e.g., Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (denying a motion for a stay where "a possibly lengthy delay would put Telemac at a clear tactical disadvantage."). In reality, the initial grant of a reexam is routine and occurs in almost every case. It cannot be that one can place an infringement litigation on hold for years simply by filing for a reexam and moving for a stay. Yet, that is the approach being attempted by Sun.

In any event, the fact is that the protracted delay sought by Sun would unduly prejudice NetApp and this strongly counsels against the grant of a litigation stay.

## REDACTED

**REDACTED**

The problems caused by Sun's open sourcing of software, which software Sun itself admits is based on NetApp's innovations, can be analogized to the practical problems in enforcing intellectual property rights against entities that distribute infringing copies of music. **REDACTED** is therefore vital for this Court to provide prompt clarity regarding the infringing character of ZFS. *Id.* Both the open source community and NetApp deserve the prompt clarity this Court is in a position to provide by not deferring these claims to the extended – and much criticized – Patent Office reexam process.

In addition, Sun's motion, if granted, would create a highly prejudicial imbalance in the number of claims each party is bringing to the table – a situation that would grossly distort the parties' true relative positions in this suit. Indeed, Sun unreasonably asks that it be allowed to march forward with its infringement claims for thirteen patents while NetApp be reduced to four patents and, more importantly, be stripped of core claims that actually pertain to the technology at the heart of this suit. *See Fujitsu Ltd. v. Nanya Tech. Corp.*, No. C 06-6613, 2007 WL 3314623, at *3 (N.D. Cal. Nov. 6, 2007) ("The Court also agrees with Fujitsu that it would be unreasonable to permit Nanya to proceed on its infringement claims against Fujitsu while staying Fujitsu's infringement proceedings against Nanya, as Nanya proposes.").

In sum, Sun obviously did not file the reexam to speed resolution of the parties' disputes, and Sun obviously does not have less confidence in the efficacy of this Court's processes than those of the Patent Office bureaucracy. Where there is a risk that delay in the resolution of patent infringement claims will irreparably harm the patent owner, and the technology community more generally, and a capable and willing Court is available, a tactically-

1   driven stay motion such as this one should be denied.

2                              **II. ANALYSIS**

3          Although is it is within this Court's discretion to grant a stay, this Court is of

4   course "under no obligation to delay its own proceedings by yielding to ongoing PTO patent

5   reexaminations" including those initiated only after the infringement action has been filed.

6   *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 04-1431, 2007 WL 1655625, at *3

7   (N.D. Cal. June 6, 2007); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed.

8   Cir. 2001).   Even Sun acknowledges that there is not some kind of automatic rule that patent

9   cases should be stayed pending reexam.   Such a rule 'would invite parties to unilaterally derail'

10  litigation" as Sun attempts to do here.   *Fresenius*, 2007 WL 1655625 at *3 (citing *Soverain*

11  *Software LLC v. Amazon.com, Inc.*, 356 F. Supp.2d 660, 662 (E.D. Tex. 2005).   As one judge in

12  this district has observed:

13                   If litigation were stayed every time a claim in suit undergoes
                     reexamination, federal infringement actions would be dogged by fits and
14                   starts.   Federal court calendars should not be hijacked in this manner.
                     From a case management perspective, the possible benefits must be
15                   weighed in each instance against the possible drawbacks.

16  *Comcast Cable Comm'ns Corp. v. Finisar Corp.*, No. C 06-4206, 2007 WL 1052883, at *1 (N.D.

17  Cal. Apr. 5, 2007).

18         The Supreme Court has cautioned that a court "must weigh competing interests

19  and maintain an even balance" before exercising its inherent power to stay a case.   *Landis v. N.*

20  *Am. Co.*, 299 U.S. 248, 255-56 (1936).   When ruling upon a motion for a stay pending patent

21  reexamination, courts consider (1) whether discovery is complete and whether a trial date has

22  been set; (2) whether a stay will simplify the issues; and (3) whether a stay will unduly prejudice

23  or present a clear tactical disadvantage to the non-movant.   *Telemac Corp.*, 450 F. Supp.2d at

24  1111.

25      A.     **THE PARTIES STIPULATED TO APPEAR BEFORE THIS COURT TO FACILITATE A
               PROMPT RESOLUTION OF THIS DISPUTE AND DISCOVERY IS PROCEEDING**
26             **EXPEDITIOUSLY.**

27         In all likelihood, this litigation will be completed long before the reexamination

28  proceedings.   The parties arrived at this Court with this important case because they knew that

NETAPP'S OPPOSITION TO SUN'S MOTION FOR
PARTIAL STAY
                                              3                          CASE NO. C-07-06053 EDL

1    this Court would diligently and effectively resolve their claims promptly:

2    > Plaintiff believes in particular that having Judge Laporte preside
     > over both of the parties' patent cases will lead to a just and speedy
3    > resolution of all of their disputes. Counsel for the parties have
     > conferred with Judge Laporte, who has agreed to hear this matter
4    > and to conduct a prompt Case Management Conference with the
     > goal of a prompt resolution of the disputes. The parties have
5    > consented to have Judge Laporte hear this matter for all purposes[.]

6    Agreed Motion to Transfer at 1-2. *NetApp v. Sun* (9:07-cv-206 RHC, E.D. Tex.) [Docket 37].

7    Although it is true that no trial date has been set by the court, and although Sun

8    attempts to make much of that fact, that argument should carry little weight in the Court's

9    analysis. Consistent with their goal of promptly resolving this dispute, the parties are working

10   diligently to prepare their respective cases in this litigation. Ho Decl. ¶ 2. Indeed, discovery is

11   well under way and is moving at an expedited pace, with the initial disclosures for the three

12   patents that are the subject of this motion proceeding substantially faster than even the default

13   patent rules would provide. The parties have not only served their initial disclosures and required

14   disclosures under Patent L.R. 3-2 and 3-4, but both sides have already served multiple sets of

15   interrogatories, requests for production, requested depositions for the first two weeks of May. *Id.*

16   ¶¶ 3-5, 7. Counsel have met and conferred regarding document production and are on the verge

17   of producing documents; rolling production of documents is likely to begin in the next few

18   weeks. *Id.* ¶ 6; *see also Comcast*, 2007 WL 1052883, at *1 (denying a motion to stay and finding

19   significant that "the parties are on the verge of producing documents after much preparation to do

20   so").

21   **B.    STAYING THE PROCEEDINGS WITH RESPECT TO THE '292, '001, AND '211
22          PATENTS WILL UNDULY PREJUDICE NETAPP.**

23   Of the three factors in determining whether to stay litigation pending a patent

     reexam, the most important consideration is the possibility of undue prejudice or clear tactical
24
     disadvantage to the non-movant. *See Landis*, 299 U.S. at 255 (noting that the party seeking a stay
25
     "must make out a clear case of hardship or inequity in being required to go forward, if there is
26
     even a fair possibility that the stay for which he prays will work damage to some one else").
27
     Courts have recognized that because the reexamination process "may be lengthy, often taking
28

NETAPP'S OPPOSITION TO SUN'S MOTION FOR
PARTIAL STAY

CASE NO. C-07-06053 EDL

1    years to run its course," a patentee may be prejudiced by the accused infringer's continued

2    marketing of purportedly infringing technology (much more the "open sourcing" of

3    infringement). *Fresenius*, 2007 WL 1655625, at \*5. Moreover, as with any delay in litigation,

4    "evidence could be lost and witnesses' memories could fade." *Id.*; *see also Alltech, Inc. v.*

5    *Cenzone Tech., Inc.*, No. 06-cv-0153, 2007 WL 935516, at \*2, (S.D. Cal. Mar. 21, 2007).

6             This dispute is not a routine patent dispute between parties involving a simple fight

7    over the right to royalties. Here, not only is NetApp suffering direct harm from Sun as it markets

8    a new product line based on infringing technology, but Sun's careless decision to freely release *to*

9    *the public domain* a software package embodying infringing ZFS technology has created a

10   degree of widespread irreparable harm that is uncommonly threatening. Indeed, Sun itself has

11   suggested that nothing can be done to truly stop its infringing ZFS software from continuing its

12   metastasis throughout the industry and marketplace:

13              [NetApp's] objectives were clear - number one, [NetApp would] like us to
                unfree ZFS, to retract it from the free software community. *Which reflects*
14              *a common misconception among proprietary companies - that you can*
                *unfree, free. You cannot.*
15

16   *See* Hitz Decl. Exh. B. (emphasis added).

17           Accordingly, now is not the time to selectively remove from this dispute three core

18   patents in favor of a sluggish reexamination process. On the contrary, and as set forth below,

19   only a timely judgment that confirms the validity and infringement of NetApp's patents to the

20   industry and to the open-source community will prevent NetApp from suffering an unacceptable

21   level of irreparable harm and undue prejudice from a multiplicity of sources that are rapidly

22   becoming increasingly delocalized.

23                                **REDACTED**                                          [1]   Hitz

24   Decl. ¶ 9.

25

26

27   ---
     [1]  Though NetApp of course wishes to maintain its position in the marketplace, it is worth noting
28   that NetApp is not using this lawsuit as a means to prevent the non-commercial use of software,
     such as in an academic or research setting. that may technically be deemed to infringe.

1      **1.      Because Sun has Open-Sourced ZFS, NetApp Risks Suffering a
             Unique Type of Irreparable Harm to Its Market Position.**

2           This is not the typical patent infringement case.   Because Sun has made its

3    infringing ZFS software available for free to anyone who wants to use it, NetApp will be unduly

4    prejudiced by any delay in adjudication.

5

6

7                               **REDACTED**

8

9

10

11

12

13

14

15                              **REDACTED**

16

17

18

19

20

21                              **REDACTED**

22

23

24

25          The concerns raised above are especially acute because this is not just a situation

26    _____
      2  In deciding whether to issue permanent injunctive relief in the wake of the Supreme Court's
      decision in *eBay v. MercExchange,* 126 S. Ct. 1837 (2006), courts have repeatedly viewed
27    damage to a plaintiff's market position as constituting irreparable harm.  *See, e.g., Martek
      Biosciences Corp. v. Nutrinova, Inc.,* 520 F. Supp. 2d 537, 558 (D. Del. 2007); *Muniauction, Inc.
      v. Thomson Corp.,* 502 F. Supp. 2d 477, 482-483 (W.D. Pa. 2007); *Smith & Nephew, Inc. v.*
28    *Synthes (U.S.A.),* 466 F. Supp. 2d 978, 983 (W.D. Tenn. 2006).

1   where Sun has passively distributed ZFS.  Rather, Sun has actively encouraged the adoption of

2   ZFS by telling the industry that no negative consequences will flow from its use, despite the

3   pending lawsuit.  Sun has even called the litigation "spurious."  For instance, in his October 24,

4   2007 blog entry, Sun's CEO Jonathan Schwartz publicly stated that "we've always protected our

5   markets from trolls, so customers can continue to use ZFS without concern for spurious patent

6   and copyright issues."  *See* Hitz Decl. Exh. B.  As another example, Sun has stated that "[w]e've

7   let Apple know we will use our patent portfolio to protect them and the Mac ZFS community

8   from Net App.  With or without a commercial relationship to Sun."  *Id.*  Such statements fueling

9   the proliferation of infringing ZFS software make the need for the prompt adjudication of

10  NetApp's patent claims, as stipulated to by the parties only a few months ago, even more

11  apparent.

12
                                **REDACTED**
13

14

15

16

17

18

19
                                **REDACTED**
20

21

22

23

24

25

26

27
                                **REDACTED**
28

**REDACTED**

    2.    **NetApp Also Risks Suffering Irreparable Harm to Its Reputation.**

The longer this litigation drags on, the greater the harm that will result to NetApp's reputation.[3] From the outset of this dispute, Sun has repeatedly disparaged NetApp by publicly accusing NetApp of attempting to stifle the open source community, asserting meritless patents, and infringing Sun's patents. Hitz Decl. ¶ 17. Indeed, as noted above, Sun's CEO has even openly called NetApp a "patent troll." *See* Hitz Decl. Exh. B.


**REDACTED**


Indeed, even valid IP assertions are not viewed favorably by many members of the open source community; the mere participation in a lawsuit can bear a reputational cost. *Id.* ¶ 19. Should the Court grant Sun's motion for a partial stay, NetApp will suffer additional harm as this matter is prolonged. *Id.*

    3.    **Delaying Resolution of this Dispute Would Also Cause Irreparable Harm to the Public, the Industry, and Open Source Community.**

If it remains unsettled whether ZFS infringes NetApp's patents, users of ZFS may also be harmed by the delay, particularly if Sun misleads members of the industry and open source community into adopting ZFS under the erroneous belief that NetApp's patents are invalid. *Id.* ¶ 20. Such adopters may rely heavily on ZFS when developing their businesses and technology, only to have to abandon their investments when infringement is established. *Id.* Others will await resolution of this litigation before determining what they can and cannot do with ZFS. *Id.* Thus, the sooner the true status of ZFS is determined, the better.

    4.    **The Length of Delay Caused by Waiting Years for Reexamination Proceedings to be Completed Would Unduly Prejudice NetApp.**

In light of the above, it is clear that time is of the essence. But a reexam of core

---

[3] In deciding whether to issue permanent injunctive relief, courts have repeatedly viewed damage to a plaintiff's reputation as constituting irreparable harm. *See, e.g., Muniauction, Inc. v. Thomson Corp.*, 502 F. Supp. 2d 477, 483 (W.D. Pa. 2007); *Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600, 604 (E.D. Tex. 2007).

1    patents in this dispute would provide anything but a timely adjudication of NetApp's claims, as

2    described below and in the accompanying Declaration of Stephen G. Kunin, who served for ten

3    years as Deputy Commissioner for Patent Examination Policy.  As Deputy Commissioner, Mr.

4    Kunin directed the revision of the Manual of Patent Examining Procedure including the specific

5    chapters covering *ex parte* and *inter partes* reexamination procedures and also the establishment

6    of the Rules of Practice (found at 37 C.F.R. § 1.510 et seq. and § 1.903 et seq.) specifically

7    applicable to *ex parte* and *inter partes* reexamination proceedings.  *See* Kunin Decl. ¶ 13.

8            Despite the statutory and regulatory provisions calling for reexaminations to be

9    conducted with "special dispatch," 35 U.S.C. §§ 305, 314(c), there are in fact few strict deadlines

10   imposed on examiners after the first action and such examinations have not been swift.  And, with

11   a grossly backlogged PTO operating with limited resources, the unfortunate truth is that

12   reexamination proceedings can literally take years, assuming they are ever completed at all.  *See,*

13   *e.g., In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359 (Fed. Cir. 2004) (affirming the Board of

14   Patent Appeals and Interferences approximately **ten years** after reexamination was first

15   requested).

16           For instance, not one single *inter partes* reexamination, has ever proceeded

17   through each step of the entire reexamination process in the over eight years since the inception

18   of the *inter partes* reexamination option.  Kunin Decl. ¶ 48.  Indeed, the sample sizes are so small

19   that the currently available statistics concerning the likelihood of claims being confirmed,

20   cancelled or amended (upon which Sun relies in arguing for a stay) have little, if any, predictive

21   value.  *Id.* ¶¶ 29, 50.  Only 15 *inter partes* Reexamination Certificates have ever issued, and all

22   were issued because of inaction and default by the Patent Owner or third party requester; ***none***

23   were issued because of any final adjudication on the merits by the BPAI.  *Id.* ¶ 49.  In fact, since

24   1999, only three *inter partes* reexaminations have ever received a BPAI decision.  Each of these

25   reexaminations took 4 to 5 years to reach that point, only to be remanded to the Examiner for

26   further consideration.  As of this date, all three are still pending.  *Id.* ¶ 45; *see also* Kunin Decl.

27   Exh. N.

28           Sun's motion for partial stay asks that the litigation of the '001 and '211 patents be

NETAPP'S OPPOSITION TO SUN'S MOTION FOR
PARTIAL STAY                                                          CASE NO. C-07-06053 EDL

9

1    stayed until a Reexamination Certificate issues, which requires a final decision by the BPAI and a

2    possible appeal of the BPAI decision to the Federal Circuit.  Yet, in the eight years since *inter*

3    *partes* reexaminations have been available, no *inter partes* reexamination has ever reached that

4    stage. *Id.* ¶ 45.  Should the Court grant Sun's request for a stay, it will almost certainly be at least

5    4-5 years before any kind of resolution.   It is therefore crystal clear that *inter partes*

6    reexamination is not the quickest or most efficient vehicle to provide the industry and open source

7    community with sorely needed guidance regarding the status of NetApp's patents.

8             The situation is not much better when it comes to *ex parte* reexaminations, for

9    which the *average* pendency is two years; the particular proceedings for any particular patent

10   could easily take much longer. *See* Kunin Decl. Exh. I.  After the Patent Office has reviewed and

11   responded to the Patent Owner's response to the initial Office Action, the patent owner has six

12   months to file an appeal to the BPAI. Kunin Decl. ¶ 53.  The BPAI briefing cycle could then take

13   as long as 4 months, at which point 6-12 additional months may elapse before a BPAI oral

14   hearing. *Id.* ¶¶ 53-54.  Following the BPAI oral hearing, it may take an additional 1-3 months for

15   a receipt of the BPAI decision, at which point the patent owner may request rehearing, a process

16   that could take an additional 4 months.  *Id.* ¶ 54.  If the BPAI decision remains unfavorable, the

17   patent owner may appeal to the Federal Circuit, which will sets its own schedule for briefing and

18   argument.  *Id.* ¶ 55.  The median time for disposition in the Federal Circuit for an appeal of a

19   PTO decision is 9.6 months.  *Id.*  Considering all of the above, there can be little doubt that that

20   Sun's motion, if granted, will result in years of delay, even under the most optimistic view of

21   circumstances.

22            Recognizing the lingering, protracted delay that results from staying litigation

23   pending reexaminations proceedings, courts have acknowledged that this delay corresponds to a

24   genuine prejudice.   *See, e.g., Frenesius*, 2007 WL 1655625, at *5 (observing that the

25   reexamination process "may be lengthy, often taking years to run its course," and the opposing

26   party "may be unduly prejudiced by the lapse of time during reexamination"); *Alltech*, 2007 WL

27   935516, at *2; *Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-cv-364, 2007 WL 614187, at

28   *2 (E.D. Tex. Feb. 26, 2007); *Lexington Lasercomb I.P.A.G. v. GMR Prods., Inc.*, 442 F. Supp.

NETAPP'S OPPOSITION TO SUN'S MOTION FOR
PARTIAL STAY

CASE NO. C-07-06053 EDL

1   2d 1277, 1278 (S.D. Fla. 2006).  Where, as here, the delay from a reexamination is inextricably

2   coupled to an almost certain risk of irreparable harm not only to NetApp's market position and

3   reputation, but also to the public and the storage industry as a whole, granting a stay would

4   clearly result in undue prejudice.  This factor therefore weighs heavily against a stay.

5       **C.      GRANTING A PARTIAL STAY IS UNLIKELY TO SIMPLIFY THE ISSUES.**

6           Given the current status of Sun's reexam requests, Sun's bold assertions

7   regarding the possibility of having claims in the '292, '001, or '211 cancelled or narrowed during

8   the reexamination process ring hollow.  Indeed, for Sun's *ex parte* reexam request, the PTO has

9   thus far granted reexamination with respect to only *two* of the *three* independent claims of the

10  '292 patent that Sun asked to be reexamined.  *See* Kunin Decl. Exh. H.  Given that the PTO

11  grants 92% of all *ex partes* reexam requests, *see* Kunin Decl. Exh. I, Sun's failure to thus far

12  demonstrate a substantial new question of patentability for an independent claim of the '292

13  patent actually speaks poorly of its chances for overall success.  Furthermore, neither of the two

14  independent claims that the PTO did agree to reexamine has been rejected by the Examiner yet,

15  and it is likely that no Office Action will issue until the PTO decides whether to grant Sun's

16  second request for reexamination and, if so, whether to merge the two reexamination proceedings.

17  Kunin Decl. ¶ 36.

18          Second, with respect to its *inter partes* reexaminations, Sun makes much of the

19  fact that the PTO has granted reexamination with respect to all the claims of the '001 and '211

20  patents based on a finding of substantial new questions of patentability, when in reality such

21  findings are commonplace.  Indeed, almost all (~96%) requests for *inter partes* reexamination are

22  granted.  *See* Kunin Decl. Exh. G.  Moreover, while the Examiner rejected the claims of the '001

23  patent in the first Office Action, this has no bearing on the ultimate outcome, because initial

24  rejections are also almost as equally commonplace as findings of substantial new questions of

25  patentability, occurring in approximately 90% of all *inter partes* reexamination proceedings.  *Id.* ¶

26  20.  As for the '211 patent, there has not yet been an Office Action and no claims have been

27  rejected by the examiner.  *Id.* ¶ 27.  In short, none of the reexamination proceedings to date have

28  any significance, particularly as NetApp has yet to submit any arguments or evidence in response.

NETAPP'S OPPOSITION TO SUN'S MOTION FOR
PARTIAL STAY                                                        CASE NO. C-07-06053 EDL

1    *Id.* ¶¶ 22, 27 & 37.

2           Sun's dire predictions regarding the percentage of claims that are cancelled or

3    amended in *inter partes* reexaminations are based on such a small sample size that they have no

4    predictive value for the '001 or '211 patents and thus no probative value. *Id.* ¶¶ 29, 50. As for the

5    *ex parte* reexamination statistics, even if they are taken at face value, the PTO has only granted

6    reexamination for two claims of the '292 patent, so Sun's broad assertion that the reexamination

7    proceedings will have a "major impact," Motion at 9, is hardly supported. *See Comcast*, 2007

8    WL 1052883, at *1 ("The chance that all claims in suit would evaporate is nonexistent as a

9    practical matter, even before considering that *some claims in suit will not be covered by the*

10   *reexaminations*.") (emphasis added).

11          In the unlikely event that any of the asserted claims in the '292, '001, or '211

12   patents are found to be invalid by this Court and the invalidity finding upheld on appeal, this

13   dispute would be resolved. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1429 (Fed. Cir. 1988) (citing

14   *Blonder-Tongue Labs., Inc. v. Univ. Ill. Found.*, 402 U.S. 313 (1971)). On the flip side, if Sun

15   fails to prove that any asserted claims of the '001 or '211 patents are invalid, any *inter partes*

16   reexamination of that patent will also be terminated. 35 U.S.C. § 317(b). The *ex parte*

17   reexamination proceeding of the '292 patent, however, could nonetheless proceed even if Sun

18   fails to prove that any asserted claims are invalid "because, of course, the two forums have

19   different standards of proof for determining invalidity" and "[c]ourts do not find patents 'valid,'

20   only that the patent challenger did not carry the 'burden of establishing invalidity in the *particular*

21   *case* before the court' under 35 U.S.C. § 282." *Ethicon*, 849 F.2d at 1428-29 & n. 3 (emphasis in

22   original and internal citations omitted).

23          By arguing that the PTO's finding of patent invalidity during a reexamination

24   proceeding would supersede the district court's final judgment of validity, Sun grossly misstates

25   the holding of *In re Translogic Tech. Inc.*, 504 F.3d 1249, 1262 (Fed. Cir. 2007).[4]   There, the

26   _____

27   [4] Citing *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1262 (Fed. Cir. 2007), Sun states that the "dispositive issue of invalidity will not be finally decided until the PTO completes its reexamination proceedings – *whether or not a stay is granted here*." *See* Motion at 11. In other

28   words, Sun suggests that *In re Translogic* teaches that the PTO reexamination process has a retroactive collateral estoppel effect on any prior district or appellate court proceedings, such that

NETAPP'S OPPOSITION TO SUN'S MOTION FOR
PARTIAL STAY                                                                    CASE NO. C-07-06053 EDL

1   litigation and reexamination proceedings concluded at roughly the same time; the judgments of

2   the district court and the Board of Patent Appeals and Interferences were both appealed to the

3   Federal Circuit. *See In re Translogic*, 504 F.3d at 1251. Both appeals were simultaneously heard

4   by the same panel and decisions were rendered the same day. *Id.* In the second appeal, the

5   district court's judgment was vacated in light of the panel's holding that the patent-in-suit was

6   correctly found to be invalid during the reexamination proceedings. *See Translogic, Tech., Inc. v.*

7   *Hitachi, Ltd.*, 250 Fed. Appx. 988, 2007 WL 2973955, at *1 (Fed. Cir. Oct. 12, 2007). Thus, the

8   actual holding of the *Translogic* cases is the unremarkable proposition that once a patent has been

9   found *invalid*, whether in litigation or in reexamination, the other proceeding may be rendered

10  moot, as explained above.

11          Significantly, this means that the ***quickest and most efficient*** way to resolve the

12  dispute between the parties over the '292, '001, and '211 patents is to deny Sun's motion for a

13  partial stay and allow the parties to litigate those issues. As Sun correctly points out, the parties

14  are already aware of "the practical need to streamline this patent-crowded case where

15  appropriate." Motion at 1. The parties will naturally simplify the issues as much as they can.

16  NetApp fully intends to—and should be allowed the opportunity to—present to the Court what it

17  believes to be the most important issues without Sun unilaterally derailing the litigation with

18  respect to its core claims.

19          Ironically, granting Sun's motion to stay has the potential to complicate, rather

20  than simplify matters for the Court. Sun has already initiated two additional patent infringement

21  lawsuits pending before this Court. As the Court is surely aware, managing these related cases

22  will be a challenge with three staggered case schedules proceeding in parallel. Granting a partial

23  stay with respect to the '292, '001, and '211 patents would only further exacerbate this case

24  management headache by creating what would essentially be a fourth track of litigation.

25  Accordingly, this factor also weighs against granting a stay.

26

27

28

there is actually no reason to ever proceed with a civil action if a reexam is pending in parallel.

1

## III. CONCLUSION

2      For the aforementioned reasons, granting Sun's motion for a partial stay pending

3   reexamination of the '001, '211, and '292 patents will unduly prejudice NetApp, give Sun an

4   unfair tactical advantage in this litigation, and only complicate matters for the Court.  Given the

5   unique circumstances presented by this case, NetApp respectfully urges the Court to deny Sun's

6   motion for a partial stay.

7

8   Dated:  April 29, 2008              /s/ Edward R. Reines
                                        Matthew D. Powers
9                                       Edward R. Reines
                                        Jeffrey G. Homrig
10                                      Jill J. Ho
                                        WEIL, GOTSHAL & MANGES LLP
11                                      201 Redwood Shores Parkway
                                        Redwood Shores, CA 94065
12                                      Telephone: (650) 802-3000
                                        Facsimile: (650) 802-3100
13
                                        Attorneys for Plaintiff-Counterclaim Defendant
14                                      NetApp, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28