1   MARK D. FOWLER (Bar No. 124235)
    mark.fowler@dlapiper.com
2   DAVID ALBERTI (Bar. No. 220625)
    david.alberti@dlapiper.com
3   CHRISTINE K. CORBETT  (Bar No. 209128)
    christine.corbett@dlapiper.com
4   YAKOV M. ZOLOTOREV (Bar No. 224260)
    yakov.zolotorev@dlapiper.com
5   CARRIE L. WILLIAMSON (Bar No. 230873)
    carrie.williamson@dlapiper.com
6
    DLA PIPER US LLP
7   2000 University Avenue
    East Palo Alto, CA  94303-2215
8   Tel:  650.833.2000
    Fax:  650.833.2001
9
    Attorneys for Defendant and Counterclaimant
10  Sun Microsystems, Inc.

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

15  NETWORK APPLIANCE, INC.,              CASE NO.  3:07-CV-06053 EDL (JCS)

16              Plaintiff – Counterclaim    **SUN MICROSYSTEMS, INC.'S REPLY IN
                Defendant,                  SUPPORT OF MOTION FOR PARTIAL
                                            STAY OF THE CASE PENDING
17       v.                                 REEXAMINATION OF UNITED STATES
                                            PATENT NOS. 5,819,292, 6,857,001 AND
18  SUN MICROSYSTEMS, INC.,                 6,892,211**

19              Defendant –                 **Date: May 13, 2008
                Counterclaimant.            Time: 2:00 p.m.
20                                          Courtroom: E, 15th Floor
                                            Hon. Elizabeth D. Laporte**
21

22

23

24                      **PUBLIC VERSION**

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................... 1

II.  ANALYSIS ............................................................................................................. 1

      A.   NetApp Ignores Both The Liberal Policy In Favor of Granting Motions to Stay And Prevailing Precedent In The Northern District Of California ................ 1

      B.   The Relevant Factors Warrant A Partial Stay In This Action................................. 2

            1.   Discovery Is At An Early Stage And No Trial Date Is Set......................... 2

            2.   Granting A Stay Will Simplify The Issues ................................................. 4

            3.   A Stay Would Not Unduly Prejudice NetApp ............................................ 6

                  a.   There Is No Merit To NetApp's Contention That A Stay Will   Unduly Prejudice NetApp Because ZFS Is Open Source   Software ........................................................................ 7

                  b.   NetApp Has Shown No Harm, Or Risk Of Harm, To Its Reputation ...................................................................................... 9

                  c.   NetApp's "Harm to the Public" Argument Also Lacks Merit ...... 10

                  d.   The Delay Inherent In The Reexam Process Does Not Constitute Undue Prejudice ......................................................... 10

                  e.   NetApp Fails To Argue Any "Clear Tactical Disadvantage" Should The Court Issue A Partial Stay ........................................ 13

III. CONCLUSION ....................................................................................................... 14

1

# TABLE OF AUTHORITIES

2

Page

3

## FEDERAL CASES

4

*ASCII Corp. v. STD Entertainment USA, Inc.*,
   844 F.Supp. 1378 (N.D. Cal. 1994) ........................................................ 1

5

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,
   129 F.3d 1247 (Fed. Cir. 1997).............................................................. 5

6

7

*Comcast Cable Communications Corp., LLC v. Finisar Corp.*,
   2007 WL 1052883 (N.D. Cal. 2007)....................................................... 3

8

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
   388 F.3d 858 (Fed. Cir. 2004)................................................................ 5

9

*Direct Imaging Sys., Inc. v. U.S. Graphic Arts, Inc.*,
   2007 WL 778633 *3 (M.D. Fla 2007) .................................................... 5

10

11

*Frenesius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
   2007 WL 1655625, *2 (N.D. Cal. 2007) ........................................... 10, 11

12

*Ho Keung Tse v. Apple, Inc.*,
   2007 WL 2904279 (N.D. Cal. 2007)........................................ 1, 2, 10, 12, 14

13

14

*In re Cygnus Telecomms. Tech., LLC, Patent Litig.*
   385 F.Supp.2d 1022 (N. D. Cal. 2005) ............................................... 5, 11

15

*KLA-Tencor Corp. v. Nanometrics, Inc.*,
   2006 WL 708661 (N.D. Cal. 2006)............................................ 1, 4, 12, 14

16

17

*Landis v. N. American Co.*,
   299 U.S. 248 (1936) ............................................................................. 12

18

*Nanometrics, Inc. v. Nova Measuring Instruments,Ltd.*,
   2007 WL 627920(N.D. Cal. 2007)....................................... 1, 3, 4, 11

19

20

*Patlex Corp. v. Mossinghoff*,
   758 F.2d at 594 (Fed. Cir. 1985)........................................................... 11

21

*Research In Motion, Ltd. v. Visto Corp.*,
   2008 WL 544482 (N.D. Cal. 2008)......................................................... 4

22

23

*Sorensen v. Digital Networks N. Am., Inc.*,
   2008 WL 152179 *1 (N.D. Cal. 2008).......................................... 1, 4, 10

24

*Telemac Corp. v. Teledigital, Inc.*,
   450 F. Supp. 2d 1107 (N.D. Cal. 2006) ................................................ 14

25

26

## DOCKETED CASES

27

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*, Case No. C-07-4413 (PJH) .............. 1

28

-ii-

## I.    INTRODUCTION

Like a hot air balloon, once the hot air is removed from Network Appliance, Inc.'s ("NetApp") arguments, the hollow shell of NetApp's position quickly fails and crashes. Specifically, once stripped of the rank speculation and baseless assertions pervading its opposition brief, NetApp's arguments are revealed to lack any competent foundation. Even the case law cited by NetApp – to the extent it is relevant at all – supports the issuance of a stay on the facts of this case.

If, instead, the actual facts are considered within the context of the three-factor standard to be applied by the Court – particularly in light of the well-established liberal policy in favor of granting stays pending reexamination – the proper result is clear. The Court should issue a partial stay as to the three ill-fated NetApp reexam patents for the reasons the same result was reached in many other Northern District of California cases involving similar facts. Such a stay would both accrue all of the advantages discussed in these cases and in Sun Microsystems, Inc.'s ("Sun") moving papers, while at the same time permit NetApp to proceed with its infringement case against Sun's ZFS software on the remaining four NetApp patents-in-suit. Such a stay also would have the indirect, but beneficial, effect of partially streamlining this patent-heavy case that the parties and the Court have stated needs streamlining.

## II.    ANALYSIS

### A.    NetApp Ignores Both The Liberal Policy In Favor of Granting Motions to Stay And Prevailing Precedent In The Northern District Of California.

Significantly, NetApp ignores the "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination…proceedings." *Sorensen v. Digital Networks N. Am., Inc.*, 2008 WL 152179, *1 (N.D. Cal. 2008); *Ho Keung Tse v. Apple, Inc.*, 2007 WL 2904279 (N.D. Cal. 2007); *Nanometrics, Inc. v. Nova Measuring Instruments,Ltd.*, 2007 WL 627920 (N.D. Cal. 2007); *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, Case No. C-07-4413 (PJH) (N.D. Cal. 2007); *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661 (N.D. Cal. 2006); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). NetApp also ignores, and fails to distinguish, the many Northern District of California cases cited

-1-

1  by Sun in which this Court stayed a patent infringement action pending reexamination in the

2  United States Patent and Trademark Office ("PTO"). *See* Sun Mot., at 7.

3       **B.      The Relevant Factors Warrant A Partial Stay In This Action.**

4       The parties agree that in determining whether to grant a stay pending reexamination,

5  courts consider: (1) whether discovery is complete and whether a trial date has been set; (2)

6  whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay

7  would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Ho*

8  *Keung Tse*, 2007 WL 2904279, at * 2; NetApp Opp. at 3. However, rather than focusing on, and

9  providing competent evidence germane to, these three factors, NetApp devotes considerable

10  attention to advancing irrelevant and speculative positions. A focused analysis, based upon

11  competent evidence, supports granting a partial stay of this action with respect to United States

12  Patent Nos. 5,819,292, 6,857,001 and 6,892,211 (collectively, the "Reexam Patents").

13       **1.      Discovery Is At An Early Stage And No Trial Date Is Set.**

14       No trial date has been set. Although this is an important factor to be considered by the

15  Court, NetApp's "analysis" of this factor is limited to its assertion, without elaboration, that the

16  absence of a trial date "should carry little weight in the Court's analysis." NetApp Opp. at 4.

17  This factor undeniably favors a stay, and NetApp's attempt to ignore the importance of this factor

18  does not alter this conclusion.

19       Moreover, despite NetApp's attempt to paint this case as one in which "discovery is well

20  under way" and moving at an "expedited pace" (NetApp Opp. at 4), the actual facts tell a very

21  different story. In fact, other than a case in which no discovery activity has occurred at all, it is

22  difficult to imagine a case at an earlier stage of discovery than this case. Neither Sun nor NetApp

23  has produced any documents (other than those required to be produced pursuant to the Patent

24  Local Rules). Declaration of Christine Corbett In Supp. of Reply ("Corbett Decl."), ¶ 2. Indeed,

25  to date (over seven months since NetApp initiated this lawsuit), NetApp is unable to commit to a

26  date certain for the production of documents, and has indicated during recent conference calls

27  with Sun's counsel that it is unsure whether it can even begin a rolling document production on

28  May 9, 2008. Corbett Decl., ¶ 3.

-2-

1    Furthermore, no depositions have been noticed or taken. Corbett Decl., ¶ 4. In fact, while

2    the parties have discussed taking a few depositions during the first two weeks of May, NetApp is

3    unable to commit to scheduling any depositions because it is unsure of when it can produce

4    documents on behalf of the deponents in response to Sun's document requests. Corbett Decl., ¶

5    5. Moreover, the requested depositions have *nothing* to do with the three Reexam Patents.

6    Corbett Decl., ¶ 6.

7    NetApp also incorrectly informs the Court that "both sides have already served multiple

8    sets of interrogatories, requests for production...." NetApp Opp. at 4. In fact, NetApp has served

9    only one set of interrogatories and one set of requests for production. Corbett Decl., ¶ 7. In light

10   of all of these facts, it certainly is true that discovery is at an early stage in this case.[1]

11   NetApp also incorrectly asserts that the "initial disclosures for the three patents that are

12   the subject of this motion are proceeding substantially faster than even the default patent rules

13   would provide." NetApp Opp. at 4. While NetApp, on its own accord, served its own

14   preliminary infringement contentions three weeks early, all disclosures are now on the same, non-

15   expedited track. Corbett Decl., ¶ 8.

16   In purported support of its position, NetApp cites *Comcast Cable Communications Corp.,*

17   *LLC v. Finisar Corp.*, 2007 WL 1052883 (N.D. Cal. 2007). However, there, the Court denied a

18   motion to stay based on the advanced stage of discovery. Indeed, the Court already had held five

19   hearings, including a *Markman* hearing, the Court was prepared to issue its claim construction

20   order, and the defendant already had produced 30,000 pages of documents. *Id.* at *1. The Court

21   further noted that "[h]ad this motion been made back when [the defendant] first learned that the

22   reexamination...had been granted, the calculus might have been different." *Id*

23   Such a different calculus was made in *Nanometrics, Inc. v. Nova Measuring Instruments,*

24   *Ltd.*, 2007 WL 627920 (N.D. Cal. 2007). There, the Court granted the defendant's motion to stay

25   given the early stage of the case. As here, the parties in *Nanometrics* had exchanged initial

26   _____

27   [1] NetApp also ignores that Sun only is moving for a stay as to the Reexam Patents, and that the case would
     proceed as to the remaining 16 Sun and NetApp patents. Thus, the limited discovery activities undertaken

28   to date certainly would not be "wasted" if the requested stay is granted.

-3-

disclosures, participated in a case management conference and commenced discovery. *Id.* at *2.

And, as here, no claim construction briefing or dispositive motions had been filed. *Id.*; *see also*

*Research In Motion, Ltd. v. Visto Corp.*, 2008 WL 544482 (N.D. Cal. Feb. 26, 2008) (stay

granted); *Sorensen*, 2008 WL 152179, at *2 (finding that the case was in the early stages given

that the parties had not yet conducted "significant discovery"); *Ho Keung Tse*, 2007 WL

2904279, at *2 (finding that the case was still in its "nascent stages"); *KLA-Tencor Corp.*, 2006

WL 708661, at *2 (finding that the case was in the early stages given that the parties had not yet

conducted "significant discovery").

    NetApp also argues the parties' agreed motion to transfer this case from the Eastern

District of Texas somehow weighs against a partial stay as to the Reexam Patents.  However,

even ignoring that the circumstances of the transfer are irrelevant under the three-factor test to be

applied by the Court, NetApp's argument is wrong on the facts.  The agreed motion to transfer

directly resulted from NetApp improperly filing this action in the Eastern District of Texas.

When threatened with what would have been a successful motion to transfer the case to this

Court, NetApp stipulated to the transfer.  Sun asked to have this Court resolve the claims because

this Court is the appropriate venue for this case, not as part of some purported plan to accelerate

the resolution of this case.  Corbett Decl., ¶ 9, Ex. A.  In this regard, while NetApp's opposition

selectively quotes a paragraph of the agreed transfer motion (beginning with the words "Plaintiff

believes"), NetApp ignores the paragraph in the agreed motion setting forth Sun's reasons for

agreeing to the transfer, which concerned the location of the parties and witnesses in this district.

*Id.*  Moreover, NetApp's argument makes no sense; Sun certainly had the right to file a motion to

transfer when this case was improperly venued in Texas, and it has no less of a right to obtain a

stay now because the case was transferred to the appropriate venue.

    **2.    Granting A Stay Will Simplify The Issues.**

    NetApp's argument concerning this factor is largely devoted to asserting that most

reexamination petitions are granted, and that initial rejections of claims are common, and,

therefore, the fact NetApp's three patents are in reexamination means nothing.  However, given

the low success rate of patents in reexamination, the fact that most reexamination petitions are

-4-

1   granted and that most claims are initially rejected speaks more to the poor quality of the patents in

2   reexamination, and certainly does not support any contention that the Reexam Patents will

3   survive reexamination.  Indeed, NetApp offers *no evidence* (or really any argument) that the

4   Reexam Patents are likely to survive reexamination intact, especially given the scope and content

5   of the PTO's action on those patents to date.  *See* Sun Mot. at 4-6.

6        NetApp also calls into question the probative value of existing PTO statistics concerning

7   *inter partes* reexamination proceedings (although NetApp does not attack the predictive value of

8   PTO statistics concerning *ex parte* reexamination proceedings).  However, as established in the

9   following section of this brief, NetApp's attacks on the probative value of the PTO's *inter partes*

10  reexamination statistics are flawed.  The simple fact is that existing statistics demonstrate that

11  claims are affected 91% of the time in *inter partes* reexaminations, and are affected 71% of the

12  time in *ex parte* reexaminations.  Sun Mot. at 9.  Again, NetApp cites no statistic or evidence

13  supporting a conclusion that the Reexam Patents are likely to survive reexamination intact,

14  particularly in view of the PTO's actions on those patents to date.

15       In any event, NetApp's arguments largely miss the point, failing to address many of the

16  factors supporting a stay addressed in Sun's moving papers.  In this regard, "[a] stay is

17  particularly justified where the outcome of the reexamination would be likely to assist the court in

18  determining patent validity and, if the claims were cancelled in the reexamination, would

19  eliminate the need to try the infringement issue."  *In re Cygnus Telecomms. Tech., LLC, Patent*

20  *Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005).  Even if some of the claims of the Reexam

21  Patents somehow survive reexamination, statements made by the NetApp and the Examiner

22  during the reexamination will be highly relevant to a proper construction of the claims.  *See C.R.*

23  *Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 867-69 (Fed. Cir. 2004).  Moreover, the PTO's

24  decisions and analysis of the prior art during reexamination will help narrow validity issues in this

25  case and provide the Court with the PTO's neutral, expert understanding of the prior art.  *See*

26  *Direct Imaging Sys., Inc. v. U.S. Graphic Arts, Inc.*, 2007 WL 778633, at *3 (M.D. Fla 2007).  A

27  stay also may simplify the damages issues because NetApp cannot recover past damages for

28  claims amended or cancelled during reexamination.  *See Bloom Eng'g Co. v. N. Am. Mfg. Co.*,

-5-

1    129 F.3d 1247, 1250 (Fed. Cir. 1997). Thus, the broad range of issues that will be affected by the

2    reexaminations strongly support a stay in this case.

3               **3.    A Stay Would Not Unduly Prejudice NetApp.**

4               NetApp asserts four alleged bases of prejudice, each of which is addressed in separate

5    sections below. As established below, each such basis either is contrary to case law or premised

6    upon baseless speculation. Further, all four of NetApp's arguments suffer from the same two

7    fundamental flaws.

8               First, each of NetApp's arguments – all of which are premised upon the impending doom

9    NetApp prophesies should ZFS not be purged from the world – is undercut by NetApp's own

10   inaction. While Sun publicly announced ZFS in November 2004, and released ZFS to the public

11   in November 2005, NetApp waited nearly *three years after* Sun announced ZFS and nearly *two*

12   *years after* Sun released ZFS to file suit in September 2007. Declaration of Graham Lovell In

13   Supp. of Reply ("Lovell Decl.") ¶¶ 2-3, Ex. A. Moreover, although NetApp's Complaint alleges

14   irreparable harm based upon the open source dissemination of ZFS – as NetApp continues to

15   assert now – NetApp has not sought a preliminary injunction to stop this alleged irreparable harm

16   during the seven months this case has been pending. And, as established above, NetApp is not

17   diligently pursuing discovery in this case. Thus, while NetApp argues "time is of the essence," its

18   actions fail to support its claim of urgency.

19              Second, NetApp's opposition conveniently ignores NetApp's contention that ZFS also

20   infringes the four NetApp patents-in-suit that are *not* the subject of this motion. Thus, a partial

21   stay will not, as NetApp complains, preclude or delay NetApp from attempting to prove in this

22   case that ZFS infringes NetApp patents.

23              NetApp apparently attempts to circumvent this flaw in its argument by arbitrarily

24   designating the three Reexam Patents its "core" patents. NetApp Opp. at 2, 5, 8. However,

25   NetApp never offers support for this contention, nor does it address whether the four other

26   NetApp patents-in-suit are "core" or "non-core" patents. (If NetApp contends the four patents are

27   "non-core" patents, Sun notes that despite NetApp's repeated recitation that it will streamline this

28   case, it has not offered to dismiss or defer the prosecution of its "non-core" patents.)

-6-

a.    **There Is No Merit To NetApp's Contention That A Stay Will Unduly Prejudice NetApp Because ZFS Is Open Source Software.**

NetApp argues a partial stay should be denied because ZFS is open source software and, accordingly, that Sun's allegedly "infringing ZFS technology has created a degree of widespread irreparable harm that is uncommonly threatening." This contention is without merit for at least three significant reasons.

First, NetApp fails to advise the Court that NetApp is itself publicly facilitating and advocating the use of Sun's ZFS software with NetApp's products. Since August 2007 through the present, NetApp's own website has featured a June 2007 NetApp-authored user guide entitled "ZFS Best Practices with NetApp" that promotes and explains the use of Sun's ZFS software with NetApp products. Corbett Decl., ¶ 10, Ex. B. Not only does this document praise the advantages of ZFS and provide detailed guidance as to how to use ZFS with NetApp products, it also provides direct links to Sun's website where NetApp customers can find additional helpful information regarding ZFS. *Id*

This document also puts the lie to NetApp's contention that ZFS is a copy of NetApp's alleged proprietary technology:

> The Solaris™ ZFS file system is a *new* file system that *fundamentally changes* the way file systems are administered, with *new* features and benefits. ZFS has been designed to be robust, scalable, and simple to administer and combines volume manager and file system capabilities.

Corbett Decl., Ex. B at p.3 (emphasis added).

Because NetApp is actively promoting, facilitating and praising the use of the open source ZFS software with NetApp products, NetApp certainly is in no position to argue, as it is now, that ZFS is causing NetApp "irreparable harm," or that a partial stay would cause NetApp "undue prejudice."

Second, NetApp's assertion of "irreparable harm" is premised *entirely* upon Mr. Hitz' rank speculation and personal opinions. Mr. Hitz' prophesies are not competent evidence and should be stricken pursuant to Sun's written objections filed concurrently herewith. The

-7-

1   following are some examples of Mr. Hitz' speculative musings upon which NetApp's irreparable

2   harm argument is premised:

3

4

5

6

7                                    REDACTED

8

9

10

11

12

13          Such wholly unsubstantiated, speculative statements, which are reflected throughout pages

14   six and seven of NetApp's opposition brief, do not establish anything, much less that NetApp will

15   suffer "undue prejudice" from a partial stay as to the Reexam Patents.  In fact, NetApp fails to

16   identify *any* specific harm *actually* suffered by it *during the two and a half years* ZFS has been

17   publicly available.  This telling omission evidences the lack of any harm, much less irreparable

18   harm.[2]

19          Third, NetApp bases its irreparable harm contentions on the fact that ZFS is open source

20   software and, therefore, is in the public domain.  However, NetApp is not complaining about

21   something that might happen in the future – as NetApp itself points out, ZFS already is in the

22   public domain.  Nor does NetApp argue this can be changed.  Since ZFS is in the public domain

23   and will remain there, a partial stay cannot cause NetApp "irreparable harm."

24

25

26   _____

27   [2] Much of what NetApp argues also constitutes expert opinion on issues of economics, damages and
     market dynamics "supported" by someone who is not, and has not been qualified as, an expert on those
28   issues (i.e., Mr. Hitz).  *See* Hitz Decl., ¶¶ 8-15.

                                                   -8-

 1            **b.    NetApp Has Shown No Harm, Or Risk Of Harm, To Its
                      Reputation.**

 2

 3        NetApp's assertion that it "risks suffering irreparable harm to its reputation" is wholly

 4   without substance.  As an initial matter, NetApp fails to establish it has a reputation in the

 5   community, much less a positive one that somehow could be tarnished by this litigation.  Absent

 6   this foundational showing – for which NetApp tenders no evidence – NetApp's argument

 7   necessarily fails.

 8        NetApp asserts Sun "has repeatedly disparaged NetApp" and "has launched a

 9   communications campaign to disparage NetApp."  NetApp Opp. at 8; Hitz Decl., ¶ 17, Ex. B.

10   However, the only evidence of this purported onslaught of disparagement is a single blog entry

11   dated October 24, 2007.  This blog entry is not disparaging, nor does NetApp offer any evidence

12   (or even argue) that the entry actually damaged NetApp's reputation.  NetApp also fails to note it

13   is suing Sun for damages in connection with this blog entry in Action No. C-07-05488-EDL,

14   undermining its apparent contention that NetApp lacks a legal remedy to address any alleged

15   harm to its reputation.

16        NetApp also asserts, without competent evidentiary support, that the mere existence of

17   this lawsuit may harm NetApp's reputation.  However, even putting aside the lack of evidence

18   supporting this bald assertion, NetApp ignores that it filed this lawsuit.  Thus, any such alleged

19   harm is wholly self-imposed.

20        NetApp also conjectures the                **REDACTED**

21

22                                    Hitz Decl., ¶ 18 (emphasis added).  NetApp

23   offers no support for this rank speculation as to possible future events.

24        NetApp concludes its argument on this point with the empty assertion that "should the

25   Court grant Sun's motion for a partial stay, NetApp will suffer additional harm as this matter is

26   prolonged."  NetApp Opp. at 8.  The sole purported support for this assertion is Mr. Hitz' wholly

27   self-serving statement, for which he offers no foundation, that     **REDACTED**

28

**REDACTED**

1                                                                  Hitz Decl., ¶ 19.  Because

2    speculation and baseless conclusions do not constitute probative evidence, NetApp's "harm to

3    reputation" argument should be rejected.

4              c.        **NetApp's "Harm to the Public" Argument Also Lacks Merit.**

5              NetApp's "harm to the public" argument fails for two basic reasons.  First, the question is

6    whether NetApp will suffer undue prejudice, not the public.  NetApp cites no legal authority to

7    support its argument on this point – much less authority stating or suggesting alleged harm to the

8    public should be weighed.

9              Second, NetApp's argument is once again "supported" only by Mr. Hitz' rank speculation.

10   NetApp Opp. at 8; Hitz Decl., ¶ 20.  Mr. Hitz asserts

11                                        **REDACTED**

12                                                   Hitz Decl., ¶ 20.  As there is no factual support for this assertion, it should

13   be rejected.

14             d.        **The Delay Inherent In The Reexam Process Does Not**
                         **Constitute Undue Prejudice.**
15

16             NetApp devotes over two pages of its opposition brief, and submits a voluminous

17   declaration by an alleged "expert," regarding the duration of the reexamination process.

18   However, the law is clear that the "delay inherent to the reexamination process does *not*

19   constitute, by itself, undue prejudice." *See Sorensen*, 2008 WL 152179, at \*2 (emphasis added);

20   *Ho Keung Tse*, 2007 WL 2904279, at \*4.

21             This legal standard is important because the only "undue prejudice" cited by NetApp is

22   the alleged harm to NetApp and the public discussed above – harm which does not exist and for

23   which NetApp offers no competent evidence.  Thus, NetApp is left with no legally recognized

24   basis to oppose a partial stay.

25             NetApp heavily relies – in support of this and other arguments – on the ruling in

26   *Frenesius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2007 WL 1655625 (N.D. Cal. June 7,

27   2007); NetApp Opp. at 3, 5, 10.  However, in *Frenesius*, the defendant filed its request for

28

1   reexamination on two patents-in-suit *over two years after the lawsuit was initiated*, and on one

2   patent-in-suit following an unfavorable trial ruling. *See Frenesius Med. Care Holdings*, 2007 WL

3   1655625, at *2. Notably absent from NetApp's opposition brief is the Court's statement in

4   *Frenesius* that "[h]ad [the defendant] requested a stay at an earlier date, while this case was in a

5   different procedural posture, this Court *might have been inclined to grant one*." *Id.* at *6

6   (emphasis added).

7       In *In re Cygnus*, 385 F. Supp. 2d at 1022, the defendant advanced, and the Court rejected,

8   an argument similar to NetApp's argument. There, the defendant argued that "reexaminations

9   could result in delaying trial in the various actions until 2012, citing a potential for a 7-year

10  reexamination cycle…, plus appeals all the way to the Supreme Court." *Id.* at 1023. The Court

11  found this estimate "unrealistic" and noted that reexaminations generally take from six months to

12  three years. *Id.* Indeed, the Court found "the delay caused by a stay to be potentially acceptable

13  and not unduly prejudicial in light of the clarity reexamination of the patents-in-suit may bring to

14  the litigation." *Id.* at 1024.

15      NetApp (and its declarant) also ignore the Congressional intent behind reexamination

16  proceedings. In particular, "the stay of pending litigation to enable PTO review of contested

17  patents was one of the specified purposes of the reexamination legislation." *Nanometrics*, 2007

18  WL 627920, *4 (quoting *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985)).

19  "Congress had an important public purpose in mind when it enacted the reexamination statute."

20  *Patlex*, 758 F.2d at 601.

21          The bill's proponents foresaw three principal benefits. First, the
22          new procedure could settle validity disputes more quickly and less
            expensively than the often protracted litigation involved in such
23          cases. Second the procedure would allow courts to refer patent
            validity questions to the expertise of the Patent Office. See *Senate*
24          *Hearings* at 1, wherein Senator Bayh said that reexamination would
            be "an aid" to the trial court "in making an informed decision on the
25          patent's validity". Third, reexamination would reinforce "investor
            confidence in the certainty of patent rights" by affording the PTO a
26          broader opportunity to review "doubtful patents".
27
    *Id.* at 602 (citing 126 Cong. Rec. 29,895 (1980) (statement of Rep. Kastenmeier)). NetApp's

28
                                            -11-

1    arguments concerning District Court stays during the reexamination process – which amount to

2    an outright rejection of stays in any case – fly in the face of these important public policies.[3]

3           In any event, the evidence upon which NetApp relies, the Declaration of Stephen Kunin

4    ("Kunin Declaration"), is riddled with omissions and flawed, unsubstantiated and contradictory

5    statements.[4]  For example, Mr. Kunin declares the available data regarding *inter partes*

6    reexaminations is "too sparse to draw any meaningful or reliable conclusions," but then proceeds

7    to draw conclusions based upon this allegedly "sparse" data.  In this regard, Mr. Kunin is not a

8    statistician or other professional qualified to draw conclusions as to what constitutes a statistically

9    significant sample.  And while Mr. Kunin purports not to find the *inter partes* statistics

10   significant, the Courts have found them relevant.  *See, e.g., Ho Keung Tse*, 2007 WL 2904279, at

11   *3 ("Statistically, it is quite likely that the reexamination process will alter the patent claims at

12   issue in some respect."); *KLA-Tencor Corp.*, 2006 WL 708661 at *4 ("[The] statistics 'suggest

13   that in a typical case there is a substantial probability a reexamination will have a major impact on

14   the issues to be resolved in the litigation.").

15          Mr. Kunin also places great weight on the alleged fact that "not one single *inter partes*

16   reexamination, has ever proceeded through each step of the entire reexamination process...."

17   Kunin Decl., ¶ 48.  However, Mr. Kunin fails to acknowledge, as is revealed by Mr. Kunin's own

18   statement of the procedural posture of the reexamination proceedings resulting in Reexamination

19   Certificates, that: (1) the patent claims were cancelled in nine of the 15 *inter partes* proceedings

20   after the patent holder failed to respond to office actions rejecting the patent's claims; (2) the

21   patent claims were cancelled in three of the 15 proceedings after the patent holder failed to pursue

22   an appeal of the rejection of the claims; and (3) one of the 15 proceedings terminated after the

23   patent holder disclaimed the patent's claims.  Kunin Decl., ¶¶ 46, 49.  Only one of the 15 cases

24   resulted in confirmation of the patent's claims.  *Id.*, ¶ 49.  Thus, it is disingenuous to assert, as Mr.

25   [3] NetApp cites *Landis v. N. American Co.*, 299 U.S. 248 (1936), suggesting that Sun bears the burden of
26   proving it would be prejudiced if a stay pending reexamination is not granted.  However, this 1936 case
     not only predates the reexamination procedures in question, it is not even a patent case.

27   [4] As set forth in the Objections to the Kunin Declaration filed concurrently herewith, Sun requests the
28   Court strike several paragraphs of the Kunin Declaration on the grounds they are unsubstantiated, lack
     foundation and constitute an improper opinion by Mr. Kunin.

-12-

1   Kunin does, that the claims were cancelled in 14 of the 15 proceedings for merely "procedural"

2   reasons. Rather, the patent claims were rejected during reexamination and, realizing the futility,

3   the patent owners abandoned future prosecution of the patent claims.

4           Mr. Kunin does not challenge that sufficient statistical data exists concerning *ex parte*

5   reexamination proceedings. Nor does Mr. Kunin challenge Sun's showing that nearly 71% of the

6   claims that undergo *ex parte* reexamination ultimately are rejected or modified. Indeed, even as

7   to *inter partes* reexamination, Mr. Kunin cites no statistic, and renders no opinion, indicating the

8   three NetApp Reexam Patents are likely to survive reexamination, or to survive reexamination

9   unmodified.

10          Moreover, NetApp's opposition brief is inconsistent with the evidence submitted by

11  NetApp. Specifically, NetApp asserts that if the Court were to "grant Sun's request for a stay, it

12  will almost certainly be at least 4-5 years before any kind of resolution." NetApp Opp. at 10.

13  However, based on the PTO statistics attached to Mr. Kunin's declaration, the average pendency

14  of an *inter partes* reexamination is 28.5 months, and the average pendency of an *ex parte*

15  reexamination is 24 months. (Kunin Decl., Exs. G, I.)

16          Finally, NetApp makes the point that reexamination proceedings ultimately may be

17  subject to appeal to the Federal Circuit. That point does not advance NetApp's argument,

18  however, as proceedings in the District Court also may be subject to appeal to the Federal Circuit.

19              **e.    NetApp Fails To Argue Any "Clear Tactical Disadvantage"
                        Should The Court Issue A Partial Stay.**

20

21          Tellingly, NetApp fails to directly address this factor in its brief, stating only in passing

22  that Sun's request for a partial stay is a "cynical attempt to gain tactical advantage." NetApp

23  Opp. at 1. Moreover, the only alleged tactical disadvantage found anywhere in NetApp's brief is

24  its assertion that, should the partial stay be granted, Sun would be asserting 12 patents while

25  NetApp would be asserting four patents. *Id.* at 2. However, NetApp cites no authority for the

26  proposition that the mere reduction of the number of active patents-in-suit is a ground to deny a

27  partial stay. This assertion also assumes, notwithstanding NetApp's repeated assurances this will

28

DLA PIPER US LLP      WEST\21386540.1

-13-

1  happen, that the parties are unable to further streamline this case for trial.

2         Further, NetApp's citation, in the introduction of its brief, to *Telemac Corp. v. Teledigital,*

3  *Inc.*, 450 F. Supp. 2d 1107 (N.D. Cal. 2006), does not support NetApp's position. There, the

4  defendants filed their reexamination requests eighteen and twenty-seven months after the

5  initiation of the lawsuit. *Id.* at 1111. Here, Sun promptly filed requests for reexaminations within

6  two to three months of NetApp's initiation of the lawsuit.

7         NetApp also is wrong in essentially accusing Sun of somehow proceeding in bad faith.

8  From the outset of this case, Sun has been upfront with both NetApp and the Court about its

9  intention to seek a stay of this action if the NetApp patents were placed in reexamination. Sun

10  informed NetApp of this intent during the parties' December 2007 Rule 26(f) conference, and

11  informed the Court (and NetApp) in the parties' Joint Case Management Statement and during

12  the Case Management Conference.  Declaration of Mark D. Fowler In Supp. of Reply, ¶¶ 2-4,

13  Ex. A. In other words, this is a case, like those where stays typically are granted in this district,

14  where reexamination is promptly sought, rather than waiting until the eve of trial or after an

15  unfavorable ruling.  *See, e.g., KLA-Tencor Corp.*, 2006 WL 708661, at *7; *Ho Keung Tse*, 2007

16  WL 2904279, at *4.

17  **III.     CONCLUSION**

18         For the foregoing reasons, Sun respectfully requests that the Court grant its motion for a

19  partial stay of this action with respect to United States Patent Nos. 5,819,292, 6,857,001 and

20  6,892,211.

21         Dated:  May 5, 2008

22

23                                                    DLA PIPER US LLP

24                                      By  *Christine K. Corbett*

25                                          MARK D. FOWLER
                                            CHRISTINE K. CORBETT
26                                          Attorney for Defendant and Counterclaimant
                                            SUN MICROSYSTEMS, INC.
27

28