MATTHEW D. POWERS (Bar No. 104795)
matthew.powers@weil.com
EDWARD R. REINES (Bar No. 135960)
edward.reines@weil.com
JEFFREY G. HOMRIG (Bar No. 215890)
jeffrey.homrig@weil.com
JILL J. HO (Bar No. 236349)
jill.ho@weil.com
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Plaintiff-Counterclaim Defendant
NETAPP, INC.,

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK APPLIANCE, INC., | Case No. C 07-06053-EDL |
| Plaintiff-Counterclaim Defendant, | **NETAPP, INC.'S RESPONSES TO SUN MICROSYSTEMS, INC.'S OBJECTIONS TO DECLARATIONS OF DAVID HITZ AND STEPHEN G. KUNIN** |
| v. | |
| SUN MICROSYSTEMS, INC. | |
| Defendant-Counterclaim Plaintiff. | |

## INTRODUCTION

Unable to deny on the merits that NetApp, Inc. ("NetApp") will suffer undue prejudice if the Court grants its motion for a partial stay, and unable to meet evidence with evidence, Sun Microsystems, Inc. ("Sun") instead resorts to distracting the Court with a laundry list of unsupported evidentiary objections to the declarations of Stephen G. Kunin and David Hitz. Sun's objections sloppily cartoon the well-supported and specific testimony of these two highly-respected and well-positioned professionals.

## ANALYSIS

**I.  NO PORTION OF THE DECLARATION OF STEPHEN G. KUNIN SHOULD BE STRICKEN**

As a preliminary matter, Sun attacks the Kunin Declaration on the grounds that it is "not based on any specialized knowledge." Sun's Objections, p. 5. This meritless objection completely ignores the fact that Mr. Kunin has a wealth of specialized knowledge regarding the procedures and practices of the United States Patent and Trademark Office ("Patent Office") drawn from his *decades* of experience at the Patent Office, where he held numerous relevant positions. See Kunin Decl. ¶¶ 5-13. Indeed, as the person responsible for patent examining policy in the Patent Office, Mr. Kunin directed the establishment of the Rules of Practice for reexams and the drafting of the relevant provisions of the MPEP for reexams. Id. at ¶ 13. It is hard to imagine someone that would be in a better position to help the Court understand the non-intuitive world of Patent Office reexam practice. In any event, the balanced and fact-based opinion of Mr. Kunin is far more likely to be accurate and helpful than the bare attorney argument Sun originally proffered on the very subjects addressed by Mr. Kunin.

Sun's specific objections fall into the following general categories: (1) Mr. Kunin cannot testify in Paragraphs 4 and 20 whether a sample size is insufficiently large because he is not a statistician; (2) Mr. Kunin cannot proffer any opinions in Paragraphs 20, 44 and 45-50 regarding *inter partes* reexams in light of his statement that the available data is too sparse to draw any meaningful or reliable conclusions; (3) Paragraphs 2 and 3 recite case law; and (4) Paragraphs 17-28 and 30-35 recite information in the public record. These objections are

addressed in turn below.

### A. Paragraphs 4 and 29 Should Not be Stricken on the Basis That Mr. Kunin is Not a Statistician

Sun's first complaint appears to be that Mr. Kunin is not qualified to render an opinion in Paragraphs 4 and 29 that the number of *inter partes* reexam proceedings that have been completed thus far is too sparse to draw any meaningful or reliable conclusions because he not a statistician. Yet, Sun's motion for a partial stay attempts to carry *its burden* on the stay motion by predicting that NetApp's claims in reexam will ultimately be cancelled or amended based on the September 30, 2007 statistics for *inter partes* reexams, without the aid of a statistician to interpret that data.[1] Mr. Kunin, based on his numerous years of experience at the Patent Office, was simply rebutting Sun's bare attorney argument by pointing out that too few *inter partes* reexam proceedings have been completed for Sun to draw any real conclusions regarding likely future outcomes. As the person at the Patent Office who was responsible for developing patent examination policies, he was constanly in a position to look at historical experience in the Patent Office and formulate policy. With that experience and expertise, he clearly is in a position to confirm the common sense notion that 12 or 15 outcomes among thousands of applications is too few to reach the sweeping conclusions advanced by Sun's litigators in their opening motion.[2]

### B. Paragraphs 20, 44 and 45-50 Regarding *Inter Partes* Reexamination Proceedings Should Not be Stricken

Sun further argues that Mr. Kunin's testimony in Paragraphs 20, 44, and 45-50 is speculative, contradictory and lacks foundation in light of his assertion in Paragraph 4 that the available data is "too sparse to draw any meaningful or reliable conclusions." These objections reflect a fundamental misunderstanding of the data upon which Mr. Kunin relies. As stated in Paragraph 42 of his declaration, Mr. Kunin personally reviewed the publicly available

---

[1] At that time, only 11 *inter partes* reexamination certificates had been issued.

[2] As of the *Inter Partes* Reexamination Filing Data - December 31, 2007 Report, only 12 reexamination certificates had issued. Mr. Kunin conducted a more thorough analysis including *inter partes* reexams through March 2008. See Kunin Decl. ¶ 42; Exh. M. Of the 381 *inter partes* reexams reviewed by Mr. Kunin, only 15 had resulted in the issuance of a reexamination certificate.

information concerning all 381 *inter partes* reexams filed from November 1999 to March 2008. See Kunin Decl. Exh. M. Having done this analysis, Mr. Kunin is certainly competent to testify that initial rejections are typically made shortly after the order granting reexamination and that initial rejections are issued in approximately 90% of all *inter partes* reexams. See Kunin ¶ 20. This testimony will help the Court understand the lack of significance of an initial rejection in an *inter partes* reexam.

Moreover, Mr. Kunin's conclusion regarding the likelihood of initial rejections based on a sample size of 381 is not at all inconsistent with his opinion that Sun cannot draw any meaningful or reliable conclusions regarding the ultimate outcome of the '001 or '211 reeexamination proceedings based on the 15 *inter partes* reexams that have been concluded so far (or the 11 that had been completed as of the September 30, 2007 report upon which Sun relies). As for Paragraph 44, Mr. Kunin summarized the pendency ranges for the 381 *inter partes* reexam proceedings he reviewed; these pendency ranges are in no way inconsistent with the statistic that the average pendency for the 12 *inter partes* reexam proceedings which had been completed by December 31, 2007 was 28.5 months. See Kunin Decl. Exh. G. Similarly, in Paragraphs 45-50, Mr. Kunin's conclusion that the '001 and '211 reeexamination proceedings are likely to take several years is amply supported, particularly as NetApp is unlikely to give up and abandon future prosecution of its claims, as other patent holders have done.

**C.    Paragraphs 2 and 3 Should Not be Stricken on the Basis That They Recite Case Law.**

With respect to Paragraphs 2 and 3, Sun mischaracterizes Mr. Kunin's declaration as merely reciting case law. On the contrary, Mr. Kunin points to examples of public criticism regarding the lengthy duration of the patent reexamination process and in no way relies upon the holding of In re Reuning (or Judge Linn's concurring opinion). After presenting this background information (and judicially noticeable facts), Mr. Kunin then engages in a careful analysis of Patent Office experience well rooted in fact and experience. Indeed, had Mr. Kunin simply observed that he was personally aware of public commentary regarding the length of time required for reexam proceedings without citing specific examples, Sun presumably would have

objected to such statements as conclsusory and lacking foundation.

### D. Paragraphs 17-28 and 30-35 Should Not be Stricken on the Basis That They Recite Information in the Public Record

As for Paragaphs 17-28 and 30-35, Sun protests that Mr. Kunin's descriptions of materials he considered pertaining to the reexamination of the '001, '211, and '292 patents simply recites information that is in the public record. This objection is nonsensical. By describing the current status of each of the reexam proceedings, Mr. Kunin is merely laying foundation for his opinion that the reexams of the '001, '211, and '292 patents are each in the very beginning stages and likely will not be completed for years. See Kunin ¶¶ 23, 28, and 37.

## II. NO PORTION OF THE DECLARATION OF DAVID HITZ SHOULD BE STRICKEN

Sun's objections to David Hitz's declaration comprise a thesaurus of strained form objections, including that his testimony is speculative, argumentative, is not based on personal knowledge, and/or is the subject of expert testimony. Yet, Mr. Hitz's declaration, like Mr. Kunin's declaration, represents good faith, helpful testimony from an individual with years-worth of personal knowledge relevant to the key issue in this stay motion: whether NetApp will suffer undue prejudice should a stay be granted. Sun's opening brief in support of its motion lacks comparable evidence entirely, relying instead on speculative, unadulterated attorney argument. Under these circumstances, Sun is in no position to unleash a shotgun-load of form objections. This is especially so given that Mr. Hitz's testimony is admissible and highly probative of the issues before the Court, as explained below.

Sun's specific objections fall into the following categories: (1) Paragraphs 8, 10-12, 14-15, 18 and 19 allegedly include improper testimony regarding NetApp's prospective business circumstances should Sun's infringement continue; (2) Paragraphs 13-15 and 17-21 allegedly include improper testimony regarding the evolution of the storage industry should Sun's infringement continue; (3) Paragraphs 5, 8-9, 11, and 16 allegedly include improper testimony regarding the scope of NetApp's patents and/or infringement; (4) Paragraph 17 allegedly includes argumentative testimony regarding Sun's disparagement of NetApp. These objections are

addressed in turn below.

### A. Mr. Hitz's Forward Looking Statements Regarding NetApp's Business Should Not be Stricken

Sun repeatedly objects to Mr. Hitz's statements in Paragraphs 8, 10-12, 14-15, 18 and 19 regarding NetApp's likely future business circumstances should Sun be allowed to continue distributing infringing ZFS software. As to Sun's objection that such statements constitute speculation, Sun is simply in no position to complain of improper speculation. Indeed, Sun's opening brief—repeatedly stating that certain events are "likely" to happen, that they "may" happen, or that they are "probable"—is actually predicated on little more than highly questionable conjecture as to the duration and outcome of the reexam process. For instance, with respect to *inter partes* reexams, Sun weakly relies on a sample size of only 11 reexamination certificates – all but one of which issued due to default by one of the parties—to make the bold prediction that NetApp's '001 and '211 patents will not survive the reexamination process, even going so far as to supply the court with a numerical probability of this occurring. See Motion at 9. Likewise, Sun speculates in its brief that a stay would result in "no prejudice to NetApp," Motion at 11, and that money damages would be sufficient to compensate NetApp for any harm it may experience. Sun offers no evidence whatsoever to support these assertions, instead relying solely on attorney argument—even though its legal team has no demonstrated experience in the computer storage business.

Indeed, Sun's objections to allegedly improper speculation ring especially hollow given the nature of the specific legal issues involved here. The Court must assess whether a stay would unduly prejudice the non-moving party. This inquiry, by its very nature, necessarily calls for the non-moving party to look forward and forecast the effects of a stay. Here, NetApp has turned to its co-founder and current executive vice president, who is an inventor on core patents in this dispute and has years of experience in the industry, to provide guidance on this issue. This is entirely reasonable, and Sun's request to exclude this as improper speculation would, if granted, make it impossible for NetApp to meaningfully address the prejudice issue. Indeed, excluding evidence such as this would leave nothing but the counterfactual speculation by

*NetApp's attorneys* as to the prejudicial effect of a stay. Although Sun, which included no genuine evidence on this issue in its opening brief, apparently felt such an approach was appropriate, NetApp should not be punished by Sun's truckload of undifferentiated objections simply for presenting evidence from an incredibly knowledgeable and respected leader in the computer storage business.

Moreover, to the extent Sun objects to Mr. Hitz's statements as constituting expert opinions, Sun is simply wrong. Under Rule 701, opinion testimony by a lay witness is admissible so long as it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge . . . ." F.R.E. 701. As the Advisory Committee's Notes to Federal Rule of Evidence 701 explains, the subject matter of Mr. Hitz's declaration pertaining to NetApp's business is not "scientific, technical, or other specialized knowledge" but rather particularized knowledge Mr. Hitz has by virtue of his unique position in the data storage systems business:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.* 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiffs owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.

FRE 701, Adv. Committee's Note (2000). Mr. Hitz—the co-founder and current executive vice president of NetApp with over 16 years of experience in the industry—clearly has the particularized knowledge regarding the day-to-day affairs of NetApp and its overall position within the industry that Rule 701 contemplates. For the same reasons, objecting to such testimony as falling outside of Mr. Hitz's personal knowledge is totally unjustified. And, given that a core issue is the potential undue prejudice to NetApp, Mr. Hitz's testimony is helpful to the Court. Accordingly, Sun's demand that NetApp acquire an outside expert to opine on NetApp's

business circumstances is not only unreasonable, unfair, and unpractical, but also unnecessary under the law. Mr. Hitz's testimony should be admitted.

### B. Mr. Hitz's Statement Regarding Industry Developments Should Sun Be Allowed to Continue Infringing Should Not be Stricken

Sun also repeatedly objects to Mr. Hitz's statements regarding the evolution of the storage industry should Sun be allowed to continue distributing its infringing ZFS software. *See, e.g.*, Objections ¶¶ 8-10, 13-16. As above, Sun is in no position to complain that Mr. Hitz is offering improper speculation given its own heavy reliance on naked attorney conjecture. Furthermore, though Sun states that Mr. Hitz is not designated as an expert witness, it is worth noting that Sun's objections do not question Mr. Hitz's qualifications. Indeed, Mr. Hitz, the developer of some of NetApp's core technology, founded NetApp 16 years ago, and has overseen its growth into a company with over 6,600 employees in 113 worldwide offices.

"Lay opinion testimony is admissible when the inference is a conclusion drawn from a series of personal observations over time. Courts have permitted lay witnesses to testify under Rule 701 to their opinions when those opinions are based on a combination of their personal observations of the incident in question and background information they acquired through earlier personal observations. Moreover, a witness' experience and specialized knowledge obtained in his or her vocation should certainly be taken into consideration." B & G Plastics, Inc. v. Eastern Creative Industries, Inc., 2004 WL 307276, at *8 (S.D.N.Y. Feb. 18, 2004) (citations omitted).

Accordingly, Mr. Hitz's easily understood, non-technical statements regarding possible changes in the storage industry due to Sun's continuing infringement do not constitute traditional expert opinion. Importantly, Mr. Hitz's testimony reflects his independently existing beliefs developed as part of his day to day business and are obviously not expert testimony simply created as a part of an expert report for litigation purposes. Rather, they simply constitute a lay opinion of Mr. Hitz—based on years of personal observation and knowledge in the ordinary course of business—that will be helpful to the Court because they pertain to the key issue of potential irreparable harm to NetApp. To the extent Mr. Hitz's statements bear on NetApp's own

business circumstances, the Advisory Committee Notes to Rule 701 make explicitly clear that they are admissible.

Notably, neither Sun's objections nor its reply brief explicitly deny that Sun's open-sourcing of ZFS software could dramatically disrupt the face of the data storage industry. Indeed, Sun's brief reasserts the October 24, 2007 sentiments of Sun's CEO, Jonathan Schwarz, that ZFS will forever remain available in the public domain. See Reply at 8 ("ZFS is in the public domain and will remain there . . . ."). Though Sun somehow fails to see how this could lead to irreparable harm, the fact remains that the longer infringing ZFS software remains freely available without clear guidance as to its legal status, the greater the potential harm to NetApp. In fact, Sun's own "ZFS Learning Center" website even touts the "perspective" of a company providing customer services that utilizes ZFS because it is "free," "no-cost," and a "great thing" for "someone who manages a budget." See ZFS Learning Center, http://www.sun.com/software/solaris/zfs_learning_center.jsp. Sun's attempt to exclude from this Court's consideration—through a kitchen sink of stock objections—Mr. Hitz's explanation that such circumstances could cause irreparable harm to NetApp is highly disingenuous, especially in light of Sun's own failure to submit any meaningful evidence to the contrary.

**C.     Mr. Hitz's Statements Regarding NetApp's Patents Should Not be Stricken**

Sun repeatedly objects that Mr. Hitz's declaration offers improper expert testimony regarding the scope of NetApp's patents and/or the infringement of NetApp's patents by ZFS. *See, e.g.*, Objections ¶¶ 2-4, 6, 11. Notably, Sun does not explicitly state that Mr. Hitz lacks the proficiency to assess the scope of the patents at issue. On the contrary, Mr. Hitz is a named inventor of the patents at issue in this stay motion, and has over 16 years of technical experience in this industry, founding one of the largest providers of network storage. He is clearly one of skill in the art capable of understanding the scope of a patent pertaining to filesystems. Furthermore, "it has been held that an inventor is a competent witness to explain the invention and what was intended to be conveyed by the specifications and covered by the claims." Braun Corp. v. Maxon Lift Corp., 282 F.Supp.2d 931, 934 (N.D. Ill. 2003).

But, in any event, this is clearly not a situation in which Mr. Hitz is using his declaration to set forth an expert or legal conclusion regarding the scope of and/or infringement of NetApp's patents. Rather, Mr. Hitz has simply observed – and accepted at face value – Sun's own characterization of its ZFS file system: "The file system that has come closest to our design principles, other than ZFS itself, is WAFL . . . the first commercial file system to use the copy-on-write tree of blocks approach to file system consistency." See Hitz Decl. Exh. A. Based on this, Mr. Hitz simply notes his on-going belief that ZFS "appears" to be a reimplementation of WAFL. See Hitz Dec. ¶ 5. For the purposes of the declaration, which functioned to set forth NetApp's reasons for fearing irreparable harm, Mr. Hitz proceeded on the assumption that NetApp's case has merit, which is entirely reasonable if one is to discuss the extent to which NetApp is irreparably harmed. Indeed, it is abundantly clear from the declaration that any statements regarding infringement do not constitute a legal conclusion by Mr. Hitz: the declaration includes no claim charts, claim construction analyses, or analyses of accused products that would be associated with a traditional litigation-inspired expert infringement opinion. Sun's request to exclude bits and pieces of Mr. Hitz's declaration because his use of the word "infringement" is supposedly argumentative or the exclusive domain of expert opinion is a hypertechnical, overzealous application of evidentiary rules that misunderstands the purpose of the testimony and should be denied.

### D.     Mr. Hitz's Statement Regarding Sun's Disparagement of Netapp Should Not be Stricken

Finally, Sun objects that Mr. Hitz's statement regarding Sun's campaign to disparage NetApp is argumentative. See Objection ¶ 12. This objection is, quite frankly, strange. First, Sun objects only to the opening sentence of paragraph 17 of Mr. Hitz's declaration, in which Mr. Hitz points out that Sun has disparaged "NetApp by publicly accusing NetApp of attempting to stifle the open source community by asserting its patents to stop Sun's infringement." On the basis of this one allegedly objectionable sentence, Sun asks that the entirety of paragraph 17 be stricken as argumentative. *But Sun does not object to the remainder of the paragraph.* There, Mr. Hitz points out that Sun has openly referred to NetApp as a "patent

troll," and cites directly to evidence showing this to be the case. That Sun would ask the Court to strike as "argumentative" testimony in which Mr. Hitz truthfully points out that Sun has publicly disparaged NetApp – in the face of undeniable evidence showing that Sun has actually referred to NetApp as a "patent troll" – is truly astonishing.

Likewise, to this day, Sun asserts on its website that "Sun contributed ZFS to the community, and *that contribution is now under attack from a vendor that wants to keep the IT community locked into its proprietary solutions*." See NetApp Patent Lawsuit Against ZFS Open Source Technology: Embracing Innovation, http://www.sun.com/lawsuit/zfs/index.jsp (emphasis added). Thus, there can be no doubt that Sun continues to accuse NetApp of stifling the open source community, just as Mr. Hitz's declaration states. It takes a special level of chutzpah for a party, such as Sun, that relied on nothing but attorney argument in its opening brief to ask the Court to strike as "argumentative" the good faith testimony of a competent witness that it knows full well to be true. Sun's request to strike should be denied.

## CONCLUSION

For the foregoing reasons, Sun's request to strike portions of the declarations of Stephen G. Kunin and David Hitz should be denied.

Dated: May 9, 2008

/s/ Edward R. Reines
Matthew D. Powers
Edward R. Reines
Jeffrey G. Homrig
Jill J. Ho
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Plaintiff-Counterclaim Defendant NetApp, Inc.