United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETWORK APPLIANCE INC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SUN MICROSYSTEMS INC,<br><br>　　　　Defendant.<br>_____ / | No. C-07-06053 EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART SUN'S MOTION FOR PARTIAL STAY OF THE CASE PENDING REEXAMINATION; OVERRULING EVIDENTIARY OBJECTIONS; DENYING IN PART AND GRANTING IN PART MOTIONS TO SEAL** |

Sun Microsystems Inc.'s motion for partial stay of the case pending reexamination of United States patent nos. 5,819,292, 6,857,001, and 6,892,211 came on for hearing on May 13, 2008. Having read all the papers submitted and carefully considered the relevant legal authority and arguments made at the hearing, the court hereby GRANTS in part and DENIES in part Sun's motion for the following reasons and for the reasons stated at the hearing. The Court also OVERRULES Sun's accompanying evidentiary objections and DENIES IN PART AND GRANTS IN PART the parties' motions to seal.

**I.    BACKGROUND**

On April 15, 2008, Sun moved for a partial stay of the case pending the U.S. Patent and Trademark Office's reexamination of patents '292, '001, and '211 asserted by Network Appliance, Inc. ("NetApp"). Regardless of the outcome of this motion, this case would proceed as to the remaining twelve Sun and four NetApp patents at issue.

In support of its motion, Sun notes that the PTO recently placed three of NetApp's seven patents in suit into reexamination. Sun argues that staying litigation as to the three reexamination patents will avoid the need for the Court to make rulings concerning invalid patents that are unlikely to survive reexamination. Even if some claims survive, they could be substantially narrowed by the

1  PTO during reexamination. NetApp, by contrast, notes that PTO reexamination proceedings often
2  drag on for many years, that many of its claims are likely to survive at the end of the PTO process,
3  and that it should be able to select which claims it proposes that the Court construe when the parties
4  narrow the number to a manageable amount.

5      The PTO granted *inter partes* reexamination as to all sixty-three claims of the '001 patent
6  (on April 7, 2008) and issued a first office action rejecting all sixty-three claims of the '001 patent,
7  based on twelve prior art references; granted *inter partes* reexamination as to all claims of the '211
8  patent, based on thirteen prior art references (on April 2, 2008); and granted *ex parte* reexamination
9  as to claims one and four of the '292 patent (on March 18, 2008), based on six prior art references.
10 Sun requested reexamination of these patents within four months of NetApp's filing of its complaint
11 in this case. Sun has also recently filed another *ex parte* request for reexamination of claims four,
12 eight, eleven through fifteen, and twenty of the '292 patent, after allegedly becoming aware of an
13 additional prior art not disclosed to the PTO. Sun initially requested reexamination for the '292
14 patent as to claims one through four and eight through twenty, but the PTO only granted
15 reexamination as to claims one and four, which are two of the three independent claims of that
16 patent. See Kunin Decl., Ex. H.

17     This case was filed on September 5, 2007, and transferred from the Eastern District of Texas
18 on November 30, 2007. The claim construction hearing is set for August 27, 2008, and the fact
19 discovery cut off is October 13, 2008. No trial date has been set.

20 **II.  SUN'S MOTION FOR PARTIAL STAY**

21     **A.  Legal Standard**

22     Reexamination is a procedure by which a person can request that the PTO reexamine or
23 reevaluate the validity of a United States patent that has already issued. 35 U.S.C. § 302. Congress
24 instituted this process "to shift the burden or reexamination of patent validity from the courts to the
25 PTO." Canady v. ERbe Elektromedizin GmbH, 271 F. Supp. 2d 64, 78 (D.D.C. 2002). Courts have
26 the discretion to stay judicial proceedings pending patent reexamination, but are not required to do
27 so. Fresenius Medical Care Holdings, Inc. v. Baxter Intern, Inc., Case No. 03-1431, 2007 WL
28 1655625 *2 (N.D. Cal. 2007). Some courts have expressed a "liberal policy in favor of granting

motions to stay proceedings pending the outcome" of reexamination proceedings, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery. Id. (citing ASCII Corp. v. STD Ent't USA Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)). However, a court is not obligated to delay its own proceedings by yielding to patent reexaminations. Id.

"In determining whether to stay this case pending re-examination, the Court considers the following factors: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." Telemac Corp. v. Teledigital, Inc., 450 F.Supp.2d 1107, 1111 (N.D. Cal. 2006).

**B.     Whether a Stay is Warranted**

The Court concludes that staying the case with respect to one, but not all, of the three patents at issue is warranted.

1.     Stage of Litigation

This case in the early stages of litigation. The claim construction hearing is still a few months away. Fact discovery closes in October. No depositions have been scheduled or taken and expert witnesses have not been disclosed. No documents other than those produced pursuant to local patent rule disclosures have been produced. No dispositive motions have been filed. No trial date has been set. However, the parties have exchanged preliminary infringement and invalidity contentions. In addition, NetApp has served discovery requests. Corbett Decl. ¶ 7. Moreover, it is already apparent that the parties have invested a fair amount of time and resources in analyzing case issues and strategy.

This factor weighs somewhat in favor of granting the partial stay. See, e.g., Tse v. Apple Inc., Case No. 06-6573 SBA, 2007 U.S. Dist. LEXIS 76521 (N.D. Cal. Oct. 4, 2007) (granting stay where discovery had opened but not proceeded in any material way, one party had not served its initial disclosures, neither party served written discovery or noticed depositions, parties had not exchanged claim construction terms, and only preliminary infringement contentions had been exchanged); Nanometrics v. Nova Measuring Instruments Ltd., Case No. 06-2252 SBA, 2007 U.S.Dist. LEXIS 18785 (N.D. Cal. Feb. 26, 2007) (staying proceedings and finding that the stage of

3

litigation favored stay where the case was pending for nine months and discovery had commenced, but no briefs on claim construction had been filed and trial was far in future).  While the parties certainly have expended some resources in this litigation, this case only recently commenced.

          2.      Simplification of Case

This factor is less straightforward, and, on analysis, tends to weigh somewhat against a stay. On the one hand, the Court and the parties would waste resources if certain claims are partially litigated, but are subsequently mooted or their scope changed as a result of the reexamination.  On the other hand, however, the majority of this case will proceed no matter what, as Sun does not seek a stay with respect to most of the contested patents.  Presumably, as these patents all involve similar technology, there will be considerable overlap between discovery related to the three patents at issue and the other sixteen patents in the case.  The Court and the parties will move forward with claim construction, dispositive motions, and trial regardless of whether the Court grants the stay. Furthermore, the parties are litigating two other related cases before this Court that involve similar patents and technology.

While at first blush the cases relied upon by Sun appear to favor a stay as to all three patents given the early stage of litigation, upon closer examination they do not necessarily do so.  The decision of whether or not to stay a case pending reexamination is very case specific, and those cases did not involve litigation in which so much of the case would move forward regardless of the stay.  See, e.g., Nanometrics v. Nova Measuring Instruments Ltd., 2007 U.S.Dist. LEXIS 18785 (N.D. Cal. Feb. 26, 2007) (staying case where only one patent in dispute); Procter & Gamble v. Kraft Foods Global, Inc., 2007 U.S. Dist. LEXIS 78465, 2-3 (N.D. Cal. Oct. 11, 2007) (staying case where only one patent discussed by court); Tse v. Apple Inc., 2007 U.S. Dist. LEXIS 76521, 06-6573 SBA (N.D. Cal. Oct. 4, 2007) (staying case where one patent in dispute).  Staying the case as to the three patents in reexamination is not nearly as likely to significantly simplify this litigation as much as did the stays issued in those single patent cases.  Further, there appears to be a growing concern among at least some judges in this district that, on balance, staying a case even in its early stages pending reexamination has not led to the just, speedy, and efficient management of the litigation, but instead has tended to prolong it without achieving sufficient benefits in simplification

4

to justify the delay. This concern stems in part from the unpredictable but often lengthy duration of the stay due to the length of PTO reexamination proceedings, as discussed in further detail below, in contrast to the salutary effect of firm deadlines on efficient case management.

Whether or not this case would be simplified by issuing a stay also depends in part upon the likelihood that the PTO would cancel or modify the claims in reexamination. Sun cites statistics that the PTO cancels all claims in 82% of *inter partes* reexaminations and in 12% of *ex parte* reexaminations and modifies them in 9% *inter partes* and 59% *ex parte* reexaminations.[1] See Corbett Decl., Exs. D&E. NetApp does not explicitly attack the predictive value of the *ex parte* statistics, but points out that the *inter partes* statistics are based on a limited number of cases – fifteen in total – that have reached final adjudication, so their predictive value is limited. Kunin Decl. ¶ 49. Among these fifteen, patent claims were cancelled in nine proceedings after the patent holder failed to respond to office actions, while three were canceled after the patent owner failed to pursue an appeal of the rejection of claims, and one terminated after the owner disclaimed its claims. Id. ¶ 46, 49. It is unclear whether these patent holders gave up because of a perceived inability to prevail on the merits of their claims or for other reasons.

The Court concludes that these general and limited statistics are not very helpful in predicting the outcome of issuing a stay in this case. Somewhat more helpful are the PTO actions in the actual reexaminations at issue of the three patents in suit. Here, the PTO already issued an initial office action rejecting all sixty-three claims of the '001 patent, indicating that claim cancellation or modification is at least somewhat likely for these claims. In contrast, while Sun requested reexamination as to claims one through four and eight through twenty for the '292 patent, the PTO only granted reexamination as to two of those claims (claims one and four). For the '292 patent, staying the case with respect to the entire patent makes little sense where the PTO has not even

---

[1] Unlike an *ex parte* reexamination, an *inter partes* reexamination provides for full participation by a third party at all stages of the reexamination proceedings. *Inter partes* reexamination proceedings differ from *ex parte* proceedings in two other critical respects: first, *inter partes* proceedings allow for appeals to the Patent Board of Appeals ("PBA"), and subsequently to the Federal Circuit, upon submission of the PTO's reexamination decision. Second, *inter partes* proceedings impose estoppel upon third-party requesters, which prevent them from later re-litigating the same issues that were raised, or could have been raised, during the *inter partes* proceedings. Procter & Gamble v. Kraft Foods Global, Inc., 2007 U.S. Dist. LEXIS 78465, 2-3 (N.D. Cal. Oct. 11, 2007) (citing 35 U.S.C. § 311 et seq.; 35 U.S.C. § 315(b)(1) and (c)).

5

granted reexamination to the majority of claims and left one independent claim intact. For patent '211, while the PTO granted reexamination as to claims one through twenty-four, no office action has issued yet, and it is difficult to make predictions as to this reexamination.

Regardless of the final outcome, the PTO's analysis would be useful in guiding this Court's decision. However, this consideration, on its own, does not tip the scales. For the '211 and '292 patents, there is no indication based on the PTO actions thus far that these patent claims will be rejected in a reasonable time-frame that would allow efficient management of this case, and, in fact, the opposite appears to be true for the '292 patent, where the PTO only granted reexamination with respect to two of the three independent claims. However, since the PTO has already issued in initial action rejecting all the claims for the '001 patent, staying the case as to that patent will likely simplify the litigation, as it will spare the Court and the parties from investing resources into construing and litigating a patent that may likely not survive reexamination. For this factor, therefore, the scale tips against staying the case as to all patents except for the '001 patent.

### 3. Undue Prejudice or Tactical Disadvantage

NetApp argues that Sun's alleged infringement of ZFS open source software technology has created widespread irreparable harm that is uncommon and unique. Sun argues that this contention fails because NetApp actively promotes the use of ZFS software on its own website. See Corbett Decl., Ex. B. Sun also argues that NetApp's assertion of irreparable harm is based on Mr. David Hitz's speculation and personal opinions. It is true that Mr. Hitz's opinions as to what Sun will do in the marketplace in the future, what other companies might do, and the possible changes to the data storage market are speculative. See Hitz Decl. ¶ 13 (using such phrases like "it is possible that the entire competitive profile," "market might change," vendors . . . may consider," "not outside the realm of possibility that," and "companies . . might"). In addition, NetApp has not sought a preliminary injunction, belying any urgency, and indeed waited nearly three years after Sun announced ZFS and nearly two years after Sun released ZFS to file suit. Lovell Decl. ¶¶ 2-3. In sum, although the widespread use of ZFS may cause some potential future prejudice, there has not been a sufficient showing of actual or likely prejudice for this factor to weigh against a stay. This is also true for any alleged harm to the public and the open source community, as the fact that ZFS

users may be harmed if they invest in ZFS technology that they later need to abandon if NetApp wins this case is too speculative and remote to weigh against a stay, especially as the issue is one of timing as well as outcome. Hitz Decl. ¶ 20. [2]

The Court finds, however, that NetApp will face a tactical disadvantage if Sun is permitted to make its tactical decision as to which claims to pursue most aggressively in this litigation from among all of the patents that it has asserted, while NetApp is forced to litigate only four of its seven asserted patents after Sun has decided to selectively challenge the other three in front of the PTO. See Fujitsu Ltd. v. Nanya Tech. Corp., 2007 WL 3314623, 06-6613 CW (N.D. Cal. Nov. 6, 2007) (denying stay and noting that Fujitsu would be prejudiced by allowing Nanya to proceed on is claims if Fujitsui's claims were stayed). Here, where so many patents are involved and asserted by both parties, other things being equal, there is some force to NetApp's argument that it should be able to make its own strategic decisions about which claims to litigate. In addition, the lapse of time during reexamination could result in the loss of evidence over time. See Alltech Inc. v. Cenzone Tech. Inc., 2007 WL 935516, 06 CV 0153 JM (RBB) (S.D. Cal. March 21, 2007). This consideration slightly favors a stay.

Finally, as to the length of the reexamination proceedings, only three *inter partes* reexaminations have received a BPAI decision since 1999, and each took 4 to 5 years to reach that point. Kunin Decl. ¶ 45 & Ex. N. NetApp, however, acknowledges that the average pendency of *inter partes* reexamination is 28.5 months and is 24 months for *ex parte* proceedings. Id., Exs. G & I. While "[t]he delay inherent to the process of the U.S. Patent and Trademark Office's reexamination of a patent claim does not constitute, by itself, undue prejudice," Photoflex Prods. v. Circa 3 LLC, 2006 U.S. Dist. LEXIS 37743 (N.D. Cal. May 24, 2006), this delay combines with the tactical disadvantage NetApp would face with a stay on all three patents to weigh somewhat against a stay. The Court notes, however, that Sun neither delayed in requesting reexamination nor in requesting the stay. And while, as Sun notes, the legislative history shows that Congress anticipated

---

[2] The Court reaches the same conclusion with respect to alleged reputational harm. Any harm to NetApp's reputation is likely to exist with or without a stay for at least some considerable period of time. In addition, as Sun notes, NetApp is suing Sun for damages in connection with an allegedly damaging blog entry by Sun's CEO, so it appears that NetApp has a legal remedy for any damage to its reputation.

7

certain benefits from PTO reexaminations, including resolving disputes more quickly and more cheaply than litigation, see Patlex Corp. v. Mossinghoff, 758 F.2d 594, 602 (Fed. Cir. 1985), the Court still must exercise its discretion in analyzing the relevant factors to determine whether to grant a stay.

Considering all of the above factors, on balance, the Court finds that a stay is warranted as to the '001 patent only. For patents '211 and '292, where there has been no indication from the PTO that these claims will be rejected, and in light of the facts that this case will move forward in any event and NetApp would face some tactical disadvantage if these claims were stayed, claim construction and discovery shall go forward. However, the Court recognizes that future actions by the PTO could alter this calculus. NetApp may conduct discovery and seek claim construction for these two patents, but the Court might later decide not to allow trial or dispositive motion practice on certain claims or to postpone trial and dispositive motions on them.

The parties shall provide a joint statement to the Court following the close of fact discovery updating the Court as to the status of the reexaminations. In addition, either party may move for relief from stay ('001 patent) or for a stay ('211 and '292 patents) if there is a significant change in the reexamination status at any time in the litigation.

### C. Evidentiary Objections

Sun objected to the declarations of Messrs. Hitz and Kunin on the basis that these declarations contain improper opinion, speculation, argument, and legal conclusions. While Sun might well be technically correct in certain respects if this were a motion for summary judgment, here the Court is making a discretionary determination based on balancing multiple factors that by their nature involve some level of speculation and prediction about future prejudice and future actions by the PTO. For this purpose, the Court has taken the objections into account in assessing the weight of the evidence and disregards any legal argument or conclusions. Therefore, these objections are OVERRULED for purposes of this motion.

### D. Motions to Seal

NetApp moved to seal portions of Mr. Hitz's declaration and corresponding portions of its opposition. Sun opposed this motion, noting that the Hitz declaration contains general predictions

8

that are neither privileged nor trade secrets. The Court agrees with Sun and finds that most of these portions are not privileged or protectable as a trade secret or otherwise entitled to protection under the law. See L.R. 79-5. However, there are certain parts of the Hitz declaration which arguably contain proprietary information and which the Court will seal: line three of ¶ 10 of the Hitz declaration, and Hitz Declaration, and lines three through ten of ¶ 13 of the Hitz declaration. The Court will also seal those portions of NetApp's opposition that rely on those paragraphs: lines 9 through 16 of page 6, and lines 16-17 of page 7. For this reason, Sun's request to seal portions of its reply brief and supporting papers that contain information deemed confidential by NetApp, shall not be sealed either, except to the extent that they rely on these specific paragraphs of the Hitz declaration. The parties shall file publicly redacted copies of their motions and supporting papers with these more limited redactions.

## III.   CONCLUSION

In light of the foregoing, Sun's Motion for Partial Stay is GRANTED IN PART (as to the '001 patent) and DENIED IN PART (as to the '211 and '292 patents). Sun's evidentiary objections (Docket No. 60) are OVERRULED. The parties' motions to seal (Docket Nos. 50 and 51) are DENIED IN PART AND GRANTED IN PART. The parties shall file revised publicly redacted copies of their papers as discussed above, no later than May 30, 2008. The parties shall provide a joint statement to the Court on **November 2, 2008** updating the Court as to the status of the reexaminations.

Dated: May 23, 2008

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge