MATTHEW D. POWERS (Bar No. 104795)
matthew.powers@weil.com
EDWARD R. REINES (Bar No. 135960)
edward.reines@weil.com
JEFFREY G. HOMRIG (Bar No. 215890)
jeffrey.homrig@weil.com
JILL J. HO (Bar No. 236349)
jill.ho@weil.com
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Plaintiff-Counterclaim Defendant
NETAPP, INC.,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK APPLIANCE, INC. <br><br> Plaintiff-Counterclaim Defendant, <br><br> v. <br><br> SUN MICROSYSTEMS, INC. <br><br> Defendant-Counterclaim Plaintiff. | Case No. C-07-06053 EDL <br><br> **PLAINTIFF NETAPP, INC.'S OPPOSITION TO DEFENDANT SUN MICROSYSTEMS, INC.'S MOTION FOR PARTIAL STAY** |

**PUBLIC VERSION**

# TABLE OF CONTENTS

|     |     |     |                                                                                                                                                                              | Page |
| --- | --- | --- | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ---- |
| I.  |     |     | INTRODUCTION .................................................................................................................. | 1    |
| II. |     |     | ANALYSIS............................................................................................................................ | 3    |
|     | A.  |     | The Parties Stipulated to Appear Before this Court to Facilitate a Prompt Resolution of this Dispute and Discovery is Proceeding Expeditiously ................. | 3 |
|     | B.  |     | Staying the Proceedings with Respect to the '292, '001, and '211 Patents Will Unduly Prejudice NetApp............................................................................. | 4 |
|     |     | 1.  | Because Sun has Open-Sourced ZFS, NetApp Risks Suffering a Unique Type of Irreparable Harm to Its Market Position............................ | 5 |
|     |     | 2.  | NetApp Also Risks Suffering Irreparable Harm to Its Reputation.............. | 8 |
|     |     | 3.  | Delaying Resolution of this Dispute Would Also Cause Irreparable Harm to the Public, the Industry, and Open Source Community ................ | 8 |
|     |     | 4.  | The Length of Delay Caused by Waiting Years for Reexamination Proceedings to be Completed Would Unduly Prejudice NetApp................. | 8 |
|     | C.  |     | Granting a Partial Stay is Unlikely to Simplify the Issues ..................................... | 11 |
| III.|     |     | CONCLUSION..................................................................................................... | 14 |

1 **TABLE OF AUTHORITIES**

2 Page(s)

3 **CASES**

4 *Alltech, Inc. v. Cenzone Tech., Inc.*,
   No. 06-cv-0153, 2007 WL. 935516 (S.D. Cal. Mar. 21, 2007)..................................5, 10

5 *Biax Corp. v. Fujitsu Computer System Corp.*,
6   No. 2:06-cv-364, 2007 WL 614187 (E.D. Tex. Feb. 26, 2007)..........................................10

7 *Blonder-Tongue Laboratories, Inc. v. University Ill. Foundation*,
   402 U.S. 313 (1971)..................................................................................................12
8

*Comcast Cable Comm'ns Corp. v. Finisar Corp.*, No. C 06-4206,
9   2007 WL. 1052883 (N.D. Cal. Apr. 5, 2007)........................................................3, 4, 12

10 *Commonwealth Sci. & Industrial Research Organisation v. Buffalo Tech. Inc.*,
   492 F. Supp. 2d 600 (E.D. Tex. 2007)..............................................................................8
11

*Ethicon, Inc. v. Quigg*,
12   849 F.2d 1422 (Fed. Cir. 1988) ..................................................................................12

13 *Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.*, No. C 04-1431,
   2007 WL. 1655625 (N.D. Cal. June 6, 2007)..........................................................3, 5, 10
14

*Fujitsu Ltd. v. Nanya Tech. Corp.*,
15   2007 WL 3314623, at *3 (N.D. Cal. Nov. 6, 2007)..........................................................2

16 *In re America Academy of Sci. Tech. Ctr.*,
   367 F.3d 1359 (Fed. Cir. 2004) ....................................................................................9
17

*In re Translogic Tech. Inc.*,
18   504 F.3d 1249 (Fed. Cir. 2007) .............................................................................12, 13

19 *Landis v. N. America Co.*,
20   299 U.S. 248 (1936)......................................................................................................3, 4

*Lexington Lasercomb I.P.A.G. v. GMR Products, Inc.*,
21   442 F. Supp. 2d 1277 (S.D. Fla. 2006) ........................................................................10

22 *Martek Biosciences Corp. v. Nutrinova, Inc.*,
23   520 F. Supp. 2d 537 (D. Del. 2007)................................................................................6

*eBay v. MercExchange*,
24   126 S. Ct. 1837 (2006)..................................................................................................6

25 *Muniauction, Inc. v. Thomson Corp.*,
26   502 F. Supp. 2d 477 (W.D. Pa. 2007)............................................................................6, 8

*Smith & Nephew, Inc. v. Synthes (U.S.A.)*,
27   466 F. Supp. 2d 978 (W.D. Tenn. 2006) ......................................................................6

28 *Soverain Software LLC v. Amazon.com, Inc.*,

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

356 F. Supp. 2d 660 (E.D. Tex. 2005) ............................................................................... 3

*Telemac Corp. v. Teledigital, Inc.*,
   450 F. Supp. 2d 1107 (N.D. Cal. 2006) ................................................................... 1, 3

*Translogic, Tech., Inc. v. Hitachi, Ltd.*,
   250 Fed. Appx. 988, 2007 WL. 2973955 (Fed. Cir. Oct. 12, 2007) .......................... 13

*Viskase Corp. v. America National Can Co.*,
   261 F.3d 1316 (Fed. Cir. 2001) .................................................................................. 3

**STATUTES**

35 U.S.C. § 282 ................................................................................................................ 12

35 U.S.C. §§ 305, 314(c) ................................................................................................... 9

35 U.S.C. § 317(b) ........................................................................................................... 12

37 C.F.R. § 1.510 et seq. .................................................................................................... 9

1    NetApp, Inc. ("NetApp"), formerly Network Appliance, Inc., opposes Sun
2    Microsystems, Inc.'s ("Sun's") motion for partial stay pending reexamination of United States
3    Patent Nos. 5,819,292 ("the '292 patent"), 6,857,001 ("the '001 patent"), and 6,892,211 ("the
4    '211 patent") by the United States Patent and Trademark Office ("PTO").

## I. INTRODUCTION

After stipulating specifically to have *this* Court resolve the parties' patent claims – because of this Court's capability, availability and interest in doing so – Sun has now instead sought a reexam for key NetApp patents. Yet, Sun's stipulation to have this Court hear the claims at issue confirms its confidence in this Court's ability to resolve the parties' claims properly. Likewise, its agreement to have such claims resolved "promptly" by this Court demonstrates that its reexam request cannot be explained as some kind of desire for alacrity, particularly given the notorious pace of Patent Office reexams, as explained below. Even if Patent Office reexam practice is not in as bad a shape as commentators are currently suggesting, the average time to resolve reexams such as those involved here is years from now. *See generally* Kunin Decl.

Truth be told, Sun's attempted "reexam and stay" litigation maneuver is, in fact, a cynical attempt to gain tactical advantage through a stay motion. While it is understandable that a party might attempt to gain litigation advantage with such a tactic, the law is absolutely clear that stay requests should not be granted when they result in a substantial tactical disadvantage to one of the parties. *See, e.g., Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (denying a motion for a stay where "a possibly lengthy delay would put Telemac at a clear tactical disadvantage."). In reality, the initial grant of a reexam is routine and occurs in almost every case. It cannot be that one can place an infringement litigation on hold for years simply by filing for a reexam and moving for a stay. Yet, that is the approach being attempted by Sun.

In any event, the fact is that the protracted delay sought by Sun would unduly prejudice NetApp and this strongly counsels against the grant of a litigation stay. A delay of even a couple of years has the potential to cause irreparable harm to NetApp's market position and its reputation. This is particularly true because Sun is not only infringing NetApp's patents through

NETAPP'S OPPOSITION TO SUN'S MOTION FOR
PARTIAL STAY                                                        CASE NO. C-07-06053 EDL
1

its own product sales, but it is encouraging the creation of a whole industry of infringement by labeling its distribution of the infringing software as an "open source" project. Hitz Decl. ¶ 9. This means that Sun has produced infringing computer code and made it easy for software users and software companies everywhere to infringe. *Id.* ¶ 8. Indeed, Sun is not just providing fixed, machine readable binary software, but is providing human-readable code that can be easily modified and integrated into pre-existing systems or developed into completely new storage products. The problems caused by Sun's open sourcing of software, which software Sun itself admits is based on NetApp's innovations, can be analogized to the practical problems in enforcing intellectual property rights against entities that distribute infringing copies of music. The next two or three years will be very significant for the proliferation of ZFS. It is therefore vital for this Court to provide prompt clarity regarding the infringing character of ZFS. *Id.* Both the open source community and NetApp deserve the prompt clarity this Court is in a position to provide by not deferring these claims to the extended – and much criticized – Patent Office reexam process.

In addition, Sun's motion, if granted, would create a highly prejudicial imbalance in the number of claims each party is bringing to the table – a situation that would grossly distort the parties' true relative positions in this suit. Indeed, Sun unreasonably asks that it be allowed to march forward with its infringement claims for thirteen patents while NetApp be reduced to four patents and, more importantly, be stripped of core claims that actually pertain to the technology at the heart of this suit. *See Fujitsu Ltd. v. Nanya Tech. Corp.*, No. C 06-6613, 2007 WL 3314623, at *3 (N.D. Cal. Nov. 6, 2007) ("The Court also agrees with Fujitsu that it would be unreasonable to permit Nanya to proceed on its infringement claims against Fujitsu while staying Fujitsu's infringement proceedings against Nanya, as Nanya proposes.").

In sum, Sun obviously did not file the reexam to speed resolution of the parties' disputes, and Sun obviously does not have less confidence in the efficacy of this Court's processes than those of the Patent Office bureaucracy. Where there is a risk that delay in the resolution of patent infringement claims will irreparably harm the patent owner, and the technology community more generally, and a capable and willing Court is available, a tactically-

driven stay motion such as this one should be denied.

## II. ANALYSIS

Although is it is within this Court's discretion to grant a stay, this Court is of course "under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations" including those initiated only after the infringement action has been filed. *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 04-1431, 2007 WL 1655625, at *3 (N.D. Cal. June 6, 2007); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). Even Sun acknowledges that there is not some kind of automatic rule that patent cases should be stayed pending reexam. Such a rule 'would invite parties to unilaterally derail' litigation" as Sun attempts to do here. *Fresenius*, 2007 WL 1655625 at *3 (citing *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp.2d 660, 662 (E.D. Tex. 2005). As one judge in this district has observed:

> If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner. From a case management perspective, the possible benefits must be weighed in each instance against the possible drawbacks.

*Comcast Cable Comm'ns Corp. v. Finisar Corp.*, No. C 06-4206, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007).

The Supreme Court has cautioned that a court "must weigh competing interests and maintain an even balance" before exercising its inherent power to stay a case. *Landis v. N. Am. Co.*, 299 U.S. 248, 255-56 (1936). When ruling upon a motion for a stay pending patent reexamination, courts consider (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-movant. *Telemac Corp.*, 450 F. Supp.2d at 1111.

### A. THE PARTIES STIPULATED TO APPEAR BEFORE THIS COURT TO FACILITATE A PROMPT RESOLUTION OF THIS DISPUTE AND DISCOVERY IS PROCEEDING EXPEDITIOUSLY.

In all likelihood, this litigation will be completed long before the reexamination proceedings. The parties arrived at this Court with this important case because they knew that

1  this Court would diligently and effectively resolve their claims promptly:

> Plaintiff believes in particular that having Judge Laporte preside over both of the parties' patent cases will lead to a just and speedy resolution of all of their disputes. Counsel for the parties have conferred with Judge Laporte, who has agreed to hear this matter and to conduct a prompt Case Management Conference with the goal of a prompt resolution of the disputes. The parties have consented to have Judge Laporte hear this matter for all purposes[.]

Agreed Motion to Transfer at 1-2. *NetApp v. Sun* (9:07-cv-206 RHC, E.D. Tex.) [Docket 37].

Although it is true that no trial date has been set by the court, and although Sun attempts to make much of that fact, that argument should carry little weight in the Court's analysis. Consistent with their goal of promptly resolving this dispute, the parties are working diligently to prepare their respective cases in this litigation. Ho Decl. ¶ 2. Indeed, discovery is well under way and is moving at an expedited pace, with the initial disclosures for the three patents that are the subject of this motion proceeding substantially faster than even the default patent rules would provide. The parties have not only served their initial disclosures and required disclosures under Patent L.R. 3-2 and 3-4, but both sides have already served multiple sets of interrogatories, requests for production, requested depositions for the first two weeks of May. *Id.* ¶¶ 3-5, 7. Counsel have met and conferred regarding document production and are on the verge of producing documents; rolling production of documents is likely to begin in the next few weeks. *Id.* ¶ 6; *see also Comcast*, 2007 WL 1052883, at *1 (denying a motion to stay and finding significant that "the parties are on the verge of producing documents after much preparation to do so").

   B.   **STAYING THE PROCEEDINGS WITH RESPECT TO THE '292, '001, AND '211 PATENTS WILL UNDULY PREJUDICE NETAPP.**

Of the three factors in determining whether to stay litigation pending a patent reexam, the most important consideration is the possibility of undue prejudice or clear tactical disadvantage to the non-movant. *See Landis*, 299 U.S. at 255 (noting that the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else"). Courts have recognized that because the reexamination process "may be lengthy, often taking

years to run its course," a patentee may be prejudiced by the accused infringer's continued marketing of purportedly infringing technology (much more the "open sourcing" of infringement). *Fresenius*, 2007 WL 1655625, at *5. Moreover, as with any delay in litigation, "evidence could be lost and witnesses' memories could fade." *Id.*; *see also Alltech, Inc. v. Cenzone Tech., Inc.*, No. 06-cv-0153, 2007 WL 935516, at *2, (S.D. Cal. Mar. 21, 2007).

This dispute is not a routine patent dispute between parties involving a simple fight over the right to royalties. Here, not only is NetApp suffering direct harm from Sun as it markets a new product line based on infringing technology, but Sun's careless decision to freely release *to the public domain* a software package embodying infringing ZFS technology has created a degree of widespread irreparable harm that is uncommonly threatening. Indeed, Sun itself has suggested that nothing can be done to truly stop its infringing ZFS software from continuing its metastasis throughout the industry and marketplace:

> [NetApp's] objectives were clear - number one, [NetApp would] like us to unfree ZFS, to retract it from the free software community. ***Which reflects a common misconception among proprietary companies - that you can unfree, free. You cannot.***

*See* Hitz Decl. Exh. B. (emphasis added).

Accordingly, now is not the time to selectively remove from this dispute three core patents in favor of a sluggish reexamination process. On the contrary, and as set forth below, only a timely judgment that confirms the validity and infringement of NetApp's patents to the industry and to the open-source community will prevent NetApp from suffering an unacceptable level of irreparable harm and undue prejudice from a multiplicity of sources that are rapidly becoming increasingly delocalized. Although NetApp can never hope to retrieve or erase every copy of ZFS that has ever been downloaded, if NetApp must wait years for a decision that ZFS infringes its patents, it will be impossible to put the proverbial horses back into the barn.[1] Hitz Decl. ¶ 9.

---

[1] Though NetApp of course wishes to maintain its position in the marketplace, it is worth noting that NetApp is not using this lawsuit as a means to prevent the non-commercial use of software, such as in an academic or research setting. that may technically be deemed to infringe.

### 1. Because Sun has Open-Sourced ZFS, NetApp Risks Suffering a Unique Type of Irreparable Harm to Its Market Position.

This is not the typical patent infringement case. Because Sun has made its infringing ZFS software available for free to anyone who wants to use it, NetApp will be unduly prejudiced by any delay in adjudication. Indeed, this is not just an instance of one entity infringing, but a whole industry of infringement being created, possibly causing the entire competitive profile of the data storage market to change.[2] Hitz Decl. ¶ 13. Time is of the essence. The market landscape for technology companies shifts quickly; a delay of even a few years can be equivalent to several product lifetimes. *Id.* ¶ 12.

REDACTED

Further, because ZFS is open-sourced, it lowers the barrier to entry for startup companies to bring unproven products incorporating infringing ZFS technology to market and start competing with NetApp. *Id.* ¶ 14. Indeed, because Sun is distributing ZFS at no cost, it dramatically lowers the product development costs for any company, not just startups. *Id.* Accordingly, if NetApp were forced to wait years for the reexam process to complete before having its claims resolved, NetApp's position within the industry could be forever altered, as the sheer number of new competitors in the data storage space could prevent NetApp from ever regaining its market position. *Id.* ¶ 15.

The concerns raised above are especially acute because this is not just a situation

---

[2] In deciding whether to issue permanent injunctive relief in the wake of the Supreme Court's decision in *eBay v. MercExchange*, 126 S. Ct. 1837 (2006), courts have repeatedly viewed damage to a plaintiff's market position as constituting irreparable harm. *See, e.g., Martek Biosciences Corp. v. Nutrinova, Inc.*, 520 F. Supp. 2d 537, 558 (D. Del. 2007); *Muniauction, Inc. v. Thomson Corp.*, 502 F. Supp. 2d 477, 482-483 (W.D. Pa. 2007); *Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978, 983 (W.D. Tenn. 2006).

where Sun has passively distributed ZFS. Rather, Sun has actively encouraged the adoption of ZFS by telling the industry that no negative consequences will flow from its use, despite the pending lawsuit. Sun has even called the litigation "spurious." For instance, in his October 24, 2007 blog entry, Sun's CEO Jonathan Schwartz publicly stated that "we've always protected our markets from trolls, so customers can continue to use ZFS without concern for spurious patent and copyright issues." *See* Hitz Decl. Exh. B. As another example, Sun has stated that "[w]e've let Apple know we will use our patent portfolio to protect them and the Mac ZFS community from Net App. With or without a commercial relationship to Sun." *Id.* Such statements fueling the proliferation of infringing ZFS software make the need for the prompt adjudication of NetApp's patent claims, as stipulated to by the parties only a few months ago, even more apparent.

Stacked atop the unique type of harm described above is also the possibility that that NetApp could suffer harm at Sun's own hands as it continues to markets products that directly compete with NetApp products. Specifically, Sun has recently begun marketing the Sun Fire X4500 server, which has at its heart infringing ZFS software and, though not necessarily in the same class as NetApp products, **REDACTED** Sun is not licensed to use NetApp's patents, and thus never had to pay the true cost of incorporating ZFS into the SunFire X4500 server and can therefore undercut NetApp's pricing on a per gigabyte basis. *Id.* ¶ 11. As this litigation wears on, not only may NetApp lose significant market share, but in responding to normal market pressures, NetApp will likely have to consider shrinking its normal profit margins. *Id.* Furthermore, over the next 3-5 years, it is likely that Sun will introduce additional data storage products incorporating infringing ZFS software, which will only magnify the harm to NetApp. *Id.* ¶ 12.

The longer the issues in this litigation remain unresolved, the greater the risk of erosion of NetApp's market share, which could create incalculable damage that is difficult to remedy. In short, this is hardly a case of a "patent troll" lacking a genuine business program. Rather, NetApp seeks to protect legitimate, well-established markets and interests that, contrary to Sun's urging, cannot be replaced simply through the collection of money damages many years

from now.

### 2. NetApp Also Risks Suffering Irreparable Harm to Its Reputation.

The longer this litigation drags on, the greater the harm that will result to NetApp's reputation.[3] From the outset of this dispute, Sun has repeatedly disparaged NetApp by publicly accusing NetApp of attempting to stifle the open source community, asserting meritless patents, and infringing Sun's patents. Hitz Decl. ¶ 17. Indeed, as noted above, Sun's CEO has even openly called NetApp a "patent troll." *See* Hitz Decl. Exh. B. Further, as more time passes and the more Sun encourages others to use ZFS, the more established the use of ZFS may become and the more disruptive NetApp's attempts to enforce its patents will be. Hitz Decl. ¶ 18. NetApp could be blamed for that disruption, which could result in further harm to NetApp's reputation. *Id.* Indeed, even valid IP assertions are not viewed favorably by many members of the open source community; the mere participation in a lawsuit can bear a reputational cost. *Id.* ¶ 19. Should the Court grant Sun's motion for a partial stay, NetApp will suffer additional harm as this matter is prolonged. *Id.*

### 3. Delaying Resolution of this Dispute Would Also Cause Irreparable Harm to the Public, the Industry, and Open Source Community.

If it remains unsettled whether ZFS infringes NetApp's patents, users of ZFS may also be harmed by the delay, particularly if Sun misleads members of the industry and open source community into adopting ZFS under the erroneous belief that NetApp's patents are invalid. *Id.* ¶ 20. Such adopters may rely heavily on ZFS when developing their businesses and technology, only to have to abandon their investments when infringement is established. *Id.* Others will await resolution of this litigation before determining what they can and cannot do with ZFS. *Id.* Thus, the sooner the true status of ZFS is determined, the better.

### 4. The Length of Delay Caused by Waiting Years for Reexamination Proceedings to be Completed Would Unduly Prejudice NetApp.

In light of the above, it is clear that time is of the essence. But a reexam of core

---

[3] In deciding whether to issue permanent injunctive relief, courts have repeatedly viewed damage to a plaintiff's reputation as constituting irreparable harm. *See, e.g., Muniauction, Inc. v. Thomson Corp.*, 502 F. Supp. 2d 477, 483 (W.D. Pa. 2007); *Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600, 604 (E.D. Tex. 2007).

NETAPP'S OPPOSITION TO SUN'S MOTION FOR
PARTIAL STAY                                                          CASE NO. C-07-06053 EDL

8

patents in this dispute would provide anything but a timely adjudication of NetApp's claims, as described below and in the accompanying Declaration of Stephen G. Kunin, who served for ten years as Deputy Commissioner for Patent Examination Policy. As Deputy Commissioner, Mr. Kunin directed the revision of the Manual of Patent Examining Procedure including the specific chapters covering *ex parte* and *inter partes* reexamination procedures and also the establishment of the Rules of Practice (found at 37 C.F.R. § 1.510 et seq. and § 1.903 et seq.) specifically applicable to *ex parte* and *inter partes* reexamination proceedings. *See* Kunin Decl. ¶ 13.

Despite the statutory and regulatory provisions calling for reexaminations to be conducted with "special dispatch," 35 U.S.C. §§ 305, 314(c), there are in fact few strict deadlines imposed on examiners after the first action and such examinations have not been swift. And, with a grossly backlogged PTO operating with limited resources, the unfortunate truth is that reexamination proceedings can literally take years, assuming they are ever completed at all. *See, e.g., In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359 (Fed. Cir. 2004) (affirming the Board of Patent Appeals and Interferences approximately **ten years** after reexamination was first requested).

For instance, not one single *inter partes* reexamination, has ever proceeded through each step of the entire reexamination process in the over eight years since the inception of the *inter partes* reexamination option. Kunin Decl. ¶ 48. Indeed, the sample sizes are so small that the currently available statistics concerning the likelihood of claims being confirmed, cancelled or amended (upon which Sun relies in arguing for a stay) have little, if any, predictive value. *Id.* ¶¶ 29, 50. Only 15 *inter partes* Reexamination Certificates have ever issued, and all were issued because of inaction and default by the Patent Owner or third party requester; **none** were issued because of any final adjudication on the merits by the BPAI. *Id.* ¶ 49. In fact, since 1999, only three *inter partes* reexaminations have ever received a BPAI decision. Each of these reexaminations took 4 to 5 years to reach that point, only to be remanded to the Examiner for further consideration. As of this date, all three are still pending. *Id.* ¶ 45; *see also* Kunin Decl. Exh. N.

Sun's motion for partial stay asks that the litigation of the '001 and '211 patents be

NETAPP'S OPPOSITION TO SUN'S MOTION FOR
PARTIAL STAY
9
CASE NO. C-07-06053 EDL

stayed until a Reexamination Certificate issues, which requires a final decision by the BPAI and a possible appeal of the BPAI decision to the Federal Circuit. Yet, in the eight years since *inter partes* reexaminations have been available, no *inter partes* reexamination has ever reached that stage. *Id.* ¶ 45. Should the Court grant Sun's request for a stay, it will almost certainly be at least 4-5 years before any kind of resolution. It is therefore crystal clear that *inter partes* reexamination is not the quickest or most efficient vehicle to provide the industry and open source community with sorely needed guidance regarding the status of NetApp's patents.

The situation is not much better when it comes to *ex parte* reexaminations, for which the *average* pendency is two years; the particular proceedings for any particular patent could easily take much longer. *See* Kunin Decl. Exh. I. After the Patent Office has reviewed and responded to the Patent Owner's response to the initial Office Action, the patent owner has six months to file an appeal to the BPAI. Kunin Decl. ¶ 53. The BPAI briefing cycle could then take as long as 4 months, at which point 6-12 additional months may elapse before a BPAI oral hearing. *Id.* ¶¶ 53-54. Following the BPAI oral hearing, it may take an additional 1-3 months for a receipt of the BPAI decision, at which point the patent owner may request rehearing, a process that could take an additional 4 months. *Id.* ¶ 54. If the BPAI decision remains unfavorable, the patent owner may appeal to the Federal Circuit, which will sets its own schedule for briefing and argument. *Id.* ¶ 55. The median time for disposition in the Federal Circuit for an appeal of a PTO decision is 9.6 months. *Id.* Considering all of the above, there can be little doubt that that Sun's motion, if granted, will result in years of delay, even under the most optimistic view of circumstances.

Recognizing the lingering, protracted delay that results from staying litigation pending reexaminations proceedings, courts have acknowledged that this delay corresponds to a genuine prejudice. *See, e.g., Frenesius*, 2007 WL 1655625, at *5 (observing that the reexamination process "may be lengthy, often taking years to run its course," and the opposing party "may be unduly prejudiced by the lapse of time during reexamination"); *Alltech*, 2007 WL 935516, at *2; *Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-cv-364, 2007 WL 614187, at *2 (E.D. Tex. Feb. 26, 2007); *Lexington Lasercomb I.P.A.G. v. GMR Prods., Inc.*, 442 F. Supp.

2d 1277, 1278 (S.D. Fla. 2006). Where, as here, the delay from a reexamination is inextricably coupled to an almost certain risk of irreparable harm not only to NetApp's market position and reputation, but also to the public and the storage industry as a whole, granting a stay would clearly result in undue prejudice. This factor therefore weighs heavily against a stay.

### C. GRANTING A PARTIAL STAY IS UNLIKELY TO SIMPLIFY THE ISSUES.

Given the current status of Sun's reeexam requests, Sun's bold assertions regarding the possibility of having claims in the '292, '001, or '211 cancelled or narrowed during the reexamination process ring hollow. Indeed, for Sun's *ex parte* reexam request, the PTO has thus far granted reexamination with respect to only *two* of the *three* independent claims of the '292 patent that Sun asked to be reexamined. *See* Kunin Decl. Exh. H. Given that the PTO grants 92% of all *ex partes* reexam requests, *see* Kunin Decl. Exh. I, Sun's failure to thus far demonstrate a substantial new question of patentability for an independent claim of the '292 patent actually speaks poorly of its chances for overall success. Furthermore, neither of the two independent claims that the PTO did agree to reeexamine has been rejected by the Examiner yet, and it is likely that no Office Action will issue until the PTO decides whether to grant Sun's second request for reexamination and, if so, whether to merge the two reexamination proceedings. Kunin Decl. ¶ 36.

Second, with respect to its *inter partes* reexaminations, Sun makes much of the fact that the PTO has granted reexamination with respect to all the claims of the '001 and '211 patents based on a finding of substantial new questions of patentability, when in reality such findings are commonplace. Indeed, almost all (~96%) requests for *inter partes* reexamination are granted. *See* Kunin Decl. Exh. G. Moreover, while the Examiner rejected the claims of the '001 patent in the first Office Action, this has no bearing on the ultimate outcome, because initial rejections are also almost as equally commonplace as findings of substantial new questions of patentability, occurring in approximately 90% of all *inter partes* reexamination proceedings. *Id.* ¶ 20. As for the '211 patent, there has not yet been an Office Action and no claims have been rejected by the examiner. *Id.* ¶ 27. In short, none of the reexamination proceedings to date have any significance, particularly as NetApp has yet to submit any arguments or evidence in response.

*Id.* ¶¶ 22, 27 & 37.

Sun's dire predictions regarding the percentage of claims that are cancelled or amended in *inter partes* reexaminations are based on such a small sample size that they have no predictive value for the '001 or '211 patents and thus no probative value. *Id.* ¶¶ 29, 50. As for the *ex parte* reexamination statistics, even if they are taken at face value, the PTO has only granted reexamination for two claims of the '292 patent, so Sun's broad assertion that the reexamination proceedings will have a "major impact," Motion at 9, is hardly supported. *See Comcast*, 2007 WL 1052883, at *1 ("The chance that all claims in suit would evaporate is nonexistent as a practical matter, even before considering that *some claims in suit will not be covered by the reexaminations.*") (emphasis added).

In the unlikely event that any of the asserted claims in the '292, '001, or '211 patents are found to be invalid by this Court and the invalidity finding upheld on appeal, this dispute would be resolved. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1429 (Fed. Cir. 1988) (citing *Blonder-Tongue Labs., Inc. v. Univ. Ill. Found.*, 402 U.S. 313 (1971)). On the flip side, if Sun fails to prove that any asserted claims of the '001 or '211 patents are invalid, any *inter partes* reexamination of that patent will also be terminated. 35 U.S.C. § 317(b). The *ex parte* reexamination proceeding of the '292 patent, however, could nonetheless proceed even if Sun fails to prove that any asserted claims are invalid "because, of course, the two forums have different standards of proof for determining invalidity" and "[c]ourts do not find patents 'valid,' only that the patent challenger did not carry the 'burden of establishing invalidity in the *particular case* before the court' under 35 U.S.C. § 282." *Ethicon*, 849 F.2d at 1428-29 & n. 3 (emphasis in original and internal citations omitted).

By arguing that the PTO's finding of patent invalidity during a reexamination proceeding would supersede the district court's final judgment of validity, Sun grossly misstates the holding of *In re Translogic Tech. Inc.*, 504 F.3d 1249, 1262 (Fed. Cir. 2007).[4] There, the

---

[4] Citing *In re Translogic Tech, Inc.*, 504 F.3d 1249, 1262 (Fed. Cir. 2007), Sun states that the "dispositive issue of invalidity will not be finally decided until the PTO completes its reexamination proceedings – **whether or not a stay is granted here.**" *See* Motion at 11. In other words, Sun suggests that *In re Translogic* teaches that the PTO reexamination process has a retroactive collateral estoppel effect on any prior district or appellate court proceedings, such that

litigation and reexamination proceedings concluded at roughly the same time; the judgments of the district court and the Board of Patent Appeals and Interferences were both appealed to the Federal Circuit. *See In re Translogic*, 504 F.3d at 1251. Both appeals were simultaneously heard by the same panel and decisions were rendered the same day. *Id.* In the second appeal, the district court's judgment was vacated in light of the panel's holding that the patent-in-suit was correctly found to be invalid during the reexamination proceedings. *See Translogic, Tech., Inc. v. Hitachi, Ltd.*, 250 Fed. Appx. 988, 2007 WL 2973955, at *1 (Fed. Cir. Oct. 12, 2007). Thus, the actual holding of the *Translogic* cases is the unremarkable proposition that once a patent has been found *invalid*, whether in litigation or in reexamination, the other proceeding may be rendered moot, as explained above.

Significantly, this means that the **quickest and most efficient** way to resolve the dispute between the parties over the '292, '001, and '211 patents is to deny Sun's motion for a partial stay and allow the parties to litigate those issues. As Sun correctly points out, the parties are already aware of "the practical need to streamline this patent-crowded case where appropriate." Motion at 1. The parties will naturally simplify the issues as much as they can. NetApp fully intends to—and should be allowed the opportunity to—present to the Court what it believes to be the most important issues without Sun unilaterally derailing the litigation with respect to its core claims.

Ironically, granting Sun's motion to stay has the potential to complicate, rather than simplify matters for the Court. Sun has already initiated two additional patent infringement lawsuits pending before this Court. As the Court is surely aware, managing these related cases will be a challenge with three staggered case schedules proceeding in parallel. Granting a partial stay with respect to the '292, '001, and '211 patents would only further exacerbate this case management headache by creating what would essentially be a fourth track of litigation. Accordingly, this factor also weighs against granting a stay.

---

there is actually no reason to ever proceed with a civil action if a reexam is pending in parallel.

## III. CONCLUSION

For the aforementioned reasons, granting Sun's motion for a partial stay pending reexamination of the '001, '211, and '292 patents will unduly prejudice NetApp, give Sun an unfair tactical advantage in this litigation, and only complicate matters for the Court. Given the unique circumstances presented by this case, NetApp respectfully urges the Court to deny Sun's motion for a partial stay.

Dated: April 29, 2008                    */s/ Edward R. Reines*
                                         Matthew D. Powers
                                         Edward R. Reines
                                         Jeffrey G. Homrig
                                         Jill J. Ho
                                         WEIL, GOTSHAL & MANGES LLP
                                         201 Redwood Shores Parkway
                                         Redwood Shores, CA 94065
                                         Telephone: (650) 802-3000
                                         Facsimile: (650) 802-3100

                                         Attorneys for Plaintiff-Counterclaim Defendant
                                         NetApp, Inc.