1
2
3
4
5
6
7
8
9
10
11

**DECLARATION OF PROFESSOR ANTHONY ACAMPORA REGARDING
CLAIM CONSTRUCTION FOR U.S. PATENT NO. 6,873,630**

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Decl. of Professor Anthony Acampora Regarding
Claim Construction for U.S. Patent No. 6,873,630

I, Anthony Acampora, hereby declare:

The statements contained in this Declaration are true and correct. If called as a witness, I would testify thereto under oath.

I have been retained by Plaintiff and Counterclaim Defendant NetApp, Inc. to offer opinions regarding certain claim terms in U.S. Patent No. 6,873,630 ("'630 Patent").

## I.

## QUALIFICATIONS

I am currently Professor Emeritus of Electrical and Computer Engineering at the University of California, San Diego; have been the Director of the Center for Wireless Communications at the University of California, San Diego; and have been Professor of Electrical Engineering and Director of the Center for Telecommunications Research at Columbia University. In addition I spent 20 years in industry as a researcher and research manager at AT&T Bell Laboratories. My qualifications to render an expert opinion in the matter are set forth in my Curriculum Vitae, which is attached as Exhibit A. My C.V. also includes a list of all publications authored in the last 32 years.

## II.

## STATEMENT OF OPINIONS – '630 PATENT

A summary of my opinions regarding certain claim terms in the '630 patent is set forth below. I reserve the right to modify or supplement my opinions as appropriate.

### A.   ORDINARY SKILL IN THE ART

One of ordinary skill in the art relevant to the '630 patent in 1999 would generally have the following education and experience: a bachelor's or master's degree in Electrical or Computer Engineering, or equivalent experience, and several years experience studying, designing and/or using computer network systems.

My opinion is based upon my personal knowledge and experience and my consideration of the following factors: (1) the levels of education and experience of persons of skill working in the field; (2) the types of problems encountered in the art; (3) prior art patents

and publications; (4) the activities of others; (5) prior art solutions to the problems encountered by the inventor; (6) the sophistication of the technology; and (7) the rapidity with which innovations are made.

**B.     BACKGROUND**

One of ordinary skill in the art reading the '630 patent in 1999 would have understood that it is directed generally to network architectures capable of operating at high data transmission rates. According to the '630 patent, in 1999 it was clear that networked computer systems running multi-media, database, and modeling applications, for example, would welcome the ability to communicate at data rates exceeding 1 gigabit per second. To this end, the '630 patent describes a scheme in which a network communication, rather than being transmitted across a single channel, is divided into multiple logical channels by a network interface for subsequent transmission. According to the patent, the overall data transmission rate, rather than equaling the data rate for a single channel, is then approximately the sum of the data transmission rates for each of the logical channels.

The specification explains the basic mechanism underlying the alleged invention of the '630 patent for an exemplary configuration involving four channels as follows:

> In one embodiment of the invention a distributor (e.g., distributor **204** of FIG. 2) accepts a stream of bytes from a MAC module or layer (e.g. a frame), and distributes individual bytes into sub-streams (e.g., mini-frames) in a round-robin fashion. As depicted in the embodiment of FIG. 2, four channels may be implemented with a 10GMII that is four bytes wide; therefore, each time the distributor receives another four bytes, one byte is submitted to each channel. In this manner, an Ethernet frame is divided into four mini-frames for transmission across a different channel.

'630 at 9:24-33. Thus, the '630 patent discloses a scheme in which the communication may be thought of in terms of three levels of granularity. First, and at the highest level, there are the "frames" that are received from a MAC module. These "frames" are then divided into individual "mini-frames" for transmission along individual communication channels. Finally, and at the lowest level of granularity, the "mini-frames" are made up of individual bytes that are ultimately encoded for transmission across the physical medium. *See id.* at 11:40-12:4. By breaking down a single communication, which is normally sent over a single channel, into smaller portions and

transmitting them across multiple channels, the '630 patent explains that a higher data transmission rate may be achieved.

### C. THE DISPUTED TERMS

#### 1. "Portion [of a] Communication" (Claims 3, 5, 12-15, 21-24, 45, 48, 50, 52-53, 73, 76)[1]

One of ordinary skill in the art at the time the '630 patent's application was filed in 1999 would have understood that the term "portion of a communication" in the claims of the '630 patent means "the fraction or portion of a frame carried by one channel."

**BASIS AND REASONS:**

As an initial matter, the term "portion of a communication" is a vague term that simply does not have a well-defined meaning to one of skill in the art. Accordingly, to determine the meaning and scope of this term, one of ordinary skill would have to rely heavily upon the specification and claims in the '630 patent. Pertinent to this analysis, I have been informed that the parties have agreed upon the definitions for a number of claim terms. A review of these combined resources confirms that a "portion of a communication" is the "fraction or portion of a frame carried by one channel."

First, the specification makes clear that when the claims refer to a "portion of a communication," they must, at the very least, be referring to a "fraction or portion of a frame," where a "frame" is the communication unit emitted from or received by a MAC sublayer in the OSI reference model. The use of the word "frame" to represent a communication unit emitted from or received by a MAC sublayer is well known to those of skill in the art. This definition is explicitly confirmed in the specification of the '630 patent, and is therefore the definition I adopt for the purposes of this declaration. *See* '630 patent at 5:48-51 ("The terms 'frame' and 'packet' may be used interchangeably herein, and generally refer to the unit of information received from or sent to a MAC layer from a physical layer device."). The term "portion of a communication"

---

[1] References to claim numbers in this declaration are intended as reference aids, but do not limit the scope of my opinions. To the extent the terms defined in this report are found in claims other than those listed, the same terms in all claims share the same definition unless otherwise noted.

appears in the specification only once. *See id.* at 4:55-61. There, the specification explains that a "distributor" is responsible for "disseminat[ing] *portions of the communications* across the multiple channels."[2] *See id.* The parties have agreed that a "distributor" is a module that divides "across multiple logical channels an Ethernet frame received from a MAC module." *See* Agreed Constructions, Supplemental Joint Claim Construction and Prehearing Statement, Exh. Q [Document No. 74-8]. Thus, the parties have in fact already agreed that the only time the specification refers to a "portion of a communication" it is in fact referring to a fraction or portion of a "frame."

This agreement is consistent with the way one of ordinary skill in the art in 1999 would have understood the terms in light of the disclosure. The only embodiments disclosed in the specification in any meaningful way are those in which MAC layer "frames" are divided into the "portions of a communication" that the claims describe as being transmitted along logical channels. For instance, the specification defines the term "mini-*frame*," as a "fraction or *portion of a frame* this is sent across one of multiple channels."[3] '630 patent at 5:51-53. This term is used 45 times throughout the text of the specification to describe the alleged invention. For instance, Figures 3A and 3B describe the methods for transmitting and receiving a "packet," which the specification explains should be understood to be synonymous with a "frame" in the context of the '630 patent. *Id.* at 5:48-51.[4] These figures describe the methods of transmitting and receiving in terms of "mini-*frames*." Likewise, Figures 5A-5D depict the conversion of "frames . . . into multiple mini-frames for transmission across separate channels in accordance with one embodiment of the present invention."

---

[2] Emphasis added throughout, unless otherwise noted.

[3] Notably, when the specification uses the term "portion" by itself, it is only in connection with the pieces of a frame or packet that are sent across a single logical channel. *See* '630 patent at 2:48-51; 5:51-53; 12:19-21. That the specification consistently uses "portion" in connection with the pieces of frame or packet sent across a single logical channel is persuasive evidence that when the claims use the term "portion" they are also referring to such an entity.

[4] As someone of skill in the art, I can confirm that within the field of data communications, a "packet" is universally recognized to be synonymous with a "frame."

Decl. of Professor Anthony Acampora Regarding
Claim Construction for U.S. Patent No. 6,873,630         4

1    Further demonstrating that a "portion of a communication" is a "fraction or portion of a frame," Figures 1 and 2 of the specification depict a "distributor" dividing communications from a MAC module among multiple logical channels. *See id.* at Figures 1 and 2; *see also id.* at 5:48-51 (defining the "frame" as the unit of information "received from or sent to a MAC layer"). Finally, the specification explains that the "portions of a single packet" delivered by a single channel are received by a "collector." But the parties have already agreed that a "collector" is an entity that "reassembles an Ethernet frame to be provided to a MAC layer," demonstrating that the "portion of a single packet" must be referring to a portion of a "frame." *See* Agreed Constructions, Supplemental Joint Claim Construction and Prehearing Statement, Exh. Q [Document No. 74-8].

Of note, the '630 patent explains the deficiencies of dividing communications up at some point at or above the MAC layer, such that "frames," as defined in the patent, would not be the entities broken up to form the "portions of a communication." *See* '630 patent at 8:24-43. Specifically, the specification explains that such an approach was used in prior art 802.3 link aggregation and would require "almost all of the network interface hardware used for present Ethernet implementations [to be] duplicated." By contrast, the invention of the '630 patent requires the duplication of only physical layer resources. *See id.* No additional details or explanation are offered as to how striping could be achieved above the MAC layer (i.e., based on something other than the use of "portions of communications" that are "fractions or portions of a frame "). This underscores that the '630 patent is concerned only with the striping of data received from a MAC sublayer, such that a "portion of a communication" can only correspond to a "fraction or portion of a frame."

My review of the claims in the '630 patent confirms this understanding. For instance, many independent claims referring to a "portion of a communication" refer expressly to a "communication" as being received or sent to a "media access control module," leaving no doubt that a "portion of a communication" must refer to a "fraction or portion of a frame." The remaining independent claims include additional cues confirming that the "portion of a

Decl. of Professor Anthony Acampora Regarding
Claim Construction for U.S. Patent No. 6,873,630      5

communication" is in fact a "fraction or portion of a frame." For instance, claim 15 refers to the process of "collecting" a "portion." The "collecting" must be performed by the "collector," which the parties have agreed refers to a "module that reassembles an Ethernet frame to be provided to a MAC layer," confirming that the "portion" must be a "fraction or portion of a frame." *See* Agreed Constructions, Supplemental Joint Claim Construction and Prehearing Statement, Exh. Q [Document No. 74-8].

NetApp's proposed construction also requires that a "portion of a communication" be "carried by one channel." The claims demonstrate that this is also an attribute of a "portion of a communication." Indeed, none of the claims describe a "portion of a communication" as being transmitted across multiple channels. Instead, the "portions of a communication" are always linked to a single channel. For instance, Claim 3 calls for "sending a *first portion* of said communication on a *first channel*," and a "*second portion* of said communication on a *second channel*." *See* '630 patent at 15:21-29. The specification confirms the understanding I gain from the claims. For instance, in defining the term "mini-frame," which is used throughout the specification to describe the invention, the specification explains that it is the "portion of the frame carried by *one channel*." *See id.* at 2:48-49; *see also id.* at 5:51-53 (a "mini-frame" or "mini-packet" is sent across "*one* of multiple channels"). Accordingly, when describing an embodiment consisting of four channels, the specification explains that the "mini-frame" should consist of "approximately one fourth of the original frame." *See id.* at 9:64-67; *see also id.* at 9:48-50 (explaining that the "mini-frames" are the entities that the "collector" receives on "all channels"). Likewise, in describing the process of receiving a packet at a collector, the specification explains that "each channel" will deliver "portions of a single packet," confirming once again that a "portion" is an entity that corresponds to a single channel.

Accordingly, for the above specified reasons, I conclude that a "portion of a communication," as used in the claims of the '630 patent, is "the fraction or portion of a frame carried by one channel."

Decl. of Professor Anthony Acampora Regarding
Claim Construction for U.S. Patent No. 6,873,630         6

### 2. "Element [of a] Communication" / "Element [of a] Portion" / "Elements" / "Element of a Portion" (Claims 3, 5, 8, 13-15, 21-23, 45-48, 50, 52, 73, 76, 79, 89, 113, 114, 116, 117)

One of ordinary skill in the art at the time the '630 patent's application was filed in 1999 would have understood that the term "element [of a] communication" (and related terms) in the claims of the '630 patent means "a portion (e.g., a byte) of a 'mini-frame' that is individually encoded for transmission across one of a plurality of logical channels," where a "mini-frame" is "a fraction or portion of a communication received from or sent to a media access control layer from a physical layer device and that is carried by one channel."

**BASIS AND REASONS:**

The claims and specification again provide guidance as to the meaning of this term. First, it is clear to me that the claims distinguish an "element of a communication" and a "portion of a communication." Indeed, some claims refer to an "element of a communication portion," demonstrating that an "element" is a part of a "portion." *See, e.g.*, *id.* at 17:9-14; *id.* at 20:50-55. Likewise, other claims describe the process of "distributing elements of said communication into multiple portions" (i.e. each "portion" is formed from the "elements" that were distributed to it), again demonstrating that an "element" is a component of a "portion." *See, e.g.*, *id.* at 15:19-20; 20:46-47. In fact, I identified no claim referring to an "element" in which this distinction was not maintained. In my opinion, this confirms that one of ordinary skill in the art in 1999 would understand that an "element of a communication" is a part of a "portion of a communication."

Having thus determined that an "element" is a part of a "portion," it must also be the case that an "element of a communication" is a portion of a "mini-frame." The specification explains repeatedly that a "mini-frame" is just the "portion of the frame carried by one channel" (i.e., after the MAC layer frame has been sub-divided into "portions."). *See id.* at 2:49; *id.* at 5:48-53. As explained above, this is equivalent to how the term "portion of a communication" should be understood. *See supra* Part II.C.1. When the specification explicitly refers to "elements," it does so in a way that confirms that an "element" is a portion of a "mini-frame." For instance, in describing the procedure for allocating "elements" to channels, the specification

Decl. of Professor Anthony Acampora Regarding
Claim Construction for U.S. Patent No. 6,873,630     7

1    explains that these "elements" are allocated to the logical channels on a "round-robin basis" such
2    that each channel ultimately carries one "mini-frame" or "mini-packet." Because the "elements"
3    are the fundamental units that are allocated to the channels to form the "mini-frames," they must
4    be portions of "mini-frames." *See* '630 patent at 6:64-7:6. Likewise, when the specification
5    describes how Ethernet frames are encoded for transmission along the communication channels, it
6    explains that it is the individual "elements" that are encoded for transmission. *See id.* at 7:40-53.
7    It is further explained that the encoding may be accomplished using the well known 8B/10B
8    procedure for the coding of individual bytes, thus reflecting a situation where the "element" is
9    one byte in size. *See id.* It is then explained that a "PCS [Physical Coding Sublayer] module" at
10   "a receiving entity" "decodes the mini-frame" to "provide[] the recaptured bytes to a collector."
11   *See id.* Because it is the "recaptured bytes" that are extracted when a "mini-frame" is decoded, it
12   must be that an "element" is a portion of a "mini-frame." I find no other direct references to the
13   term "element" in the specification, and I certainly do not find anything to suggest that an
14   "element" could be something other than a "portion of a mini-frame."

15   NetApp's proposed construction also specifies that an "element of a
16   communication" be transmitted "across one of a plurality of logical channels." As explained
17   above, one of ordinary skill in the art would conclude from the claims and specification that a
18   "portion of a communication" is in fact transmitted across only one of a plurality of
19   communication channels. *See supra* Part II.C.1. Likewise, an "element of a communication" is a
20   part of a "portion of a communication." Because an "element" is only a sub-part of a larger entity
21   that is transmitted across only a single channel, an "element" must also be transmitted on only a
22   single channel.

23   Finally, NetApp's proposed construction requires that the "elements" be
24   individually encoded for transmission across a single channel. And indeed, the specification
25   describes nothing other than this. All of the embodiments depicted in the specification include at
26   least one Physical Coding Sublayer ("PCS"), *see* Figures 1 and 2, which is the only structure
27   disclosed in the specification that carries out any type of encoding, and the parties have agreed
28

Decl. of Professor Anthony Acampora Regarding
Claim Construction for U.S. Patent No. 6,873,630         8

that it does its encoding at the "physical layer," which is the layer actually associated with the physical transmission medium. *See* Agreed Constructions, Supplemental Joint Claim Construction and Prehearing Statement, Exh. Q [Document No. 74-8]; '630 patent at Figure 2. Each of the PCS modules responsible for carrying out the PCS functions are depicted as being linked to a single transmission channel and receiving input from a "distribution module," which the parties have already agreed is responsible for "divid[ing] across multiple logical channels an Ethernet frame received from a MAC module." *See* Agreed Constructions, Supplemental Joint Claim Construction and Prehearing Statement, Exh. Q [Document No. 74-8]; '630 patent at Figures 1 and 2. Because the entity responsible for encoding receives its inputs from the entity responsible for dividing frames into mini-frames and apportioning the "elements" among those mini-frames, and because the coding module is directly associated with the ultimate transmission medium, it must be the case that the "elements" are encoded for transmission.

I find additional confirming evidence for this proposition elsewhere in the specification. For instance, the specification explains that the "PCS modules . . . perform coding of Ethernet frame *elements* . . . ." *See* '630 patent at 7:41-43. Similarly, the specification repeatedly and consistently points to bytes (or smaller units) as the unit of a communication that is encoded for transmission. For instance, the specification explains that "the remainder of the packet is received by the distributor, distributed *one byte at a time* (in round robin fashion) to each channel, encoded, and transmitted." *See id.* at 11:60-62. Similarly, the specification explains that the PCS module may perform 8B/10B or 4B/5B coding schemes to encode or decode data. *See id.* at 7:41-53; *id.* at 10:8-19. Such schemes operate on a byte or half-a-byte, respectively. And indeed, the specification explains that "the last *byte* of each mini-frame and the last *byte* of the packet are recognized by their distinctive codes," demonstrating that it is the bytes that have been encoded. *See id.* at 12:35-36. Finally, the specification explains that "the distributor sends the first *byte* of each channel's mini-frame to a PCS for encoding." *See id.* at 11:50-51. Because a byte has only 8 bits of information, it is too small to correspond to either a "frame" or a "mini-frame." Rather, it can only correspond to the most granular information unit

Decl. of Professor Anthony Acampora Regarding
Claim Construction for U.S. Patent No. 6,873,630          9

used in the claims, which is the "element." Thus, the specification supports the conclusion that it is the "elements of a communication" that are encoded for transmission.

For all the above specified reasons, one of ordinary skill in the art in 1999 would therefore conclude that an "element of a communication" is "a portion (e.g., a byte) of a 'mini-frame' that is individually encoded for transmission across one of a plurality of logical channels," where a "mini-frame" is "a fraction or portion of a communication received from or sent to a media access control layer from a physical layer device and that is carried by one channel."

Though Sun contends that the term "element of a communication" is "clear on its face," it is in fact clear to me that guidance is needed as to its meaning. Indeed, the term "element of a communication" has no clear meaning to one of skill in the art. Taken "on its face," as Sun suggests, the term is indistinguishable from the similarly nebulous claim term "portion of a communication." Yet the claims rely on both of these terms often, making a definitive understanding of their meanings critical.

## III.
## MATERIALS REVIEWED

A list of the materials that I reviewed in preparing this report is attached as Exhibit B.

## IV.
## COMPENSATION

My compensation for consulting on this matter is $525 per hour. My compensation does not depend on the outcome of this dispute.

## V.
## PREVIOUS TESTIMONY

A listing of the testimony I have given in the past seven years is attached to this report as Exhibit C.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

7/7/08  *Anthony Acampora*
Anthony Acampora

Decl. of Professor Anthony Acampora Regarding
Claim Construction for U.S. Patent No. 6,873,630                    11