MARK D. FOWLER (Bar No. 124235)
mark.fowler@dlapiper.com
DAVID ALBERTI (Bar. No. 220625)
david.alberti@dlapiper.com
CHRISTINE K. CORBETT (Bar No. 209128)
christine.corbett@dlapiper.com
YAKOV M. ZOLOTOREV (Bar No. 224260)
yakov.zolotorev@dlapiper.com
CARRIE L. WILLIAMSON (Bar No. 230873)
carrie.williamson@dlapiper.com

DLA PIPER US LLP
2000 University Avenue
East Palo Alto, CA 94303-2215
Tel: 650.833.2000
Fax: 650.833.2001

Attorneys for Defendant and Counterclaimant
Sun Microsystems, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK APPLIANCE, INC.,<br><br>    Plaintiff – Counterclaim Defendant,<br><br>v.<br><br>SUN MICROSYSTEMS, INC.,<br><br>    Defendant - Counterclaimant. | CASE NO. 3:07-CV-06053 EDL (JCS)<br><br>**DECLARATION OF CHRISTINE K. CORBETT IN SUPPORT OF SUN MICROSYSTEMS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTY ORRICK, HERRINGTON & SUTCLIFFE AND SUN'S *EX PARTE* MOTION TO SHORTEN TIME ON SUN'S MOTION TO COMPEL**<br><br>**Date: TBD**<br>**Time: TBD**<br>**Courtroom: E, 15th Floor**<br>**Hon. Elizabeth D. Laporte** |

I, Christine K. Corbett, declare as follows:

    1. I am an attorney at law duly licensed to practice before this Court and am a partner with the law firm of DLA Piper US LLP, attorneys for Sun Microsystems, Inc. ("Sun"). I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would competently testify thereto.

    2. On January 22, 2008, Sun subpoenaed Orrick, Herrington & Sutcliffe ("Orrick")

1  for the production of documents relating to the Whipsaw Litigation. Attached hereto as **Exhibit
2  A** is a true and correct copy of Sun's subpoena to Orrick.

3        3. In April, 2008, at Orrick's request, Sun agreed to reimburse Orrick for costs
4  incurred in copying those documents that would be provided to Sun. At the time of this
5  agreement, Orrick's counsel indicated that the copy costs would be approximately .08-.09 cents
6  per page.

7        4. In a further effort to minimize expenses on Orrick, Sun also agreed that Orrick
8  would not be required to prepare a privilege log, subject to revisiting the issue should the need
9  arise.

10       5. On or about June 19, 2008, I spoke with Orrick's counsel, Scott Lovernick of
11 Schwartz & Cera, regarding status of the document production. Mr. Lovernick informed me that
12 Orrick would not produce any documents until Sun had paid all invoices relating to the copy
13 costs. I told Mr. Lovernick that it was unreasonable to hold the documents (especially after Sun
14 had requested the documents in January, 2008) until payment was received. I did agree, however,
15 to process the invoice (once received) promptly. After a short discussion, Mr. Lovernick agreed
16 that the request was unreasonable and indicated that he would be producing the documents
17 shortly.

18       6. On or about June 25, 2008, Mr. Lovernick spoke with one of my colleagues and
19 informed her that Orrick refused to produce any documents until Sun paid all outstanding
20 invoices.

21       7. That same day, Mr. Lovernick provided, for the first time, four invoices to Sun
22 totaling $21,402.52. Attached hereto as **Exhibit B** is a true and correct copy of Mr. Lovernick's
23 June 25, 2008 correspondence to me, attaching the four invoices for payment.

24       8. Despite repeated attempts to contact Mr. Lovernick, I finally spoke with Mr.
25 Lovernick on June 30, 2008 and explained that it was unreasonable to require Sun to pay for
26 copying documents that were never provided to Sun. I further explained that Orrick's decision to
27 incur $13,000.33 for copying the original documents was unnecessary given that the original
28 documents could have been electronically scanned for production to Sun. I further expressed

concern that Orrick was aware of a $11,856.98 invoice since April 2, 2008, yet had not made any mention of this invoice until June 25, 2008.

9. From June 30 through July 2, I spoke with Mr. Lovernick on multiple occasions in an attempt to resolve the parties' dispute. During one telephone conversation, Mr. Lovernick agreed that it was unreasonable for Sun to pay for copies that were never provided to Sun. The next day, however, Mr. Lovernick indicated that he was under strict direction from Orrick that Sun was required to pay for all copy costs.

10. On July 3, 2008, Douglas Schwartz of Schwartz & Cera and Mr. Lovernick called me to further discuss the dispute. Mr. Schwartz became extremely hostile and irate on the telephone and threatened to file a motion for sanctions against me. Mr. Schwartz then insulted my legal experience and indicated that Orrick would not be producing any documents. While I was attempting to discuss the matter, Mr. Schwartz abruptly hung up the phone on me.

11. During the July 3, 2008 telephone conference with Mr. Schwartz, Mr. Schwartz indicated that Orrick had 120 boxes of documents relating to the Whipsaw Litigation.

12. During the parties' meet-and-confer telephone conferences, Mr. Lovernick indicated that he believes that the remaining 23,908 pages that were not produced were either duplicative of a document that was produced or privileged.

13. Sun has fully complied with Civil Local Rule 37-1(a).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 8, 2008 in East Palo Alto, California.

_____
Christine K. Corbett