| | |
|---|---|
| 1 | MARK D. FOWLER (Bar No. 124235) |
| | mark.fowler@dlapiper.com |
| 2 | DAVID ALBERTI (Bar. No. 220625) |
| | david.alberti@dlapiper.com |
| 3 | CHRISTINE K. CORBETT (Bar No. 209128) |
| | christine.corbett@dlapiper.com |
| 4 | YAKOV M. ZOLOTOREV (Bar No. 224260) |
| | yakov.zolotorev@dlapiper.com |
| 5 | CARRIE L. WILLIAMSON (Bar No. 230873) |
| | carrie.williamson@dlapiper.com |

DLA PIPER US LLP
2000 University Avenue
East Palo Alto, CA 94303-2215
Tel: 650.833.2000
Fax: 650.833.2001

Attorneys for Defendant and Counterclaimant
Sun Microsystems, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK APPLIANCE, INC., | CASE NO. 3:07-CV-06053 EDL (JCS) |
| Plaintiff – Counterclaim Defendant, | SUN MICROSYSTEMS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTY ORRICK, HERRINGTON & SUTCLIFFE |
| v. | |
| SUN MICROSYSTEMS, INC., | Date: TBD |
| Defendant - Counterclaimant. | Time: TBD |
| | Courtroom: E, 15th Floor |
| | Hon. Elizabeth D. Laporte |

### NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on July 29, 2008 at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-titled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Sun Microsystems, Inc. will and hereby does move the Court for an order compelling Orrick, Herrington & Sutcliffe to produce documents responsive to a subpoena served in January, 2008.

1  This motion is based on this Notice of Motion, the Memorandum of Points and
2  Authorities, the Declaration of Christine Corbett filed herewith, the pleadings and papers on file
3  herein and any evidence and argument presented to the Court at the time of the hearing.

## STATEMENT OF RELIEF

Sun seeks an order from the Court compelling Orrick, Herrington & Sutcliffe to produce documents responsive to a subpoena served in January, 2008.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The issue here is simple. In January, 2008, Sun Microsystems, Inc. ("Sun") subpoenaed Orrick, Herrington & Sutcliffe ("Orrick") for the production of documents relating to a previous litigation involving Network Appliance, Inc., known as the Whipsaw Litigation. After five months, Orrick is finally prepared to produce the documents, but refuses to do so until Sun pays Orrick $21,402.52 for costs incurred in copying documents, including documents that will not be produced to Sun. Orrick's request is both unreasonable and contrary to the parties' agreement regarding copy costs.

Specifically, at Orrick's request, Sun agreed to reimburse Orrick for copy costs relating to documents that would be produced to Sun. At the time of this agreement, Orrick's counsel indicated that the copy costs would be approximately .08-.09 cents per page. Given that Orrick has agreed to produce 38,830 pages (which is approximately 14 boxes), Sun is willing to reimburse Orrick $3,497.70 (38,830 x .09). However, in the interest of compromise, Sun has agreed to reimburse Orrick $8,402.19 – the cost of scanning and electronically bates-labeling the documents for production. Orrick refused to accept this compromise and, instead, indicated that it would not produce any documents to Sun. Left with no other option, Sun is forced to seek the Court's involvement. Sun requests that the Court order Orrick to produce the documents, that were subpoenaed five months ago, immediately.

### II. FACTUAL BACKGROUND

On January 22, 2008, Sun subpoenaed Orrick for the production of documents relating to the Whipsaw Litigation. (Declaration of Christine Corbett In Supp. of Mot. to Compel ("Corbett

-2-

Decl."), ¶ 2, Ex. A.) In April, 2008, in an effort to minimize expenses on third-party Orrick, Sun agreed to reimburse Orrick for costs incurred in copying those documents that would be provided to Sun. (Corbett Decl., ¶ 3.) At the time of this agreement, Orrick's counsel indicated that the copy costs would be approximately .08-.09 cents per page. (*Id.*) In a further effort to minimize expenses on Orrick, Sun also agreed that Orrick would not be required to prepare a privilege log, subject to revisiting the issue should the need arise. (Corbett Decl., ¶ 4.)

After five months, Orrick has finally prepared the documents for production.[1] On or around June 19, 2008, Orrick's counsel indicated that Orrick would not produce any documents until Sun had reimbursed Orrick for the copy costs. (Corbett Decl., ¶ 5.) Sun's counsel indicated that it was unreasonable to hold the documents hostage (especially after Sun had requested the documents in January, 2008) until payment was received. (*Id.*) Sun's counsel did agree, however, to process the invoice (once received) promptly. (*Id.*) After a short discussion, Orrick's counsel agreed that the request was unreasonable and would produce the documents shortly. (*Id.*) On June 25, 2008, in a telephone conversation, Orrick's counsel indicated that after speaking with his client, Orrick refused to produce any documents until Sun reimbursed Orrick for the copy costs. (Corbett Decl., ¶ 6.) That same day, Orrick's counsel provided, *for the first time*, four invoices to Sun, totaling $21,402.52, and stated in a cover letter that "[u]pon confirmation of payment from the vendor, the documents shall be produced." (Corbett Decl., ¶ 7, Ex. B.)

After review of the four invoices, it became clear that Orrick expected Sun to pay for copies of documents that were never provided to Sun and for extra copies that were made for the convenience of Orrick's attorneys. Specifically, on April 2, 2008, Orrick was invoiced $11,856.98 for copying 53,012 pages of original documents. (Corbett Decl., ¶ 7, Ex. B.) In June, 2008, Orrick received two invoices, one for $360.18 and another for $783.17 for copying 9,726 pages of original documents. (*Id.*) Not only where these copies (totaling $13,000.33) unnecessary since Orrick could have reviewed the original documents, but these documents were made for Orrick's attorneys – not for production to Sun. The last invoice is for $8,402.19, which

---

[1] As the Court is aware, this delay also was the result of obtaining the consent of NetApp and Mr. Malcolm for the production of documents.

-3-

covers scanning and preparing 38,830 pages for production to Sun. (*Id.*) This is the only invoice relating to a copy set for Sun.

After repeated phone calls to Orrick's counsel to discuss the invoices, the parties were finally able to discuss the issue on June 30, 2008. (Corbett Decl., ¶ 8.) Sun explained to Orrick's counsel that Sun had agreed to pay for those copy costs relating to documents that were actually produced to Sun. (*Id.*) In other words, Sun would not agree to pay for the costs incurred by Orrick to have an extra copy set prepared for its own use and convenience (*i.e.*, Sun would not agree to pay $13,000.33). Sun's counsel further explained that Orrick's decision to incur $13,000.33 for copying the original documents was unnecessary given that the original documents could have been electronically scanned for production to Sun. (*Id.*) Sun should not be forced to incur a $13,000.33 cost that was unnecessary to the production of documents. Sun's counsel also expressed concern that Orrick was aware of a $11,856.98 invoice since April 2, 2008, yet had not made any mention of this invoice until June 25, 2008. (*Id.*)

From June 30-July 2, Sun's counsel and Orrick's counsel made several attempts to resolve the parties' dispute regarding payment of the invoices. (Corbett Decl., ¶ 9.) During one telephone call, Orrick's counsel ***agreed that it was unreasonable for Sun to pay for copies that were never provided to Sun***, but was under strict direction from Orrick that Sun was required to pay for all copy costs. (*Id.*) The party's amicable attempts to resolve the dispute ended on July 3, 2008, when Orrick's counsel, Douglas Schwartz, became extremely irate and hostile on the telephone, threatening to file a motion for sanctions. (Corbett Decl. ¶ 10.) Rather than attempt to resolve the parties' dispute, Mr. Schwartz insulted Sun's counsel and indicated that Orrick would not be producing any documents. (*Id.*) Mr. Schwartz then proceeded to abruptly hang up the telephone while Sun's counsel was attempting to discuss the matter. (*Id.*) Left with no other option, Sun was forced to bring this issue to the Court's attention.

### III. ARGUMENT

#### A. Orrick's Request for Reimbursement is Unreasonable.

Pursuant to Federal Rule of Civil Procedure 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or

-4-

expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). To that end, Orrick requested that Sun incur the costs for copying documents provided to Sun. Sun agreed. Orrick also requested that Sun not require a privilege log, at this time, given the significant expense that would incur therefrom. Sun agreed. Orrick further requested that Sun obtain all consents for the production of documents from the litigants in the Whipsaw Litigation at one time, thereby avoiding the cost of having attorneys review the documents in a piecemeal (and, therefore, more costly) manner. Sun agreed. In other words, Sun has taken more than "reasonable steps to avoid imposing undue burden or expense" on Orrick.

Despite Sun's attempts, however, Orrick refuses to produce any documents until Sun pays Orrick the unreasonable amount of $21,402.52. Not only is this request contrary to the parties' agreement, but Orrick has completely blind-sided Sun with this request.

First, as discussed above, when Orrick requested that Sun incur the costs related to those documents that would be provided to Sun, Orrick's counsel indicated that the copy costs would be approximately .08-.09 cents per page. Now, it turns out that the copy costs are significantly more than the original agreement of $.08 - .09 per page. Nonetheless, in the spirit of compromise, Sun indicated in meet-and-confer efforts that it would agree to reimburse Orrick $8,402.19.

Second, Orrick never notified Sun that it expected Sun to pay the $11,856.98 invoice, despite the fact that Orrick was aware of this invoice since April, 2008. Specifically, Sun agreed to reimburse Orrick for costs incurred in copying Sun's set of documents on or about April 16, 2008. (Corbett Decl., ¶ 3.) By that time, Orrick had already incurred $11,856.98 for copying approximately 19 boxes of documents. (Corbett Decl., ¶ 7, Ex. B.) Although Orrick had been invoiced for this amount since April 2, 2008, Orrick's counsel never disclosed that it expected Sun to incur the costs of this invoice. Instead, on June 25, 2008 – nearly three months after the invoice was received by Orrick – Orrick demanded payment of the invoice prior to producing any documents. (*Id.*)

Finally, three of the four invoices (which total $13,000.33) relate to unnecessary costs incurred for having a hard copy set of documents prepared for Orrick's counsel. There was no

-5-

reason to have the documents copied and later electronically scanned for production. Indeed, Orrick's counsel could have reviewed the original documents and could have prepared Sun's documents for production from the original set. Orrick's decision to incur $13,000.33 for an unnecessary copy set should not fall onto Sun for payment.

Therefore, as set forth above, in the interest of compromise, Sun is willing to reimburse Orrick $8,402.19 for its copy set of the documents (although this is well beyond the .08-.09 cents per page originally agreed upon) and, as such, Sun requests that the Court compel Orrick to produce the documents immediately.

**B.   Sun Seeks A Written Representation Regarding The Remaining Documents That Were Not Produced To Sun.**

According to the invoices, Orrick copied 62,738 pages (which is approximately 22 boxes). (Corbett Decl., ¶ 7, Ex. B.) Of those 62,738 pages, Orrick has agreed to produce 38,830 pages (which is approximately 14 boxes). (*Id.*) Orrick's counsel indicated via telephone that he *believes* that the remaining 23,908 pages were not produced because they were either duplicative of a document that was produced or privileged. (Corbett Decl., ¶ 12.) Sun requested that Orrick's counsel confirm his belief in writing. To date, Orrick's counsel has not done so. Therefore, Sun requests that Orrick state, in writing, why the remaining 23,908 pages were not produced to Sun.

Furthermore, on July 3, 2008, in a conversation with Orrick's counsel, Sun was notified, for the first time, that Orrick has 120 boxes of documents relating to the Whipsaw Litigation. (Corbett Decl., ¶ 11.) Given that Orrick is only producing approximately 14 boxes of documents, Sun is concerned that relevant documents are being withheld from production. Sun requests that Orrick state, in writing, why the 120 boxes of documents were not produced to Sun.

///
///
///
///
///

## IV. CONCLUSION

For the foregoing reasons, Sun respectfully requests that the Court compel Orrick to produce documents responsive to Sun's January, 2008 subpoena immediately.

Dated: July 8, 2008

                                DLA PIPER US LLP

                                By _/s/ Christine K. Corbett_
                                MARK D. FOWLER
                                CHRISTINE K. CORBETT
                                Attorney for Defendant and Counterclaimant
                                SUN MICROSYSTEMS, INC.