```
Douglas R. Schwartz (State Bar #98666)
Scott R. Lovernick (State Bar #233755)
SCHWARTZ & CERA LLP
44 Montgomery Street, Suite 3850
San Francisco, California 94104
Telephone: (415) 956-2600
Facsimile:  (415) 438-2655

Attorneys for
ORRICK, HERRINGTON & SUTCLIFFE LLP
Attorneys for Third Party Respondent
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK APPLIANCE, INC., <br><br> Plaintiff-Counterclaim Defendant, <br><br> vs. <br><br> SUN MICROSYSTEMS, INC., <br><br> Defendant-Counterclaimant. | Case Number: 3:07-CV-06053 EDL (JCS) <br><br> **THIRD PARTY RESPONDENT ORRICK HERRINGTON & SUTCLIFFE, LLP'S OPPOSITION TO SUN MICROSYSTEMS, INC.'S *EX PARTE* APPLICATION TO SHORTEN TIME FOR HEARING ON SUN MICROSYSTEMS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** <br><br> Date:  TBD <br> Time:  TBD <br> Courtroom: E, 15th Floor <br> Hon. Elizabeth D. Laporte |

## I.   Introduction

Pursuant to Northern District of California Local Rule 6-3(c), Orrick, Herrington & Sutcliffe, LLP ("Orrick") submits this Opposition to Sun Microsystems, Inc.'s ("Sun") *Ex Parte* Application to Shorten Time for a hearing on Sun's Motion to Compel Production of Documents.

Sun's application should be denied for several reasons. First, there is no urgency requiring that the briefing schedule be shortened. Because the costs issue is before the Court,

-1-

Orrick is confident that the Court will find that Sun's conduct is not only unreasonable, but sanctionable. Orrick therefore has produced the subpoenaed documents concurrently with the filing of this opposition, well before July 29, 2008 – the shortened hearing date Sun requests in its application – with the understanding that the Court will eventually rule on the costs issue and that Orrick will be compensated for the time and expense it has incurred in responding to the subpoena. Second, in light of Sun's conduct on the costs issue and other conduct related to Sun's subpoena to Orrick, Orrick is leaning towards moving for sanctions under Rule 45(c). Should Orrick file such a motion, it would be more efficient for both Sun and Orrick's motions to be heard together. Finally, while counsel for Sun originally indicated that she intended to follow this Court's standing order requiring informal attempts to resolve discovery disputes before filing motions, she filed Sun's motion to compel without warning. In order to give the parties time for additional discussion towards an informal resolution on the costs and related issues, the request for an expedited schedule should be denied.

## II.     Background

### A.     Nature of the Case and the Sun Subpoena

The third-party subpoena Sun served on Orrick relates to a multi-million dollar patent infringement lawsuit between two large corporations, *Sun Microsystems* and *Network Appliance, Inc.* Orrick complied with Sun's subpoena and on the eve of producing responsive documents, asked for Sun to pay for Orrick's outside vendor costs incurred in responding to the subpoena. Sun refused to pay for all of the outside vendor costs, instead offering to pay for only a portion of the costs. The remaining costs approximate $10,000.[1]

Sun subpoenaed Orrick for records relating to work Orrick handled a little over a decade ago when Orrick represented a Network Appliance executive in a separate litigation, *The*

---

[1] As discussed in more detail below, Orrick incurred substantial attorneys' fees in responding to Sun's subpoena, as well as other costs (such as retrieving documents from storage), but has only requested to be reimbursed for its outside vendor copy costs of approximately $21,000, of which Sun refused to pay approximately $10,000.

*Whipsaw Group, et al., v. Network Appliance Corporation, etc, at al.,* Santa Clara Superior Court Case No. CV 742186, ("*Whipsaw* matter"). Although non-privileged documents from the *Whipsaw* matter that are relevant to this action would presumably be in the possession of Sun's party-opponent Network Appliances, Sun decided to serve a subpoena to Orrick for these very documents. (Exhibit A to the Corbett Declaration) The subpoena is extraordinarily overbroad, containing thirty-one (31) separate requests. The first ten requests seek "all documents" produced by parties and various non-parties alike in the *Whipsaw* matter. Requests No. 11 through No. 14 seek "all documents" related to two separate patents. *Id.* Requests No. 15 through No. 31 seek "all documents" related to various individuals and entities, including the privileged files of Orrick attorneys, spanning all periods of time "before 1997." *Id.*

Instead of fighting Sun's overboard subpoena, Orrick hired counsel to handle its response and to work with Sun's counsel to narrow the subpoena in a reasonable and efficient manner. Due to the nature of the original lawsuit and the interests involved in this suit, there were multiple protective order issues to deal with, not to mention the need to protect Orrick's work product and client's privileges. Not surprisingly, Orrick has incurred significant internal and external costs to respond to Sun's subpoena.[2] Nonetheless, Orrick sought reimbursement for only the actual outside vendor copy costs it incurred (whose invoices have been provided to Sun) responding to Sun's subpoena. Originally, Orrick intended not to seek reimbursement of any other costs from Sun, including the time spent by two Orrick paralegals and attorneys working on the matter,

---

[2] The Whipsaw matter ran for approximately two years and involved multiple parties and third parties, generating numerous volumes of pleadings, correspondence and other documentation, much of that consisting of attorney work product or otherwise privileged material. In order to avoid unnecessary costs related to logging such information, Orrick counsel approached and negotiated with Sun's counsel that a privilege log need not be created or produced as long as Orrick did not fight the subpoena and provided responsive non-privileged documents.

-3-
ORRICK'S OPPOSITION TO SUN'S EX PARTE APPL TO SHORTEN TIME FOR HEARING
ON MOTION TO COMPEL
CASE NO. 3:07-CV-06053 EDL (JCS)

outside counsel as well as the costs to retrieve documents from off-site storage and any internal copying or other charges. (Lovernick Decl., ¶8).

As many of the potentially responsive documents from the *Whipsaw* matter were subject to the protective order entered in that action, clearance from the parties involved in that matter was needed. (Lovernick Decl., ¶5). Sun complains in its application about an alleged "delay" in Orrick's compliance with the subpoena, but the time period for which Sun complains consists of the time Sun spent to obtain waivers from the parties bound by the protective order in the *Whipsaw* matter. (Lovernick Decl., ¶6). Orrick did not receive the appropriate releases required by the protective order until June 27, 2008 (Lovernick Decl., ¶7), and Orrick agreed to produce the responsive documents once it received payment for the copying costs.

### B. Sun's False Statements and Failure to Meet and Confer

Though its reasons for doing so remain unclear, Sun submitted a declaration in support of its application which contains a number of statements that are false, misleading and/or inaccurate. Examples include the following:

- Contrary to representations made in paragraph 7 of the Corbett Declaration, Orrick's counsel advised Sun on or about April 2, 2008 of the copy costs incurred as of that time. (Lovernick Decl., ¶4).

- Contrary to representations made in paragraph 3 of the Corbett Declaration, Orrick's counsel advised Sun that the copy costs for the production would range from .08-.22 cents per page for the initial copy (without a production number) depending on the condition of the document to be copied, not simply the .08-.09 asserted by Sun. (Lovernick Decl., ¶2).

- Sun raised no objections to either the quoted per copy cost or the April 2008 invoice at anytime prior to June 25, 2008. (Lovernick Decl., ¶¶ 2 & 4).

- At no time did Orrick's counsel represent that production would occur prior to payment in full. (Lovernick Decl., ¶9).

- The two invoices referred to in paragraph 9 of the Corbett declaration, both relate to documents determined to be responsive to the subpoena. (Lovernick Decl., ¶10).

On or about June 25, 2008, Sun advised that the Court's standing order required both parties, if they couldn't resolve this dispute, to file a joint two-page statement with the Court outlining the nature of the dispute. (Lovernick Decl., ¶13). Counsel for Sun reiterated this on the morning of July 3, 2008 and suggested that if the parties could not resolve the dispute Sun was prepared to submit a letter framing the dispute for the Court to resolve. *Id.* Orrick's counsel was prepared to comply with this procedure. However, Sun made no effort to comply with this procedure or its prior indication that it would do so and instead filed this *ex parte* application and accompanying motion to compel.

During a July 3, 2008 telephone conversation, Orrick's counsel notified Sun that Orrick was giving serious thought to filing its own motion for sanctions in light of Sun's unreasonable conduct.

Orrick's production was served on Sun's counsel contemporaneously with the filing of this brief. (Lovernick Decl., ¶11).

### IV. Sun's Application Should Be Denied

Sun's ex parte application for a shortened briefing schedule should be denied because there is no urgency requiring a shortened briefing schedule. As discussed above, Orrick has produced the subpoenaed documents contemporaneously with the filing of this brief. (Lovernick Decl., ¶11). Now that Sun's counsel is in possession of the materials subpoenaed the issue of the disputed costs and potential sanctions can proceed before the Court on a normal schedule. Accordingly, because Sun cannot articulate a need for immediate relief, its application should be denied. Moreover, to the extent Orrick will file a motion for sanctions under Rule 45(c) in light of Sun's conduct, it is in the interests of judicial economy for both Sun and Orrick's motions to be heard together. In addition, Orrick's counsel will be out of the country and thus is unavailable on the requested shortened hearing date, making Sun's request impractical. (Lovernick Decl., ¶12). Finally, it may still be possible for the parties to reach an informal resolution to this dispute but

an expedited briefing and hearing schedule will not promote that process. For these reasons Sun's application should be denied.

### V.     Conclusion

For the foregoing reasons, Sun's application for an order shortening time should be denied.

Date: July 11, 2008                              SCHWARTZ & CERA, LLP


                                                 /s/
                                                 ───────────────────
                                                 Douglas R. Schwartz
                                                 Scott R. Lovernick
                                                 Attorneys for Third Party Respondent
                                                 ORRICK, HERRINGTON & SUTCLIFFE, LLP

-6-

ORRICK'S OPPOSITION TO SUN'S EX PARTE APPL TO SHORTEN TIME FOR HEARING
ON MOTION TO COMPEL
CASE NO. 3:07-CV-06053 EDL (JCS)