Douglas R. Schwartz (State Bar #98666)
Scott R. Lovernick (State Bar #233755)
SCHWARTZ & CERA LLP
44 Montgomery Street, Suite 3850
San Francisco, California 94104
Telephone: (415) 956-2600
Facsimile: (415) 438-2655

Attorneys for
ORRICK, HERRINGTON & SUTCLIFFE, LLP
Non-Party Respondent

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK APPLIANCE, INC.,<br><br>Plaintiff-Counterclaim Defendant,<br><br>vs.<br><br>SUN MICROSYSTEMS, INC.,<br><br>Defendant-Counterclaimant. | Case Number: 3:07-CV-06053 EDL (JCS)<br><br>**DECLARATION OF SCOTT R. LOVERNICK IN SUPPORT OF NON PARTY RESPONDENT ORRICK HERRINGTON & SUTCLIFFE, LLP'S OPPOSITION TO SUN MICROSYSTEMS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date:  August 12, 2008<br>Time:  9:30 a.m.<br>Courtroom: E, 15th Floor<br>Hon. Elizabeth D. Laporte |

I, Scott R. Lovernick, declare as follows:

1. I am an attorney at law, duly licensed to practice in the State of California. I am an associate with the law firm of Schwartz & Cera, LLP, attorneys of record for Orrick, Herrington & Sutcliffe, LLP ("Orrick"). I have personal knowledge of the matters set forth herein and, if called as a witness, could and would competently testify thereto.

-1-
LOVERNICK DECL ISO ORRICK'S OPPOSITION TO SUN'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
CASE NO. 3:07-CV-06053 EDL (JCS)

2.   On or about March 31, 2008, I provided per page copy cost estimates to counsel for Sun Microsystems, Inc. ("Sun"), Ms. Christine Corbett. Contrary to representations made by Ms. Corbett in paragraph 3 of her declaration, the quoted prices ranged from .08-.22 cents per page, depending on the condition of the documents sought to be copied. At no time prior to June 25, 2008 did Ms. Corbett object to the quoted costs.

3.   Relying on Ms. Corbett's agreement that Sun would pay all copy costs associated with the production, I authorized copying of the "control set."

4.   Contrary to Ms. Corbett's representations, on or about April 2, 2008, I apprised her of the costs identified in invoice #20989, which totaled $11,856.98 and are evidenced in Exhibit B to the Corbett Declaration. At no time did Ms. Corbett object to the quoted amount. Rather, she expressed her gratitude with Orrick's good faith efforts to timely respond to the subpoena.

5.   Many documents sought by Sun, and all of those relating to the *The Whipsaw Group, et al., v. Network Appliance Corporation, etc, at al.,* Santa Clara Superior Court, Case No. CV 742186, ("*Whipsaw* matter") were subject to a protective order. Before production could occur, releases from all the *Whipsaw* matter parties needed to be obtained.

6.   Efforts to seek individual waivers from parties to the *Whipsaw* matter resulted in several hours worth of negotiations and conference calls between myself, Ms. Corbett and counsel for Network Appliance. Releases from the individual members of the Whipsaw Group were not obtained until May 20, 2008.

7.   Before consenting to production, counsel for Dr. Michael Malcolm and Network Appliance demanded the opportunity to review the materials. Orrick timely accommodated this request and provided access to the documents at Orrick's Menlo Park office. This accommodation required Orrick to provide a paralegal to monitor the review so that the production remained intact. Final consent to production of non-privileged documents by Dr. Michael Malcolm and Network Appliance Corporation was given on June 27, 2008.

8.   Orrick has utilized two paralegals and two attorneys in responding to Sun's subpoena. Further, the law firm of Schwartz & Cera, LLP has been engaged to assist efforts to

1  respond to the same. Schwartz & Cera, LLP spent approximately one-hundred and thirty hours conducting the initial review. Further, Orrick paid $606.00 to retrieve approximately 120 boxes of materials potentially responsive to Sun's subpoena from off-site storage.

9. Contrary to Ms. Corbett's representations contained in paragraph 9 of her declaration, I have consistently represented that copies would not be provided until payment was received. No representations have ever been made that documents would be produced prior to payment in full by Sun. Rather, Ms. Corbett represented that payment would be made by Sun promptly upon receipt of tendered invoices. She did caution that it would take up to 10 days to process payment after receipt of the invoices.

10. During meet and confer efforts between myself and Ms. Corbett on or about June 30, 2008, Ms. Corbett inquired as to the nature of two invoices, dated June 7, 2008 and June 9, 2008, respectively. I did not recall what these invoices related to at the time of the conversation. I represented to Ms. Corbett that if these invoices were not related to the subpoena, it would be unreasonable to include them in the request for reimbursement. However, following confirmation that both invoices were in fact directly related to the subpoena, I promptly informed Ms. Corbett that the subject invoices were properly included in my correspondence of June 25, 2008. This conversation occurred on or about July 2, 2008. Contrary to representations made in paragraph 9 of the Corbett Declaration, I never agreed that it was unreasonable for Sun to pay for copies not provided to Sun.

11. Of the approximate one-hundred and twenty (120) boxes first identified as potentially containing documents responsive to Sun's subpoena, many were soon determined not to contain materials related to the *Whipsaw* matter. In addition to the vast amount of non-responsive materials (including documents pertaining to entirely unrelated matters) a significant amount of the documents were identified as attorney work product and/or privileged materials. In addition, many of the documents were duplicates. Further, many of the boxes contained only a few files and were not completely full.

-3-
LOVERNICK DECL ISO ORRICK'S OPPOSITION TO SUN'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
CASE NO. 3:07-CV-06053 EDL (JCS)

12. As many of Sun's requests encompassed a tremendous amount of attorney work product and/or other privileged materials, I negotiated with Sun's counsel and obtained Ms. Corbett's agreement and assurances that Sun would not require a privilege log to be created or produced. Sun's agreement in this regard was first obtained in March 2008. Ms. Corbett confirmed this commitment in writing on June 4, 2008. Attached hereto as Exhibit A is a true and correct copy of the June 4, 2008 email from Christine Corbett confirming Sun's agreement.

13. Through the initial review, Orrick narrowed the materials down to approximately 63,000 pages - 53,012 pages of likely responsive material and 9,726 pages of materials that needed additional consideration.

14. Of the materials determined to be likely responsive, many were in poor condition. The varying levels of clarity and fragility (due to the fact that many of the documents were at a minimum of ten years old) required that these documents be copied so that a "control set" would be created. The "control set" expedited the review process and ensured that responsive documents were not misplaced or mishandled. This required Orrick's vendor to spend extra time and labor to make the copies. Attached hereto as Exhibit B is a true and correct copy of the April 2, 2008 invoice.

15. Once the control set was made, and following the receipt of all necessary releases, I spent approximately fourteen (14) hours conducting a final review. Following this review, 38,916 pages of materials were identified for production. The approximate 24,000 pages of documents withheld were determined to be non-responsive, duplicative or privileged.

16. Prior to production, I spoke with Ms. Corbett and offered her a choice of a hard-copy or electronic production. Ms. Corbett deferred this decision to Orrick. Orrick choose electronic production as it was the most cost-effective method.

17. Orrick then scanned and bates labeled the final set of materials for production to Sun. Scanning was both less expensive and less wasteful than copying a second production set.

18. In response to my correspondence of June 25, 2008, Ms. Corbett communicated Sun's refusal to pay the entirety of the copy costs.

-4-

19. During continued meet and confer efforts occurring on or about June 30, 2008, I reminded Ms. Corbett that Orrick was seeking reimbursement simply for copy costs incurred and those that Sun previously agreed to. However, I advised her that if Sun did not honor its agreement, Orrick would seek reimbursement of all costs.

20. After negotiations broke down on July 2, 2008, Ms. Corbett advised me of the need to follow this court's standing order related to discovery disputes. She indicated that we would need to present our dispute via a joint letter to the court. I agreed to do this. Instead, Sun proceeded with filing this expedited motion on July 8, 2008.

21. To date, Orrick has incurred in excess of $72,500.00 in outside-counsel fees responding to Sun's subpoena.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 22, 2008 in San Francisco, California.

/s/
Scott R. Lovernick

-5-
LOVERNICK DECL ISO ORRICK'S OPPOSITION TO SUN'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
CASE NO. 3:07-CV-06053 EDL (JCS)

# EXHIBIT A

# Scott Lovernick

**From:** Corbett, Christine [Christine.Corbett@dlapiper.com]
**Sent:** Wednesday, June 04, 2008 6:19 PM
**To:** Scott Lovernick
**Subject:** RE: Sun/NetApp: Consent Forms

Scott,

Thank you for your voicemail and confirming that the documents should be able to be produced by the end of next week. I am providing you with the confirmations you requested.

First, this is to confirm that, at this time, Orrick need not provide a privilege log along with its document production.

Second, this is to confirm that the six consent forms you have received represent releases for the "global" Whipsaw Group.

Please let me know if you need anything further.

Regards,
Christine

---

**From:** Scott Lovernick [mailto:scott@schwartz-cera.com]
**Sent:** Friday, May 23, 2008 1:41 PM
**To:** Corbett, Christine
**Subject:** RE: Sun/NetApp: Consent Forms

Christine,

I have met with the client and we are ready to move forward with the next step in the production process. Just a couple of issues to address:

1) We would like a simple statement/confirmation form you that the consent forms provided represent releases for the "global" Whipsaw group, i.e that all necessary parties in that group have signed off on the production of materials subject to the protective order. Again, as a follow-up to my earlier inquiry and your representation that Mr. Roy Holmes is deceased, we simply want to have some clarification on the issue;
2) I left a message with Jeff Homrig at Weil on Wednesday, but have yet to hear back. I know you mentioned doing the same, but we will need similar consent and release forms from him as they related to Malcolm and NetApp's interest; finally
3) I know we discussed this previously, but the client would like written confirmation that a privilege log will not be required along with the production.

Assuming with work out the logistics with Jeff, I see no reason why copying/production cannot begin (and hopefully be completed) next week. I Look forward to hearing from you.

Scott

---

**From:** Corbett, Christine [mailto:Christine.Corbett@dlapiper.com]
**Sent:** Wednesday, May 21, 2008 8:13 PM
**To:** Scott Lovernick
**Subject:** Re: Sun/NetApp: Consent Forms

1

# EXHIBIT B

# LEGENDS DOCUMENT SOLUTIONS

291 Lambert Avenue
Palo Alto, CA 94306
Phone: 650-319-2679

Tax ID#: 65-1171265

# Invoice

| Date | Invoice # |
|---|---|
| 4/2/2008 | 20989 |

**Bill To:**

Amy Dalton
Orrick Herrington & Sutcliffe LLP
1020 Marsh Road
Menlo Park, CA 94025

**REMIT PAYMENT TO:**

Legends Document Solutions
P.O. Box 2759
San Ramon, CA 94583

| Client Matter # | Terms | Account Manager |
|---|---|---|
| 1-4000 | Net 30 | Jeff |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 53,012 | Grade E - Extensive Handling Copies | 0.20 | 10,602.40 |
| 4.5 | Labor Hours - Copying Post-It Notes, Folders, and Hand Placement of Documents | 75.00 | 337.50 |
| 71 | 11x17 Copies | 0.25 | 17.75 |
| 214 | Slip Sheet Insertions | 0.10 | 21.40 |

Copied 68 original flagged boxes containing files x1; copied covers, spines, file folder covers, file folder tabs, and redweld information on purple paper. Copied Post-It notes on white paper and clipped to documents. Matched staples, clips, slip sheets, and size as original.

THANK YOU FOR CHOOSING LEGENDS!

| | |
|---|---|
| **Subtotal** | $10,979.05 |
| **Sales Tax (8.25%)** | $877.93 |
| **Total** | $11,856.98 |

Please Pay From This Invoice: This is the only invoice you will receive. It should be routed to your accounting department for payment. A late charge of 1.5% per month will be applied to balances outstanding over 30 days.

RECEIVED BY: _[signature]_    DATE: 4/10/08