1  MARK D. FOWLER, Bar No. 124235
   mark.fowler@dlapiper.com
2  CLAYTON THOMPSON (Admitted Pro Hac Vice)
   clayton.thompson@dlapiper.com
3  DAVID ALBERTI, Bar No. 220625
   david.alberti@dlapiper.com
4  CHRISTINE K. CORBETT, Bar No. 209128
   christine.corbett@dlapiper.com
5  YAKOV M. ZOLOTOREV, Bar No. 224260
   yakov.zolotorev@dlapiper.com
6  CARRIE L. WILLIAMSON, Bar No. 230873
   carrie.williamson@dlapiper.com
7
   DLA PIPER US LLP
8  2000 University Avenue
   East Palo Alto, CA  94303-2214
9  Tel:  650.833.2000
   Fax:  650.833.2001
10
   Attorneys for Defendant and Counterclaim Plaintiff
11 SUN MICROSYSTEMS, INC.

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15

16 NETWORK APPLIANCE, INC.,              CASE NO.  C-07-06053-EDL

17        Plaintiff-Counterclaim Defendant,   **SUN MICROSYSTEMS, INC.'S REPLY
                                              CLAIM CONSTRUCTION BRIEF**
18        v.
                                              Claim Construction Hearing:
19 SUN MICROSYSTEMS, INC.,                Date:  August 27, 2008
                                              Time:  9:30 a.m.
20        Defendant-Counterclaim Plaintiff.   Judge:  Hon. Elizabeth D. Laporte

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II. U.S. PATENT NO. 5,819,292 ...................................................................................... 1

    A.  "non-volatile storage means" ................................................................................ 1

        1.  The Term "Nonvolatile Storage Means" Is Presumptively A Means-Plus-Function Limitation. ...................................................................... 1

        2.  The Claims Do Not Recite Sufficient Structure To Rebut The Presumption That Section 112(6) Governs .................................................. 2

        3.  NetApp's Reliance On Dr. Brandt's Testimony Is Misplaced ................... 5

        4.  The Use Of "Nonvolatile Storage" In The Other Cited Patents And Publications Is Irrelevant ....................................................................... 6

        5.  NetApp's Construction Is Incorrect Because It Captures Subject Matter Outside The Scope Of The '292 Patent. ......................................... 7

        6.  NetApp's Criticisms Of Sun's Analysis Are Unfounded ......................... 8

    B.  "meta-data for successive states of said file system" ........................................... 9

        1.  NetApp Disregards The Language Of Claim 8 ......................................... 9

        2.  Sun's Construction Is Consistent With The Dependent Claims .............. 12

        3.  Sun's Construction Gives Proper Weight To The Claim Language And The Specification ........................................................................... 13

    C.  "file system information structure" .................................................................... 15

        1.  Only Sun's Construction Is Consistent With Claim 4 ............................ 15

        2.  Only Sun's Construction Is Consistent With Claims 5, 6 And 7 ............. 16

        3.  Only Sun's Construction Is Consistent With The Specification Viewed From The Perspective Of Ordinary Skill In The Art ................... 16

III. U.S. PATENT NO. 6,892,211 ....................................................................................... 19

    A.  "pointing directly and indirectly to buffers in said memory and a second set of blocks on said storage system" .............................................................. 19

        1.  NetApp Rewrites Plain Claim Language ................................................ 20

        2.  The Claim Language Cited By NetApp Supports Sun's Construction ........................................................................................... 20

        3.  NetApp's Construction Is Not Supported By The Specification ............. 21

    B.  "root inode" ....................................................................................................... 22

        1.  Any Distinction Between The Incore And On-Disk Root Inodes Is Irrelevant For Claim Construction ......................................................... 22

        2.  NetApp's Arguments Regarding The fsinfo Structure Are Irrelevant ...... 23

        3.  NetApp's Construction Is Not Supported By The Specification ............. 23

        4.  Sun's Construction Recognizes True Scope Of Claimed Invention ......... 25

    C.  "state of a file system" / "consistent state" ........................................................ 26

-i-

1

## TABLE OF CONTENTS
**(continued)**

2

Page

3

IV.    U.S. Patent No. 7,200,715 ................................................................ 28

4

A.    "associating the data blocks with one or more storage blocks across the plurality of stripes as an association" / "the association to associate the data blocks with one or more storage blocks across the plurality of stripes" .............. 28

5

1.    The Claims Are Indefinite Under 35 U.S.C. §112(2) .............................. 28

6

2.    NetApp's Arguments Confirm The Claims Are Indefinite....................... 29

7

3.    Sun's Alternative Construction Is The Only Construction Consistent With The Specification.............................................. 31

8

4.    The Prosecution History Supports Sun's Construction............................ 32

9

V.    CONCLUSION ........................................................................................... 34

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4
*Accumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007).......................................................................................... 12

5

*AllVoice Computing PLC v. Nuance Communications, Inc.*,
6    504 F.3d 1236 (Fed. Cir. 2007)....................................................................................... 15

7
*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002)....................................................................... 1, 3, 30, 31

8

*Alloc, Inc. v. Int'l Trade Com'n*,
9    342 F.3d 1361 (Fed. Cir. 2003).................................................................................. 25, 26

10
*Altiris, Inc. v. Symantec Corp.*,
    318 F.3d 1363 (Fed. Cir. 2003)................................................................................ 1, 3, 6, 7

11

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
12    314 F.3d 1313 (Fed. Cir. 2003)....................................................................................... 28

13
*Apple Computer v. Burst.com, Inc.*,
    2007 WL 1342504 (N.D. Cal. May 8, 2007) .................................................................... 5

14

*Bell Atlantic Network Servs. v. Covad Communications Group, Inc.*,
15    262 F.3d 1258 (Fed. Cir. 2001)....................................................................................... 17

16
*Biagro Western Sales, Inc. v. Grow More, Inc.*,
    423 F.3d 1296 (Fed. Cir. 2005)....................................................................................... 24

17

*Bicon Inc. v. Straumann Co.*,
18    441 F.3d 945 (Fed. Cir. 2006).................................................................................... 19, 20

19
*Boston Scientific SciMed, Inc. v. ev3 Inc.*,
    502 F. Supp. 2d 931 (D. Minn. 2007) ............................................................................ 14

20

*Catch Curve, Inc. v. Venali, Inc.*,
21    2007 WL 3308101 (C.D. Cal. May 11, 2007) .................................................................. 5

22
*Cole v. Kimberly-Clark Corp.*,
    102 F.3d 524 (Fed. Cir. 1996)....................................................................................... 4, 7

23

*Eaton Corp. v. Rockwell Int'l Corp.*,
24    323 F.3d 1332 (Fed. Cir. 2003)...................................................................................... 1, 2

25
*Envirco Corp. v. Clestra Cleanroom, Inc.*,
    209 F.3d 1360 (Fed. Cir. 2000)....................................................................................... 4, 7

26

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
27    93 F.3d 1572 (Fed Cir. 1996).......................................................................................... 12

28

SUN'S REPLY CLAIM CONSTRUCTION BRIEF
CASE NO. C 07-06053 EDL

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
    64 F.3d 1553 (Fed. Cir. 1995) ....................................................................... 20

4

*Fin Control Sys. Pty, Ltd. v. OAM, Inc.*,
    265 F.3d 1311 (Fed. Cir. 2001) ...................................................................... 21

5

6

*General Creation LLC v. Leapfrog Enters., Inc.*,
    232 F. Supp. 2d 661 (W.D. Va. 2002) ............................................................. 5

7

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*,
    349 F.3d 1373 (Fed. Cir. 2003) ................................................................ 28, 29

8

9

*Globetrotter Software v. Elan Computer Group*,
    236 F.3d 1363 (Fed. Cir. 2001) ...................................................................... 16

10

*Greenberg v. Ethicon Endo-Surgery*,
    91 F.3d 1580 (Fed. Cir. 1996) ...................................................................... 4, 7

11

12

*Halliburton Energy Serv., Inc. v. M-I, LLC*,
    514 F.3d 1244 (Fed. Cir. 2008) ................................................................ 30, 31

13

*Honeywell Int'l Inc. v. Int'l Trade Comm'n*,
    341 F.3d 1332 (Fed. Cir. 2003) ...................................................................... 28

14

15

*Honeywell Int'l Inc. v. ITT Indus., Inc.*,
    452 F.3d 1312 (Fed. Cir. 2006) ...................................................................... 11

16

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004) ...................................................................... 20

17

18

*Irdeto Access, Inc. v. Echostar Satellite Corp.*,
    383 F.3d 1295 (Fed. Cir. 2004) ...................................................................... 15

19

*J&M Corp. V. Harley-Davidson, Inc.*,
    269 F.3d 1360 (Fed. Cir. 2001) ........................................................................ 1

20

21

*J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*,
    106 F.3d 1563 (Fed. Cir. 1997) ...................................................................... 15

22

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
    177 F.3d 968 (Fed. Cir. 1999) ........................................................................ 13

23

24

*Keithley v. Homestore.com, Inc.*,
    2007 WL 2701337 (N.D. Cal. Sept. 12, 2007) ............................................ 4, 5

25

*Linear Tech. Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004) ........................................................................ 6

26

27

*Lottotron, Inc. v. Scientific Games Corp.*,
    2003 WL 22075683 (S.D.N.Y. Sept. 8, 2003) ................................................. 5

28

## TABLE OF AUTHORITIES
### (continued)

Page

*MGP Ingredients, Inc. v. Mars, Inc.*,
  494 F. Supp. 2d 1231 (D. Kan. 2007) ........................................................................... 14

*Mangosoft, Inc. v. Oracle Corp.*,
  525 F.3d 1327 (Fed. Cir. 2008) ............................................................................. 15, 25

*Merck & Co. v. Teva Pharms. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005) ..................................................................................... 19

*Miken Composites, LLC v. Wilson Sporting Goods Co.*,
  515 F.3d 1331 (Fed. Cir. 2008) ............................................................................... 8, 31

*nCube Corp v. SeaChange Int'l, Inc.*,
  436 F.3d 1317 (Fed. Cir. 2006) ...................................................................................26

*Network Commerce, Inc. v. Microsoft Corp.*,
  422 F.3d 1353 (Fed. Cir. 2005) ..................................................................................... 24

*Nomos Corp. v. BrainLAB USA, Inc.*,
  357 F.3d 1364 (Fed. Cir. 2004) ..................................................................................... 13

*Novo Indust., L.P. v. Micro Molds Corp.*,
  350 F.3d 1348 (Fed. Cir. 2003) ............................................................................. 28, 29

*Nystrom v. TREX Co.*,
  424 F.3d 1136 (Fed. Cir. 2005) ....................................................................................... 8

*O.I. Corp. v. Tekmar Co.*,
  115 F.3d 1576 (Fed. Cir. 1997) ....................................................................................... 1

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ....................................................................................... 8

*On Demand Machine Corp. v. Ingram Indus., Inc.*,
  442 F.3d 1331 (Fed. Cir. 2006) ......................................................................... 1, 25, 26

*Optimal Recreation Solutions, LLP v. Leading Edge Tech., Inc.*,
  6 Fed. Appx. 873 (Fed. Cir. 2001) ................................................................................. 7

*Ortho-McNeil Pharm. v. Mylan Labs., Inc.*,
  520 F.3d 1358 (Fed. Cir. 2008) ..................................................................................... 22

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ...................................................................... 5, 8, 17, 21

*Quantum Corp. v. Rodime, Plc.*,
  65 F.3d 1577 (Fed. Cir. 1996) ....................................................................................... 20

*SanDisk Corp. v. Memorex Prods., Inc.*,
  415 F.3d 1278 (Fed. Cir. 2005) ..................................................................................... 12

1

## TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3   *Schumer v. Lab. Computer Sys.*,
        308 F.3d 1304 (Fed. Cir. 2002) ....................................................................... 28
4

    *Signtech USA, Ltd. v. Vutek, Inc.*,
5       174 F.3d 1352 (Fed. Cir. 1999) ......................................................................... 2

6   *Southwall Tech., Inc. v. Cardinal IG Co.*,
        54 F.3d 1570 (Fed. Circ. 1995) ....................................................................... 20
7

    *Springs Window Fashions LP v. Novo Indust., L.P.*,
8       323 F.3d 989 (Fed. Cir. 2003) .................................................................... 33, 34

9   *Tandon Corp. v. U.S. Int'l Trade Com'n*,
        831 F.2d 1017 (Fed. Cir. 1987) ....................................................................... 26
10

    *Unidynamics Corp. v. Automatic Prods. Int'l Ltd.*,
11      157 F.3d 1311 (Fed. Cir. 1998) ......................................................................... 2

12   *United Carbon Co. v. Binney & Smith Co.*,
        317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232 (1942) ........................................... 30
13

14                                    **STATUTES**

15   35 U.S.C. §112(2) ................................................................................................. 28

16

17

18

19

20

21

22

23

24

25

26

27

28

DLA Piper US LLP

SUN'S REPLY CLAIM CONSTRUCTION BRIEF
CASE NO. C 07-06053 EDL

1  **I.     INTRODUCTION**

2       This reply brief addresses the construction of NetApp's United States Patent Nos.

3  5,819,292 (the "'292 patent"), 6,892,211 (the "'211 patent") and 7,200,715 (the "'715 patent").

4  **II.     U.S. PATENT NO. 5,819,292**

5       **A.     "non-volatile storage means"**

6            **1.     The Term "Nonvolatile Storage Means" Is Presumptively A Means-**
7                 **Plus-Function Limitation.**

8       Reciting the word "means" creates a rebuttable presumption the claim limitation is a

9  means-plus-function limitation under section 112(6). *Altiris, Inc. v. Symantec Corp.,* 318 F.3d

10  1363, 1375 (Fed. Cir. 2003). NetApp attempts to sidestep this presumption by noting that not all

11  claim terms reciting "means" ultimately are held to be means-plus-function limitations.

12  However, while the use of "means" does not always result in the Court *ultimately* holding that

13  section 112(6) governs, the use of "means" does create an initial presumption that the limitation is

14  a means-plus-function limitation. *Altiris,* 318 F.3d at 1375. The legal authority cited by NetApp

15  confirms this. *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1347 (Fed. Cir. 2002)

16  ("[t]he use of the word 'means' triggers a presumption that the inventor used this term advisedly

17  to invoke the statutory mandate for means-plus-function clauses").

18       NetApp also makes the unsupported assertion that "means" language does not invoke

19  section 112(6) in method claims. This is incorrect. The Federal Circuit has construed a "means"

20  term in a method claim as a means-plus-function limitation. *See Eaton Corp. v. Rockwell Int'l*

21  *Corp.*, 323 F.3d 1332, 1335-36, 1343 n. 1 (Fed. Cir. 2003); *On Demand Machine Corp. v. Ingram*

22  *Indus., Inc.*, 442 F.3d 1331, 1340-41 (Fed. Cir. 2006); *J&M Corp. V. Harley-Davidson, Inc.*, 269

23  F.3d 1360, 1364 n. 1 (Fed. Cir. 2001).

24       NetApp's reliance on *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1582-83 (Fed. Cir. 1997)

25  is misplaced. There, the Court did not state the use of "means" in a method claim does not

26  invoke section 112(6). Indeed, NetApp cites no case so holding.

27       NetApp also repeatedly suggests, without citing case law, that reciting "means" without

28  also reciting the word "for" precludes application of section 112(6). NetApp Response Brief

-1-

1    ("NRB") at 2-3.  This also is incorrect.  The Federal Circuit routinely holds means-plus-function

2    limitations exist where the word "for" is not used.  *See, e.g., Eaton*, 323 F.3d at 1335-36, 1343,

3    n. 1; *Unidynamics Corp. v. Automatic Prods. Int'l Ltd.*, 157 F.3d 1311, 1318-19 (Fed. Cir. 1998);

4    *Signtech USA, Ltd. v. Vutek, Inc.*, 174 F.3d 1352, 1354-55 (Fed. Cir. 1999).

5        NetApp next argues that section 112(6) does not apply because, according to NetApp, the

6    claims do not recite a function for the "nonvolatile storage means."  NRB at 3.  This argument is

7    without merit.  The *expressly recited* function of the "nonvolatile storage means" in claims 4 and

8    8 is to store, namely, to store data blocks of a file system (claims 4 and 8), to store first and

9    second "file information structures" (claim 4), to store "read-only copies of a file system" (claim

10    8) and to store "metadata for successive states of said file system" (claim 8).  '292 patent, col.

11    25:11-29, 26:1-15.

12        In light of the plain claim language, NetApp's assertion that the "non-volatile storage

13    means" does not perform the recited function of "storing" is nonsense.  The "nonvolatile storage

14    means" stores data blocks, file information structures, read-only copies of the file system and

15    meta-data.  *Id.*  Indeed, NetApp contradicts its argument that the "nonvolatile storage means"

16    does not perform a function when it later argues that "every single dictionary definition the

17    parties are aware of at least defines 'non-volatile storage' . . . in 'functional terms.'"  NRB at 5.

18        NetApp's argument also is undermined by its own proposed claim construction, which

19    defines "nonvolatile storage means" as a generic "device" "that can" perform the function of

20    "retain[ing] information in the absence of power."  Thus, NetApp proposes, on the one hand, that

21    "nonvolatile storage means" be construed to cover any means for performing nonvolatile storage,

22    yet, at the same time, in order to avoid section 112(6), also argues that the "nonvolatile storage

23    means" does not perform storing.  This double-talk, if anything, underscores the functional nature

24    of the recited "nonvolatile storage means."

25            **2.    The Claims Do Not Recite Sufficient Structure To Rebut The**
                       **Presumption That Section 112(6) Governs.**
26

27        In order to rebut the presumption that section 112(6) governs a "means" limitation, the

28    claim language itself must recite *sufficient **structure** to perform the claimed function in its*

-2-

1   *entirety. Altiris,* 318 F.3d at 1375.  The claim language must recite *a specific physical structure*

2   that performs the function.  *Id.* at 1376.  In the present case, however, the claims fail to recite *any*

3   specific physical structure, much less sufficient structure, for performing the stated functions of

4   the "nonvolatile storage means."

5        NetApp does not deny that the claim language surrounding the recited "nonvolatile

6   storage means" fails to identify any structure to perform the claimed functions.  Rather, NetApp

7   asserts the term "nonvolatile storage" itself has a reasonably well-understood meaning in the art

8   and, therefore, according to NetApp, section 112(6) does not govern.  NRB at 4-6.  This argument

9   ignores that the term "nonvolatile storage" describes a ***function*** and not specific physical

10  structure that performs the claimed function in its entirety.  Brandt Supp. Decl., ¶ 1; *see Altiris,*

11  318 F.3d at 1376.  As explained by Dr. Brandt, the term "nonvolatile storage" does not define any

12  particular physical structure or class of devices for performing the recited function to one of

13  ordinary skill in the art.  Brandt Supp. Decl., ¶ 1.  Accordingly, because "nonvolatile storage"

14  does not connote a specific physical structure, NetApp cannot rebut the presumption that section

15  112(6) applies to the "nonvolatile storage means" limitation.

16       NetApp asserts "the bar is low" "[i]n determining whether a claim term recites sufficient

17  structure" to defeat the presumption that section 112(6) governs.  NRB at 4.  NetApp cites no case

18  so stating, and no case so holds.  Rather, the authority cited by NetApp states the issue is whether

19  the claim term, "as the name for structure," has a reasonably well-understood meaning in the art.

20  *Allen Eng'g*, 299 F.3d at 1347.  Note the standard is not whether the recited function of the claim

21  term is clear, but rather whether the claim term is itself a "name" for "structure," and whether that

22  named structure is well-understood in the art.

23       NetApp generally points to dictionary definitions in asserting that "nonvolatile storage" is

24  a "name" for a structure well-understood in the art.  However, half the definitions cited by

25  NetApp define "nonvolatile memory" rather than "nonvolatile storage."  NRB at 4; Ganger Decl.,

26  ¶ 12.  And many of the definitions of "nonvolatile storage" NetApp does cite merely define the

27  phrase in terms of ***the function*** performed by a generic "device" for which no structure is

28  identified.  *See, e.g.,* Ganger Decl., ¶ 12 (citing *IEEE Standard Dictionary of Electrical and*

-3-

1   *Electronics Terms* ["a storage device which can retain information in the absence of power"],

2   *Prentice Hall's Illustrated Dictionary of Computing* ["a storage device whose contents are not

3   lost when the power is cut-off"]).  As such, one cannot conclude from the cited dictionaries that

4   "nonvolatile storage" is a "name for structure" well-understood in the art.

5          NetApp notes that a few dictionary definitions also cite either "magnetic tape," ROM,

6   "bubble memory" or "magnetic core storage" as "nonvolatile storage" (although the list varies

7   from definition-to-definition).  Ganger Decl, ¶ 12.  Significantly, however, none of the definitions

8   identify hard disk drives, the sole relevant structure discussed in the specification of the '292

9   patent, as "nonvolatile storage."  The fact that hard disk drives are not identified in any of these

10  definitions confirms the dictionaries do not evidence that "nonvolatile storage," as used in the

11  '292 patent, is the "name" of a relevant "structure" well-understood in the art.

12         NetApp's heavy reliance on the *Greenberg* case is inappropriate as NetApp fails to advise

13  the Court of an important distinction drawn in that case.  In *Greenberg*, the Federal Circuit held

14  the term "detent mechanism" – a term that does not use "means" language – was not a means-

15  plus-function limitation.  *Greenberg v. Ethicon Endo-Surgery*, 91 F.3d 1580, 1583 (Fed. Cir.

16  1996).  In its analysis, the Federal Circuit contrasted the term "detent *mechanism*" with the term

17  "detent *means*," which was held to be a means-plus-function limitation in an earlier case.  *Id.* at

18  1584 (citing *Interspiro USA Inc. v. Figgie Int'l Inc.*, 815 F. Supp. 1488, *aff'd,* 18 F.3d 927, 930-

19  31 (Fed. Cir. 1994)).  A critical distinction the Court drew between the term "detent mechanism"

20  in *Greenburg* and the term "detent *means*" in *Interspiro* was that the patentee in *Interspiro* chose

21  to invoke section 112(6) by claiming in means-plus-function format.  *Id.*  Here, like the "detent

22  means" in *Interspiro*, "nonvolatile storage means" is claimed in mean-plus-function format.

23         The other cases cited by NetApp also are inapposite.  In *Cole v. Kimberly-Clark Corp.*,

24  102 F.3d 524 (Fed. Cir. 1996), the claims included "a detailed recitation of [the claim term's]

25  structure."  *Id.* at 531.  In *Envirco Corp. v. Clestra Cleanroom, Inc.*, 209 F.3d 1360 (Fed. Cir.

26  2000), the Court similarly concluded "the claims recite sufficient structure, including details

27  about the location and formational details about the second baffle."  *Id.* at 1365 ("the claims

28  describe the particular structure of this particular baffle").  Likewise, in *Keithley v.*

-4-

1    *Homestore.com, Inc.*, 2007 WL 2701337 (N.D. Cal. Sept. 12, 2007), the Court found the

2    "corresponding structure . . . is evident" from the surrounding claim language. *Id.* at *20. No

3    such "detailed recitation," "particular[ized] structure" or "corresponding structure" – or any

4    structure for that matter – is present in the claims of the '292 patent.

5          NetApp also relies upon the Southern District of New York ruling in *Lottotron, Inc. v.*

6    *Scientific Games Corp.*, 2003 WL 22075683 (S.D.N.Y. Sept. 8, 2003), which addressed the term

7    "storage means." As an initial matter, claim terms must be evaluated within the context of the

8    patent in which they are found. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

9    Accordingly, it is not surprising that claim terms are assigned different constructions in different

10   patents involving different technology.

11         The holding in *Lottotron* regarding "storage means" is not persuasive authority regarding

12   "nonvolatile storage means" for several additional reasons. First, the two terms are not the same.

13   Second, the "storage means" in *Lottotron* involved a completely different technical context – the

14   patent in *Lottotron* involved a lottery wagering system, not the file systems of the '292 patent.

15   *Lottotron,* 2003 WL 22075683 at *1. Third, *neither* party in *Lottotron* contended the claimed

16   "storage means" was a means-plus-function limitation. *Id.* at *7. Fourth, while NetApp cites

17   *Lottotron*, it ignores three other District Court cases holding that "storage means" is a means-

18   plus-function limitation. *Catch Curve, Inc. v. Venali, Inc.*, 2007 WL 3308101 (C.D. Cal. May 11,

19   2007) ("mass storage means"); *Apple Computer v. Burst.com, Inc.*,  2007 WL 1342504, *21-22

20   (N.D. Cal. May 8, 2007) ("storage means"); *General Creation LLC v. Leapfrog Enters., Inc.*, 232

21   F. Supp. 2d 661, 674-78 (W.D. Va. 2002) ("memory storage means"). In *Apple*, this Court

22   concluded: "[T]he description of storage as a 'memory device' underscores the conclusion that

23   'storage' is a functional term. A memory device does not connote a particular structure . . ."

24   *Apple*, 2007 WL 1342504 at *21 (citations omitted). The Court's conclusion in *Apple* is the same

25   as Sun's position here.

26                   **3.      NetApp's Reliance On Dr. Brandt's Testimony Is Misplaced.**

27         NetApp asserts the declaration testimony of Dr. Brandt supports NetApp's argument that

28   "nonvolatile storage means" is a name for structure well-understood in the art. NRB at 6-7.

1   However, the testimony relied upon by NetApp (1) does not mention "nonvolatile storage" and

2   (2) involves an analysis of the specification of the '292 patent.  Brandt Decl., ¶¶ 101, 77-86.

3   NetApp's reliance on testimony concerning conclusions drawn from the detailed teaching of the

4   specification is, to say the least, ironic, as Sun's construction is premised upon the teaching of the

5   specification, while NetApp seeks a construction completely unfettered by the teaching of the

6   specification.  Indeed, because reviewing the specification is required to give "nonvolatile storage

7   means" meaning in the context of the claims, that term is not a "name" for "structure" well-

8   understood in the art.  *Altiris*, 318 F.3d at 1375-76.

9              **4.      The Use Of "Nonvolatile Storage" In The Other Cited Patents And**
                        **Publications Is Irrelevant.**
10

11          NetApp cites six Sun patents and two publications by Dr. McKusick that use the term

12   "nonvolatile storage," some of which include examples of devices that can perform the function

13   of nonvolatile storage.  NRB at 6-8.  Again, as an initial matter, none of these patents or

14   publications is competent evidence of the understanding in the art at the time the application for

15   the '292 patent was filed as they all post-date the filing.  Moreover, the fact that one can provide

16   examples of devices that can perform a function, such as "storage," does mean that the function

17   connotes a specific physical structure that performs the function, thereby excluding it from the

18   scope of section 112(6).  For instance, one can provide examples of devices that can perform the

19   function of storage, *e.g.,* disks, punch cards, paper, semiconductor memory devices, etc., yet, as

20   established above, *three* different District Courts determined the term "storage means" is

21   governed by section 112(6).

22          The cases cited by NetApp in connection with its citation to the Sun patents (and to Dr.

23   Brandt's declaration testimony) are inapposite.  To support its contention that this evidence

24   "merely proves that the term [nonvolatile storage means] has a broad meaning, not that it is a

25   means-plus-function limitation," NetApp first cites *Linear Tech. Corp. v. Impala Linear Corp.*,

26   379 F.3d 1311, 1322 (Fed. Cir. 2004).  However, the cited passage in *Linear* does not stand for

27   this proposition and, in fact, pertains to identifying the "corresponding structure" of a claim term

28   that already was held by the Court to be governed by section 112(6).  *Id.*  NetApp next cites a

-6-

1  case the Federal Circuit did not designate as citable precedent, *Optimal Recreation Solutions,*

2  *LLP v. Leading Edge Tech., Inc.*, 6 Fed. Appx. 873, 878 (Fed. Cir. 2001). Even if *Optimal* could

3  be cited as precedent, the claim terms in *Optimal* were, unlike the "nonvolatile storage means,"

4  the names of structures. *Id.* NetApp also cites *Greenberg*, which, as established above,

5  distinguished "detent means" (governed by section 112(6)) from "detent mechanism" (not

6  governed by section 112(6)).

7        Moreover, none of the cases cited by NetApp alters the basic rule stated by the Federal

8  Circuit in *Altiris* that the presumption that requires NetApp to identify a specific physical

9  structure sufficient to perform the claimed function in its entirety. *Altiris*, 318 F.3d at 1375-76.

10  In *Altiris*, the Court noted, in citing the *Envirco* and *Cole* cases discussed above: "In the cases

11  where we have found sufficient structure in the claims, the claim language specifies a specific

12  physical structure that performs the function." *Id.* at 1376. Thus, if, as is instead the case here,

13  "one must still look to the specification for an adequate understanding of the structure," the claim

14  term is governed by section 112(6). *Id.*

15            **5.      NetApp's Construction Is Incorrect Because It Captures Subject
                        Matter Outside The Scope Of The '292 Patent.**
16

17        NetApp criticizes Dr. Brandt for identifying examples of devices that perform nonvolatile

18  storage that are outside of the scope the '292 patent. For example, Dr. Ganger states "Sun and

19  Dr. Brandt go too far in suggesting that relevant 'non-volatile storage' includes things like 'paper'

20  and 'film' simply because they retain data in the absence of power." Ganger Decl., ¶ 17. Dr.

21  Ganger then states that certain devices that retain data in the absence of power, such as paper and

22  film, are outside of the context of the '292 patent. Ganger Decl., ¶ 17. By admitting that not all

23  devices that retain information in the absence of power should be considered "nonvolatile

24  storage" in the context of the '292 patent, NetApp highlights the inherent problem with its

25  proposed construction – it captures subject matter outside of the scope of the '292 patent.

26  Because NetApp's proposed construction of "nonvolatile storage means" – *i.e.*, "a storage device

27  that can retain information in the absence of power" – covers subject matter, such as paper and

28  film, that it admits is outside of the context of the specification or file history, it violates the

-7-

1  fundamental principles of *Phillips*. *See Miken Composites, LLC v. Wilson Sporting Goods Co*.,

2  515 F.3d 1331, 1336-38 (Fed. Cir. 2008), quoting *Nystrom v. TREX Co.*, 424 F.3d 1136, 1145-46

3  (Fed. Cir. 2005) ("broadening of the ordinary meaning of a term in the absence of support in the

4  intrinsic record indicating that such a broad meaning was intended violates the principles

5  articulated in *Phillips*, 415 F.3d 1303 (Fed. Cir. 2005)").

6       **6.    NetApp's Criticisms Of Sun's Analysis Are Unfounded.**

7       NetApp criticizes Sun's construction by arguing the stated function of the "nonvolatile

8  storage means" is merely "storing information so that the information is not lost in the absence of

9  power." NRB at 9.  This assertion is incorrect because it disregards the other claim language

10 identifying the specific functions of the nonvolatile storage means.  As established both above

11 and in Sun's opening brief, the claim language at a minimum discloses the function of storing

12 blocks of data for a file system.  Sun Br. at 9.

13      NetApp next argues that the "corresponding structure" in the specification identified by

14 Sun is too narrow.  This also is incorrect.  Sun's proposed corresponding structure includes the

15 ***only*** embodiment described in the specification for storing data blocks so that the data is not lost

16 in the absence of power, *i.e.,* one or more disks with a block-based format (*i.e.,* 4 KB blocks that

17 have no fragments) where the disk storage blocks are the same size as the data blocks of the file

18 system.  Sun Br. at 9-10.  In fact, although the Court is required to identify the corresponding

19 structure in the specification, and although NetApp challenges Sun's identification, NetApp never

20 identifies where in the specification it contends the corresponding structure is located.  *Omega*

21 *Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1321 (Fed. Cir. 2003).

22      Rather than citing corresponding structure in the specification as required, NetApp

23 appears to contend the test is what structure an expert believes is minimally necessary to perform

24 the recited function.  NRB at 9.  This is not the law – the focus of the inquiry is on the

25 corresponding structure identified in the specification.  *Omega*, 334 F.3d at 1321.

26      NetApp criticizes Sun for identifying as "corresponding structure" structures resulting

27 from the use of WAFL.  NRB at 10.  However, identifying the corresponding structure in the

28 context of WAFL is necessary because the specification ***only*** describes the invention in the

-8-

1    context of the structures imposed by WAFL.  Brandt Decl., ¶ 67; '292 patent, col. 5:45-6:52,

2    6:53-8:56, 8:57-9:17, 9:18-11-27, 11:28-58, 11:62-17:63, 17:64-24:6.  Fundamental to the

3    operation of WAFL is "a disk format system that is block based (*i.e.*, 4 KB blocks that have no

4    fragments)."  Brandt Decl., ¶ 67; '292 patent, col. 5:48-53.  WAFL applies this format to the disk

5    so that it is prepared to store 4KB storage blocks corresponding to the 4KB data blocks.  Brandt

6    Supp. Decl., ¶ 7.  Thus, because Sun's construction describes the most basic structure *of the*

7    *formatted disk*, NetApp is incorrect in asserting that the "corresponding structure" in Sun's

8    proposed construction "do[es] not even pertain to a 'non-volatile storage' device.'"  NRB at 10.

9        NetApp also criticizes Sun's construction because it does not identify all the requirements

10   of WAFL – such as WAFL inodes and directories – as corresponding structure.  NRB at 10-11.

11   However, the use of "inodes" and "directories" is *not* inherently structural and is, therefore, not

12   included in the minimally necessary corresponding structure.  In contrast, the block-based disk

13   format is inherently structural because it describes how the underlying disks are formatted.

14   Brandt Supp. Decl., ¶ 7.

15       **B.    "meta-data for successive states of said file system"**

16           **1.    NetApp Disregards The Language Of Claim 8.**

17       Viewed from any perspective, Sun's construction is mandated by the language of claim 8

18   and the detailed description of the "present invention" in the specification.  Sun Br. at 10-14.

19   Indeed, because the requirements of the claim and the teaching of the specification are clear,

20   NetApp is compelled to fabricate a non-existent distinction between the claim and Sun's

21   construction, *i.e.,* that claim 8 concerns "consistency points" while Sun's construction concerns

22   "snapshots."  NRB at 12.  This distinction – and NetApp's related arguments – are without merit.

23       The claim 8 phrase being construed is "meta-data for *successive* states of said file

24   system."  The word "*successive*" bears on the manner in which the file system recited in claim 8

25   transitions from one state of the file system to the next state of the file system.  '292 patent, col.

26   4:6-11, 33-43.  The *successive* states of a file system are the current state of the file system and

27   past states of the file system, which may be recorded as "snapshots."  Brandt Supp. Decl., ¶ 16;

28   '292 patent, col. 17:66:18-1, 19:20-23, Fig. 18C.  Claim 8 requires "*storing* meta-data for

-9-

1    *successive* states of the file system."  Thus, contrary to NetApp's assertion that "the 'successive

2    states of said file system' referred to here are consistency points, not snapshots" (NRB at 12), it is

3    clear *successive* states of the file system refers to both the current state of the file system and

4    snapshots of past states of the file system.

5        While NetApp accuses Sun of "confus[ing] a consistency point with a snapshot" (NRB at

6    12), it appears NetApp is the one that is confused.  In this regard, while Sun's opening brief

7    explains consistent states and snapshots in detail, with specific citation to the specification,

8    NetApp draws its distinction without *any* specific citation to the specification.  Sun Br. at 3-5;

9    NRB at 12.  Without repeating Sun's prior multi-page explanation, Sun notes, again, that the

10    current "active" "consistent state" of the file system is defined by the most recent "consistency

11    point."  Brandt Supp. Decl., ¶ 18; '292 patent, col. 11:60-12:1, 14:42-44, 17:60-64.  The file

12    system can retain copies of past consistent states in a read-only form called "snapshots."  '292

13    patent, col. 4:20-21, 17:64-18:3; Brandt Supp. Decl., ¶¶ 10, 16.  A snapshot is similar to a past

14    consistency point.  *Id.*, col. 20:21-22, 64-65; Brandt Supp. Decl., ¶ 18.

15        NetApp correctly points out that not all consistency points are preserved as snapshots.

16    NRB at 12.  However, the conclusion NetApp draws from this – that "Sun's definition fails

17    because it does not encompass meta-data for any consistency points that are not preserved as

18    snapshots – is clearly incorrect.  *Id.*  In this regard, the parties agree claim 8 consists of a single,

19    three-step process, which claim 8 refers to as "[a] method for creating a plurality of read-only

20    copies of file system," *i.e.,* snapshots.  '292 patent, claim 8, col. 26:1-2.  The first step in the

21    claimed process is "storing meta-data for successive states of the file system"; the second step is

22    "making a copy of said meta data" to create a snapshot; and the third step is marking the blocks

23    identified by the copied meta-data as comprising the snapshot.  *Id.*, col. 26:5-15.  NetApp admits,

24    as it must, that the second and third steps pertain to the creation of snapshots (NRB at 13:6-7),

25    and storing the meta-data in the first step enables the creation of the snapshot in the second and

26    third steps.  '292 patent, col. 18:21-23; Brandt Supp. Decl., ¶ 10.  Thus, this process, by its own

27    terms, *pertains only to creating snapshots* of successive, current states of the file system.

28    Therefore, claim 8 does *not* pertain to instances where a consistency point is not saved as a

-10-

1   snapshot.  Accordingly, Sun's construction does not exclude any aspect of claim 8 – and

2   NetApp's observation that not all consistency points are saved as snapshots is irrelevant.

3       NetApp ignores the use of the word "*successive*" in the claim when construing this

4   limitation and its construction gives the word "*successive*" no weight.  NetApp's disregard of

5   "*successive*" leads to NetApp's failure to recognize the claim's requirement of a block map file.

6   The block map file is *the* one and only element of the '292 patent that constitutes the claimed

7   "meta-data for successive states of the file system."  Sun Br. at 11-12.  NetApp's construction

8   improperly contradicts the patentee's repeated and unqualified statements establishing this.

9   *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318-19 (Fed. Cir. 2006).

10      Instead of acknowledging the dictates of the intrinsic evidence, NetApp disassembles this

11  claim term and eyes the word "meta-data" without regard to the remaining claim language – "for

12  successive states of the file system."  Having stripped it of context, NetApp posits the recited

13  "meta-data" can be anything – "an inode file, a root inode, a block map file, an inode map file,

14  inode tables, directories, bitmaps, and indirect block" – and, based on Dr. Ganger's supposition,

15  any other unnamed structure.  NRB at 13 (*citing* Ganger Decl., at ¶¶ 29-30).  Tellingly, nowhere

16  is there any mention of whether these structures relate to *successive states of a file system*.  That

17  is because only the block map file, among the boundless structures offered by NetApp, is the

18  claimed "meta-data for successive states of the file system."  Brandt Supp. Decl., ¶ 15.

19      NetApp's proposed construction also is inconsistent with the language of the claim as a

20  whole.  The final limitation of claim 8 recites:  "for each of said copies of said meta-data at a

21  respective state of said file system, marking said *blocks* of said non-volatile storage means

22  *identified in said meta-data as comprising a respective read-only copy* of said file system."  '292

23  patent, col. 26:11-16.  Thus, the "meta-data" must identify blocks within each read-only copy of

24  the file system.  According to the '292 patent, the block map file is the unique meta-data that

25  identifies blocks within each read-only copy.  Brandt Supp. Decl., ¶ 14.  Thus, once again, claim

26  8 dictates that the "meta-data for successive states of the file system" be the block map file, and

27  not the generic "information" NetApp proposes.

28      NetApp's proposal to substitute generic, unbounded "information" for "meta-data for

-11-

1  successive states of the file system" is not supported by *any* intrinsic evidence – and NetApp cites

2  none.  Furthermore, replacing the existing specific claim language with generic "information"

3  effectively deletes the "meta-data" limitation from the claim, a practice forbidden by the Federal

4  Circuit.  *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1578 (Fed Cir. 1996).

5              **2.    Sun's Construction Is Consistent With The Dependent Claims.**

6              In an attempt to misapply the doctrine of claim differentiation, NetApp posits that claim 8

7  under Sun's construction excludes the narrowing limitations of claims 11-13 and 18-19.  NRB at

8  13-14.  The obvious flaw in NetApp's argument is that Sun's construction of "meta-data for

9  successive states of a file system" *does not exclude* the presence of the additional limitations

10  recited in the dependent claims, such as "pointers," "inodes" or "root inodes."  '292 patent, col.

11  26:26-32, 26:50-55.  Indeed, NetApp's brief never explains how Sun's construction would

12  preclude the presence of these features in the practice of claim 8.  In any event, claim 8 is an open

13  "comprising" claim, so the requirement of a "block map file for recording snapshots of the file

14  system" does not exclude the presence of additional structures.  *SanDisk Corp. v. Memorex*

15  *Prods., Inc.*, 415 F.3d 1278, 1284-85 (Fed. Cir. 2005) (confirming that "comprising" is

16  synonymous with "including" and that "comprising" claims do not foreclose the presence of

17  additional elements).

18              NetApp's argument appears to be based upon the assumption that the use of a "block map

19  file" somehow precludes, from a technical perspective, the presence of the "pointers" and

20  "inodes" of the dependent claims.  They do not, nor is one an alternative to the other.  Brandt

21  Supp. Decl., ¶ 24.  Rather, they must be implemented concurrently, as is reflected by the required

22  addition of these features in the dependent claims.  *Id.*  Sun's construction is therefore entirely

23  consistent with the dependent claims, as the additional limitations of the dependent claims narrow

24  claim 8.  *Accumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007).

25              NetApp also invokes claim differentiation with respect to claims 9 and 10, asserting that

26  claim 8 is identical in scope to dependent claims 9 and 10 under Sun's construction.  NRB at 14-

27  15.  NetApp is wrong again.  First, NetApp's argument violates long-standing Federal Circuit

28  precedent limiting the doctrine of claim differentiation when applied to means-plus-function

-12-

1    claims.  *Nomos Corp. v. BrainLAB USA, Inc.*, 357 F.3d 1364, 1368 (Fed. Cir. 2004).  Claim 9

2    recites a "means for recording multiple usage bits per block . . ." and claim 10 requires the

3    "means" of claim 9 be a block map. '292 patent, col. 26:16-25.   These limitations are properly

4    construed as means-plus-function limitations pursuant to section 112(6).  Therefore, it is

5    inappropriate for NetApp to argue that the doctrine of claim differentiation requires the claimed

6    meta-data of claim 8 be something broader than a block map.  *Nomos*, 357 F.3d at 1368.

7        Second, NetApp is wrong that claim 8 is identical in scope to claims 9 and 10 under Sun's

8    construction.  The block map file of claim 8 may be arranged in any way.  Brandt Supp. Decl.,

9    ¶ 20.  Claim 9, however, expressly limits "the marking of said blocks" of claim 8 by requiring

10   that the marking occur through placing entries in the block map.  '292 patent, col. 26:16-21.

11   NetApp acknowledges this additional limitation.  NRB at 15.  Claim 10 is even more narrow than

12   claim 9 as it requires "multiple bit entries per block."  *Id.*, col. 26:24-25.  Accordingly, claim 8 is

13   not coextensive with claims 9 and 10 under Sun's construction.

    **3.      Sun's Construction Gives Proper Weight To The Claim Language And
             The Specification.**

16       As established in Sun's opening brief, the specification repeatedly states "the present

17   invention" uses a block map file, and no other embodiment is disclosed in the specification.  Sun

18   Br. at 11-13.  NetApp does not – and cannot – deny either fact.  Nevertheless, NetApp contends

19   Sun's construction is improper.  NRB at 15-16.

20       Sun's opening brief cites three recent Federal Circuit cases, decided in 2006, 2007 and

21   2008, holding that where, as here, the specification describes a single embodiment *and* describes

22   a feature as being part of "the invention," the Court should limit the scope of the invention to that

23   embodiment.  Sun Br. at 12-13.  Notably, NetApp's brief does not address this recent authority,

24   much less attempt to distinguish it.

25       NetApp instead cites *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 973

26   (Fed. Cir. 1999), an earlier case readily distinguishable from the present case.  *Karlin* involved a

27   patent which "use[d] the terms 'present invention' and 'preferred embodiment' interchangeably."

28   *Id.*  There are no such mixed-messages in the '292 patent, which makes very clear the use of

-13-

1    block map files is a necessary feature of "the present invention."  Sun Br. at 11-13.

2        The two District Court cases cited by NetApp also are readily distinguishable.  In the first

3    case, the Court noted the disputed limitation "is not consistently included throughout the

4    specification."  *MGP Ingredients, Inc. v. Mars, Inc.*, 494 F. Supp. 2d 1231, 1237 (D. Kan. 2007).

5    Here, by contrast, the use of a block map is consistently and exclusively featured in the

6    specification, in addition to being repeatedly described as being part of "the present invention."

7    The second case, *Boston Scientific SciMed, Inc. v. ev3 Inc.*, 502 F. Supp. 2d 931, 940-43 (D.

8    Minn. 2007), is distinguishable from the present case because in that case intrinsic evidence –

9    other related patents sharing the same specification and the prosecution history – evidenced an

10   intent by the patentee not to limit the scope of the claims.  *Id.* at 942-43.  Notably, even *Boston*

11   *Scientific* states that characterizing a feature "as part of the 'present invention'" is "strong

12   evidence" that the claims should not be read broadly.  *Id.* at 942.

13       NetApp points to a single statement in the specification which notes that although

14   "numerous specific details" are included in the 24 column specification, the invention may be

15   practiced without all of the details. '292 patent, col. 5:36-45.  There are, in fact, many details

16   disclosed in the specification.  However, the specification only identifies a few specific features

17   as being part of "the present invention" – one of which is the use of the block map.  As such,

18   these fundamental features do not fall into the category of unnecessary "details."

19       NetApp also asserts the specification describes three different "functions" of the claimed

20   invention.  NRB at 16-17.  However, it is undisputed the specification describes only a single

21   embodiment of the claimed invention (which has three functions) and that this single embodiment

22   only discloses the use of a block map file as the claimed "meta-data for successive states of the

23   file system."  As such, NetApp's observation is irrelevant.

24       NetApp's assertion that the block map file is "updated, but not copied" also is wrong.  The

25   patent teaches that the block map file is "updated by copying."  *Id.*, col. 13:41-44, 21:53-56.

26       Finally, Sun notes NetApp offers no rebuttal to Sun's showing that the related '352 patent

27   confirms the accuracy of Sun's construction.  Sun Br. at 13-14.

28

-14-

C.    **"file system information structure"**

The phrase "file system information structure" is not a term known to persons of ordinary skill in the file system art at the time of the '292 patent.  Brandt Decl., ¶ 82.  The declaration of Dr. Ganger, NetApp's technical expert, acquiesces to this fact, offering no evidence that the phrase bears any meaning outside of the '292 patent.  Ganger Decl., ¶¶ 42-52.  Absent an accepted meaning in the file system art, "file system information structure" must be construed with regard to the precise definition provided by the intrinsic evidence.  *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004) (citing *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1570 (Fed. Cir. 1997).  Here, the claims and specification of the '292 patent unequivocally define the "file system information structure" as the "data structure that contains the root inode of a file in a fixed location on disk."

**1.    Only Sun's Construction Is Consistent With Claim 4.**

NetApp's commitment to its claim construction is surprising given that it results in a claim that reads "said [data structure containing information about the layout of a file system] comprising data describing a layout of said file system ...."  *See* Sun Br. at 17.  NetApp does not dispute that this language is repetitive and amazingly argues, contrary to established Federal Circuit precedent, that it is proper to construe one claim term by using other language that "is drawn directly from the language of the claim itself."  This is incorrect as a matter of law. *AllVoice Computing PLC v. Nuance Communications, Inc.*, 504 F.3d 1236, 1247-48 (Fed. Cir. 2007); *Mangosoft, Inc. v. Oracle Corp.*, 525 F.3d 1327, 1330-31 (Fed. Cir. 2008).

To no avail, NetApp attempts to distinguish the Federal Circuit precedent cited in Sun's opening brief, including the *Mangosoft* case.  NRB at 19.  In its argument, however, even NetApp recognizes that *Mangosoft* requires a proposed construction be rejected if it "simply restated an *implied relationship* between the other components of the system."  NRB at 19 (emph. added); *see Mangosoft*, 525 F.3d at 1330-1331.  Here, the circumstances of NetApp's proposed construction are even more egregious because its construction **merely restates** the **express relationship** between the "file system information structure" and "data describing a layout of said file system" explicitly recited in the claim.  Sun's construction, on the other hand, recognizes that

-15-

1    the claimed "file system information structure" requires more.  Specifically the "file system
2    information structure" is the "data structure that contains the root inode of a file system in a fixed
3    location on disk."  Brandt Decl., ¶ 77.

**2.     Only Sun's Construction Is Consistent With Claims 5, 6 And 7.**

5    NetApp's argument that Sun's construction violates the doctrine of claim differentiation
6    ignores meaningful differences in each of the claims that depend from claim 4.  NRB at 19-20.
7    The presence of *additional limitations* in claims 5, 6, and 7 properly differentiate these dependent
8    claims from independent claim 4.  *Globetrotter Software v. Elan Computer Group*, 236 F.3d
9    1363, 1369 (Fed. Cir. 2001) (holding that claim differentiation is observed where the "dependent
10   claim [] recites an additional limitation that is not part of [the] independent [] from which it
11   depends …").  Here, NetApp admits that "[d]ependent claim 5 recites *additional limitations* for
12   both storing steps in claim 4, namely (1) 'storing first and second copies …' and (2) overwriting
13   the first and second copies …."  NRB at 19.  NetApp's reliance on claim 6 also is of no avail
14   because claim 6 depends from claim 5 (with its additional limitations), so claim 6 also must have
15   a different scope than claim 4.

16   Remarkably, what is not recited in any claim depending from claim 4 is a requirement that
17   the *one* file system information structure be stored in a fixed location on disk when no copies are
18   present.  Brandt Supp. Decl., ¶ 33.  In contrast to recitation of a *single* file system information
19   structure in claim 4, the additional limitations of claim 5 add a requirement of *two* copies of the
20   file system information structure.  Thus, NetApp is incorrect that Sun's construction injects
21   limitations from claim 5 into claim 4.  It is significant, though, that claims 5 and 6 do confirm to
22   one of ordinary skill in the art that each copy of the file system information structure must be at a
23   fixed, predetermined *location*.  Brandt Supp. Decl., ¶ 31-32.

**3.     Only Sun's Construction Is Consistent With The Specification Viewed From The Perspective Of Ordinary Skill In The Art.**

26   As detailed in Sun's opening brief, the '292 patent uniformly describes the file system
27   information (fsinfo) structure as comprising the root inode kept in a fixed location on disk.  Sun
28   Br. at 14-16.  The file system information structure is defined in unequivocal and consistent terms

-16-

1    within the '292 patent, for example:

2    • "Fsinfo block 2302 comprises the root inode." '292 patent, col. 16:6

3

4    • "Two identical copies of the fsinfo structure 1510 are kept in fixed locations on disk" '292 patent, col. 11:3-5.

5    • "The root inode is kept in a fixed location on disk referred to as the file system information (fsinfo) block …." '292 patent, col. 9:33-36

6

7    • "The root inode 1510B of a file system is kept in a fixed location on disk [and] is part of the file system information (fsinfo) structure 1510 …." '292 patent, col. 10:58-64

8

9    In so stating, the '292 patent sets the outer boundaries of the "file system information structure"

10   as a "data structure that contains the root inode of a file system in a fixed location on disk."

11   *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005); *Bell Atlantic Network Servs. v.*

12   *Covad Communications Group, Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001)("[W]hen a patentee

13   uses a claim term throughout the entire patent specification, in a manner consistent with only a

14   single meaning, he has defined that term 'by implication.'").

15        NetApp attempts to camouflage the uniform meaning given the file system information

16   structure by grafting miscellaneous information onto it.  NRB at 18, 20.  First, NetApp plays up

17   miscellaneous information described as being optionally included within the file system

18   information structure.  '292 patent, col. 10:64-11:3.  This optional data includes "the number of

19   block in the file system, the creation time of the file system," and the check sum.  '292 patent,

20   col. 10:64-11:3.  However, while this data is described as an option, the '292 patent evidences the

21   clear intent to require the root inode.  '292 patent, col. 11:1-3 ("***Except for the root inode 1510B***

22   ***itself***, this information [the number of blocks in the file system, the creation time of the file

23   system, and the check sum data] 1510A can be kept in a meta-data file in an alternative

24   embodiment.")(emph. added).  The '292 patent uniformly requires the root inode be included

25   within the fsinfo structure and be stored in a fixed location.  *Id.*, col. 9:33-36, 10:58-64, 11:1-5.

26        Second, NetApp asserts that the file system information structure does not necessarily

27   contain the root inode, and instead supposes that any data structure would suffice.  NRB at 20.

28   NetApp references a single sentence from the specification allowing the "root data structure" (not

-17-

1    the "root inode") to be "any data structure representative of an entire file system ...."  NRB at 20

2    (*citing* '292 patent, col. 18:13-16).  However, this sentence is not discussing the root inode, but is

3    instead discussing **the "snapshot inode."**  See '292 patent, col. 18:10-12 ("Each snapshot is

4    represented by a snapshot inode that is similar to the representation of the active file system by a

5    root inode.").  Contrary to NetApp's mis-citation, the '292 patent consistently emphasizes the

6    importance of the presence of the root inode within the file system information structure.  '292

7    patent, Abstract, Figs. 7, 20C; col. 9:34-36, 10:63-65, 11:20-22, 12:26-37, 13:63-66, 16:6-9.  In

8    fact, even NetApp concedes that the "preferred embodiment contemplates that the fsinfo block

9    includes a root inode" and points to no example of the fsinfo block that does not include the root

10   inode.  NRB at 20.

11        NetApp characterizes Sun's observation that the '292 patent equates the phrases "file

12   system information structure," "fsinfo block," and "fsinfo structure" as a red herring.  However,

13   NetApp's response is the true distraction.  NRB at 21.  Specifically, regardless of whether they

14   are synonymous, **both** the **fsinfo block** and the **fsinfo structure** are uniformly described as

15   containing the root inode and being stored at a fixed location.  '292 patent, col. 9:34-36, 10:57-

16   60, 14:3-5.

17        NetApp supposes that the description of the file system information structure (as opposed

18   to a file system information block) refers only to the data structure, and not to a location.  NRB at

19   21.  NetApp itself demonstrates the weakness of this point through two concessions and its failure

20   to cite key passages of the specification.  First, NetApp concedes "file system information

21   structure" has only one meaning.  *Id.*  Second, NetApp concedes that the "'fsinfo block' is

22   synonymous with 'fsinfo structure.'"  *Id.*  Sun agrees.  Of even greater significance, however,

23   NetApp fails to cite the salient portions of the specification where the file system information

24   structure is confirmed to contain the root inode and reside at a fixed location on disk.  '292 patent,

25   Abstract, col. 10:57-65, 11:3-5, 12:26-32.  Thus, the premise of NetApp's entire argument – that

26   the fsinfo structure (as opposed to the fsinfo block) is not identified as being kept at a fixed

27   location on the disk – is proven false by unambiguous statements in the specification such as:

28   "[t]wo identical copies of the **fsinfo structure** 1510 are kept in **fixed locations** on disk."  '292

-18-

1    patent, col. 11:3-5.  This statement, and in fact the entirety of the '292 patent, uniformly demands

2    that "file system information structure" mean a "data structure that contains the root inode of a

3    file system in a fixed location on disk."

4    **III.    U.S. PATENT NO. 6,892,211**

5    　　　**A.    "pointing directly and indirectly to buffers in said memory and a second set
         of blocks on said storage system"**

6

7    　　　While NetApp accuses Sun of the shocking offense of applying a basic rule of English

8    grammar (*i.e.*, that "and" is conjunctive and means "and"), NetApp throws out the rules

9    altogether.  Abandoning the rules of grammar, NetApp asserts "pointing directly **and** indirectly"

10   means "pointing directly **or** indirectly."

11   　　　NetApp argues that "[b]ecause Sun does not contend that the incore root inode must point

12   in both ways to *each individual block or buffer*, Sun must concede that the first 'and' can

13   contextually mean 'and/or.'"  NRB at 23 (emph. in orig.).  This is nonsense.  While not all buffers

14   in a consistent file system state need to be both directly and indirectly pointed to, the claim

15   language plainly requires there be *at least one* buffer pointed to directly, and *at least one other*

16   buffer pointed to indirectly.  Brandt Supp. Decl., ¶¶ 36-40.

17   　　　Ignoring the rules of claim construction, NetApp reads out whole swaths of the limitation

18   in question.  Under its construction, this carefully worded claim phrase, which expressly requires

19   both direct and indirect pointing, and pointing to both buffers and blocks, loses virtually all

20   meaning, in which any one of at least eight different conditions would be deemed to satisfy this

21   limitation.  Sun Br. at 21.  For example, NetApp suggests that "buffers or blocks – either will do,"

22   meaning that "pointing directly to blocks" would by itself satisfy this claim limitation.  NRB at

23   23:2-5.  Doing so would impermissibly render superfluous the claim language regarding buffers.

24   *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005).  Likewise,

25   NetApp's construction would permit "pointing indirectly to buffers" to satisfy this claim

26   limitation, thereby turning the claim language regarding blocks (and the claim language regarding

27   direct pointing) into "merely superfluous, nonlimiting elaboration," an approach to claim

28   construction that has been rejected by the Federal Circuit.  *Bicon Inc. v. Straumann Co.*, 441 F.3d

-19-

945, 950 (Fed. Cir. 2006).

### 1.    NetApp Rewrites Plain Claim Language.

NetApp's proposed construction amounts to a wholesale rewriting of the claim language. NetApp's position is that the incore root inode need not even point to *both* buffers *and* blocks, let alone point to each directly and indirectly.  In NetApp's own words: "The disputed limitation requires that there be some locations for the computer data in question (*i.e.*, buffers and blocks - either will do, both is normal) and pointers that point to them (direct or indirect – either will do, but again, both is normal).  As long as this condition is met, the disputed term is satisfied."  NRB at 23:2-5.  Thus, NetApp views the claims' detailed recitations of buffers and blocks and their relationship with the incore root inode (being pointed to directly and indirectly) as inconsequential flourishes of the claim drafter's pen, to be ignored at NetApp's convenience.

If NetApp were correct, there would be no need for the '211 patentees to specifically claim types of data locations (buffers and blocks) or types of addressing (direct and indirect).  The claims could have simply claimed an "incore root inode pointing to data locations in memory and on said storage system" – precisely what NetApp apparently wishes the claims *had* claimed.  However, it is well settled that "[a] patentee may not proffer an interpretation for the purposes of litigation that would alter the indisputable public record consisting of the claims, the specification and the prosecution history, and treat the claims as a 'nose of wax.'"  *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995).  Each claim term is presumed to have meaning and cannot be willy-nilly read out of the claim, as NetApp is attempting to do. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) (refusing to construe a claim so as to read out an element), *Bicon*, 441 F.3d at 950.  For this reason, the Court should reject NetApp's invitation to redraw the claim language at issue. *Quantum Corp. v. Rodime, Plc.*, 65 F.3d 1577, 1584 (Fed. Cir. 1996) ("courts do not redraft claims");  *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1563 (Fed. Cir. 1995) ("we are not free to read the claims as they might have been drafted") (Plager, J., concurring).

### 2.    The Claim Language Cited By NetApp Supports Sun's Construction.

The very claim language that NetApp relies upon to support its untenable construction

-20-

shows that Sun's construction is correct.  NetApp invites the Court to consider claim language

surrounding the disputed term, specifically the requirement that "said buffers *and* said second set

of blocks stor[e] data and metadata for a second consistent state of said file system."  '211 patent,

col. 24:4-6, 24:55-57, 25:37-39 (emph. added); NRB at 24.  Remarkably, NetApp states that the

first "and" in this claim language *"establish[es] a single combined group"* of "buffers and second

set of blocks," together "represent[ing] the second consistent state of the file system."  NRB at

24:17-21 (emph. added).  This, of course, means that NetApp recognizes that this "and" is truly

an "and" and not an "and/or" because an "and/or" would break up the group into two parts.

Apparently, NetApp recognizes what "and" really means in the claims when it is not inconvenient

to NetApp's infringement position.  In this regard, NetApp's construction would result in the

same term – "and" – being used inconsistently in the same claim, which would be error.  *Fin*

*Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1319 (Fed. Cir. 2001).

### 3.    NetApp's Construction Is Not Supported By The Specification.

NetApp claims its construction finds support in the specification, but never actually cites

to the specification.  NRB at 25-26.  This omission is not surprising – the specification provides

*no* support for NetApp's construction.  As explained in Sun's opening brief, the specification

teaches that the claimed incore root inode *always* points directly to the buffers of the inode file

*and* indirectly to all other buffers (such as the blockmap and inomap file buffers comprising the

claimed file system metadata and buffers storing regular files), *as well as* pointing directly to the

unchanged blocks of the inode file on disk *and* pointing indirectly to all other unchanged blocks.

Sun Br. at 22-25.

Unable to rely on the specification, NetApp turns to two purported examples provided by

its expert, Dr. Ganger.  NRB at 25, *citing to* Ganger Decl., ¶¶ 64-65.  Even a cursory review of

these examples confirms that they are not disclosed in the specification, but are merely Dr.

Ganger's *testimony* about how the claimed file system *might* operate under certain conditions.

Unlike express disclosure in the specification, which the law treats as reliable intrinsic evidence,

such expert testimony is extrinsic evidence and always carries less weight.  *Phillips*, 415 F.3d at

1317-19.  Furthermore, Dr. Ganger's testimony cannot be used to contradict a claim construction

-21-

mandated by the intrinsic evidence.  *Id*. at 1318.  In any event, the examples provided by Dr. Ganger are incorrect.  Brandt Supp. Decl., ¶¶ 41-42.

Having failed to cite any intrinsic evidence to support its untenable construction, NetApp turns to case law.  NetApp cites *Ortho-McNeil Pharm. v. Mylan Labs., Inc.*, 520 F.3d 1358 (Fed. Cir. 2008) for the proposition that reading "and" as an "and" is not required.  NRB at 25.  *Ortho* cannot help NetApp.  In *Ortho*, the Federal Circuit construed the term "and" to mean "or" "in the circumstances of th[at] case" because construing "and" in the conjunctive "would render several dependent claims meaningless."  *Id.* at 1362.  In reaching its conclusion, the Federal Circuit was particularly concerned with the tenet of claim construction that the Court should "strive[] to reach a claim construction that does not render claim language in dependent claims meaningless."  *Id.*

None of the predicates for applying *Ortho* are present here.  Construing "and" in the conjunctive in the '211 patent does not render any dependent claim meaningless, and does not violate any tenet of claim construction.  To the contrary, construing "and" as an "or" in the context of the '211 patent violates several claim construction rules, as discussed above.  Simply put, the intrinsic evidence here establishes that the term "and" was meant to be read in the conjunctive and nothing in *Ortho* can alter that conclusion.

### B.    "root inode"

Sun's construction of "root inode" correctly recognizes both the meaning of the term "root" – something is "rooted" in a fixed location – and the specification's uniform description of the "root inode" as being stored at a fixed location so as to permit the file system to access its written-anywhere files (without which access the file system would be non-functional).  '211 patent, col. 9:25-35, 10:58-11:5.  NetApp ignores this fundamental role of the root inode.  Its purported justifications for doing so lack merit.

#### 1.    Any Distinction Between The Incore And On-Disk Root Inodes Is Irrelevant For Claim Construction.

NetApp first identifies a purported distinction between the "on-disk" and the "incore" root inodes.  NRB at 28.  NetApp makes the unremarkable observation that the "incore" root inode is stored in a buffer structure that is not located in a fixed location in *memory* and includes

-22-

1   structures that are absent from the "on-disk" root inode.  *Id*.  NetApp concludes from this that

2   Sun's proposed construction, because it requires the root inode to be in a fixed location, is too

3   narrow to accommodate the incore root inode.  *Id*.  NetApp's reasoning is faulty because it

4   assumes a false dichotomy between the on-disk and incore root inodes.

5          The incore root inode is a temporary *in-memory copy* of the on-disk root inode.  Brandt

6   Supp. Decl., ¶ 45; '211 patent, col. 6:55-61.  Because one of skill in the art understands this, he or

7   she readily appreciates that, under Sun's correct construction, the incore root inode is an in-

8   memory *copy* of the "index node data structure stored in a fixed location that roots a set of self-

9   consistent blocks on the storage system that comprise the file system" (Sun's construction of

10  "root inode").  Brandt Supp. Decl., ¶ 45.  In other words, while a *copy* of the root inode is stored

11  in memory, ***there always is a root inode stored in a fixed position on the disk***.  Sun's

12  construction correctly captures this fact, while NetApp's construction does not require ***any*** inode

13  to be "rooted" anywhere.  The fact that the incore *copy* of the on-disk inode also has additional

14  structure to reference buffers is irrelevant.  *Id*.

15          **2.      NetApp's Arguments Regarding The *fsinfo* Structure Are Irrelevant.**

16         NetApp also "incorporates by reference" its arguments regarding the term "file system

17  information structure" in the '292 patent.  NRB at 27, 29.  However, the "fsinfo structure" is not a

18  limitation in any '211 patent claims.  Under Sun's correct construction, the fsinfo structure in the

19  '292 patent stores the root inode in a fixed place on disk.  NetApp's position, however, is that the

20  fsinfo structure does not need to contain a root inode.  NRB at 20.  NetApp cannot reasonably

21  maintain that its arguments regarding the "fsinfo structure" are relevant to the construction of

22  "root inode" when it denies the root inode needs to be present in the fsinfo structure.

23          **3.      NetApp's Construction Is Not Supported By The Specification.**

24         NetApp incorrectly asserts the specification discloses a root inode not stored in a fixed

25  location.  In fact, NetApp does not and cannot point to a single place in the specification that

26  teaches a file system root inode stored in a non-fixed location.

27         Instead, NetApp once again cites the testimony of its expert Dr. Ganger – testimony

28  wholly divorced from the intrinsic record.  NRB at 29, *citing to* Ganger Decl., ¶¶ 79-80.  Dr.

-23-

1    Ganger's opinion, repeated by NetApp in its brief, is that a person of ordinary skill in the art

2    would know of other mechanisms of ensuring that the root inode can be located.  However, Dr.

3    Ganger provides no basis for his opinion, not in the claims, not in the specification, and not even

4    in an extrinsic publication.  What's more, Dr. Ganger's hypothetical example would not be

5    operable in the context of the patented invention.  Brandt Supp. Decl., ¶¶ 46-48.  Dr. Ganger's

6    testimony must therefore be given no weight.  *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423

7    F.3d 1296, 1303-04 (Fed. Cir. 2005) (rejecting expert testimony where patentee "cannot tie [the]

8    extrinsic evidence to the patent or the claim language."); *Network Commerce, Inc. v. Microsoft*

9    *Corp.*, 422 F.3d 1353, 1361 (Fed. Cir. 2005) (rejecting expert testimony that was not supported

10   with any references to industry publications or other independent sources and was at odds with

11   the intrinsic evidence).

12          Desperate to find any disclosure of a root inode not in a fixed location, NetApp and its

13   expert turn to the specification's description of snapshot inodes.  NRB at 29-30.  This is another

14   red herring.  Snapshots are created in part by making a copy of the root inode.  *Id.*, col. 18:6-8.

15   This copy is referred to as a "snapshot inode": "Each snapshot is represented by a *snapshot inode*

16   that is similar to the representation of the active file system by *a root inode*."  *Id.*, col. 18:3-5

17   (emph. added).  By using a different name for this inode, the specification makes it absolutely

18   clear that it is not the same structure as the claimed root inode.  Brandt Supp. Decl., ¶ 49.  Indeed,

19   as shown in '211 patent Fig. 22, snapshot inodes reside in the inode file alongside all the other

20   regular inodes.  *Id.* at ¶ 50.  Therefore, snapshot inodes are part of the claimed "metadata" pointed

21   to directly and indirectly by the root inode (residing in the fsinfo block in Fig. 22) and are

22   certainly not themselves the claimed root inode.  *Id.*

23          Furthermore, the claims of the '211 patent are directed to an active file system that is

24   evolving from a first consistent state to a second consistent state.  Brandt Supp. Decl., ¶ 51.

25   Snapshots, however, are not an active file system.  The specification distinguishes between the

26   active file system, which can be written to, and a snapshot, which it describes as a "read-only"

27   copy of an entire file system at a given instant when the snapshot is created.  '211 patent, col.

28   17:59-61, Brandt Supp. Decl., ¶ 51.  Because a snapshot inode is a distinct structure rooting a

-24-

1    read-only copy of a file system, its properties are irrelevant to the proper construction of the root

2    inode, which roots the active file system claimed in the '211 patent.  Brandt Supp. Decl., ¶ 51.

3               **4.      Sun's Construction Recognizes True Scope Of Claimed Invention.**

4         NetApp cannot run from the clear teaching of the specification.  Claim construction

5    requires an inquiry into "whether the specification read as a whole suggests that the very

6    character of the invention requires the limitation to be a part of every embodiment."  *Alloc, Inc. v.*

7    *Int'l Trade Com'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003)  Here, the specification teaches that the

8    very nature of a write-anywhere file system layout requires the root inode be in a fixed location.

9    '211 patent, col. 9:27-36.  The specification distinguishes the inode file of the invention from

10   prior art inode tables on the ground that the inode file is written *anywhere* on disk.  *Id.*  It is this

11   alleged difference over the prior art that necessitates the existence of the claimed root inode – the

12   root inode must necessarily be in a fixed location to locate the write-anywhere inode file.  *Id.*;

13   Brandt Supp. Decl. ¶ 44.

14        Sun's construction correctly recognizes the fundamental fact that "the patent[] do[es] not

15   show or suggest any systems without" a root inode in a fixed location.  *Alloc*, 342 F.3d at 1370.

16   NetApp's construction, on the other hand, impermissibly broadens the claims well beyond what is

17   set forth in the specification.  *On Demand,* 442 F.3d at 1340 ("[T]he claims cannot be of broader

18   scope than the invention that is set forth in the specification.").

19        In fact, NetApp's construction is no construction at all.  NetApp merely incorrectly

20   restates the claim language.  Where the claims require the root inode to "point[] directly *and*

21   indirectly" to a "consistent state of said file system," NetApp construes root inode as "an inode

22   that points directly *or* indirectly to . . . a consistent state of a 'file system.'"  Thus, other than

23   incorrectly changing an "and" to an "or," NetApp does not ascribe the root inode any meaning not

24   already ascribed to it by the rest of the claim language.  The Federal Circuit rejects such

25   constructions.  *Mangosoft*, 525 F.3d at 1330-31 (rejecting construction that "ascribes no meaning

26   to the term 'local' not already implicit in the rest of the claim.").

27        Because Sun's construction requiring the root inode to be in a fixed location correctly

28   captures an aspect of the claimed technology inherent in the "very character of the invention,"

1   *Alloc*, 342 F.3d at 1370, NetApp's citation to *nCube Corp v. SeaChange Int'l, Inc.*, 436 F.3d

2   1317, 1322 (Fed. Cir. 2006) is inapposite.  In that case, the Federal Circuit rejected a construction

3   that read in a limitation from a dependent claim.  *Id.*  Here, Sun's construction does not read in

4   limitations, but gives the invention the full scope that is set forth in the written description.  *On*

5   *Demand*, 442 F.3d at 1340.

6       **C.    "state of a file system" / "consistent state"**

7       The significant difference between the parties' constructions is NetApp's inclusion of the

8   phrase "rooted by a 'root inode.'"  Sun's construction comes straight from a definition in

9   NetApp's related '352 patent.  Having used that definition in its own related patent, NetApp's

10  criticism of Sun's reliance on it is, to say the least, questionable.

11      More important, though, is that NetApp's construction is contrary to the claims.  Taking

12  the on-disk root inode as an example, the claims require it to reference (by pointing directly and

13  indirectly) a "first set of blocks on said storage system that store a first consistent state of said file

14  system."  '211 patent, col. 23:64-67.  Thus, the claim language contemplates a structure A (the

15  on-disk root inode) referencing a structure B (the set of blocks storing a consistent state of the file

16  system).  NetApp's construction turns this relationship on its head by including structure A *within*

17  structure B.  In fact, as explained at page 28 of Sun's opening brief, NetApp's inclusion of "root

18  inode" in its construction of "consistent state" renders the claims incomprehensible.

19      NetApp's construction also hopelessly confuses two related but distinct concepts,

20  "consistent state" and "consistency point," which NetApp insists should be construed to have the

21  same meaning, thereby treating them as interchangeable.  NRB at 31.  NetApp is wrong because

22  the claim language and the specification distinguish these two concepts.  *Tandon Corp. v. U.S.*

23  *Int'l Trade Com'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("There is presumed to be a difference

24  in meaning and scope when different words or phrases are used in separate claims.").

25      While the term "consistent state" appears in the '211 patent, "consistency point" does not.

26  ("State of a file system," which the parties agree should be construed the same as "consistent

27  state," appears in claim 8 of the '292 patent.)  Instead, "consistency point" is claimed in claim 4

28  of the '292 patent.  The specification teaches that a "consistency point" is "[t]he set of self-

-26-

1    consistent blocks on disk that is rooted by the root inode." '211 patent, col. 4:17-19; '292 patent,

2    col. 4:12-14.  In other words, a "consistency point" occurs when a file system in a "consistent

3    state" on disk is rooted by a root inode.  Brandt Supp. Decl., ¶ 53; '211 patent, col. 4:21-25.

4    Consistent with this teaching, in claim 4 of the '292 patent, the file system stays at a "first

5    consistency point" until a new fsinfo structure is stored.  '292 patent, col. 25:16-27; Brandt Supp.

6    Decl., ¶ 53.

7        Under NetApp's construction, the first and second "consistent states" in the '211 patent

8    may be replaced with "consistency points" as NetApp defines them to be the same.  However, the

9    first and second "consistent states" in the '211 patent are not first and second "consistency

10   points."  Rather, the claimed *second* consistent *state* (rooted by the incore root inode) is achieved

11   while the file system is still at a *first* consistency *point* (the "first set of blocks" storing a

12   consistent state rooted by the on-disk root inode).  The process claimed in the '211 patent occurs

13   in between the consistency points of the '292 claim 4.  Brandt Supp. Decl., ¶ 54.  In the file

14   system of the '211 patent, the on-disk root inode has not yet been updated with the incore root

15   inode and the file system changes are still stored in buffers in memory.  Brandt Supp. Decl.,

16   ¶¶ 54-55;'211 patent, col. 24:8-11.  This means that the incore root inode in the '211 patent roots

17   a second consistent *state* ('211 patent, col. 24:5-6) comprised of buffers and blocks, but is not at a

18   second consistency *point* – the file system is still at the first consistency point.  Brandt Supp.

19   Decl., ¶ 54-55.

20       NetApp's insistence that "consistency point" and "consistent state" / "state of a file

21   system" are to be construed the same creates problems with claim 8 of the '292 patent as well.

22   As explained above, while the term "consistency point" appears as a claim term in claim 4 of the

23   '292 patent, it does not appear in claim 8 of that patent (where the term "state[s] of a file system"

24   appears).  Furthermore, the term "root inode" also is not present in '292 patent claim 8.  By

25   offering a construction of "state[s] of a file system" that is identical to its construction of

26   "consistency point" in '292 claim 4 and that incorporates NetApp's construction of "root inode"

27   from the '211 patent, NetApp is reading both of these limitations into claim 8 of the '292 patent.

28   NetApp does so even though the term "root inode" is a limitation in '292 patent dependent claim

-27-

19.  The law is well settled that this is improper.  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1326 (Fed. Cir. 2003) ("Our court has made clear that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement.") (internal citation omitted).

## IV.     U.S. PATENT NO. 7,200,715.

### A.     "associating the data blocks with one or more storage blocks across the plurality of stripes as an association" / "the association to associate the data blocks with one or more storage blocks across the plurality of stripes"

#### 1.     The Claims Are Indefinite Under 35 U.S.C. §112(2).

In analyzing indefiniteness, the words used in the claims are presumed to mean what they say and the Court will give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art. *Honeywell Int'l Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1339 (Fed. Cir. 2003).  When the words of these particular claims are given their full range of ordinary meaning, the claims undoubtedly recite an impossible situation and, therefore, are insolubly ambiguous and do not allow one of ordinary skill in the art to determine whether a particular product infringes.  Brandt Supp. Decl., ¶¶ 66-67.  The terms are therefore invalid under section 112(2).  *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003); *Novo Indust., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1358 (Fed. Cir. 2003).

The parties agree a "storage block" cannot exist across a "plurality of stripes."  Indeed, NetApp twice admits "one of ordinary skill in the art would understand that a single storage block will not exist on multiple stripes at the same time…."  NRB at 35, 38.  Yet, the claims, as actually written, cover this impossible situation.  Specifically, when given their ordinary meaning, the claims cover two situations: (i) associating "data blocks" with a single storage block across multiple stripes as an association; and (ii) associating the data blocks over more than one storage block across a plurality of stripes as an association.  Brandt Supp. Decl., ¶ 67.  Because the claims use the term "or," either situation satisfies this claim limitation.  *Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1311-12 (Fed. Cir. 2002).  Because a stripe consists of multiple storage blocks and any one storage block cannot exist across multiple stripes, the first of the two situations states an impossibility.  Brandt Supp. Decl., ¶ 67.  Therefore, the claim is insolubly ambiguous and one

-28-

1    of ordinary skill in the art is unable to determine whether a particular product infringes the claims,

2    rendering the claims invalid.  *Geneva Pharms*, 349 F.3d at 1384;  *Novo Indust.*, 350 F.3d at 1358;

3    Brandt Supp. Decl., ¶ 67.

4              **2.    NetApp's Arguments Confirm The Claims Are Indefinite.**

5              In an attempt to salvage the claims, NetApp presents arguments confirming the claims are

6    indefinite.  NetApp argues that "because the claim requires an 'association' capable of mapping

7    data blocks to storage blocks 'across a plurality of stripes,' one of ordinary skill in the art would

8    understand that the *term 'one or more' covers a degenerate (abnormal) case only* [in which the

9    association is only a single storage block on a single stripe], because, in practical terms using

10   more than one stripe, and therefore more than one storage block, is an important feature of the

11   data structure being defined as an association."  NRB at 35 (emph. added).  NetApp goes on to

12   argue that the specification describes an "association" as a data structure that includes storage

13   blocks across multiple stripes and that this ability to perform multiple stripe writes differentiates

14   it from the prior art and *"strictly requires* 'an association' that includes *blocks from multiple*

15   *stripes."*  NRB at 36-38 (emph. added); *see also* NRB at 37 ("The specification distinguishes the

16   prior art on the basis of the prior art not generally carrying out writes to multiple stripes.").

17   Thus, under NetApp's own reasoning, the so-called "degenerate" case – which NetApp asserts is

18   recited in the claims – does not differentiate NetApp's alleged invention from the prior art.

19             These arguments confirm the claims are indefinite.  NetApp admits the claimed

20   "association" must include storage blocks across multiple stripes because this is an "important

21   feature" of the invention that differentiates it from the prior art.  Indeed, the express claim

22   language requires storage blocks "across the plurality of stripes."  Yet, at the same time, NetApp

23   argues the claims cover a "degenerate" case where the association is only a single storage block

24   on a single stripe, a position that is both contrary to the "plurality of stripes" claim language and

25   which places the claim into the prior art.

26             Finding itself in this untenable position, NetApp is forced to argue that the claims cover

27   any association that either (1) does include or (2) is *capable of* including multiple storage blocks

28   across multiple stripes.  *See, e.g.,* NRB at 35 ("'association' capable of mapping data blocks to

-29-

1    storage blocks 'across the plurality of stripes'"), 36 ("NetApp's proposed constructions . . .

2    convey that, in the normal case, blocks from multiple stripes are in each 'association'").  This

3    argument is illustrated in NetApp's "McDonalds" analogy as "diners" practicing the claim by

4    "*planning* to eat at more than one McDonald's, and *if* we do, they will *probably* be in more than

5    one state – but it's *possible* we will eat at only one McDonald's."  NRB at 39 (emph. in orig.)

6    Thus, under NetApp's view, as long as a storage system *might* associate data blocks with more

7    than one storage block across a plurality of stripes – even if the system never does so and, instead,

8    always utilizes only one storage block on one stripe – the system practices the claims of the '715

9    patent.  The fatal problem with this position is, of course, that it (1) ignores and contradicts the

10   plain meaning of the actual claim language, (2) attempts to import a "capable of" limitation into

11   the claim, and (3) would result in infringement by a system practicing the prior art.  The Court

12   may not "fix" this problem with NetApp's patent by rewriting the claims through claim

13   construction to save the validity of the patent.  *Allen Eng'g*, 299 F.3d at 1349 ("It is not [the

14   Court's] function to rewrite claims to preserve their validity.").

15       The claims also are indefinite as a matter of law because (1) NetApp admits the invention

16   "strictly requires" an association of multiple storage blocks across multiple stripes in order to

17   differentiate it from the prior art, but (2) the claims do not require this.  As the Federal Circuit

18   recently noted:  "The Supreme Court has stated that '[t]he statutory requirement of particularity

19   and distinctness in claims is met only when [the claims] clearly distinguish what is claimed from

20   what went before in the art and clearly circumscribe what is foreclosed from future enterprise.'"

21   *Halliburton Energy Serv., Inc. v. M-I, LLC,* 514 F.3d 1244, 1249 (Fed. Cir. 2008), *citing United*

22   *Carbon Co. v. Binney & Smith Co.,* 317 U.S. 228, 236, 63 S.Ct. 165, 87 L.Ed. 232 (1942).

23       NetApp admits the invention "strictly requires" an association of multiple storage blocks

24   across multiple stripes of an array, which purportedly distinguishes the '715 patent from the prior

25   art.  NRB at 35-38.  These admissions are not only in NetApp's brief, but also were repeatedly

26   made during prosecution of the patent, when NetApp urged the PTO to allow the claims because

27   the prior art did not teach mapping or associating *"each data block with a respective one of the*

28   *storage blocks across a plurality of stripes."*  Sun Br. at 35-37.  This "strict requirement,"

-30-

1    however, is missing from claims 21, 39 and 52.  Instead, claims 21, 39 and 52 all are written to

2    cover a case where the association consists of only a single storage block.  NRB at 35, 39.  The

3    claims are therefore invalid for indefiniteness.  *Halliburton,* 514 F.3d at 1256.  The claims also

4    are invalid because the invention set forth in the claims is not what the specification describes

5    (*i.e.,* the use of multiple storage bocks across multiple stripes).  *Allen Eng'g*, 299 F.3d at 1349.

6                    **3.    Sun's Alternative Construction Is The Only Construction Consistent**
                            **With The Specification.**
7

8          The Court should find the claim indefinite.  However, if the Court concludes the claim

9    language is not indefinite, the intrinsic evidence requires the terms be construed as "associating

10   each data block with a respective one of the storage blocks across the plurality of stripes" (Sun's

11   proposed construction).

12         The specification defines a "stripe" as "*one* storage block *on each* disk drive in an array of

13   drives in the system."  '715 patent, col. 1:37-39 (emph. added).  This definition is consistent with

14   the definition of the term as it is understood to those skilled in the art.  Brandt Supp. Decl., ¶ 58.

15   Beginning at the Abstract and continuing throughout the specification, the '715 patent repeatedly

16   and exclusively describes the association of data blocks to storage blocks as a one-to-one

17   correspondence, i.e., each data block is associated with a respective one of the storage blocks.

18   '715 patent, Abstract; col. 9:16-19; col. 13:2-5, 20-22, 37-39; Brandt Supp. Decl., ¶ 69.  This one-

19   to-one association is the only type of association described in the '715 patent.  *Id*.  Not

20   surprisingly, Dr. Ganger and NetApp do not (and cannot) cite to a single example in the

21   specification of data blocks associating with storage blocks on something other than a one-to-one

22   basis correspondence.  Thus, Sun's alternate construction is proper, and NetApp's construction,

23   which ignores the specification and attempts to cover a generic "data structure" not contemplated

24   by the '715 patent, is not.  *See, e.g., Miken*, 515 F.3d at 1338.

25         Furthermore, NetApp's attempt to replace the claim term "storage blocks" with the more

26   general term "locations" has no basis in the specification, file history or in the field of art.  Brandt

27   Supp. Decl., ¶ 70.   Both the specification and the prosecution history clearly define stripes in

28   terms of storage blocks and require a one-to-one mapping of data blocks to storage blocks.

-31-

1   Brandt Supp. Decl., ¶ 70.  NetApp's construction must be rejected for this reason as well.

2                    **4.      The Prosecution History Supports Sun's Construction.**

3          Consistent with the explicit teachings of the specification, NetApp stressed during

4   prosecution of the '715 patent that the allegedly novel "association" required a one-to-one

5   mapping of data blocks to storage blocks over a plurality of stripes.  In at least three different

6   amendments, NetApp urged the Patent Office to allow the claims because the prior art did not

7   teach "mapping" or associating "***each data block with a respective one of the storage blocks***"

8   across a plurality of stripes.  Sun Br. at 35-37.  NetApp made this argument with respect to ***all*** of

9   the claims, including claims 21, 39 and 52.  Furthermore, the Examiner agreed and allowed

10  claims 21, 39 and 52 for this very reason – *i.e.,* because the prior art allegedly lacked "associating

11  each [of the] data blocks to be stored with a respective one of the storage blocks across the

12  plurality of stripes for a single write operation."  Williamson Decl., Ex. J, p. 2; *see also* Supp.

13  Williamson Decl., Ex. 1.  NetApp's repeated disclaimers are both clear and unmistakable.

14         NetApp's current response to its prior repeated disclaimers can be summarized as follows:

15  (1) it did not state this limitation is a requirement of every claim; and (2) this limitation was

16  unnecessary to overcome the prior art.  NetApp is wrong on both counts.  First, NetApp did

17  represent to the PTO that associating each data block with a respective one storage block was

18  required by all pending claims.  Indeed, NetApp twice urged that all pending claims—including

19  claims 21, 39 and 52—were allowable over the prior art because "the absence … of Applicant's

20  '***associating each data block with a respective one of the storage blocks, for transmitting the***

21  ***association to a storage device manager for processing of the single write transaction***.'"

22  Williamson Decl., Ex. I, p. 15 (emph. in orig.).  Thus, NetApp's first response is baseless.

23         NetApp's second response, *i.e.*, that the disclaimer was unnecessary, is disingenuous at

24  best.  In every substantive amendment NetApp filed during the prosecution of the '715 patent, it

25  distinguished the claimed inventions from the prior art precisely because the prior art did not

26  disclose mapping or associating *each data block with a respective one of the storage blocks*

27  across a plurality of stripes.  *See, e.g.,* Williamson Decl., Ex. F, pp. 17-18; Ex. H, p. 20; Ex. I, p.

28  15.  Furthermore, NetApp repeatedly urged that ***all*** claims should be allowed because *associating*

-32-

1   *each data block with a respective one of the storage blocks* was not in the prior art.  Whether

2   NetApp could have made different arguments with respect to claims 21, 39 and 52 is irrelevant

3   because it chose not to do so.

4          NetApp cites one isolated statement in the file history suggesting it made a broader

5   argument concerning the association, namely, that "DeKoning does not address associating data

6   blocks with storage blocks, but instead merely discusses the use of buffering ..."  Williamson

7   Decl., Ex. F, p. 18.  However, surrounding this isolated statement are more specific statements

8   describing the associating function in the claims as "***associating each data block with a***

9   ***respective one of the storage blocks, for transmitting the association to a storage device***

10  ***manager for processing of the single write transaction"*** and "associating each data block of the

11  single write request with a storage block of the storage system" *Id.* at p. 17 (emph. in orig.).

12  Importantly, when arguing that DeKoning was "legally precluded" from anticipating the claims,

13  NetApp cited the absence of "***associating each data block with a respective one of the storage***

14  ***blocks, for transmitting the association to a storage device manager for processing of the single***

15  ***write transaction.*"** *Id.* at p. 18 (emph. in orig.).  Thus, it was the more specific one-to-one

16  association that NetApp stressed and used to distinguish the claims from the prior art.

17  Additionally, the Examiner never agreed with NetApp's broader assertion (*i.e.,* that DeKoning

18  does not disclose any type of association), but instead, allowed the claims because he determined

19  DeKoning did not disclose the specific one-to-one association that NetApp argued was present in

20  all of the claims.  Williamson Decl., Ex. J (Notice of Allowability), p. 2.

21         Furthermore, even if, *assuming arguendo,* NetApp's disclaimer was not necessary to

22  overcome the prior art, it was NetApp's duty to correct the record.  *Springs Window Fashions LP*

23  *v. Novo Indust., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("If the applicant mistakenly disclaimed

24  coverage of the claimed invention, then the applicant should have amended the file to reflect the

25  error, as the applicant is the party in the best position to do so.").  Instead of doing so, NetApp

26  chose to argue on the public record that all claims were distinguishable over the prior art because

27  they include a one-to-one association of data blocks to storage blocks, and chose to allow that

28  record to stand.  "The prosecution history constitutes a public record of the patentee's

-33-

1   representations concerning the scope and the meaning of the claims, and competitors are entitled

2   to rely on those representations when ascertaining the degree of lawful conduct." *Id.* at 995

3   (citations omitted).  Because NetApp argued that all claims required *associating each data block*

4   *with a respective one of the storage blocks*, the public notice function of a patent and its

5   prosecution history demands that the claims be limited to systems including that limitation.  *Id.*

6   **V.    CONCLUSION**

7       For the above reasons, Sun requests the Court adopt its proposed constructions.

8   Dated:  August 1, 2008          DLA PIPER US LLP

9

10                                  By /s/ Mark Fowler
                                       Mark  D. Fowler

11                                     Attorneys for Defendant and Counterclaim Plaintiff
12                                     SUN MICROSYSTEMS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-34-