MARK D. FOWLER (Bar No. 124235)
mark.fowler@dlapiper.com
CLAYTON THOMPSON (Admitted Pro Hac Vice)
clayton.thompson@dlapiper.com
DAVID ALBERTI (Bar. No. 220625)
david.alberti@dlapiper.com
CHRISTINE K. CORBETT  (Bar No. 209128)
christine.corbett@dlapiper.com
YAKOV M. ZOLOTOREV (Bar No. 224260)
yakov.zolotorev@dlapiper.com
CARRIE L. WILLIAMSON (Bar No. 230873)
carrie.williamson@dlapiper.com

DLA PIPER US LLP
2000 University Avenue
East Palo Alto, CA  94303-2215
Tel:  650.833.2000
Fax:  650.833.2001

Attorneys for Defendant and Counterclaimant
Sun Microsystems, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK APPLIANCE, INC., | CASE NO.  3:07-CV-06053 EDL |
|        Plaintiff – Counterclaim<br>       Defendant, | **SUN MICROSYSTEMS, INC.'S NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR PARTIAL STAY OF THE CASE PENDING REEXAMINATION OF UNITED STATES PATENT NO. 6,892,211** |
|        v. | |
| SUN MICROSYSTEMS, INC., | **Date: TBD**<br>**Time: TBD** |
|        Defendant -<br>       Counterclaimant. | **Courtroom: E, 15th Floor**<br>**Hon. Elizabeth D. Laporte** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   PROCEDURAL BACKGROUND ...................................................................................... 2

    A.    Case Background ...................................................................................................... 2

    B.    The Reexamination Proceeding ............................................................................... 3

III.  ARGUMENT ...................................................................................................................... 4

    A.    Sun's Renewed Motion Should Be Granted Because There Is Now A
          "Significant Change In The Reexamination Status" of the '211 Patent ................. 4

    B.    There is a Liberal Policy Favoring Granting Stays Pending Reexamination .......... 5

    C.    The Court Should Exercise Its Discretion To Stay This Litigation As To
          The '211 Patent ....................................................................................................... 5

          1.    Discovery Is Not Complete And No Trial Date Is Set ................................ 6

          2.    Granting A Stay Will Simplify The Issues In Question and The
               Trial ............................................................................................................. 6

          3.    A Stay Will Not Unduly Prejudice NetApp or Present A Clear
               Tactical  Disadvantage to NetApp ............................................................. 8

IV.   CONCLUSION ................................................................................................................... 9

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*ASCII Corp. v. STD Entm't USA, Inc.,*

5
    844 F.Supp. 1378 (N.D. Cal. 1994) ................................................................ 5

6
*C.R. Bard, Inc. v. U.S. Surgical Corp.,*
    388 F.3d 858 (Fed. Cir. 2004)....................................................................... 7

7

8
*Ethicon, Inc. v. Quigg,*
    849 F.2d 1422 (Fed. Cir. 1988)..................................................................... 5

9
*Ho Keung Tse v. Apple, Inc.,*
10
    2007 WL 2904279 (N.D. Cal. 2007)............................................................... 5

11
*In re Cygnus Telecomms. Tech., LLC v. Patent Litig.,*
    385 F.Supp.2d 1022 (N.D. Cal. 2005)........................................................... 5

12

13
*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936) ...................................................................................... 5

14
*Procter & Gamble Co. v. Kraft Foods Global, Inc.,*
15
    2008 WL 3833576 (N.D. Cal. Aug. 15, 2008) (stay granted)....................... 5

16
*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.,*
    33 U.S.P.Q.2d 2022 (N.D. Cal. 1995)............................................................ 8

17

18

**STATUTES**

19

20
35 U.S.C. § 102 ................................................................................................... 2, 4

21
35 U.S.C. § 103 ................................................................................................... 2, 4,

22

23

24

25

26

27

28

Defendant Sun Microsystems, Inc. ("Sun") respectfully moves to stay this case, but only with respect to the claims and defenses regarding Network Appliance, Inc.'s ("NetApp") United States Patent No. 6,892,211 ("the '211 patent") pending completion of the United States Patent and Trademark Office's ("PTO") reexamination of this patent.

## NOTICE OF MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**NOTICE IS HEREBY GIVEN** that on September 30, 2008 at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-titled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Sun Microsystems, Inc. will and hereby does move the Court for an order staying the case with respect to United States Patent No. 6,892,211, pending completion of the PTO's reexamination of this patent.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Christine Corbett filed herewith, the pleadings and papers on file herein and any evidence and argument presented to the Court at the time of the hearing.

## STATEMENT OF RELIEF

Sun seeks an order from the Court staying this case with respect to United States Patent No. 6,892,211 pending completion of the PTO's reexamination of this patent.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On April 15, 2008, Sun promptly requested the Court stay the case with respect to NetApp's '211 patent (and two other patents) pending completion of the PTO's reexamination of the patent. On May 23, 2008, the Court denied Sun's request, but indicated that Sun could renew its motion to stay "if there is a significant change in the reexamination status at any time in the litigation." (Dkt. #68). That time has come.

On August 28, 2008, the PTO issued its initial office action in the '211 patent inter partes reexamination proceeding, *rejecting* all 24 claims of the '211 patent based on twelve prior art references. This office action was posted on the PTO's website on September 2, 2008.

In rejecting all of the claims of the patent, the PTO found that prior art references

-1-

1   invalidated the claims as being both anticipated and obvious under 35 U.S.C. §§ 102 and 103. In

2   total, the PTO found *sixteen* bases for rejecting the claims.

3          Based on this office action, it is unlikely the '211 patent will survive reexamination. Even

4   if some of the individual claims were to survive reexamination, which is unlikely, it is highly

5   probable the surviving claims would be substantially narrowed by the PTO during reexamination.

6   Thus, any interim rulings by the Court or the jury on the current claims likely would be rendered

7   moot.

8          Given the Court's preference to continue to streamline this case, staying the case as to the

9   '211 patent will considerably reduce the amount of time, resources and money that otherwise

10  would need to be spent by the Court and the parties.  If a stay is issued, the Court could defer

11  issuing constructions on the three '211 patent claim terms now before the Court, and would not in

12  the future need to address the other '211 patent claim terms the parties agree must also be

13  construed before the '211 patent claims and defense may proceed to trial.  Moreover, only one of

14  the four named inventors of the '211 patent has been deposed to date, and patent prosecution

15  counsel for the '211 patent have not yet been deposed.  Nor have depositions been taken of Sun

16  witnesses concerning the relevant operation of the Sun products accused of infringing the '211

17  patent.  In other words, the time is ripe for staying the case with respect to the '211 patent.  Sun

18  respectfully requests that the Court grant Sun's request to stay this litigation as to the '211 patent

19  until the PTO either issues a final office action in the reexamination (rejecting the claims), or

20  issues a reexamination certificate (issuing modified claims or confirming the existing claims).

21  **II.     PROCEDURAL BACKGROUND**

22         **A.     Case Background**

23         NetApp initiated this lawsuit on September 5, 2007, in the Eastern District of Texas,

24  accusing Sun of infringing seven patents.  On October 25, 2007, Sun filed its Answer and

25  Counterclaims, accusing NetApp of infringing twelve patents.  On November 30, 2007, the case

26  was transferred to the Northern District of California.

27         In April, 2008, Sun moved to stay the case with respect to NetApp's '211 patent, '292

28  patent and '001 patent pending completion of the PTO's reexamination of these patents.  The

-2-

1  Court granted Sun's motion as to the '001 patent, but denied it as to the '211 patent and '292

2  patent. The Court denied Sun's motion as to these two patents because, in part, "there has been

3  no indication from the PTO that these claims will be rejected...." (Dkt. #68.) The Court

4  indicated that Sun may move for a stay of the '211 patent "if there is a significant change in the

5  reexamination status at any time in the litigation." (*Id.*)

6      In June, 2008, the Court ordered the parties to reduce the number of patents for initial

7  claim construction by the Court to three NetApp patents and five Sun patents. Despite the fact

8  the PTO had granted Sun's request for reexamination in April, 2008, despite the fact that Sun

9  advised NetApp that NetApp should not select the '211 patent for inclusion in the initial round of

10  claim construction because Sun would move for a stay as to the '211 patent if and when the PTO

11  issued its initial office action rejecting the claims of that patent, and despite the fact that NetApp

12  had other patents-in-suit to select for initial claim construction that were not subject to pending

13  reexamination proceedings, NetApp selected the '211 patent as one of its three patents of initial

14  claim construction.

15      In addition to limiting the number of patents at issue during the first round of claim

16  construction, the Court also ordered the parties to identify twenty priority terms of the selected

17  eight patents. (Dkt. #76.) Of these twenty terms, the Court agreed to construe the first fourteen

18  terms. (Dkt. #80.) The Court held a *Markman* hearing as to these fourteen terms on August 27,

19  2008. The fourteen terms addressed at the *Markman* hearing did not include two other claim

20  terms in the '211 patent that the parties agree need to be construed. (Dkt. #70.)

21      Fact discovery does not close until January 16, 2009. No further dates, including a trial

22  date, have been set.

23      **B.     The Reexamination Proceeding**

24      The '211 patent issued on May 10, 2005, and claims technology that was neither novel nor

25  inventive. As evidenced by the office action rejecting all 24 claims of the '211 patent, the

26  technology claimed in the '211 patent is present in many prior art references that were not

27  considered or reviewed during the initial prosecution of the '211 patent in the PTO. As such, on

28  December 14, 2007 – a little over three months after the filing of the complaint – Sun requested

-3-

1    the PTO grant reexamination as to all claims of the '211 patent. (Declaration of Christine K.

2    Corbett In Supp. of Renewed Mot. to Stay ("Corbett Decl."), ¶ 2.) On or about April 2, 2008, the

3    PTO issued an order granting reexamination as to all 24 claims of the '211 patent based on

4    thirteen prior art references, finding a "substantial new question of patentability." (Corbett Decl.,

5    ¶ 3.)

6        On September 2, 2008, the PTO posted on its website an August 28, 2008, office action

7    *rejecting* all 24 claims of the '211 patent as either anticipated under 35 U.S.C. § 102 or obvious

8    under 35 U.S.C. § 103. (Corbett Decl., ¶ 4, Ex. A.) Given the strength of the cited prior art and

9    the statistics (discussed below) demonstrating that claims undergoing reexamination usually are

10   rejected or undergo substantial narrowing, it is highly likely that all claims of the '211 patent will

11   be invalidated or substantially narrowed during the reexamination proceeding.

12   **III.    ARGUMENT**

13       **A.    Sun's Renewed Motion Should Be Granted Because There Is Now A**
              **"Significant Change In The Reexamination Status" of the '211 Patent**
14

15       In the Court's May 23, 2008, Order, the Court stated Sun may move for a stay of the '211

16   patent "if there is a significant change in the reexamination status at any time in the litigation."

17   (Dkt. #68.) The Court recognized "that future actions by the PTO could alter" the Court's

18   original decision denying Sun's motion to stay the '211 patent.

19       The PTO's recent rejection of all claims of the '211 patent is precisely the "significant

20   change" that warrants granting Sun's renewed motion to stay the case vis-à-vis the '211 patent.

21   Significantly, the PTO rejected *all independent* claims of the '211 patent as anticipated under 35

22   U.S.C. § 102 based on *eight separate* prior art references. The PTO also rejected all claims of the

23   '211 patent as obvious under 35 U.S.C. § 103 in view of multiple references. As such, it is highly

24   likely that all claims of the '211 patent will be invalidated or substantially narrowed during the

25   reexamination proceeding.

26       Indeed, this Court held that while "general and limited statistics are not very helpful in

27   predicting the outcome of issuing a stay in this case…[s]omewhat more helpful are the PTO

28   actions in the actual reexaminations at issue…" (Dkt. #68 at p.5.) In granting Sun's motion to

-4-

1  stay the case with respect to the '001 patent, the Court relied, in part, on the fact that the PTO had

2  issued an initial office action rejecting all claims of the '001 patent, "indicating that claim

3  cancellation or modification is at least somewhat likely for these claims." (*Id.*)  Now, with

4  respect to the '211 patent, the PTO's initial office action also indicates that claim cancellation or

5  modification is at least somewhat likely (if not very likely) for all claims of the '211 patent.  For

6  this reason and the reasons set forth below, Sun's motion to stay the case with respect to the '211

7  patent should be granted.

8        **B.**     **There is a Liberal Policy Favoring Granting Stays Pending Reexamination**

9        As briefed in Sun's April 15, 2008 motion to stay, a district court has the inherent power

10  to stay litigation pending resolution of reexamination proceedings before the PTO.  *See Landis v.*

11  *N. Am. Co.*, 299 U.S. 248, 254 (1936); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir.

12  1988).   To that end, "there is a liberal policy in favor of granting motions to stay proceedings

13  pending the outcome of USPTO reexamination...proceedings," and such motions frequently are

14  granted in this district. *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D. Cal.

15  1994); *see also Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 2008 WL 3833576 (N.D. Cal.

16  Aug. 15, 2008) (stay granted).

17        **C.**     **The Court Should Exercise Its Discretion To Stay This Litigation As To The**
18                **'211 Patent**

19        In determining whether to grant a stay pending reexamination, courts consider: (1)

20  whether discovery is complete and whether a trial date has been set; (2) whether a stay will

21  simplify the issues in question and trial of the case; and (3) whether a stay would unduly

22  prejudice or present a clear tactical disadvantage to the non-moving party. *See, e.g., Ho Keung*

23  *Tse v. Apple, Inc.*, 2007 WL 2904279, at *2 (N.D. Cal. 2007).  "A stay is particularly justified

24  where the outcome of the reexamination would be likely to assist the court in determining patent

25  validity and, if the claims were cancelled in the reexamination, would eliminate the need to try

26  the infringement issue." *In re Cygnus Telecomms. Tech., LLC v. Patent Litig.*, 385 F.Supp.2d

27  1022, 1023 (N.D. Cal. 2005).  Here, the factors have and continue to support granting a stay.

28    ///

-5-

1  **1.    Discovery Is Not Complete And No Trial Date Is Set**

2  There is no legitimate dispute that at the time of filing Sun's original motion to stay,

3  discovery was at a very early stage.  No documents (other than those produced pursuant to the

4  patent local rules) were produced and no depositions had taken place.  Although nearly five

5  months have passed, discovery is still nowhere near completion.  In fact, discovery on behalf of

6  NetApp is moving at such a slow pace, Sun was forced to seek an extension of the fact discovery

7  cut-off date (which is now set for January 16, 2009).

8  With respect to the '211 patent, NetApp has not yet indicated that document production is

9  complete vis-à-vis those inventors still employed by NetApp.  (Corbett Decl. ¶ 5.)  Moreover, of

10  the four listed inventors on the '211 patent, only one inventor deposition has taken place.

11  (Corbett Decl. ¶ 6.)  None of the patent prosecution attorneys who prosecuted the '211 patent

12  have yet been deposed.  (*Id.*)  Nor have any Sun personnel who will testify as to the Sun products

13  accused of infringing the '211 patent been deposed.  (*Id.*)  No dispositive motions have been filed.

14  No expert discovery has commenced.  Other than the fact discovery cut-off date, which was

15  extended, no other dates, including a trial date, have been set.

16  As such, this factor weighs in favor of granting a stay as to the '211 patent.

17  **2.    Granting A Stay Will Simplify The Issues In Question and The Trial**

18  A stay concerning the '211 patent will certainly simplify the issues and streamline the

19  claim construction process and ultimate trial, thereby reducing the burden on, and preserving the

20  resources of, both the Court and the parties.  It is highly probable that all of the asserted claims of

21  the '211 patent will be rejected or, at a minimum, be significantly narrowed, during

22  reexamination.  This conclusion is not just based upon the PTO's actions and statements to date,

23  and the number and strength of the cited prior art references, but also is supported by statistics

24  showing that claims are affected by a reexamination ninety-one percent (91%) of the time for

25  *inter partes* reexaminations.

26  Specifically, issues relating to claim construction, validity, infringement, unenforceability

27  and damages may be significantly narrowed or eliminated by the PTO's reexamination because

28  some or all claims may be cancelled or amended.  A stay with respect to the '211 patent in this

-6-

1    patent-crowded case will promote judicial economy because the Court can defer issuing a claim

2    construction order regarding the terms currently at issue in the '211 patent. The parties and the

3    Court also can avoid conducting yet another *Markman* hearing on the additional terms of the '211

4    patent that the parties indicated require construction before summary judgment or trial could

5    proceed. In this regard, the parties dispute the scope of the prior art applicable to the '211 patent

6    – with Sun contending that prior art database technologies read on the patent while NetApp

7    contends otherwise. In its initial office action, the PTO rejected claims, in part, based on database

8    technology, expressly concluding that such prior art is relevant to the invalidity of the patent.

9        Importantly, even if some of the claims somehow survive reexamination, statements made

10   by NetApp and the Examiner during the reexamination proceeding will be highly relevant to the

11   proper construction of any surviving claims.[1] *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d

12   858, 867-69 (Fed. Cir. 2004) (citing statements made by patentee during reexamination to support

13   the district court's claim construction and judgment of non-infringement). Additionally, the

14   PTO's decisions and analysis of the prior art during reexamination will help narrow the validity

15   issues and provide the Court with the PTO's understanding of the prior art. Because Sun

16   requested an *inter partes* reexamination of the '211 patent, Sun will be precluded in this district

17   court from relying on any reference considered by the PTO during reexamination. Thus, if any

18   claims of the '211 patent survive reexamination, Sun's inability to rely on the cited prior art

19   references will greatly simplify the validity issues to be addressed during the district court action.

20   _____

21   [1] Indeed, statements made by the Examiner in the initial office action are already relevant to claim
     construction. As the Court is aware, the parties dispute whether the word "and" means "and" or

22   "and/or" in the claim phrase "pointing directly and indirectly to buffers in said memory and a second
     set of blocks on said storage system." In its request for reexamination of the '211 patent, Sun advanced

23   art that, in Sun's view, demonstrated "pointing directly and indirectly to buffers in said memory and a
     second set of block on said storage system." In the initial office action, the Examiner rejected Sun's

24   assertion that claims 1, 9 and 17 of the '211 patent are anticipated by a prior art reference because the
     Examiner concluded that the reference showed direct pointing of records but did not disclose an inode

25   that "points **directly and indirectly** to a first set of blocks." (Corbett Decl., ¶ 4, Ex. A at p. 27)
     (emphasis in original). Similarly, the Examiner rejected Sun's assertion that claims 1-6, 6-14 and 17-

26   22 of the '211 patent are anticipated by a prior art reference because the Examiner concluded that
     reference shows indirect pointing of file data pages, but does not show a "'root inode' that points

27   **directly and indirectly** to a first set of blocks." (Corbett Decl., ¶ 4, Ex. A at p. 28) (emphasis in
     original). The Examiner's reading of the "directly and indirectly" language is the same as Sun's

28   construction, and is contrary to NetApp's construction.

-7-

1   Not only will a stay simplify the issues, but a stay also will be consistent with the Court's

2   request to further streamline this case. Staying the case with respect to a patent that is likely to

3   face claim cancellations and/or claim modifications is a logical place to start. Absent a stay, this

4   Court likely will spend time and resources construing and trying patent claims that may be

5   eliminated or amended during reexamination. *See Target Therapeutics, Inc. v. SciMed Life Sys.,*

6   *Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995) (without a stay, a court may waste time

7   examining validity of claims modified or eliminated in reexamination).

8               3.    **A Stay Will Not Unduly Prejudice NetApp or Present A Clear Tactical
                      Disadvantage to NetApp**
9

10   NetApp will not be prejudiced by a partial stay pending the PTO's reexamination of the

11   '211 patent. Indeed, given that NetApp is dragging its heels in discovery, NetApp cannot now

12   argue that time is of the essence vis-à-vis the '211 patent. Moreover, given that the remaining

13   patents at issue target the same accused product (ZFS), NetApp cannot argue that a stay of the

14   '211 patent will preclude or deny NetApp from attempting to prove that ZFS infringes NetApp

15   patents.

16   NetApp may once again argue that it should be allowed to select which patents should

17   proceed to trial. Such an argument, however, would turn every motion to stay on its head. As the

18   PTO has confirmed, there are serious validity issues with the '211 patent. It makes no sense to

19   proceed through additional claim construction issues, summary judgment and trial on a patent that

20   will face claim cancellations or serious claim modifications.

21   Moreover, the situation NetApp now faces is of its own making. Of the six patents

22   NetApp could have selected as its three patents in the first phase of claim construction, NetApp

23   decided to select two patents (the '211 and '292 patents) that are in reexamination. As Sun

24   repeatedly informed the Court and NetApp, Sun would seek a stay of the '211 and '292 patents

25   once their status changes in the PTO. Indeed, in a Supplemental Joint Case Management

26   Statement filed in May, 2008, Sun noted as follows:

27               NetApp is on fair notice that if the Court adopts its proposal, and if
                 NetApp selects the '211 and '292 patents to pursue, those patents
28

-8-

1    may be later stayed for good cause shown due to their status in the
      PTO. If the Court adopts NetApp's proposal, NetApp should weigh
2    the risk of the PTO's rejection of the claims of the '211 and '292
      patents (which is likely to occur given the strength of the prior art
3    being asserted against those patents) in deciding which patents to
      select.
4

5    (Corbett Decl., ¶ 7, Ex. B.)

6            In denying Sun's motion to stay as to the '211 patent, the Court also noted that the lapse

7    of time during reexamination could result in the loss of evidence over time. This concern,

8    however, is a non-issue. As set forth above, the '211 patent is asserted against the same product

9    (ZFS) as the patents that are currently in the litigation. As such, NetApp will have an opportunity

10   to depose Sun individuals now regarding the development and functionality of ZFS.

11           Finally, there is no clear tactical disadvantage to NetApp. This is not a case where

12   reexamination is sought on the eve of trial or after protracted discovery. Indeed, the Court

13   recognized that "Sun neither delayed in requesting reexamination nor in requesting the stay."

14   (Dkt. #68 at p. 7.) The only alleged tactical disadvantage NetApp will likely articulate is that

15   NetApp would be asserting two patents and Sun would be asserting five patents. However, there

16   is no authority for the proposition that the mere reduction of the number of active patents-in-suit

17   is a ground to deny a partial stay.

18   **IV.    CONCLUSION**

19           Staying the case pending reexamination of the '211 patent will promote judicial economy,

20   simplify the issues in this case and will not unduly prejudice NetApp. Accordingly, Sun

21   respectfully requests the Court grant a stay regarding the '211 patent until the PTO either issues

22   its final office action or issues a reexamination certificate. At that time, the Court and the parties

23   can determine whether a further stay is warranted.

24   Dated: September 8, 2008

25                                              DLA PIPER US LLP

26                                              By  *Christine K. Corbett*
                                                     MARK D. FOWLER
27                                                   CHRISTINE K. CORBETT
                                                     Attorney for Defendant and Counterclaimant
28                                                   SUN MICROSYSTEMS, INC.

                                                -9-