# WEIL, GOTSHAL & MANGES LLP

SILICON VALLEY OFFICE
201 REDWOOD SHORES PARKWAY
REDWOOD SHORES, CALIFORNIA 94065
(650) 802-3000
FAX: (650) 802-3100

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SINGAPORE
WARSAW
WASHINGTON, D.C.

EDWARD R. REINES
DIRECT LINE (650) 802-3022
E-MAIL: edward.reines@weil.com

September 8, 2008

**BY E-FILE**

The Honorable Elizabeth D. Laporte
450 Golden Gate Avenue
Courtroom E, 15th Floor
San Francisco, CA 94102

Re: *Network Appliance, Inc. v. Sun Microsystems, Inc.*,
Case No. 3:07-06053 EDL (N.D. Cal.)

Dear Judge Laporte:

During the August 27 claim construction hearing, the Court asked the parties to consider its comments about their respective positions and suggested that it would welcome attempts to refine, clarify, and hopefully also narrow, certain of the remaining disputes. This letter discusses several outstanding disputes where the Court's comments and the parties' arguments illustrate that speedy and just resolution might benefit from further clarification of the issues.

## Non-Volatile Storage Means ('292 patent)

The parties dispute whether this term should be construed as a means-plus-function term. As explained by Dr. Ganger during the hearing, one of ordinary skill in the art would recognize that "non-volatile storage" refers to a clear and identifiable class of structures (namely, storage devices, such as hard disks, disk arrays, and flash memory) that can retain information in the absence of power. In view of the Court's questions about whether NetApp's proposed construction is overly functional, NetApp notes that there is no rule preventing claims from being written in partially functional terms. Indeed, as Judge Patel stated, "The functional nature of the nouns, 'input', 'output' and 'storage' is not dispositive of this issue. What is important is not simply that

WEIL, GOTSHAL & MANGES LLP

Hon. Elizabeth D. Laporte
September 8, 2008
Page 2

[the element at issue] is defined in terms of what it does, but that term [sic], as a name for a structure, has a reasonably well understood meaning in the art." *Apple Computer v. Burst.com, Inc.*, 2007 WL 1342504, 18 (N.D. Cal., 2007) (internal citations and quotations omitted). To address this issue, however, NetApp proposes the following alternative construction: "a storage device, such as a hard disk, disk array, or flash memory, with the physical property of retaining information in the absence of power." This construction is supported by the specification as discussed in NetApp's brief and presentations to the Court, and eliminates any ambiguity as to whether the construction is purely functional.

The Court also asked NetApp to clarify what structures correspond to the function, were it to find that this limitation is a means-plus-function limitation. In view of the comments of the Court, and as noted during the hearing, the corresponding structure should be storage devices such as hard disks and disk arrays themselves (and equivalents), but not particular written formats one might use to organize the storage in a particular way. In any event, while the use of disks is mentioned throughout the '292 patent, the catalog of specific requirements Sun asserts are part of the corresponding structure is simply not appropriate. Sun asserts that the corresponding structure should be, "one or more disks with a block based format (i.e. 4KB blocks that have no fragments), where the disk storage blocks are the same size as the data blocks of the file system." *See* Suppl. JCCS, Revised Exh. A at 3. As NetApp explained at the hearing, *none* of these features is necessary to storing data in the absence of power. The corresponding structure in means-plus-function claims, "must actually perform the recited function, not merely enable the pertinent structure to operate as intended…" *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1371 (Fed. Cir. 2001). NetApp's proposed structure therefore actually performs the function of storing data in the absence of power, whereas Sun's proposed structure encompasses details of implementation unnecessary for the function.

Meta-Data for Successive States of Said File System ('292 patent)

In view of the Court's concerns, NetApp proposes the following revised construction for this term: "information identifying blocks, files, directories, and otherwise describing successive consistent states of a file system." This revised construction addresses Sun's argument concerning the breadth of "information" (which appeared in NetApp's original construction), and clarifies that the genuine dispute between the parties is whether a block map file (a file that holds a certain type of meta data used to mark blocks in a preferred embodiment) should be imported into the broad and general term "meta-data." Indeed, Sun's proposed construction would impose requirements on the claim that are inconsistent with the patent's description of a preferred embodiment upon which it relies. In a preferred embodiment described in the

WEIL, GOTSHAL & MANGES LLP

Hon. Elizabeth D. Laporte
September 8, 2008
Page 3

specification, the block map file is never copied. *See, e.g.*, '292 patent at 18:65-19:6 (explaining that to create a snapshot only the root inode need be copied).

### File System Information Structure ('292 patent)

Much of the discussion regarding this term at the hearing centered on whether the broad phrase "file system information structure" must be necessarily limited to only a file system information structure that is stored at a "fixed" location. In that regard, the parties agreed that it is necessary to the function of the file system information structure that the storage system be able to find the file system information structure without extensive searching. As NetApp has shown, this does not necessitate the file system information structure being stored at a "fixed" location. It is simply not required that each claim contain all the information necessary to successfully implement the invention claimed thereby. The role of the claims is simply to define the metes and bounds of the protection afforded to the inventor – which is often accomplished using general language. The specification, by contrast, is the location for the information on how you enable the claimed invention. To facilitate resolution of this dispute NetApp proposes the following compromise construction: "A data structure containing information about a file system, stored in a readily-identifiable location." This construction is supported by the specification and is consistent with NetApp's arguments in its brief and in its presentations to the Court.

### Pointing Directly and Indirectly to Bufferes in Said Memory and a Second Set of Blocks on Said Storage System ('211 patent)

Much of the discussion of this term at the hearing focused on whether this general language should be limited to an extremely narrow interpretation based upon an unjustifiable imposition of a rigid grammatical rule. As read by one skilled in the art of computer storage architectures (as compared to a grammarian), the invention of the patent is obviously not intended to be limited in this stingy way. Moreover, one of skill in the art would recognize the pioneering nature of this patent and would understand the many permutations and implementations that all give equal life to the claimed inventions. Nevertheless, in order to clarify the proper scope of this claim term and move the parties closer to resolution, NetApp proposes the following revised construction: "pointing directly and indirectly to members of a group of: a) buffers in memory and b) a second set of blocks on disk." This revised construction addresses Sun's chief complaint with NetApp's original construction (that it purportedly allows too many permutations of direct and indirect pointers) and clarifies the genuine dispute: whether the root inode must point directly and indirectly to buffers and also point directly and indirectly to blocks, as Sun contends.

WEIL, GOTSHAL & MANGES LLP

Hon. Elizabeth D. Laporte
September 8, 2008
Page 4

### Associating the Data Blocks With One or More Storage Blocks Across the Plurality of Stripes as an Association ('715 patent)

NetApp offers the following alternative construction to clarify that, although there are always multiple storage blocks in multiple stripes, a write operation may, in some instances, utilize only one of them: "creating a data structure that relates data blocks to one or more locations selected from possible locations on a plurality of stripes represented in the data structure." This construction has the additional advantage of clarifying that there is not a required one to one correspondence between data blocks and storage blocks. The specification demonstrates this, for instance, by stating that, "some embodiments include a variable block size." '715 patent at 18:47. This construction is supported by the specification as discussed in NetApp's brief and its presentations to the Court.

Even if the court were to embrace Sun's argument that this term requires a data block to be placed in multiple stripes, the claim would not be indefinite. Sun's position appears largely based on the misimpression that, in a RAID, one block cannot exist in more than one stripe. Indeed, during the hearing, Sun seized on statements in NetApp's brief related to *single-redundancy* arrays as a purported admission that a block cannot exist in more than one stripe at the same time. *See, e.g.*, NetApp's Responsive Brief, at 32, lines 2-6. But as is explained elsewhere in NetApp's brief, RAID arrays may use *multiple redundancy* in which multiple sets of parity data are calculated from multiple sets of stripes. *See id.* at 32 n.11; *see also* Ganger Decl., at ¶85. In such a system, each block may be a member of multiple stripes. *Id.* One example of a dual redundancy array, which involves two separate parity calculations, is depicted below:



WEIL, GOTSHAL & MANGES LLP

Hon. Elizabeth D. Laporte
September 8, 2008
Page 5

In this figure, the first parity calculation is made using data from the horizontal stripes; the second parity calculation is made using data from the diagonal stripes. In this system, each block may be a member of two stripes, as is depicted in the upper left corner. Moreover, dual redundancy arrays were well-known in the art when the application for the '715 patent was filed. Indeed, prior art cited during the prosecution of the '715 patent depicts dual redundancy arrays. *See* Exhibit A (U.S. Patent No. 6,158,017), at Fig. 3. Thus, even under Sun's distorted reading of this term, the claims are not indefinite – the language would be understood by those in the art as encompassing a single or multiple redundancy array.

<u>Server Identification Data ('106 patent)</u>

At the hearing it appeared that the Court was inclined to construe this term consistent with the narrow purpose of the invention to help novice users of the internet recognize the owner of the server they are viewing. NetApp has proffered a number of linguistic formulations, each of which satisfies this purpose, and all of which are valid whether on their own or in combination:

- "human-friendly"
- "designed not to be intimidating to inexperienced users"
- "readily understood by an inexperienced user"

All are equally valid. The following excerpt from Sun's infringement contentions illustrates the mischief that can flow from Sun's approach of seeking an impermissibly broad construction while conceding very narrow carve-outs:

| System Status ⓘ | |
|---|---|
| Filer → Show Status | |
| **Filer** | split.partners.netapp.com |
| **Model** | F880 |
| **System ID** | 0033599527 |
| **Version** | 7.0.1R1 |
| **Volumes** | 5 Volumes |
| **Aggregates** | 5 Aggregates |
| **Disks** | 52 Disks (9 spare, 0 failed) |
| **Status** | ⊚ The system's global status is normal. |

WEIL, GOTSHAL & MANGES LLP

Hon. Elizabeth D. Laporte
September 8, 2008
Page 6

Sun's Patent L.R. 3-1 Disclosure of Asserted Claims and Preliminary Infringement Contentions for U.S. Patent No. 5,925,106, App'x A at 4.

As Sun admits, it disclaimed IP addresses during prosecution. Yet, Sun's contentions point to information that is virtually indistinguishable from the numbers contained in an IP address.. *Compare* Sun's IP address (45.212.23.1) *with* NetApp FilerView's System ID number (0033599527). Likewise, though it disclaimed domain names with respect to this limitation, Sun targets virtually indistinguishable information provided by NetApp's products. *Compare* Sun's domain name (sun.com) *with* NetApp FilerView's Filer name (split.partners.netapp.com).

On the other hand, either of NetApp's proposed constructions, or any of the terms discussed above, together or separately, legitimately limits Sun to the invention actually disclosed in the '106 patent, and should therefore be adopted.

NetApp respectfully thanks the Court for its time in considering these proposals which NetApp hopes will narrow the remaining issues and help the parties move more quickly toward a just resolution.

Respectfully submitted,

Edward R. Reines

cc: Mark Fowler, Christine Corbett