FILED

NOV 1 7 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NETWORK APPLIANCE INC,

    Plaintiff,

v.

SUN MICROSYSTEMS INC,

    Defendant.

No. C-07-06053 EDL

**ORDER GRANTING SUN MICROSYSTEMS INC.'S MOTION NO. 1 FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,892,211**

## I. INTRODUCTION

On September 5, 2007, Network Appliance, Inc. ("NetApp") filed its Complaint, alleging that Sun Microsystems, Inc. ("Sun") infringed and is infringing, directly and indirectly under 35 U.S.C. § 271, certain of its patents, by making, using, selling, or offering for sale certain data processing systems and related software. NetApp seeks a declaratory judgment that certain patents owned by Sun are each not infringed, are invalid and/or are unenforceable, as well as a permanent injunction and damages. On October 25, 2007, Sun filed an Answer and Counterclaim, denying the material allegations of NetApp's Complaint and asserting a number of affirmative defenses and counterclaims. Sun denies infringing any of the NetApp Patents, including the patent at issue in this motion (U.S. Patent Number 6,892,211 (the "'211 patent")) and alleges that NetApp infringes a number of its patents instead. On September 10, 2008, this Court issued an Order Construing Claims (the "9/10/08 Order") in which it construed fourteen disputed terms and/or phrases contained in various claims in the seven patents at issue between the parties, including two terms contained in the '211 patent. The parties subsequently conducted discovery, and each party has filed two summary judgment motions in the above-captioned 07-6053 case.

1    On August 3, 2009, Sun filed Motion No. 1 For Summary Judgment Of Non-Infringement Of
2  U.S. Patent No. 6,892,211 ("Motion No. 1") on the basis that its allegedly infringing products do not
3  contain an "on-disk root inode" as that term has been construed by the Court.  Motion No. 1 was
4  fully briefed, and a hearing was held on September 23, 2009.  Having considered the record in this
5  case and the parties' statements at oral argument, and for the reasons set forth below, the Court
6  hereby GRANTS Sun's Motion No. 1 For Summary Judgment Of Non-Infringement of the '211
7  patent.

8  **II.    LEGAL STANDARD**

9      **A.    Summary Judgment**

10      Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on
11 file, and any affidavits show that there is no genuine issue as to any material fact and that the movant
12 is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  Material facts are those which
13 may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
14 A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return
15 a verdict for the nonmoving party.  Id.  The court must view the facts in the light most favorable to
16 the non-moving party and give it the benefit of all reasonable inferences to be drawn from those
17 facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must
18 not weigh the evidence or determine the truth of the matter, but only determine whether there is a
19 genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

20      A party seeking summary judgment bears the initial burden of informing the court of the
21 basis for its motion, and of identifying those portions of the pleadings and discovery responses that
22 demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,
23 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively
24 demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue
25 where the nonmoving party will bear the burden of proof at trial, the moving party can prevail
26 merely by pointing out to the district court that there is an absence of evidence to support the
27 nonmoving party's case.  Id.  If the moving party meets its initial burden, the opposing party "may
28 not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts

2

1 showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250. If the
2 nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to
3 judgment as a matter of law." Celotex, 477 U.S. at 323.

## B. Patent Infringement

5 "To prove infringement, the patentee must show that the accused device meets each claim
6 limitation either literally or under the doctrine of equivalents." Catalina Mktg. Int'l v.
7 Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002). A determination of infringement,
8 whether literal or under the doctrine of equivalents, is a question of fact. Id. "Literal infringement
9 requires the patentee to prove that the accused device contains each limitation of the asserted claim."
10 Id. "Summary judgment of no literal infringement is proper when, construing the facts in a manner
11 most favorable to the nonmovant, no reasonable jury could find that the accused system meets every
12 limitation recited in the properly construed claims." Id. Where the parties do not dispute any
13 relevant facts regarding the accused product, but disagree over possible claim interpretations, the
14 question of literal infringement collapses into claim construction and is amenable to summary
15 judgment. General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 983 (Fed. Cir. 1997); cf. Int'l
16 Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1375 (Fed. Cir. 2004) (distinguishing General Mills
17 on the basis that only the structure of the accused devices had been stipulated to, not the disputed
18 factual determination of whether the device met the claims as construed, but not addressing the
19 scenario in which no reasonable juror could find that a certain claim limitation was met).

20 In MyMail Ltd. v. America Online, Inc., 476 F.3d 1372, 1378 (Fed. Cir. 2007), the Federal
21 Circuit reviewed a District Court order granting summary judgment of non-infringement. Because
22 there were no material factual disputes as to the operation of the accused systems, and because the
23 disagreements concerned whether the defendants' systems performed "authentication" as defined by
24 the patent and construed by the district court, the Federal Circuit found that the issue reduced to a
25 question of claim interpretation and affirmed summary judgment. See id. (noting that the accused
26 product did not satisfy the authentication requirement as it did not validate the user's ID and
27 password, as required by the patent's authentication process). These cases teach that the Court
28 cannot leave it to the jury to decide the proper scope of the patent claim terms. 02 Micro Int'l Ltd. v.

United States District Court
For the Northern District of California

3

1 Beyond Innovation Tech. Co. Ltd., 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an
2 actual dispute regarding the proper scope of the[] claims, the court, not the jury, must resolve the
3 dispute.").

4 "Infringement under the doctrine of equivalents requires the patentee to prove that the
5 accused device contains an equivalent for each limitation not literally satisfied." Id. The Court may
6 not apply the doctrine of equivalents so as to vitiate a claim limitation. Warner-Jenkinson, 520 U.S.
7 at 29, 39 n.8. The Federal Circuit articulates the test for equivalence in two different ways. See
8 Voda v. Cordis Corp., 536 F.3d 1311, 1326 (Fed. Cir. 2008). Under the insubstantial differences
9 test, "[a]n element in the accused device is equivalent to a claim limitation if the only differences
10 between the two are insubstantial." Honeywell Int'l Inc. v. Hamilton Sundstrand Corp., 370 F.3d
11 1131, 1139 (Fed.Cir.2004); Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40
12 (1997)). Alternatively, under the function-way-result test, an element in the accused device is
13 equivalent to a claim limitation if it "performs substantially the same function in substantially the
14 same way to obtain substantially the same result." Schoell v. Regal Marine Indus., Inc., 247 F.3d
15 1202, 1209-10 (Fed. Cir. 2001). "Where the evidence is such that no reasonable jury could
16 determine two elements to be equivalent," summary judgment of non-infringement under the
17 doctrine of equivalents is proper. Warner-Jenkinson, 520 U.S. at 39 n.8. Summary judgment has
18 been rejected because of conflicting expert testimony on the application of the function-way-result
19 test. Crown Packaging Tech., Inc. v. Rexam Bev. Can Co., 559 F.3d 1308, 1315 (Fed. Cir. 2009)
20 (holding that conflicting expert evidence regarding function establishes material issue of fact).

21 **III. ANALYSIS**

22 **A. The Patent At Issue**

23 The '211 patent is a continuation of NetApp's U.S. Patent No. 5,819,292 and is similarly
24 directed to a method for keeping a file system in a consistent state. The '292 patent describes a
25 method for maintaining consistent states of a file system, and for creating snapshots that are read-
26 only copies of the file system. '292 Patent Abstract. The invention uses a write anywhere file-
27 system layout ("WAFL"). The file system progresses from one self-consistent state to another self-
28 consistent state. The set of self-consistent blocks on disk that is rooted by a root inode is referred to

4

1  as a consistency point. The root inode is stored in a file system information structure. Id. In the

2  detailed description of the invention, the invention is described as a system that utilizes storage

3  blocks on the disk, and disk drives provide the storage space for the file system and maintain the

4  structure and content of the file system. The system also uses an in-memory "buffer" to hold

5  changes to the file system prior to storing them on the disk. The data blocks are organized,

6  described, and pointed to by inode blocks. Id. at 5-6. The inode files themselves are pointed to by a

7  "root inode." Id. at 9:34-35. When changes to the file system occur during use, WAFL writes new

8  or modified data to unallocated blocks on disk so that it never overwrites existing data. Id. at 12:2-4.

9  The file system in this patent can also retain a copy of older data in a prior consistent state in a read-

10  only form called a snapshot. Id. at 4:20-21.

11  The '211 patent shares the same specification as the '292 patent, and contains more detailed

12  mechanics of a file system that progresses from one consistent state to another. The system utilizes a

13  root inode that contains pointers that directly point to a metadata file known as the inode file that

14  contains the inodes of all of the other files in the file system. Homrig Decl, Ex. 2 ('211 Patent) at

15  9:25-33. Each file may be broken up into data blocks of 4KB and is described by a corresponding

16  inode, that contains pointers that point to data blocks or to a set of indirect blocks that point to data

17  blocks. Id. at 5-6. It is important for a file system to maintain a consistent state on disk to which the

18  system can revert in case a failure occurs while the file system is being changed. Id. at 1:24-26,

19  13:63-14:6.

20  The '211 patent includes three independent claims – claims 1, 9, and 17 – each of which is

21  asserted against Sun. NetApp also asserts dependent claims 2, 3, 10, 11, 18, and 19. The three

22  independent claims are similar, and Claim 9 is for:

23          a device comprising:
            a processor;
24          a memory; and
            a storage system including one or more hard disks;
25          wherein said memory and said storage system store a file system; and
            wherein said memory also stores information including instructions executable by
26  said processor to maintain said file system, the instructions including steps of (a) maintaining
    an **on-disk root inode** on said storage system, said on-disk root inode pointing directly and
27  indirectly to a first set of blocks on said storage system that store a first consistent state of
    said file system, and (b) maintaining an incore root inode in said memory, said incore root
28  inode pointing directly and indirectly to buffers in said memory and a second set of blocks on
    said storage system, said buffers and said second set of blocks storing data and meta-data for

United States District Court
For the Northern District of California

a second consistent state of said file system, said second set of blocks including at least some blocks in said first set of blocks, with changes between said first consistent state and said second consistent state being stored in said buffers and in ones of said second set of blocks not pointed to by said on-disk inode.

Id. at 24:39-62 (emphasis added).

The Court has construed the term "on-disk root inode"as "the index node data structure stored in a fixed location on disk that roots a set of self-consistent blocks on the storage system that comprise the file system." Sept. 10, 2008 Claim Construction Order (hereinafter "9/10/08 Order") at 45. The Court observed:

> Multiple portions of the patent specification teach that the root inode roots a set of blocks that comprise the file system in a consistent state. See, e.g., '211 Patent at 11:20-27, 11:65-67. The specification teaches that the "root inode 1510B of a file system is kept in a fixed location on disk so that it can be located during booting of the file system." Id. at 10:59-61; see also id. at 9:33-35 (root inode is kept on a fixed location on disk referred to as the file system information block described below). The root inode is the inode that locates the inode file, which stores inodes for the other files in the file system. Id. at 9:32-33. The invention teaches that the on-disk root inode is stored in a fixed location on the fsinfo block to enable the location of the inode files, which are written to any available locations on disk and may move around, in accordance with the "write anywhere" nature of the file system. Id. at 9:19-24. See also Brandt Decl. ¶¶ 127-29. The abstract itself notes that the "set of self-consistent blocks on disk is rooted by a root inode." The use of the terms "root" and "rooted" suggest that the root inode is not rootless but rather is fixed or stored at some set location, although their primary meaning is serving as the base of the tree. '211 Patent at 11:24-25. These portions of the specification address the on-disk root inode.
> ...
>
> NetApp also argues that even an on-disk root inode is not necessarily stored at a fixed location. NetApp largely relies on Dr. Ganger's declaration, but Dr. Ganger does not point to the specification in making his observations, so this extrinsic evidence is not particularly persuasive. See Ganger Decl. ¶¶ 79-80. Dr. Ganger notes that there are other mechanisms for ensuring that the root inode can be located. For example, the file system could store a pointer to the root inode in a fixed location. But a pointer that points to other inodes in non-fixed locations is really just another way of describing a root inode. Dr. Ganger also notes that a file system could have a set of predetermined locations that might hold the root inode. However, Dr. Ganger has not demonstrated how the specification might contemplate such an embodiment, and the specification itself repeatedly refers to a "fixed location," as discussed above. However, if the set were small enough that the root inode could be readily located, it might constitute a fixed location (or at least its equivalent), as Sun's expert acknowledged at the hearing.

Id. at 43-44.

## B. NetApp's Infringement Contentions and Sun's Motion

Sun's ZFS is a general use file system technology that is incorporated into Sun's open-source

United States District Court
For the Northern District of California

1  OpenSolaris operating system and its counterpart, Solaris 10 OS. ZFS operates as a storage pool that
2  supports both file systems and other types of datasets. Multiple file systems can exist simultaneously
3  within a common storage pool managed by ZFS. McKusick Decl. ¶ 6; Williamson Decl., Ex. 2 (ZFS
4  Specification) at 5. ZFS is implemented in software as a component of Sun's OpenSolaris and
5  Solaris 10 operating systems. McKusick Decl. ¶ 7. Those operating systems are licensed for use in
6  non-Sun products and are also sold within Sun's own hardware products. Shapiro Decl. ¶ 7. Many
7  of Sun hardware products can use one of several different operating systems. Certain products in
8  which Solaris 10 OS is the installed operating system use the UFS file system as a default, rather
9  than ZFS, although the customer can later configure its system to run ZFS in lieu of UFS. Id. ¶¶ 8-
10 10. The Amber Road series of Sun products are pre-installed with software that runs ZFS only and
11 cannot be reconfigured to run alternate files systems. Id. ¶ 11.

12      NetApp contends that the uberblock feature of ZFS is the "on-disk root inode" of the '211
13 patent. See, e.g., Williamson Decl., Ex. 3 (Ganger Report) at ¶¶ 39, 76, 115; Ex. 1 (NetApp Patent
14 Local Rule 3-6 Disclosure) at 2, 3, 5. The ZFS uberblock is located within a 256 KB structure called
15 a "vdev label." It is undisputed that each disk used by ZFS has four vdev labels, two at the "front" of
16 each disk and two at the "back" of each disk. Sun Mot. at 9; NetApp Opp. at 11. The locations of
17 the vdev labels are fixed when each disk is added to the pool. Williamson Decl., Ex. 2 at 7; see also
18 Homrig Decl., Ex. 29 (Moore Depo Tr.) at 165:5-9 (contrasting MOS block locations as not being
19 fixed, because "they can literally be anywhere, compared to the vdev labels, which can't be
20 anywhere"); Ex. 1 (McKusick Depo Tr.) at 39 (discussing vdev label locations and noting that the
21 four locations "are known locations and one can certainly say if it is a known location that it is a
22 fixed location."). The parties do not dispute that the vdev labels are in fixed locations.

23      Illustration 3 from section 1.3 of the ZFS specification, reproduced on page 10 of Sun's
24 opening brief, depicts the four parts of a vdev label. A vdev label includes an array of 128 individual
25 1K sized uberblock locations, totaling 128 KB of space. Williamson Decl., Ex. 2 at 8. An
26 individual uberblock is written to one of the 128 uberblock locations. Id.; see also Ex. 9 (Ganger
27 Depo) at 24, 69. An uberblock is "the portion of the label containing information necessary to
28 access the contents of the pool" and "only one uberblock in the pool is active at any point in time."

For the Northern District of California
United States District Court

1  Williamson Decl., Ex. 2 at 12. The uberblock with the highest transaction group number and valid
2  SHA-256 checksum (the most recent, valid uberblock) is the active uberblock. Id. "To ensure
3  constant access to the active uberblock, the active uberblock is never overwritten. Instead, all
4  updates to an uberblock are done by writing a modified uberblock to another element of the
5  uberblock array." Id. at 12-13. In other words, the new uberblock for the pool is written to one of
6  the 128 uberblock locations in the vdev labels other than the location to which the immediately prior
7  uberblock was written. McKusick Decl. ¶¶ 9-10; Williamson Decl., Ex. 9 (Ganger Depo) at 27-28,
8  30-31 (noting that a new instance of the uberblock is stored each time for each new transaction that
9  is synched). Over time, new uberblocks are written in a round-robin fashion across the 128 locations
10 in the uberblock array. Williamson Decl., Ex. 2 at 13.

11        Sun moves for summary judgment of noninfringement of the '211 patent on the basis that
12 Sun's products do not have an "on-disk root inode" because the "uberblock" identified by NetApp as
13 the on-disk root inode is not stored in a "fixed location" on disk. Sun argues that the uberblock
14 changes locations each time a transaction group is synched, and when the system needs to find the
15 uberblock, it must search the disks in the storage pool, all vdev labels on each disk, and, within each
16 vdev label, all of the 128 uberblock structures in the uberblock array in which the active uberblock
17 could be located. Sun argues that this search could extend to hundreds or thousands of locations,
18 and that no reasonable juror could find that the uberblock is stored in a "fixed location." NetApp
19 counters that the uberblock is stored in the vdev label and uberblock array and that these are located
20 are in a fixed location, which meets the Court's construction of the term.

21        The parties are in agreement as to how the ZFS uberblock is designed and operates. The
22 parties agree that four "vdev label" structures on each disk are determined when each disk is added
23 to the storage pool, and are therefore on fixed locations on disk. Sun Mot. at 9; NetApp Opp. at 10-
24 15; Sun Reply at 2; see also Homrig Decl., Ex. 28 (Bonwick Depo. Tr.) at 20 (each vdev label is
25 known at the offset); Ex. 29 (Moore Depo. Tr.) at 161 (conceding that locations of vdev labels can be
26 calculated and "you could call that fixed"); Ex. 30 (Maybee Depo.) at 106 (noting that vdev label is
27 at specific location on the disk). It is also undisputed that each vdev label includes a fixed uberblock
28 array consisting of 128 1 KB locations in which an uberblock may be written. Sun Mot. at 9-10;

1  NetApp Opp. at 12-14; Sun Reply at 2-3; see also Homrig Decl., Ex. 1 (McKusick Depo. Tr.) at 41
2  (testifying during deposition that the uberblock array is in a fixed location relative to the beginning
3  of a vdev label). NetApp also does not provide evidence to dispute that only one uberblock in the
4  storage pool is active at a time, and that when a new active uberblock is written, it is written to one
5  of the 128 locations other than the location where the prior uberblock was written. Sun Mot. at 10-
6  11; NetApp Opp. at 10-18; Sun Reply at 3. Therefore the only issue before the Court is whether
7  alternating between a predetermined set of at least 128 (and potentially, as discussed below,
8  thousands of possible locations in a multi-disk system) which are collectively in a fixed location on
9  disk can meet the Court's construction of the on-disk root inode limitation.

10  Sun argues that this issue is a question of law for the Court to decide on summary judgment;
11  NetApp contends that if reasonable minds could differ then it is a fact question for the jury. To
12  answer this question, the Court need not weigh conflicting evidence on which reasonable minds
13  might disagree because the parties are in agreement as to the relevant components and structure of
14  the ZFS system. Resolution of the motion requires only an application of the claim terms to the
15  undisputed aspects of the accused technology, and the Court can decide this issue as a matter of law.
16  See General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 983 (Fed. Cir. 1997).

17  **C. Alternating Between Hundreds Of Possible Locations Does Not Meet The Court's Construction of A "Fixed" Location**

18

19  Based on the undisputed facts, the ZFS active uberblock is not stored in a fixed location on
20  disk as required by the Court's construction of "on-disk root inode." First, Sun argues that the active
21  uberblock is specifically designed not to be in a fixed location, as it constantly changes location,
22  moving across an array of 128 locations (the "uberblock array") in each of the four vdev labels on the
23  disk. See McKusick Decl. ¶ 9; Bonwick Decl. ¶ 9. For the first vdev label on each disk, the
24  uberblock array is located at the fixed location of 128 KB to 255 KB from block zero of the disk, and
25  the other three uberblock arrays are stored in known locations relative to the beginning of each vdev
26  label. Homrig Decl., Ex. 1 at 41. The question is whether or not the fact that the uberblock array is
27  fixed, even though the uberblock itself moves within this array, satisfies the claim limitation.

28  NetApp's expert, Dr. Ganger, opined that one who is of ordinary skill in the art would

9

1  recognize that an on-disk root inode is stored in a fixed location if it can be located anywhere within
2  128 kilobytes worth of disk space, so long as that on-disk root inode were stored within a "structure
3  specifically defined as a fixed location." Id., Ex. 33 (Ganger Depo. Tr.) at 54 ("I think if there was a
4  structure specifically defined as a fixed location and the on-disk root inode were stored within that
5  structure, right, within that fixed location structure, that yes, one of who [sic] is of ordinary skill in
6  the art would recognize that as the on-disk root inode is stored in a fixed location.") NetApp
7  therefore maintains that summary judgment is inappropriate because a reasonable juror could
8  conclude that ZFS has an on-disk root inode which is stored in a fixed location on disk (i.e., a vdev
9  label), as required by the Court's claim construction.

10  As discussed below, the meaning of "fixed" is an issue of law for the Court to determine, and
11  the Court concludes that as a matter of law it is not so broad as to encompass hundreds of different
12  locations, even if those locations are within a structure that itself could be seen as "fixed."

13  **1. There Are At Least 512 Possible Locations for the Active Uberblock in a Single Disk System, and More In Multi-Disk Systems**

15  According to Sun, the system must search all 128 locations on the uberblock array on each of
16  four vdev labels on a disk when it needs to find the active uberblock, which means that the system
17  must search 512 locations on a single disk to locate the active uberblock. See Williamson Decl., Ex.
18  9 (Ganger Depo.) at 32-34 (during cold boot ZFS must scan all four vdev labels in order to find
19  uberblock and that each of four labels, which are meant to be replicas of each other, have 128
20  locations, and that in a single disk cold boot scenario, 512 locations must be scanned to find valid
21  uberblock); McKusick Decl. ¶ 13; Bonwick Decl. ¶ 8. NetApp argues that there is a factual dispute
22  as to whether 512, rather than 128, is the correct number of possible locations on each disk where the
23  active uberblock could be stored. In support of its argument, NetApp relies on Dr. Ganger's
24  testimony that the four vdev labels are intended to be replicas of each other. Williamson Decl., Ex. 9
25  (Ganger Depo.) at 32. Sun concedes that the location of the uberblock in each of the four vdev labels
26  on a given disk should be the same during normal operation of a storage system. Sun Reply at 3.
27  However, at oral argument, neither party disputed the fact that a system always searches all of the
28  disks in a pool, all four of the vdev labels on each disk, and all 128 uberblock locations in each vdev

United States District Court
For the Northern District of California

label to find the most recent valid uberblock. Sun Mot. at 12; NetApp Opp. at 12; Reply at 4. Therefore it is undisputed that in a single disk system, the system must search 512 locations to find the active uberblock, and more in a multi-disk system. See Williamson Decl., Ex. 9 (Ganger Depo) at 32-34, 40-41 (stating that in a one disk system, ZFS searches all 512 potential locations to find the active uberblock, even if they are replicas, and in a multi-disk system, ZFS must search thousands of potential locations). Additionally, even assuming that there were "only" 128 possible locations (which the undisputed facts show is not the case) that number is still too large to meet the definition of "fixed." Arguably, there might be some dispute of infringement, at least the doctrine of equivalents, if there were only two, or maybe four, possible locations, but the Court need not rule on that question as the issue is not before it.

## 2. The Term "Fixed" Is Not As Elastic As NetApp Contends

When the Court construed the term "on-disk root inode," the dispute focused on whether or not the root inode was fixed, rather than parsing the parameters of what is fixed and what is not. However, the plain meaning of the term "fixed" is the antithesis of what NetApp argues. While there may conceivably be other situations that would present a closer question, such as being located in one of only two possible places, something that can reside in hundreds (or even thousands) of different locations is not fixed.

Both parties argue that the Court's claim construction order and the experts' positions during claim construction support their arguments as to whether or not the root inode is in a "fixed" location. For example, NetApp's expert Dr. Ganger stated at the claim construction hearing that, "if there are multiple locations where it might be, and it moves over time from one of them to another, its location is not fixed. It might be a predetermined set, but it – clearly the location is not fixed, if it can be here, and then later it's here instead . . ." Williamson Decl., Ex. 8 at 83-84 (further stating "fixed means it does not move").[1] Sun's expert Dr. Brandt made a somewhat equivocal statement not

---

[1] In a related context, NetApp argues that Dr. Ganger's statement that fixed means it does not move has no applicability here, because the active uberblock in ZFS is not moving in the sense that the previous version of the active uberblock stays where it is. Rather, a new instance of the active uberblock is stored in the next slot of the uberblock array. See Homrig Decl., Ex. 33 (Ganger Depo.) at 25 (does not understand the uberblock to move from one of 128 possible locations to another as a new transaction is committed), 26-28 (because there is a new instance of uberblock stored each time, he would not

11

1 that if something is in a set of predetermined locations, he was "not sure that's significantly different
2 from 'a fixed location.'" Id. at 83 (also stating that "[i]f it's in a set of fixed locations, it's in a fixed
3 location and a second fixed location, and a third . . ."). However, Dr. Ganger correctly pointed out
4 that the patent contemplated only two, fixed, predetermined locations and correctly distinguished
5 between the two terms, noting that"fixed" means "it doesn't move," and "predetermined" means
6 "you know ahead of time where to look." Id. at 84. Indeed, the distinction between fixed and
7 predetermined is established as a matter of plain English language.

8 NetApp also argues that when the Court construed the '211 patent, it concluded that the root
9 inode was in a fixed location on disk – specifically the file system information or "fsinfo block."
10 9/10/08 Order at 40. The root inode could be anywhere within the fsinfo block, which itself is fixed,
11 as there is no specific block address assigned to the root inode within the larger block. '211 patent at
12 10:58-11:5, Fig. 15. NetApp equates this arrangement to the ZFS system, which the parties agree
13 has four vdev labels in fixed locations, two at the front of each disk and two at the back. Williamson
14 Decl., Ex. 2 (ZFS Specification) at 7; Homrig Decl., Ex. 1 (McKusick Depo. Tr.) at 38-39. ZFS can
15 find the vdev labels at the front of the disk, because those have a fixed block number, which can be
16 used to calculate the two labels at the back of each disk, by counting back from the end and by
17 determining how large the disk is. Id. at 42. Other blocks in ZFS, in contrast, can be "anywhere."
18 Id., Ex. 29 (Moore Depo. Tr.) at 165. To the extent that NetApp relies on this Court's prior
19 observation in the claim construction order that "the root inode is in a fixed location on disk, which
20 is referred to as the file system information block," the Court made this statement in connection with
21 the '292 patent, not the '211 patent, and in the different context of construing the "file system
22 information structure" term. 9/10/08 Order at 41. The issue of the definition of the term "fixed" was
23 not before the Court. Further, the construction of the "file system information structure" term cannot
24 broaden the construction of the "on-disk root inode" term, and Dr. Ganger indicated that the "on disk
25 root inode" construction should be incorporated into the "file system information structure"

27 characterize uberblock as moving). However, even if the active uberblock does not move and is in one
location at any given time, the location of the active uberblock is still constantly changing within the
array of the disk as the previous one is superceded and a new one in a different location replaces it. To
28 find otherwise would rob the term "fixed" of any meaning whatsoever, because any moving thing would
be "fixed" in time at any given instant.

12

1  construction, not vice versa. Williamson Reply Decl., Ex. F (Ganger Depo) at 122, 124. Finally,

2  NetApp has made no showing that the fixed location in the fsinfo block is anywhere near as elastic

3  as having 128 or 512 (or thousands of) possible locations such that it could be equated to the ZFS

4  uberblock. In the '211 patent, Figure 15 shows that things other than the root inode are located in the

5  fsinfo block. Specifically, there is miscellaneous data there, which need not even be contained in the

6  fsinfo block. Homrig Decl., Ex. 2 ('211 Patent) at 11:1-3. There is no teaching that the root inode

7  can exist in multiple locations in the fsinfo block. Therefore, this argument is not persuasive.

8        NetApp also focuses on another portion of the claim construction order which it claims

9  indicates that a "small set of locations" might constitute a fixed location:

> Dr. Ganger also notes that a file system could have a set of predetermined
> locations that might hold the root inode. However, Dr. Ganger has not
> demonstrated how the specification might contemplate such an
> embodiment, and the specification itself repeatedly refers to a "fixed
> location," as discussed above. However, if the set were small enough that
> the root inode could be readily located, it might constitute a fixed location
> (or at least its equivalent), as Sun's expert acknowledged at the hearing.

14  9/10/08 Order at 44. However, this observation was made in a different context. Specifically, the

15  experts at the claim construction hearing were discussing copies of the root inodes that are always

16  simultaneously located at a few (i.e., two or three) fixed locations. Williamson Decl., Ex. 8 (Hearing

17  Tr.) at 83-84 (after Dr. Brandt described a set of three fixed locations, Dr. Ganger noted that the

18  patent only describes two fixed locations at which the root inode is always present). In contrast, here

19  the uberblock is not always located in a small set of two or three locations, but its location is

20  constantly changing. The Court also noted at claim construction that the patent did not contemplate

21  a set of predetermined locations. 9/10/08 Order at 43-44. It certainly does not contemplate that a set

22  as large as those discussed here (128, or 512, or even thousands – as opposed to 2 or 3) could

23  constitute a fixed location simply by virtue of being contained within a larger fixed entity (such as

24  the vdev label).

25        In support of its "small set of locations" argument, NetApp also asserts that Dr. McKusick

26  confirmed that a set of locations of less than four that might hold the root inode might constitute a

27  fixed location or at least its equivalent. Homrig Decl., Ex. 1 at 297-299. NetApp therefore argues

28  that there is a factual dispute over what number of possible locations would be sufficiently small

1    such that the root inode could be in a fixed location. While Dr. McKusick suggests that the number
2    is "less than four," NetApp says this opinion is subject to reasonable differences of opinion and
3    depends on context, and that given the operating speed for computers today, a reasonable juror could
4    conclude that 512 possible locations is sufficiently small, especially relative to the overall number of
5    possible locations on a disk. NetApp also relies on Mr. Bonwick's testimony to argue that an
6    uberblock stored in one of 128 possible 1KB locations requires looking at a "relatively small set of
7    data." Ex. 15 (Bonwick Depo.) at 251-52 ("uberblocks are part of the relatively small set of data in
8    ZFS that it is [sic] at a particular location on disk. . . you have to start somewhere. So there has to be
9    something that's at a known location on disk"). However, Mr. Bonwick was referring to the 128 KB
10   size of each of the uberblock arrays in the vdev labels, which ignores the fact that in a single disk
11   system, 512 locations must be searched, and in a multi-disk system, up to thousands of locations
12   must be searched.

13         Finally, NetApp equates a "fixed" location with a "known" location, and this interpretation is
14   supported to some extent by Sun's own witness. Dr. McKusick stated that if something is in a
15   known location, it is in a fixed location. Homrig Decl., Ex. 1 (McKusick Depo) at 39. He also
16   stated that all four vdev labels are in fixed locations because they are known locations. Id. This is
17   true even though some run time computation is required to locate the back two vdev labels. Id. at 42.
18   NetApp also points out that Dr. McKusick described something as a fixed location in the Rosenblum
19   dissertation, even though the block number is calculated at run time. Therefore, NetApp argues that
20   there is evidence in the record that something may be fixed yet still involved certain run time
21   location to locate it. See Homrig Decl., Ex. 35 (McKusick Expert Report) at ¶ 37 (describing
22   checkpoint region in Rosenblum dissertation as fixed location despite fact that Rosenblum
23   dissertation (Id., Ex. 36 at 49) states that the checkpoint region location is stored in a superblock, so
24   that block number is calculated at run time)). However, this focus on "run time" misses the point.
25   The issue is not how long it takes to find a given location, but whether the location is known from
26   the beginning of the search (regardless of how long it takes to reach the location). Were the Court to
27   rely on "run time" as a factor in determining whether something is in a fixed location, this would
28   mean that the likely inevitable speed-up in run time technology, unrelated to the patent at issue or to

United States District Court
For the Northern District of California

14

1  the allegedly infringing invention, could turn technology that had for a long time been non-infringing
2  into an infringing invention.[2]

3       For all of the foregoing reasons, the Court holds that "fixed" is not so broad as to encompass
4  the hundreds of possible locations in which the ZFS uberblock might reside.

5

### D.   No Reasonable Juror Could Find That The Limitation of A "Fixed" Location Is Met When Comparing The Term As Construed To the ZFS Technology

6

7       In addition to the foregoing, NetApp argues that some evidence in the record indicates that
8  the uberblock itself is in a fixed location on disk. See Homrig Decl., Ex. 37 (Bonwick email) at
9  SUN000204104 (uberblock gets "rewritten in a fixed location at the end of each transaction group");
10  Ex. 29 (Moore Depo.) at 160 ("You could start from some block in a relatively well known location,
11  the uberblock in ZFS's case"); Ex. 30 (Maybee Depo.) at 106-07, 184 (uberblock is "within a fixed
12  area of the vdev label" and the uberblock is the only thing that is fixed in a given scenario).
13  However, Mr. Bonwick's testimony instead supports Sun's position, in that it shows that after each
14  transaction the uberblock gets rewritten to a different location (and is therefore necessarily not
15  fixed). Sun Reply at 4-5. As to Mr. Maybee's testimony that the uberblock is within a fixed area of
16  the vdev label, Sun points out that Mr. Maybee actually stated that the uberblock can appear
17  anywhere within that portion of the vdev label (the uberblock array), and that the uberblock is within
18  that fixed area of the vdev label, which is not in dispute. See Homrig Decl., Ex. 30 at 106-07.
19  Instead, Mr. Maybee's testimony indicates that a new uberblock is written to a new location after
20  every transaction (in a round robin fashion), and such a process does not result in a "fixed" location
21  as defined above. See Williamson Decl., Ex. 6 at 195-96, 201. Mr. Maybee did also state that the
22  uberblock is in a "relatively well known location," id., Ex. 30 at 160, and an email in the record

23

24  [2]NetApp also argues that the amount of space allocated in ZFS for the uberblock relative to the
25  rest of the space on a typical disk is comparable to the amount of space in WAFL allocated to storing
   the root inode. See Homrig Decl., Ex. 1 (McKusick Depo.) at 143-144. However, Sun points out that
   Dr. McKusick also testified that: (1) in 1994, a system only would need to read 4KB of data, whereas
26  today a system using ZFS would need to read a megabyte of data, (2) all four vdev labels on a ZFS
   system must be read as opposed to the single fsinfo structure, (3) it takes longer to read one megabyte
   off of a modern disk than it took to read 4 kilobytes off of a 1994 disk, (4) the amount of data read in
27  a ZFS system is greater in a multi-disk system. Homrig Decl., Ex. 1 at 143-44. Thus, NetApp's
   evidence does not support its argument that the time or method for searching for uberblocks in ZFS is
28  minimal/comparable to the process in WAFL for locating the root inode. Further, the issue before the
   Court relates to the number of locations that need to be searched, not the time required for the search.

United States District Court
For the Northern District of California

15

1  states that "the vdev label (including the uberblock) has a fixed location, everything is derived from
2  that." See Homrig Decl., Ex. 34. However, these statements do not focus on the distinction between
3  the fixed nature of the vdev labels and uberblock arrays, as opposed to the location of the active
4  uberblock itself, and "relatively" is a very vague term, so this evidence does not raise a triable issue
5  of fact.

6      With respect to a multi-disk system, Sun also argues that if the hardware product that is
7  running ZFS has more than three vdevs in a pool, the active uberblock is stored on a different set of
8  three randomly selected vdevs each time a new uberblock is written. McKusick Decl., ¶ 11;
9  Bonwick Decl. ¶ 6. Therefore, the active uberblock may not even be on a fixed disk within the pool.
10  Because the system must search all of the disks in a pool to find the active uberblock, the system
11  must scan possible locations spread over multiple disks in the pool in which the active uberblock
12  may be located. McKusick Decl. ¶ 13; Bonwick Decl. ¶ 8. Sun's argument is essentially that no
13  reasonable jury could find that an uberblock that moves among 128 possible locations in an array,
14  and that also moves among different sets of disk in the pool, which requires the system to search up
15  to thousands of disk locations to find the active uberblock, resides in a fixed location.

16      NetApp counters that sometimes copies of the active uberblock are not only written to all
17  four vdev labels on one disk, but to multiple disks in multiple disk configurations. NetApp Opp. at
18  17:1-4. NetApp appears to be arguing that in a multi-disk system, because there are many copies,
19  not as many locations need be searched as it may appear. But in this scenario, the vdevs to which the
20  uberblock are written are randomly selected each time a new active uberblock is written, and at any
21  given time, the system does not know precisely where the active uberblock is located. See Homrig
22  Decl., Ex. 1 (McKusick Depo) at 264-65 ("if you had – if one of those VDEVs, for example, was
23  RAID and had six drives in it, when we talk about writing to that – let's say we had five of them and
24  say we had three of them that we had selected to write to uberblock 2, we would actually end up
25  writing to 18 drives. So it would be all six of each of the three logical VDEVs that would have been
26  selected and all four labels on all of those VDEVs"). Therefore, the Court agrees with Sun's
27  position.

28

16

1

2

**E.    ZFS's Uberblock Does Not Satisfy The On-Disk Root Inode Claim Under The Doctrine of Equivalents**

3      In applying the doctrine of equivalents, the "all elements rule" requires that equivalence be

4 addressed on a limitation-by-limitation basis, rather than from the perspective of the invention as a

5 whole, and that no limitation be read completely out of the claim. Freedman Seating Co. v.

6 American Seating Co., 420 F.3d 1350, 1358 (Fed. Cir. 2005); Tronzo v. Biomet, Inc., 156 F.3d 1154,

7 1160 (Fed. Cir. 2998) (holding that the patentee's theory of equivalence – that any shape would be

8 equivalent to the conical limitation – would write that limitation out of the claims). However, a

9 claim element is not vitiated merely because it does not literally exist in the accused product. Rather,

10 "[a] holding that the doctrine of equivalents cannot be applied to an accused device because it

11 'vitiates' a claim limitation is nothing more than a conclusion that the evidence is such that no

12 reasonable jury could conclude that an element of an accused device is equivalent to an element

13 called for in the claim, or that the theory of equivalence to support the conclusion of infringement

14 otherwise lacks legal sufficiency." DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d

15 1005, 1018-19 (Fed. Cir. 2006) (citation omitted).

16      In this case, the doctrine of equivalents is not met. First, instead of storing an on-disk root

17 inode at a fixed location on disk so that the system knows where it is and can immediately locate it

18 as taught by the '211 patent, ZFS was specifically designed to constantly change the uberblock

19 locations both on and between disks. This design achieved two advantages: (1) to permit a system

20 that runs ZFS to use storage media that are, unlike hard disk drives, susceptible to being worn out if

21 the same location on the media always is used to store an uberblock, thereby permitting the use of

22 flash memory, and (2) to not overwrite the active uberblock. Sun made this design choice because it

23 concluded that the additional computational time required to find the uberblock was worthwhile to

24 achieve these goals. McKusick Decl. ¶¶ 9, 16-17; Bonwick Decl. ¶ 9. In support of its doctrine of

25 equivalents argument, Sun also contends that whether something is in a fixed location or not is a

26 requirement that is binary in nature, and that NetApp has not explained where the range of

27 equivalents begins and ends under its theory. Sun analogizes the case to Freedman Seating Co. v.

28 American Seating Co., 420 F.3d 1350 (Fed. Cir. 2005), in which the Federal Circuit rejected the

1 argument that a support member that was "confined to a fixed location" was the equivalent of the
2 claimed "slidably mounted" support member, because to do so would vitiate the claim limitation. Id.
3 at 1361-62. NetApp counters that there is a factual dispute as to whether a set of 128 predetermined
4 locations for the active uberblock is a substantially similar way of ensuring that the root of the file
5 system can be found, relying again on the Court's prior statement that if the set were small enough
6 that the root inode could be readily located, it might constitute a fixed location or its equivalent. See
7 9/10/09 Order at 44.[3]

8 The Court would not go so far as Sun does in arguing that the fixed location is entirely binary
9 in nature, as both the Court and the experts have recognized that some small set of locations (i.e.,
10 two, or maybe four) could be seen as equivalent to fixed. However, nothing in the record indicates
11 that the uberblock, which can be located in a minimum of 512, or even thousands, of locations is
12 equivalent to the '211 patent's "fixed location" requirement. No reasonable jury could conclude that
13 this aspect of the uberblock is equivalent to the fixed element in the claim. See Sage Prods. Inc. v.
14 Devon Indus., Inc., 126 F.3d 1420, 1423 (Fed. Cir. 1997) (though equivalence is a factual matter
15 normally reserved for a factfinder, court may grant summary judgment where it concludes that no
16 reasonable jury could determine two elements to be equivalent); see also id. at 1425 ("Because this
17 issued patent contains clear structural limitations, the public has a right to rely on those limits in
18 conducting its business activities.").

19 In addition to vitiating the claim limitation, NetApp has not shown that either the
20 insubstantial differences test or the function-way-result tests are met. In applying the "insubstantial
21 differences" test, Sun's explanation of the intentional design choices behind Sun's decision to have
22 the uberblock change locations on and between disks (to permit a ZFS system to use flash memory
23 and not overwrite the active uberblock) is persuasive. These two functions are not functions of the

24

25 [3]NetApp also notes that because its WAFL technology is a "pioneer invention," it is "entitled
to a broad range of equivalents." See Perkin-Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528,
26 1532 (Fed. Cir. 1987); Regents of the Univ. of Cal. v. Dako N. Am., Inc., 2009 WL 1083446 at *11
(N.D. Cal. 2009) (finding that the value of the patent system would be diminished if slight improvements
27 upon fundamental biotechnology methods could escape infringement of a patent to a pioneer invention).
Sun does not appear to contest that the invention is a pioneer invention, though neither party has
28 analyzed the question in detail. However, even affording NetApp the leeway that may be given to
pioneer patents, in viewing the stark differences between the device and the patent, no reasonable
factfinder could find the doctrine of equivalents to be met in this case.

United States District Court
For the Northern District of California

1    claimed on-disk root inode, and the way the active uberblock operates – by moving on and among
2    different disks – is the antithesis of an inode in a known, fixed location on disk. The intentional
3    differences between the accused system and the '211 patent are substantial, because instead of
4    storing an on-disk root inode at a fixed location on disk so that the system knows where it is, ZFS
5    was specifically designed to store the uberblock in a constantly changing location both on and
6    between disks. This preclude a finding of infringement under the doctrine of equivalents. See
7    Honeywell Int'l Inc. v. Hamilton Sundstrand Corp., 370 F.3d 1131, 1139 (Fed. Cir. 2004) ([a]n
8    element in the accused device is equivalent to a claim limitation if the only differences between the
9    two are insubstantial"); Warner-Jenkinson, 520 U.S. at 39 n.8; Sage Prods. Inc. v. Devon Indus. Inc.,
10   126 F.3d 1420, 1424 (Fed. Cir. 1997) (noting that the "doctrine of equivalents prevents an accused
11   infringer from avoiding infringement by changing only minor or insubstantial details of a claimed
12   invention while retaining their essential functionality").

13   Applying the function-way-result test, Sun also correctly points out that the two important
14   functions and corresponding result of having a moving uberblock discussed above (to permit a ZFS
15   system to use flash memory and not overwrite the active uberblock) are neither the functions nor the
16   result of the claimed on-disk root inode. In Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.,
17   559 F.3d 1308, 1315 (Fed. Cir. 2009), the Court held that summary judgment was improper where
18   expert testimony conflicted as to the function of the invention. Here, however, NetApp does not
19   dispute this point regarding functions, and Dr. Ganger does not address these functions in his expert
20   report. See Ganger Report ¶ 42. Therefore, this case is distinguishable from Crown Packaging and
21   summary judgment is appropriate for this reason as well.

22   Moreover, the way the active uberblock operates by constantly moving is the antithesis of an
23   inode that is a known, fixed location on disk or in two concurrent fixed locations in dependent claim
24   4 of the patent (the way of the '211 patent). NetApp argues that there is a factual dispute as to
25   whether a set of 128 predetermined locations for the active uberblock is a substantially similar way
26   of ensuring the root of the file system can be found, relying again on the Court's prior statement that
27   if the set were small enough that the root inode could be readily located, it might constitute a fixed
28   location or its equivalent. 9/10/09 Order at 44. But NetApp fails to explain how such a large set of

For the Northern District of California

United States District Court

locations (which as discussed above, is a minimum of 512 and can be in the thousands) can involve the same "way" of having a root inode in a fixed location on disk. Dr. Ganger did opine that "having uberblock arrays in vdev labels operates in substantially the same way as a fixed root inode, because both reliably and efficiently use a fixed location to facilitate finding the root inode during booting." Ganger Report ¶ 42. However, Dr. Ganger's statement is not specific to the uberblock and does not explain how these functions operate in the same way, and is therefore too conclusory to create a triable issue of fact. See Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1278 (Fed. Cir. 2004) ("expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact").

### E.   Sun's Additional Summary Judgment Requests

In footnote 5, Sun requests that the Court find that it is impossible for Solaris and ZFS to directly infringe any claim of the '211 patent on the ground that as software they do not include any of the hardware claim limitations of the independent claims. However, Sun offers no evidence in support of this argument. In footnote 6, Sun asks that the Court rule that its separate distribution to third parties of Solaris 10 OS not packaged with a Sun hardware product does not contributorily infringe the patent, because it has an admittedly substantial noninfringing use – the use of UFS rather than ZFS. These arguments were not adequately briefed, could be seen as improper attempts at additional summary judgment motions, and were abandoned on Reply. Therefore the Court need not address them.

For all of the reasons stated above, summary judgment is granted as to non-infringement of NetApp's '211 patent.

**IT IS SO ORDERED.**

Dated: November 16, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge

20

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

NETWORK APPLIANCE INC,

Plaintiff,

v.

SUN MICROSYSTEMS INC et al,

Defendant.

_____/

Case Number: CV07-06053 EDL

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 17, 2009, I SERVED a true and correct copy(ies) of the attached via email to:

Counsel for Sun Microsystems: Christine Kerba Corbett
DLA Piper US LLP
christine.corbett@dlapiper.com

Counsel for Network Appliance: Edward Robert Reines
Weil Gotshal & Manges LLP
Edward.Reines@weil.com

Dated: November 17, 2009

Richard W. Wieking, Clerk

By: Lili M. Harrell, Deputy Clerk