1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NETWORK APPLIANCE, INC.,

       Plaintiff,

  v.

SUN MICROSYSTEMS INC.,

       Defendant.

_____/

No. C-07-06053  EDL

**ORDER GRANTING SUN'S RENEWED MOTION FOR PARTIAL STAY PENDING REEXAMINATION OF U.S. PATENT NO. 5,819,292**

Sun Microsystems Inc.'s renewed motion for partial stay of the case pending completion of NetApp's appeal of the PTO's final rejection of all of the asserted claims of United States Patent No. 5,819,292 came on for hearing January 12, 2010.  Having considered the papers and evidence, the relevant legal authority and the argument of counsel, the Court hereby GRANTS Sun's motion for a partial stay pending reexamination of U.S. Patent No. 5,819,292.

**I.      BACKGROUND**

     The Court has previously denied Sun's request for a stay pending reexamination of Patent No. 5,819,292 (the "'292" patent) on two occasions.  See May 23, 2008 Order (Dkt No. 68); Nov. 3, 2008 Order (Dkt. No. 191).  In May 2008, the Court granted Sun's request for a stay as to another patent, in part because the PTO had already issued an initial action rejecting all of the claims of that patent. See generally 5/23/08 Order.  At that time, the Court rejected Sun's request for a stay of the '292 patent, finding that there had been "no indication from the PTO that the claims [would] be rejected, and in light of the fact[] that this case will move forward in any event and NetApp would face some tactical disadvantage if these claims were stayed, claim construction and discovery shall go forward." Id. at 8.  However, the Court recognized that future actions by the PTO could alter this calculus, and invited Sun to seek a stay "if there is a significant change in the reexamination status at

**United States District Court**
For the Northern District of California

any time in the litigation." Id.  Several months later, in denying Sun's request for a stay pending

reexamination of another patent, the Court again noted that a stay with respect to the '292 patent was

unwarranted at that time.  See 11/3/08 Order at 4.

Pursuant to a court order that the parties limit the number of patents for the first round of

claim construction, NetApp initially selected the'292 Patent, the '211 Patent, and the '715 Patent to

be construed first in this action.  The Court has since found the '715 Patent invalid and the '211

Patent not infringed, leaving the '292 Patent as NetApp's only patent to have been selected to go

through claim construction and discovery in the initial round.  Some claim construction of the '292

Patent has been undertaken, but construction is not complete because three disputed terms of the

'292 Patent remain to be construed.  Fact discovery in this case formally closed in April 2009, but

depositions have continued at least through October 2009.  No dates have been set for future

proceedings, such as claim construction of the remaining disputed claims of the '292 Patent,

summary judgment motions, exchange of supplemental infringement contentions and expert reports,

expert reports on damages, or a trial date.

Sun now renews its request for a partial stay on the basis that three PTO examiners have

concluded, in a "Final Rejection," that all of the asserted claims of the '292 Patent are rendered

invalid as anticipated by each of at least four pieces of prior art.  Specifically, on June 16, 2009,

following prior PTO office actions and submissions, the PTO issued its Final Office Action,

rejecting all of the asserted claims as anticipated by several pieces of prior art.  See Declaration of

Christine Corbett In Support of Motion for Stay ("Corbett Decl."), ¶ 10; Ex. D. Thereafter, NetApp

representatives personally appeared before the PTO and "presented the background of the invention

and the Patent Owner's representatives discussed possible amendments to distinguish the claimed

invention from the prior art references." Id., Ex. E.  Following this meeting, NetApp filed a

response amending some of the claims. Id., Ex. F.  On September 8, 2009, the PTO denied entry of

the new proposed amendments and rejected NetApp's patentability arguments, and held that claims

4,8,11-15, 20, 23 and 24 (encompassing all of the accused claims of the '292 Patent) stood finally

rejected as anticipated by prior art. Id., Ex. G.

This Final Office Action required NetApp to file an appeal within four months.  Id.  NetApp

2

**United States District Court**
For the Northern District of California

filed a Notice of Appeal on October 15, 2009, and its opening brief was due December 15, 2009. Id., Ex. H.  NetApp filed a request for an extension of time to file its opening brief, which was denied.  Id., Ex. J.  NetApp filed a second request for an extension, which was denied, and a third extension request, which was recently granted, allowing NetApp until January 15, 2010 for a response.  See Corbett Reply Decl. Exs. A, B.  NetApp also filed a request for continued reexamination.  See id. ¶ 18.  Following the hearing on this Motion, the Court was informed that the PTO denied NetApp's request for continued reexamination on January 13, 2010.  See Docket No. 643 (letter from Sun's counsel attaching 1/13/10 PTO Office Communication containing Decision Dismissing Petition Under 1.182).

## II.    LEGAL STANDARD

As noted in the Court's May 23, 2008 Order on this issue, reexamination is a procedure by which a party can request that the PTO reexamine or reevaluate the validity of a United States patent that has already issued.  35 U.S.C. § 302.  Congress instituted this process "to shift the burden of reexamination of patent validity from the courts to the PTO."  Canady v. ERbe Elektromedizin GmbH, 271 F. Supp. 2d 64, 78 (D.D.C. 2002).  Courts have the discretion to stay judicial proceedings pending patent reexamination, but are not required to do so.  Fresenius Medical Care Holdings, Inc. v. Baxter Intern, Inc., 2007 WL 1655625 at *2 (N.D. Cal. June 7, 2007).  In determining whether to stay a case pending re-examination, the Court considers factors such as:  (1) the stage of the case; (2) whether a stay will simplify the court proceedings; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. Telemac Corp. v. Teledigital, Inc., 450 F.Supp.2d 1107, 1111 (N.D. Cal. 2006).  In light of the overlapping proceedings in this Court and before the PTO, this inquiry requires the Court to carefully consider the particular posture of the litigation before it, and do its best to make a difficult judgment call about the most efficient and fair way to proceed here, despite the uncertainty about the timing and final outcome of future proceedings in another forum.  See Fed. R. Civ. P. 1.

## III.    DISCUSSION

Having carefully weighed the relevant factors, the Court concludes that partially staying the case pending NetApp's appeal of the final office action rejecting all of the asserted claims of the

1  '292 Patent is warranted.  The Court previously noted that a stay could be appropriate in the event of

2  a "significant change in the reexamination status at any time in the litigation."   The PTO's final

3  rejection of all of the asserted claims, refusal to allow amendment of others, and denial of NetApp's

4  request for continued reexamination constitutes such a change.

5        **A.**        **Stage of the Litigation**

6        This case is in the middle stages of litigation.  Some discovery and claim construction has

7  been done, but claim construction as to the '292 Patent is incomplete.  Once the Court construes the

8  remaining claims of the '292 Patent, supplemental infringement and invalidity contentions and

9  expert reports and depositions will very likely be required, but no deadlines have been set as to these

10  issues.  Sun also states that it plans to file a summary judgment motion as to invalidity of the '292

11  Patent after completion of claim construction, but again no deadline has been set for this Motion.

12  No expert reports on damages have been prepared or exchanged, no discovery as to damages has

13  occurred, and no trial date has been set.

14        NetApp contends that fact and expert discovery is complete regarding the '292 Patent, and

15  there is "little left to do before trial."  NetApp disagrees that further claim construction is needed,

16  but does not dispute that the parties initially identified three additional disputed claim terms that

17  remain unconstrued. NetApp also argues that, though expert damages discovery remains to be done,

18  this discovery will overlap with the issues related to NetApp's other patents at issue in related cases.

19        However, even if NetApp is correct that the Court need not construe all three of the

20  remaining claim terms, and expert damages discovery may overlap with work done in other cases,

21  this does not negate the fact that considerable resources will still need to be expended by the parties

22  and the Court in completing these portions of the case.  Further, no summary judgment motions have

23  been scheduled, briefed or heard, and no trial date has been set, all of which will necessarily entail a

24  significant amount of work.  See, e.g., Advanced Analogic Tech, Inc. v. Kinetic Tech., Inc., 2009

25  WL 4981164 (N.D. Cal. Dec. 15, 2009) (allowing stay after trial date set but no claim construction

26  or summary judgment briefs filed);  Speedtrack, Inc. v. Wal-Mart.com USA, LLC, 2009 WL

27  281932, at *1 (N.D. Cal. 2009) (granting stay where damages discovery had not started and trial

28  date had not been set).  Accordingly, this factor weighs somewhat in favor of a stay.

**B. Simplification of the Case**

All of the asserted claims of the '292 Patent have been finally rejected by the PTO, and if that determination is upheld on appeal, the parties and the Court can avoid further claim construction, discovery, invalidity and infringement contentions, summary judgment motions, and trial relating to the '292 Patent.  Further, even if NetApp's BPAI appeal is partially successful and it is allowed to amend certain of the claims, damages for infringement of the amended claims will only accrue *after* the issuance of a reexamination certificate.  See Bloom Engineering Co., Inc. v. North American Manufacturing Co., Inc., 129 F.3d 1247, 1250 (Fed. Cir. 1997).

NetApp cites two cases for the proposition that a stay is only warranted where the outcome of the reexamination will "finally resolve all issues in the litigation."  See Opp. at 6:5-13 (citing Tokuyama Corp. V. Vision Dynamics, LLC, 2008 WL 4452118 (N.D. Cal. 2008); ESCO Corp. V. Berkeley Forge & Tool, Inc., 2009 WL 3078463 at *3 (N.D. Cal. 2009)).  However, these cases are distinguishable.  In Tokuyama, the court found that antitrust issues unrelated to patent infringement would need to be tried regardless of a PTO decision.  Here, there are no non-patent related issues that need to be resolved.  In ESCO, the PTO had previously confirmed the majority of the claims in one of the patents at issue and therefore the court found it likely that issues would remain upon completion of the reexamination process.  In contrast, the PTO has finally rejected all of the claims at issue in the '292 Patent, so if that decision is upheld there will be no issues remaining with respect to that patent.  The cases cited do not require the Court to deny the stay solely on the basis that the BPAI appeal process of the '292 Patent will not resolve *all* of the issues with respect to *all* of the patents in *all* of the related cases; it is enough that the process is likely to resolve all of the issues with respect to one of the patents, thereby simplifying the case in significant ways.

With respect to this factor, both parties speculate about the way in which the Court will try this case and the related two cases to support their positions.  However, as the parties are aware, the Court has not yet decided how to sequence trial of these cases, nor have the parties and the Court attempted to come to any resolution on this issue.  It is thus premature to speculate about how the trials will proceed.

On balance, and given that the PTO has now issued its Final Office Action rejecting all of

the asserted claims of the '292 Patent and refused to continue reexamination, this factor weighs in favor of staying the case as to the '292 Patent. Even though the case may proceed to trial as to Sun's patents, possibly in conjunction with other of NetApp patents, significant work remains that is specific to the '292 Patent. Additionally, the '292 Patent is proceeding under an ex parte reexamination, which means that, regardless of the Court's decision on validity, the PTO's reexamination will continue. See In Re Swanson, 540 F.3d 1368 (Fed. Cir. 2008) (district court finding of validity did not bar PTO from reviewing patentability because proceedings use different evidentiary standards); Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1428-29 (Fed. Cir. 1988) (PTO should continue reexamination even if district court determined patent is invalid). It would not serve judicial efficiency for this Court and the parties to continue litigation of the '292 Patent claims when all of the asserted claims now appear likely to be invalidated by the PTO.

### C. Undue Prejudice or Tactical Disadvantage

NetApp argues that it will be prejudiced by a stay because of significant delays and quality issues associated with the PTO reexamination and appeal process. It points to statements made by Chief Judge Michel of the Federal Circuit during a presentation at the Fordham University School of Law. See Homrig Decl. Ex. 2. The Chief Judge noted that, among other things, "the delay at the board level on reviewing examiner rejections is over two years and growing. The average experience level of the 6,000 examiners at the PTO is three and a half years." Id. at 14. NetApp also points to a recently released Sedona Conference report on reexamination practice, which noted the "rapidly growing backlog at the Board of Patent Appeals and Interfaces ('BPAI' or 'Board')." Id., Ex. 3 at 120. The report noted that, "there were 9809 pending appeals at the beginning of May 2009. By the end of May 2009 that number had grown to 10,927 with over 1600 new appeals filed. Over that same time period, the Board disposed of only 523 cases. . . . But if the activity in May is any indication of the future, the Board is facing a nearly insurmountable hurdle." Id.; see also id. at 139-40.

While these figures certainly raise concerns, at oral argument neither party could identify statistics regarding the current time for a BPAI appeal or the reversal rate, and Sun is correct that courts have held that delays inherent in the reexamination process do not alone constitute undue

United States District Court
For the Northern District of California

1    prejudice.  See, e.g., Photoflex Prods. v. Circa 3 LLC, 2006 U.S. Dist. LEXIS 37743 at *5 (N.D.

2    Cal. May 24, 2006) ("[t]he delay inherent to the process of the U.S. Patent and Trademark Office's

3    reexamination of a patent claim does not constitute, by itself, undue prejudice.").  Further, it is

4    undisputed that NetApp has already requested and received an extension of time for its opening brief

5    in the appeal process, thereby creating some additional delay in the process.  See Corbett Decl. Exs.

6    I, J; Corbett Reply Decl., Exs. A, B.

7         NetApp also contends that it will be irreparably harmed if a stay is granted because Sun

8    continues to release products that use ZFS, the accused product, to the open source community on an

9    ongoing basis.  NetApp relies primarily on the April 29, 2008 declaration of David Hitz filed in

10   connection with NetApp's opposition to a previous motion to stay.  See Dkt. No. 69-1.  The Court

11   has previously noted that Mr. Hitz's opinions as to potential harm were speculative, and found it

12   telling that NetApp had not sought an injunction and waited nearly three years after Sun announced

13   ZFS and two years after its release to file suit.  See 5/23/08 Order at 6.  NetApp also contends that,

14   since the Hitz declaration was prepared, Sun has released the "Amber Road" line of hardware

15   products, that were specifically designed to compete with NetApp, and multiple companies have

16   incorporated ZFS into their technology.  See Homrig Decl. Exs. 5; 6 at ¶¶ 63-65; 7 at 183-85; 8.

17   NetApp argues that waiting years for the BPAI process, thereby allowing Sun's new ZFS products

18   to further take root and impact the market, will directly prejudice it.  However, Sun persuasively

19   counters that NetApp has not put forward any evidence of lost sales as a result of Sun's new ZFS

20   products, nor have its witnesses identified any such harm when given the opportunity to do so at

21   their depositions.

22        Finally, Sun contends that NetApp will not face any tactical disadvantage, other than the

23   alleged disadvantage of having no "active" patents to assert against Sun in the case, while Sun

24   proceeds on three patents against NetApp.  Sun contends that there is no authority that would

25   preclude staying an action as to a patent that has been finally rejected by the PTO simply because an

26   opposing party is asserting patents against that party.  However, some caselaw does indicate that this

27   factor may be considered in combination with others.  See Fujitsu Ltd. v. Nanya Tech. Corp., 2007

28   WL 3314623 (N.D. Cal. Nov. 6, 2007) (denying stay and noting that Fujitsu would be prejudiced by

1   allowing Nanya to proceed on is claims if Fujitsu's claims were stayed, but also finding that Nanya

2   delayed in seeking a stay and that there was an extremely low probability that the PTO would cancel

3   all of the re-examined claims).  However, to the extent that this type of prejudice to NetApp may

4   loom in the future, it may potentially be addressed by allowing NetApp to "borrow" one of its

5   patents at issue in a related case for trial in this case, if the Court decides to conduct the trial(s) in

6   this way.

7   　　　　NetApp also argues that it will be tactically disadvantaged because Sun waited almost six

8   months after the Final Office Action to bring this motion, while aggressively pursuing litigation

9   regarding the '292 Patent.  However, this argument ignores the fact that significant activity took

10  place between NetApp and the PTO following the June 16, 2009 Final Office Action.  See Corbett

11  Decl., Exs. E (July 30, 2009 in-person meeting between PTO and NetApp representatives); F

12  (NetApp filed subsequent written response August 17, 2009); G (September 8, 2009 advisory from

13  PTO that it would not adopt NetApp's proposed amendment and requiring NetApp to file notice of

14  appeal).  On October 9, 2009, NetApp filed a request for continued reexamination, which was

15  apparently misplaced by the PTO for some period of time but ultimately denied on January 13, 2010.

16  See Dkt. No. 643 (letter attaching denial of request for continued reexamination).  On October 15,

17  2009, NetApp filed a notice of appeal, and thereafter requested an extension of time to file its appeal

18  brief.  Id. at 2.  Sun thus counters that it did not unduly delay but instead reasonably waited until

19  after it received final word that NetApp would appeal the PTO's final decision before filing this

20  motion to stay, and NetApp added to any delay by requesting at least one extension of time to file its

21  opening appeal brief.  For all of these reasons, NetApp has not shown prejudice or disadvantage that

22  would outweigh the advantages of a partial stay as to the '292 Patent, nor has it shown competitive

23  harm that could not be monetarily remedied.  Accordingly, this factor does not weigh against a stay.

24  　　　　For all of the foregoing reasons, Sun's Motion for a Partial Stay pending NetApp's appeal of

25  the PTO's Final Office Action rejecting all of the asserted claims of the '292 Patent is GRANTED.

26  **Sealing Requests**

27  　　　　In connection with this Motion, the Court finds good cause for sealing the unredacted version

28  of NetApp's Opposition, as well as Exhibits 6, 7, and 8 to the Homrig Declaration in Support and

hereby Orders these documents to be sealed.

Sun has filed a request to file under seal the unredacted version of its Reply, as well as exhibits C, D, E and F to the Corbett Declaration in Support, on the basis that NetApp had previously designated these exhibits Highly Confidential.  NetApp has not filed a declaration and proposed order relating to Sun's request as required by Local Rule 79-5(d), and NetApp is Ordered to file these documents within one week from the date of this Order so that the Court can rule on this request.

**IT IS SO ORDERED.**

Dated: February 11,  2010

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge

**United States District Court**
For the Northern District of California